**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE CAUSTIC SODA ANTITRUST LITIGATION** | **Lead Case No.: 1:19-cv-00385-EAW-MJR** |
| **THIS DOCUMENT RELATES TO:**<br><br>**ALL ACTIONS** | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT FORMOSA PLASTIC CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ....................1

II. SUMMARY STATEMENT OF FACTS ....................5

III. ARGUMENT ....................12

A. This Court Has Personal Jurisdiction Over FPC ....................12

1. Personal Jurisdiction in Federal Cases is Determined Based on a Foreign Defendant's Contacts with the Entire United States ....................13

2. FPC Has Sufficient Contacts with the United States to Satisfy Due Process under the Fifth Amendment of the Constitution ....................16

3. It Is Reasonable for This Court to Exercise Jurisdiction Over FPC ....................20

4. Jurisdictional Discovery Should Be Permitted if the Existing Record is Insufficient to Establish Personal Jurisdiction ....................22

B. Plaintiffs Have Sufficiently Pleaded A Claim Against FPC ....................23

IV. CONCLUSION ....................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Safety Equip. Corp. v. J. P. Maguire & Co.*,
391 F.2d 821 (2d Cir. 1968)....................21

*BMW of N. Am. LLC v. M/V Courage*,
254 F. Supp. 3d 591 (S.D.N.Y. 2017)....................15

*Broadcast Mktg. Int'l, Ltd. v. Prosource Sales & Mktg., Inc.*,
345 F. Supp. 2d 1053 (D. Conn. 2004)....................14

*Charles Schwab Corp. v. Bank of America Corp.*,
883 F.3d 68 (2d Cir. 2018)....................25

*Chew v. Dietrich*,
143 F.3d 24 (2d Cir. 1998).................... 13, 14, 15

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................16

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
722 F.3d 81 (2d Cir. 2013)....................12

*Dorfman v. Marriott Int'l Hotels, Inc.*,
No. 99 Civ. 10496 (CSH), 2002 WL 14363 (S.D.N.Y. Jan. 3, 2002)....................17

*Formosa Plastics Corp. (U.S.A.) and Formosa Plastics Corporation (Taiwan) v. Arthur Collwyn Sturge*,
848 F.2d 390 (2d Cir. 1988)....................11, 25

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*,
No. 16 Civ. 5263 (AKH), 2018 WL 4830087 (S.D.N.Y. Oct. 4, 2018)......... 12, 15, 16, 23

*Gurvey v. Cowan, Liebowitz & Latman, PC*,
No. 06 Civ. 1202, 2009 WL 691056 (S.D.N.Y. Mar. 17, 2009)....................19

*Hawaii v. Standard Oil Co. of Cal.*,
405 U.S. 251 (1972)....................21

*In re Magnetic Audiotape Antitrust Litig.*,
334 F.3d 204 (2d Cir. 2003)....................15, 22

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 659 (2d Cir. 2013)....................13

*Ingenito v. Riri USA, Inc.*,
89 F. Supp. 3d 462 (E.D.N.Y. 2015)....................17

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
326 U.S. 310 (1945)....................16

*Leon v. Shmukler*,
992 F. Supp. 2d 179 (E.D.N.Y. 2014) ....................22

*Licci et al. v. Lebanese Canadian Bank, SAL, et al.*,
732 F.3d 161 (2d Cir. 2013).................... 13, 16, 20, 21

*LPD New York, LLC v. Adidas Am., Inc.*,
No. 15-CV-6360 (MKB) (RLM), 2017 WL 1162181 (E.D.N.Y. Mar. 27, 2017)............22

*Metro. Life Ins. Co. v. Robertson–Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)....................20

*Porina v. Marward Shipping Co.*,
521 F.3d 122 (2d Cir. 2008)....................13, 14

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
624 F.3d 123 (2d Cir. 2010)....................12

*S.E.C. v. Softpoint, Inc.*,
No. 95 Civ. 2951 GEL, 2001 WL 43611 (S.D.N.Y. Jan. 18, 2001) .................... 14, 19, 20

*Sayles v. Pac. Eng'rs & Constructors, LTD (PECL)*
No. 08-CV-6765, 2012 WL 895944 (W.D.N.Y. Mar. 15, 2012)....................11

*Sayles v. Pac. Eng'rs & Constructors, LTD (PECL),* No. 08-CV-6765,
No. 08-CV-6765, 2009 WL 791332 (W.D.N.Y. Mar. 23, 2009)....................11

*Sayles v. Pac. Eng'rs & Constructors, Ltd. (PECL)*
No. 08-CV-6765, 2010 WL 5334272 (W.D.N.Y. Dec. 20, 2010) ....................11, 22

*Thomas v. Ashcroft*,
470 F.3d 491 (2d Cir. 2006)....................12

*Town of Babylon v. Fed. Hous. Fin. Agency*,
699 F.3d 221 (2d Cir. 2012)....................23

*United States v. Apple, Inc*.,
791 F.3d 290 (2d Cir. 2015)....................23

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016)....................14

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ....................25

*Yousef v. Al Jazeera Media Network*,
No. 16-cv-6416 (CM), 2018 WL 1665239 (S.D.N.Y. Mar. 22, 2018)....................17

**Federal Statutes**

15 U.S.C. § 22....................12, 15

**Federal Rules**

Federal Rules of Civil Procedure
Rule 12(b)(6)....................22, 24

Rule 12(b)2 ....................12

Rule 4(k)(2) ........ 12, 13, 14, 15
Rule 4(k)(2)(A) ........ 14
Rule 4(k)(2)(B) ........ 14

Plaintiffs[1] respectfully submit this memorandum of law in opposition to Formosa Plastics Corporation's ("FPC") motion to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted (*see* ECF Nos. 86, 86-1 ("FPC-Def. Br."), and 86-2 ("Jian Decl.") (collectively, "FPC's Motion").

## I. INTRODUCTION

Defendant FPC—a Taiwanese multi-national corporation that is among the largest chemical and plastics companies in the world, and that is part of global conglomerate Formosa Plastics Group ("FPG" or "Formosa Group")—has earned tens of billions of dollars in revenues and profits **from United States businesses** since its founding in 1954. In moving to dismiss, FPC criticizes the Complaint's allegations, applies inapposite jurisdictional authorities, and offers a thin declaration that not only raises more questions than it answers, but also at best ignores—and at worst conceals—the nature, significance, and volume of FPC's U.S. contacts and commerce in this antitrust conspiracy case.

Consistent with the "short and plain" statement requirements of Rule 8[2] and the law evaluating the sufficiency of pleading a claim for relief, the Complaint[3] alleges in part that:

- FPC manufactures, sells, and distributes Caustic Soda worldwide, including in the United States through its subsidiary Formosa Plastics Corporation U.S.A. ("FPC USA" or "Formosa"), which FPC and members of the Wang family together wholly own and control (¶¶34–35);

---

[1] Plaintiffs are Amrex Chemical Co., Inc., Finch Paper, LLC, Main Pool & Chemical Company, Inc., Miami Products & Chemical Company, Midwest Renewable Energy LLC, Perry's Ice Cream Company, Inc., and VanDeMark Chemical, Inc. (collectively, "Plaintiffs").

[2] References to "Rule __" are to the Federal Rules of Civil Procedure unless otherwise indicated.

[3] References to "¶__" are to paragraphs in the Consolidated Class Action Complaint ("Complaint") (ECF No. 51, filed 05/22/19), unless otherwise indicated.

- FPC's and FPC USA's owners are also shareholders of other affiliates of Formosa Group, a global leader in petrochemicals, plastics, and many other industries with annual revenues of more than $70 billion and over 113,000 employees (¶34);

- FPC's sales volume of Caustic Soda increased 9% from 2016 to 2017; its "consolidated operating profit of TWD21.93bn in 2017 significantly increased 68.5% from 2016," "a record high level for the Company in the past 6 years"; and "equity investment income from [FPC's subsidiaries] Formosa Petrochemical and FPC USA were TWD29.90bn in 2017," helping FPC "achieve the highest level" of consolidated pretax profit since it was established more than sixty years ago (*id.*);

- FPC's Chairman and President typically serves as FPC USA's President, and FPC USA—at FPC's direction and under its control—manufactures, sells, and distributes Caustic Soda in the United States, including Caustic Soda manufactured at its plant in Point Comfort, Texas (¶35);

- FPC USA's sales, revenues, and profits contribute substantially to defendant FPC's revenues and profits, and FPC USA had over $4 billion in annual revenues in 2016 and 2017 (*id.*);

- FPC, although headquartered in Taiwan, acted as the principal, agent, or joint venturer of, or for, the other Defendants[4] with respect to the acts, violations, and common course of conduct alleged in the Complaint, and also relied on Defendants and their agents in the United States to implement, enforce, and conceal the anti-competitive agreements and understandings through their domestic and global sales, marketing, and production operations (¶¶37–38);

- Defendants' profits (including FPC's) "benefited from [Defendants'] coordinated limitation of domestic supply in favor of export sales of Caustic Soda, as export prices soared in 2016 and 2017 in particular" (¶51);

- Defendants (including FPC) "have been operating as a collegial, cooperative cartel to limit supply to domestic customers and have misleadingly justified price increases . . . while selling domestically-produced volumes of Caustic Soda for export abroad" and "[s]ince the fourth quarter of 2015 . . . have conducted business in a 'disciplined' manner, like cartelists, in that they have refrained from gaining market share at each other's expense via price competition, and managed to substantially increase prices and profits, despite relatively stable demand, stable (or minimally increasing or declining) costs, and many years of excess capacity in the industry" (¶88);

[4] "Defendants" are: Olin Corporation and K.A. Steel Chemicals, Inc. (collectively, "Olin"); Occidental Petroleum Corporation ("Occidental" or "Oxy"); Occidental Chemical Corporation (d/b/a OxyChem); Westlake Chemical Corp.; Shin-Etsu Chemical Co., Ltd.; Shintech Inc.; FPC; and FPC USA.

- Price increases during the Class Period (¶76) "coincided with known industry meetings in the United States and abroad attended by Defendants' [including FPC's] representatives with Caustic Soda sales, pricing, marketing, production, distribution, or co-producer transaction responsibilities" (¶90);

- "Representatives of . . . the Defendants [including FPC] also have attended meetings and conferences of The Chlorine Institute, domestically and abroad, whose members include defendants Olin, Oxy, Westlake, and Formosa" (¶92);

- "Other industry meetings attended by representatives of . . . the Defendants [including FPC] include: the annual ICIS and Tecnon OrbiChem World Chlor-alkali [meetings] . . . IHS Markit conferences (*e.g.*, the Global Chlor-Alkali Conference on September 13, 2017, in Antwerp, Belgium, at which defendant Olin's Vice President, Global Caustic & Vinyls, spoke; and IHS Markit's annual World Petrochemical Conferences, that have taken place in March in 2016, 2017, and 2018); meetings of the Vinyl Institute, whose only full members are defendants Formosa, Shintech, and Westlake . . . and meetings of the European Petrochemical Association, which occur in the fall (*e.g.*, Budapest, Oct. 1-4, 2016; Berlin, Sep. 30 – Oct. 3, 2017) . . . Additional contacts among Defendants' representatives [including FPC's] with Caustic Soda . . . responsibilities occurred . . . without counsel present domestically and abroad" (¶93);

- FPC and the other Defendants "entered into sales agreements as well as swap agreements of Caustic Soda and other products (including chloralkali derivatives) with each other in both North America and abroad. . . . For example, when Hurricane Harvey temporarily idled some capacity at facilities owned by defendants OxyChem and Formosa creating logistical problems, those defendants were assisted with Caustic Soda supply by other (unknown) producers, believed to be other defendants . . . The practice of selling Caustic Soda and other products (including chloralkali derivatives) to, or swapping products with, each other, is widespread among the Defendants and their affiliates both domestically and abroad . . ." (¶94); and

- FPC and the other Defendants "intended to restrain trade, and did restrain trade, in Caustic Soda by reaching an agreement or understanding to end genuine price competition among themselves . . . by limiting domestic supply and exporting and selling Caustic Soda abroad (to keep it off the domestic market)" and "Defendants achieved their goal of increasing and maintaining Caustic Soda prices at an artificially high level, and shared with each other, directly and through intermediaries, confidential and competitively sensitive information . . ." (¶103).

Assuming the foregoing factual allegations are true, a successful price-fixing conspiracy impacting the United States market generally and, in particular, FPC USA's Caustic Soda and other sales to New York and United States customers, was profoundly important to FPC's profitability, which reached record heights during the Class Period. ¶34. Yet FPC contends that it

exercised no control over, and had no involvement in, FPC USA's Caustic Soda activities. This argument strains credulity in light of the facts alleged in the Complaint.

Indeed, as discussed further below, publicly available facts buttress the Complaint's allegations against FPC, indicating—among other things—that:

- FPC is considered the "flagship unit" of Formosa Group, and their "USA Headquarters" is located adjacent to New York in the offices of FPC's U.S. subsidiary, defendant FPC USA, in Livingston, New Jersey;

- FPC's subsidiary FPC USA—along with Formosa Group's other U.S. affiliates—contributed nearly **$1.1 billion in income before tax** to Formosa Group in 2017, which was more than 70% of the total contributed by "foreign companies" (those not headquartered in Taiwan) that year to Formosa Group;

- USA import data show that FPC not only sold to U.S. buyers—potential class members—during the Class Period to whom FPC shipped Caustic Soda from Taiwan to U.S. ports, but that those ports included "New York/Newark Area";

- FPC USA was an important source of raw materials for FPC, as FPC's audited Financial Statements for 2016 and 2017 (English translation) state that FPC USA "engages in the manufacturing and sales of oil, plastic raw materials, and petrochemical raw materials, with [FPC] as [FPC USA's] main sale target";

- Mr. Jian of FPC, whose declaration FPC offers in support of its Motion, appears to have attended a China Chlor-Alkali Industry Association conference in November 2017, where a Vice President of defendant Olin also may have been present (consistent with the Complaint's allegations of FPC's attendance at trade association meetings abroad involving other Defendants around the times of price increases);

- Mr. Jian gave a presentation (in English) during the Class Period entitled "Caustic Soda Market Information" to attendees of a Korea Chlor Alkali Association meeting that refers to the U.S. and North America on numerous slides, and also confirms—as alleged in the Complaint, *e.g.* at ¶50—that there was substantial Caustic Soda excess capacity in North America during the Class Period (Oct. 1, 2015 – present);

- FPC's subsidiary, FPC USA, apparently constitutes Taiwan's largest investment in the United States, which is one of Taiwan's largest trading partners;

- FPC and FPC USA hold several dozen U.S. patents, filed or granted over the course of the last thirty-seven years; and,

- FPC's and Formosa Group's USA headquarters at FPC USA in New Jersey apparently has a Taiwanese culture, consistent with the Complaint's allegations of Taiwan-headquartered FPC's direction and control of FPC USA's operations.

Furthermore, FPC has benefited from litigating as a party in the Second Circuit, and is also no stranger to the Western District of New York. After FPC's co-defendants removed a state court personal injury case to this District, FPC was subject to jurisdictional discovery of its corporate relationship with FPC USA (and relevant forum contacts) before settling that matter.

Accordingly, it is reasonable for the Court to exercise jurisdiction over FPC, which allegedly participated in a plausible price-fixing conspiracy that not only arose out of FPC's and the other Defendants' collusive conduct in the United States and abroad, but also caused hundreds of millions of dollars in damages to New York-based and other U.S. companies. FPC also has fair notice of the plausible Sherman Act claim against it and its alleged co-conspirators. Therefore, Plaintiffs respectfully request that FPC's Motion to Dismiss be denied.

## II. SUMMARY STATEMENT OF FACTS

Defendant FPC—one of the world's largest chemical corporations—is a publicly traded Taiwanese company that is part of Formosa Plastics Group ("Formosa Group" or "FPG"), a global, Taiwan-based, vertically integrated conglomerate of multi-national companies engaged primarily in petrochemical and plastics operations. ¶34; *see generally* Ex. 1 ("Formosa Plastics Group Introduction" 2018 marketing brochure).[5] Formosa Group earns billions in profits annually from tens of billions of dollars in sales to customers worldwide, including throughout

[5] All references to "Ex. __" are to exhibits accompanying the Declaration of C. Andrew Dirksen in Support of Plaintiffs' Memorandum of Law in Opposition to Defendant Formosa Plastics Corporation's Motion to Dismiss ("Dirksen Decl."). This factual summary is not intended to substitute for all of the specific facts set forth in the Complaint alleging FPC's and FPC USA's participation in a price-fixing conspiracy. Incorporated here by reference are ECF 91 (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss, Summary Statement of Facts at 6-12), and ECF 91-2 (Examples of Statements of Fact Alleged in the Complaint).

the United States. *Id*. at 51 ("2017 Financial Highlights"). It has "Global Production Bases" in China, Taiwan, Vietnam, Indonesia, and the United States, and its companies—including FPC and its U.S. subsidiary FPC USA—operate U.S. plants. *Id*. at 25-26. As alleged, Formosa Group is thus a "worldwide organization" with "annual revenues of more than $70 billion and over 113,000 employees[,]" figures that include FPC's and FPC USA's revenues and employees. ¶34.

Formosa Group's only non-Taiwanese headquarters is located at the offices of defendant FPC USA in Livingston, New Jersey. *See* Dirksen Decl., Ex. 1 at 26, referring to "**FPG, USA Headquarters, New Jersey**" (emphasis added), and on the final (unnumbered) page, listing a "headquarters" address in Taiwan, and then defendant FPC USA's address in Livingston, New Jersey. Importantly, as FPC USA's copyright-2019 "At A Glance" marketing brochure states at the bottom of its "New Jersey" page: "**Companies affiliated with the world-wide Formosa Plastics Group are co-located with us at the Livingston site.**" Dirksen Decl., Ex. 2 at p. 2 (emphasis added).[6] In other words, defendant FPC—as an affiliate of Formosa Plastics Group—is "co-located" with it at defendant FPC USA's offices in Livingston, New Jersey. *Id*.

Defendant FPC manufactures, sells, and distributes Caustic Soda to customers worldwide, including in New York and the United States directly and through FPC USA, which operates a plant in Point Comfort, Texas, that makes Caustic Soda and other products for distribution nationwide. ¶¶34–35, 39, 83. Defendant FPC USA is privately held and is owned

---

[6] The Jian Declaration (ECF 86-2) offered in support of FPC's Motion states that FPC's headquarters is in Taiwan and FPC USA's is in New Jersey. Jian Decl., ¶5. FPC, however, is also a part of Formosa Group and "co-located" with FPC USA in New Jersey, unless the statement to this effect in FPC USA's brochure (copyrighted 2019) is false. *See* Ex. 2 at 2.

wholly by defendant FPC—which owns 22.66% of FPC USA's stock[7]—and members of the Wang family, who are substantial shareholders of not only FPC, but also other Formosa Group companies. ¶34; *see also* Dirksen Decl., Ex. 3, FPC 2018 Annual Shareholders Meeting Handbook (English translation) dated June 20, 2018 ("FPC 2018 Handbook"), at 36-37 and 87, showing shares of Wang family members (including Chairman William Wong, son and nephew of FPG's co-founders), and Ex. 4 at p. 5 (an article in a Taiwanese magazine dated January 24, 2017, stating that defendant "Formosa Plastics Corporation only holds a 20 percent stake in FPC USA, while the Wang family holds the rest.").[8]

As alleged, FPC's Caustic Soda sales volume improved 9% from 2016 to 2017, and its "consolidated operating profit of TWD21.93bn in 2017 significantly increased 68.5% from 2016, which is a record high level for the Company in the past 6 years[.]" ¶¶34, 83; Dirksen Decl., Ex. 3 (FPC 2018 Handbook) at 6. Further, the combined "equity investment income from Formosa Petrochemical and FPC USA" in 2017 helped FPC "achieve the highest level [of consolidated pretax profit] in the past 63 years since the Company [was] established." *Id*. FPC USA had over $4 billion in annual revenues in 2016 and 2017, and its sales revenues and profits contribute substantially to FPC's financials and, ultimately, to Formosa Plastics Group's profits. ¶35. Also, FPC's Chairman and President typically serves as the President of FPC USA. *Id*.; *see also* Ex. 3 (FPC 2018 Handbook) at pp. 36–37, showing that some FPC directors held FPC USA positions.

---

[7] This percentage is according to ¶4 of the Jian Declaration; the Complaint alleges the percentage is 22.61%. ¶34.

[8] Despite the fact that FPC's owners wholly own (privately held) FPC USA, FPC disputes that it has any "control over" or "involvement in" FPC USA's Caustic Soda "activities." Jian Decl., ¶6. Mr. Jian's declaration fails to specify who at FPC is or was ever tasked with communicating with FPC USA with respect to Caustic Soda or U.S. chloralkali operations generally during the Class Period; this omission is important given that FPC is a part of Formosa Group and their "USA Headquarters" is at FPC USA's New Jersey offices. *See* Ex. 2 at 2 ("New Jersey" page).

The United States is a very important market for the Formosa Plastics Group: defendant FPC USA—along with Formosa Group's other U.S. affiliates—**contributed nearly $1.1 billion in income before tax to Formosa Group in 2017**, which was more than 70% of the total contributed by "foreign companies" (those not headquartered in Taiwan) that year to Formosa Group. Dirksen Decl., Ex. 1 at p. 51 ("2017 Financial Highlights"). FPC USA alone generated pretax income of $960 million USD to FPC in 2017. Ex. 3 (FPC 2018 Handbook) at 11. The profits generated by FPC USA for FPC and Formosa Group no doubt contribute to why FPC is regarded internationally as "the flagship unit" of Formosa Group, as a journalist noted earlier this year. Ex. 5. FPC's audited Financial Statements for Dec. 31, 2017, and 2016 (English translation), even state that FPC USA "engages in the manufacturing and sales of oil, plastic raw materials, and petrochemical raw materials, **with [FPC] as its main sale target**." Ex. 6 at 30 (emphasis added). An article concerning the President of Taiwan's visit to Formosa's U.S. plant in Point Comfort, Texas, in March 2016, noted not only that Formosa Group's headquarters was in New Jersey, but also that its U.S. plastics business—quoting a Taiwanese newspaper—represented "Taiwan's largest investment in the United States." Ex. 7 at p. 3.

As alleged, defendant FPC itself manufactures, sells, and distributes Caustic Soda to customers "worldwide," even though most of its U.S. Caustic Soda operations are conducted through defendant FPC USA (¶¶34–35, 38–39), which not only participated in the conspiracy by successfully increasing prices in tandem with the other Defendants on many occasions despite excess capacity, relatively flat demand, and stable costs (¶¶58–59, 63, 65, 69–70, 72, 74, 76, 83–86), but also engaged in various cartel practices with other Defendants. ¶¶48–49, 88, 91-100,

124–126.[9] For example, Defendants—including FPC and FPC USA—allegedly entered into co-producer transactions domestically and internationally (¶94), attended trade association meetings with each other around the times of industry price increases both domestically and abroad (¶¶90–93, 124), and manipulated and artificially inflated a Caustic Soda price index. ¶¶95–98.[10]

Conduct engaged in by Mr. Sunny Jian, the Sales Director of FPC's Plastics Division whose declaration has been proffered by FPC in support of its Motion to Dismiss (Jian Decl., ¶1), is consistent with several of the Complaint's allegations. Mr. Jian appears to have attended a China Chlor-Alkali Industry Association conference in November 2017, together with a Vice President of defendant Olin. *See* Dirksen Decl., Ex. 8 ("The 6th China chlor alkali conference" brochure, showing photos of Mr. Jian and an Olin Vice President beside each other on the fourth page that lists expected "conference guests"). Domestic U.S. Caustic Soda prices were in the process of increasing in November 2017. ¶¶34–38, 65. Mr. Jian also gave a presentation (in English) during the Class Period entitled "Caustic Soda Market Information" to attendees of a Korea Chlor Alkali Association meeting that refers to the U.S. and North America on numerous slides, and also confirms—as alleged in the Complaint, *e.g.* at ¶50—that there was substantial Caustic Soda excess capacity in North America. *See* Ex. 9 at presentation slide no. 27, entitled "Caustic Soda Trade Flow," describing North American Caustic Soda "Capacity" as 16233

---

9 The table setting forth Defendants' "Publicly Known" price increase announcements (¶76) does not state an increase by FPC USA in 3Q2017 simply because Plaintiffs could not locate <u>public</u> information about it. Its absence does <u>not</u> mean that FPC USA failed to announce an increase or actually increase prices to customers in that quarter by some amount.

10 FPC does not appear to dispute that, as alleged, it attended trade association meetings and conferences abroad and engaged in co-producer transactions with other Defendants.

KDMT and "Demand" as 11899 KDMT, a capacity utilization percentage of only 73%.[11] Mr. Jian's attendance at trade association meetings supports several of the Complaint's allegations, including, for example, that "Defendants' successful price increases . . . coincided with known industry meetings in the United States **and abroad** attended by Defendants' representatives with Caustic Soda sales, pricing, marketing, production, distribution, or co-producer transaction responsibilities." ¶90 (emphasis added).

Mr. Jian's declaration claims that FPC USA was FPC's only U.S. Caustic Soda customer in recent years. Jian Decl., ¶7 ("FPC does not sell caustic soda to customers in the United States, other than to FPC USA, and it has not done so at any time relevant to the above-captioned litigation."). This is contradicted by U.S. import data showing FPC's importation of Caustic Soda into the United States from Taiwan during the Class Period to U.S. purchasers. For example, import data shows that as recently as April 22, 2019, FPC shipped Caustic Soda bought by Connell Brothers Co.—a U.S. distributor of Asia-Pacific chemicals based in San Francisco—from Kao Hsiung port in Taiwan to Tacoma, Washington. Dirksen Decl., Ex. 10 (second page). On June 8, 2017, FPC imported Caustic Soda for buyer Univar USA from a Chinese or Taiwanese port other than Kao Hsiung to Vancouver, Washington. *Id*. (sixth page). FPC also imported Caustic Soda to "New York/Newark Area" from Taiwan at times during the Class Period, including several times in 2016 for Connell Brothers. *Id*. (final two pages of Ex. 10).

FPC and FPC USA also hold over thirty U.S. patents that have been filed or granted since at least as early as 1982. Dirksen Decl., Exs. 11–13.

---

[11] Although this presentation is undated, several slides refer to data as of September or October 2016 (Dirksen Decl., Ex. 9, slide nos. 2–4, 11), and another slide contains *estimated* 2016 Asian PVC supply and demand figures (*id*. at slide no. 17), suggesting that the presentation likely was authored shortly after October 2016.

The USA headquarters of Formosa Group and its affiliates, including defendant FPC, at FPC USA's offices in Livingston, New Jersey, apparently even has a Taiwanese culture. According to a review of FPC USA authored in July 2019 on Glassdoor.com by a former full-time employee, who had worked at FPC USA for more than five years: "[t]he company is predominantly Asian and you'll hear more Mandarin/Taiwanese being spoken than English, so if you are not ok with this, don't work here." Dirksen Decl., Ex. 14 at p. 2. Another review by a former full-time employee, authored in January 2017, states in part, "Good company but it is a Taiwanese culture. 85% of employment is Taiwanese. You must understand their culture as it is different then [sic] a typical company." *Id*. at 4.

FPC also has benefitted from the use of the federal courts as a party to an appeal in the Second Circuit. *See Formosa Plastics Corp. (U.S.A.) and Formosa Plastics Corporation (Taiwan) v. Arthur Collwyn Sturge*, 848 F.2d 390 (2d Cir. 1988) (affirming award of $581,595.56 to FPC and FPC USA in an action in the Southern District of New York for breach of a marine insurance policy). FPC and FPC USA also were defendants in this District in a personal injury matter that the defendants (including another Taiwanese company) successfully removed to federal court from New York State Supreme Court. *Sayles v. Pac. Eng'rs & Constructors, LTD (PECL) et al.*, Case No. 1:08-cv-00676-WMS-HBS (settled after some jurisdictional discovery of FPC was conducted); *see also Sayles v. Pac. Eng'rs & Constructors, LTD (PECL),* No. 08-CV-6765, 2009 WL 791332, at *1 (W.D.N.Y. Mar. 23, 2009) (affirming Magistrate Judge's recommendation and granting plaintiff's motion for issuance of a letter rogatory to Taiwan to effect service of complaint on Taiwanese defendants, including FPC); *Sayles v. Pac. Eng'rs & Constructors, Ltd. (PECL),* No. 08-CV-6765, 2010 WL 5334272, at *6 (W.D.N.Y. Dec. 20, 2010) (order of Magistrate Judge Scott granting plaintiff's motion to compel

jurisdictional discovery of FPC and other Taiwanese defendants); *Sayles v. Pac. Eng'rs & Constructors, LTD (PECL)*, No. 08-CV-6765, 2012 WL 895944, at *5 (W.D.N.Y. Mar. 15, 2012) (order of Magistrate Judge Scott granting in part and denying in part further jurisdictional discovery).

## III. ARGUMENT

### A. This Court Has Personal Jurisdiction Over FPC

To withstand a Rule 12(b)(2) motion to dismiss, a plaintiff need only make a *prima facie* showing that jurisdiction exists. *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990)). Plaintiffs have done so here. In addition, as Plaintiffs have also done here, they may submit "affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010). All pleadings and affidavits should be construed "in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester Fin. Sec.*, 722 F.3d at 84–85.

"Federal courts must satisfy three requirements in order to exercise personal jurisdiction over an entity: (1) the entity must have been properly served, (2) the court must have a statutory basis for exercising personal jurisdiction, and (3) the exercise of personal jurisdiction must comport with constitutional due process." *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16 Civ. 5263 (AKH), 2018 WL 4830087, at *6 (S.D.N.Y. Oct. 4, 2018). With respect to proper service, FPC has stipulated to service of process and the stipulation was entered by the

Court on June 10, 2019. ECF No. 64. The second requirement, as discussed below, is met in this antitrust action by relying either on Rule 4(k)(2) or, in the alternative, Section 12 of the Clayton Act, 15 U.S.C. § 22. And the third requirement—that the exercise of personal jurisdiction must comport with constitutional due process—is met here by examining FPC's contacts with the United States, and by showing the reasonableness of exercising jurisdiction over FPC in this District. *See generally Licci et al. v. Lebanese Canadian Bank, SAL, et al.*, 732 F.3d 161, 170 (2d Cir. 2013); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) ("To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances.").

### 1. Personal Jurisdiction in Federal Cases is Determined Based on a Foreign Defendant's Contacts with the Entire United States

Rule 4(k)(2) provides that for claims arising under federal law, "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." This Rule "extends the reach of federal courts to impose jurisdiction over the person of all defendants against whom federal law claims are made and who can be constitutionally subjected to the jurisdiction of the courts of the United States.'" *Chew v. Dietrich*, 143 F.3d 24, 27 (2d Cir. 1998)). According to the Second Circuit:

> Rule 4(k)(2) was specifically designed to "correct[ ] a gap" in the enforcement of federal law in international cases. . . . The gap arose from the general rule that a federal district court's personal jurisdiction extends only as far as that of a state court in the state where the federal court sits . . . . The pre-1993 Rules, the Advisory Committee noted, left a significant lacuna "when the defendant was a non-resident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any single state to support

> jurisdiction under state long-arm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction."

*Porina v. Marward Shipping Co.*, 521 F.3d 122, 126–27 (2d Cir. 2008) (quoting Rule 4 Advisory Committee's Note, 1993 Amendments).

Here, it is undisputed that FPC is at home in Taiwan. ¶34. It is also undisputed that FPC is not jurisdictionally present in any of the fifty states for the purpose of establishing general jurisdiction. FPC-Def. Br. at 6 ("[FPC] cannot be considered 'at home' in New York or anywhere else in the United States[.]"). Thus, Rule 4(k)(2)(A) is satisfied.

Under Rule 4(k)(2)(B), the Court must determine whether "exercising jurisdiction is consistent with the United States Constitution and laws." To do so, the Court should examine FPC's contacts with the United States *as a whole*, not simply those with New York. *Porina*, 521 F.3d at 127. This is because where a "cause of action is based on a federal question, the due process requirements are derived from the Fifth Amendment, as opposed to the Fourteenth Amendment." *Broadcast Mktg. Int'l, Ltd. v. Prosource Sales & Mktg., Inc.*, 345 F. Supp. 2d 1053, 1060 n.6 (D. Conn. 2004). Stated another way, "where, as here, the United States, and not the State of New York, is the only sovereign whose power to adjudicate is in question, it logically follows that the relevant 'minimum contacts' (those that determine whether the United States may adjudicate the defendant's rights) should be the defendant's contacts with the United States, and not [its] contacts with the State of New York." *S.E.C. v. Softpoint, Inc.*, No. 95 Civ. 2951 GEL, 2001 WL 43611, at *3 (S.D.N.Y. Jan. 18, 2001). As reasoned by the Second Circuit, "the due process analysis . . . is basically the same under both the Fifth and Fourteenth Amendments[,]" except that "under the Fifth Amendment the court can consider the defendant's contacts throughout the United States, while under the Fourteenth Amendment only the contacts with the forum state may be considered." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317,

330 (2d Cir. 2016) (quoting *Chew,* 143 F.3d at 28 n.4). To determine whether exercising jurisdiction is consistent with the Constitution under Rule 4(k)(2), courts therefore analyze whether a defendant has sufficient minimum contacts with the United States and not simply New York. *Chew,* 143 F.3d at 28–30; *see also BMW of N. Am. LLC v. M/V Courage*, 254 F. Supp. 3d 591, 599–600 (S.D.N.Y. 2017) (denying Belgian company's motion to dismiss for lack of personal jurisdiction under Rule 4(k)(2) where the defendant's alleged conduct and the claims were "closely tied to the United States").

Remarkably, FPC does not address Rule 4(k)(2) in its Motion. Instead, it argues in a footnote against the applicability here of a *different* federal long-arm statute: Section 12 of the Clayton Act, which provides for nationwide service of process on a corporation for any action under the antitrust laws. *See* 15 U.S.C. § 22; FPC-Def. Br. at n.1. That statute permits antitrust lawsuits "against a corporation [to] be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business[.]" 15 U.S.C. § 22. FPC argues that since it does not transact business in this District, the Court cannot exercise personal jurisdiction over it. FPC-Def. Br. at n.1. But this is both mistaken and irrelevant. As with Rule 4(k)(2), the relevant geographic area for assessing minimum contacts under the Clayton Act "is the United States as a whole, not just New York." *FrontPoint,* 2018 WL 4830087, at *6; *see also In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207–208 (2d Cir. 2003) (overruling district court's dismissal of defendant where court had denied plaintiffs limited discovery of whether defendant had "sufficient minimum contacts with the United States to satisfy due process").[12] Moreover, FPC's argument about the propriety of venue in this

---

[12] FPC is careful not to dispute that it "transacts business" *in the United States*, though it does claim not to transact business *in this District*. FPC-Def. Br. at n.1. But Mr. Jian's declaration still

District under Section 12 of the Clayton Act is irrelevant to whether this antitrust action alleging that FPC participated in a conspiracy can proceed against it in this Court. This is because "venue is proper under 28 U.S.C. § 1391(c)(3), which provides that 'a defendant not resident in the United States may be sued in any judicial district.' . . . [and so Plaintiffs may rely on Rule] 4(k)(2), and the venue provisions of § 1391, and need not rely on the Clayton Act." *FrontPoint*, 2018 WL 4830087, at *9 (exercising specific jurisdiction over certain foreign defendants who were alleged co-conspirators in antitrust conspiracy where their co-conspirators had committed acts in furtherance of the conspiracy in U.S. transactions).

### 2. FPC Has Sufficient Contacts with the United States to Satisfy Due Process under the Fifth Amendment of the Constitution

Due process requires that a defendant "'have certain minimum contacts [with the forum] 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Licci*, 732 F.3d at 169 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). When a claim (as here) "arises out of, or relates to, the defendant's contacts with the forum—*i.e.*, specific jurisdiction [is asserted]—minimum contacts [sufficient to justify jurisdiction] exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Licci,* 732 F.3d at 170. Indeed, the Supreme Court recently confirmed that "[a]gency relationships [ ] may be relevant to the existence of *specific*

falsely claims that "FPC does not sell caustic soda to customers in the United States, other than to FPC USA, and it has not done so at any time relevant to the above-captioned litigation." Jian Decl., ¶7. As discussed above, FPC has imported Caustic Soda in recent years to New York and other U.S. ports to U.S. buyers other than FPC USA, and FPC's imports and sales to U.S. customers are consistent with the Complaint's specific, short, plain, and factual allegation that "FPC manufactures, sells, and distributes Caustic Soda to customers worldwide[.]" ¶34; Dirksen Decl., Ex. 10.

jurisdiction" and a "corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014).

First, FPC ignores the allegations of its direct participation in a conspiracy that impacted New York and other U.S. customers, involved domestic and global cartel practices, and dramatically increased FPC's and industry profits. *See generally supra* at pp. 1–11. Second, FPC contends that it has refuted the Complaint's allegations of its agency over FPC USA by declaring through Mr. Jian that it: maintained a separate corporate form from FPC USA; held separate board meetings and occupied a separate corporate headquarters from FPC USA; had separate accounting records and financial statements from FPC USA; and had no control over or involvement in FPC USA's Caustic Soda activities. *See generally* ECF No. 86-2 (Jian Decl.). But FPC is mistaken about the agency inquiry, which focuses on the relationship between the alleged domestic agent and its foreign principal, and **the principal's contacts with the United States as a whole** in an antitrust conspiracy case such as this one. Corporate formalities between a foreign principal-parent and its U.S. subsidiary are not determinative. Indeed, even "[w]here the parent is not involved in the day-to-day operations of its subsidiary [or] where the entities observe corporate formalities, the subsidiary and parent can nonetheless have an agency relationship because they are engaged in a 'common business enterprise.'" *Yousef v. Al Jazeera Media Network*, No. 16-cv-6416 (CM), 2018 WL 1665239, at *9 (S.D.N.Y. Mar. 22, 2018) (quoting *Dorfman v. Marriott Int'l Hotels, Inc.*, No. 99 Civ. 10496 (CSH), 2002 WL 14363, *10 (S.D.N.Y. Jan. 3, 2002)). FPC and FPC USA are alleged to be and are in fact engaged in a "common business enterprise," this is also why to show specific jurisdiction "over a defendant who has never been present in the state and only acted through subsidiaries or agents [a plaintiff] need only show that the subsidiary engaged in purposeful activities in this State, that those

activities were for the benefit of and with the knowledge and consent of the defendant, and that the defendant exercised **some control** over the subsidiary in the matter that is the subject of the lawsuit." *Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462, 476 (E.D.N.Y. 2015) (internal quotation marks omitted and emphasis added). A formal agency relationship between FPC and FPC USA is not required. *Ingenito*, 89 F. Supp. 3d at 477.

Here, the Complaint and supplemental materials allege and show that FPC has earned billions of dollars in revenues and profits during the Class Period from New York and U.S. customers, including from its U.S. subsidiary and headquarters, FPC USA, and that both FPC and FPC USA are intertwined and important members of the same vertically-integrated global conglomerate, Formosa Group, which is one the world's largest plastics and chemical companies. *See generally*, *supra*, at pp. 1–11; Dirksen Decl., Exs. 1–14. Indeed, FPC is the "flagship" unit of Formosa Group, and FPC USA's ownership is shared among FPC and members of the Wang family. ¶34; Ex. 3 at 36–37, 87. FPC and Formosa Group even treat FPC USA's Livingston, New Jersey, offices as their headquarters, as well as the headquarters of other Formosa Group affiliates located worldwide, which helps explain why FPC USA apparently has a Taiwanese culture. Ex. 1 at p. 26; Ex. 2 at p. 2; Ex. 14 at pp. 2, 4. Indeed, FPC itself appears to have sold Caustic Soda directly to potential class members at artificially inflated prices in the United States, and such sales help form the basis of plaintiffs' Sherman Act claim. Ex. 10.

Mr. Sunny Jian, who serves as a Sales Director for FPC, declares that "FPC has no control over, or involvement in, FPC USA's activities related to the manufacture, distribution, or sale of caustic soda in the United States." Jian Decl., ¶6. But the fact that FPC exercised at least some control over FPC USA's businesses can be inferred from FPC's having earned billions of dollars in revenues and record profits from FPC USA's Caustic Soda and other sales during the

Class Period (¶34; Ex. 1 at p. 51); FPC's sharing of its U.S. headquarters and President with FPC USA (¶35; Ex. 1 at 26; Ex. 2 at 2; Ex. 3 at 36–37); and FPC's engagement in transactions and participation in meetings with FPC USA, the other Defendants, and U.S. buyers (potential class members). ¶¶91-94, 122; Exs. 8–10. FPC's audited financial statements (in translation) even characterize FPC as the "main sale target" for FPC USA's raw material production. Ex. 6 at 30.

These facts render the claim that FPC lacked control over or involvement in FPC USA's Caustic Soda and other operations baseless. They also plausibly suggest that, as alleged, after years of declining Caustic Soda prices and poor industry financial performance, FPC directly engaged in anti-competitive conduct with FPC USA and the other Defendants, both in the United States and abroad, that ultimately helped improve FPC's and the industry's profits considerably despite excess capacity and flat demand. *See, e.g.* ¶¶43–53, 56, 58–59, 64–67, 69, 70–76, 83, 85.

Also, importantly, "[o]ne indicator of agency is whether the parent would be obliged to enter the market directly if the subsidiary was absent because the market is too important to the parent's welfare." *Gurvey v. Cowan, Liebowitz & Latman, PC*, No. 06 Civ. 1202, 2009 WL 691056, at *3 (S.D.N.Y. Mar. 17, 2009). This is unquestionably true of FPC—Formosa Group's "flagship unit"— given the substantial contribution ofits U.S. Caustic Soda and other businesses to Formosa Group's profits. ¶¶34–35, 83; Exs. 3, 6. Simply put, FPC would "be obliged to enter" the U.S. market but for the existence of FPC USA, given the billions of dollars in revenues and profits generated by FPC USA for FPC. *Gurvey,* 2009 WL 691056, at *3. Thus, even assuming they respected corporate formalities, the facts indicate that FPC had at least some involvement in FPC USA's Caustic Soda operations, and that FPC USA serves as FPC's agent to New York and U.S. customers. *See generally supra* at pp. 1–11.

### 3. It Is Reasonable for This Court to Exercise Jurisdiction Over FPC

If a court finds that the foreign defendant in an antitrust case has sufficient minimum contacts with the United States to exercise personal jurisdiction over it, the burden shifts to defendant to "demonstrate that the assertion of jurisdiction in the forum will 'make litigation so gravely difficult and inconvenient that [it] unfairly is at a severe disadvantage in comparison to [its] opponent.'" *Softpoint*, 2001 WL 43611 at *5. The Second Circuit has instructed that "dismissals resulting from the application of the reasonableness test should be few and far between." *Licci*, 732 F.3d at 173–74 (quoting *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 575 (2d Cir. 1996)). A defendant also must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Licci*, 732 F.3d at 173. FPC has a heavy burden, and it has not met it.[13]

The "reasonableness" factors to be considered include: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life*, 84 F.3d at 568. These factors are satisfied here.

FPC is a "flagship" part of a global conglomerate of petrochemicals and plastics businesses that has earned tens of billions of dollars in revenues and profits from sales to U.S. customers. ¶¶34–35, 83; Exs. 1–7, 10 (generally). The burden on FPC of litigating this action in

---

[13] FPC has advanced no facts showing why it would be "gravely difficult" to litigate this action here. *Softpoint*, 2001 WL 43611 at *5. As discussed above, given the billions of dollars in profits FPC and Formosa Group have earned from sales to U.S. customers during the Class Period alone, such an argument would be disingenuous.

this District is not unreasonable, particularly given that its "USA headquarters" is nearby in Livingston, New Jersey, where FPC's U.S. subsidiary, FPC USA, is based. Ex. 1 at 26; Ex. 2 at 2. FPC also shares or has shared multiple officers with FPC USA. ¶35; Ex. 3 at 36–37. While some witnesses and documents may be located in Taiwan, "the conveniences of modern communication and transportation ease" have rendered such concerns less compelling than they may have been in the days before email, file-sharing sites, and videoconferencing. *Licci*, 732 F.3d at 174. This case also involves the interests of New York residents, including several named Plaintiffs and Defendants. ¶¶18, 19, 24, 29. It is also important to hundreds of direct purchasers of Caustic Soda located nationwide, who were allegedly damaged by a price-fixing conspiracy engaged in by FPC, FPC USA, and the other Defendants. *See e.g.*, ¶¶127–129, 139.

Furthermore, the United States has expressed a strong interest in allowing private actions such as this one to proceed as part of its overall scheme for the enforcement of its competition laws: "Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress . . . . This system depends on strong competition for its health and vigor, and strong competition depends, in turn, on compliance with antitrust legislation . . . . By offering potential litigants the prospect of a recovery in three times the amount of their damages, Congress encouraged these persons to serve as 'private attorneys general.'" *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 (1972) (internal citations omitted); *see also Am. Safety Equip. Corp. v. J. P. Maguire & Co.*, 391 F.2d 821, 826 (2d Cir. 1968) (a "claim under the antitrust laws is not merely a private matter. The Sherman Act is designed to promote the national interest in a competitive economy; thus, the plaintiff asserting his rights under the Act has been likened to a private attorney-general who protects the public's interest."). Accordingly, as the federal courts and the parties also share an interest in having this litigation proceed economically and

efficiently in a single forum, the pertinent "reasonableness" factors all weigh in favor of allowing this litigation to proceed against FPC in this forum.

#### 4. Jurisdictional Discovery Should Be Permitted if the Existing Record is Insufficient to Establish Personal Jurisdiction

"It is well settled under Second Circuit law that, even where plaintiff has not made a *prima facie* showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194–96 (E.D.N.Y. 2014); *Magnetic Audiotape,* 334 F.3d at 208 (permitting jurisdictional discovery of a defendant who allegedly participated in a price-fixing conspiracy, including of the defendant's alleged meeting in Korea with competitors); *LPD New York, LLC v. Adidas Am., Inc.*, No. 15-CV-6360 (MKB) (RLM), 2017 WL 1162181, at *18 (E.D.N.Y. Mar. 27, 2017) (where plaintiffs have made a "sufficient start" to establish personal jurisdiction, jurisdictional discovery appropriate where key facts lie within defendants' "exclusive knowledge"), *reconsideration denied,* 295 F. Supp. 3d 275 (E.D.N.Y. 2017).

Jurisdictional discovery probing the "corporate relationships" between defendants FPC and FPC USA, and their forum contacts relating to the personal injury claim at issue, was found warranted by the Court in *Sayles*, 2010 WL 5334272, at *6 ("Furthermore, such discovery should not be limited to the furnace project that lead to plaintiff's claims. The discovery issue is the corporate relationships between the foreign and domestic defendants. . . .").

Plaintiffs submit that they have made at least a *prima facie* showing that FPC made Caustic Soda sales in the United States and —as alleged— FPC USA's sales were for FPC's benefit and were made with FPC's knowledge and consent, and that FPC exercised at least some control over FPC USA with regard to its Caustic Soda activities. FPC disputes this. FPC-Def. Br.

at 2-3, 11-12; Jian Decl., ¶¶3–8. If the Court agrees with FPC, Plaintiffs respectfully request the opportunity to conduct jurisdictional discovery.

**B. Plaintiffs Have Sufficiently Pleaded A Claim Against FPC**

FPC moves to dismiss "in the alternative" under Rule 12(b)(6). FPC-Def. Br. at 13-16. In so doing, FPC mischaracterizes the Complaint. Given that a complaint's factual allegations are to be viewed "as a whole" and accepted as true in determining whether it states a plausible claim (*United States v. Apple, Inc.*, 791 F.3d 290, 319 (2d Cir. 2015)), and that "all reasonable inferences" from the alleged facts should be drawn "in favor of the plaintiffs" (*Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012)), the Complaint alleges that defendant FPC, a "worldwide" manufacturer, seller, and distributor of Caustic Soda, participated in a plausible price-fixing conspiracy, including through its U.S. subsidiary and agent FPC USA, that impacted New York and U.S. customers. *See generally supra* at pp. 1–11.[14]

FPC's Motion to Dismiss should be denied as well given the reasoning of *Frontpoint*. In *Frontpoint*, Plaintiffs alleged that dozens of companies, including many international banks, had "conspired to manipulate two interest rate benchmarks, [the] Singapore Interbank Offered Rate ("SIBOR") and the Singapore Swap Offer Rate ("SOR"), in violation of the Sherman Act" and other laws. *FrontPoint*, 2018 WL 4830087, at *1–2. The defendants carried out the alleged manipulation through their membership on SIBOR and SOR "panels," to which member-defendants ("Panel Members") submitted rate quotes that were used via a formula to create average daily rates for use by subscribers in the U.S. and elsewhere. *Id.* at *1–2. Even though plaintiffs were unable to allege "any specific interbank communications" concerning rate

[14] Plaintiffs incorporate their opposition to FPC USA and the other Defendants' Motions to Dismiss (ECF No. 91) by reference herein.

manipulation or "which Panel Members on which dates colluded," the court nevertheless denied the motions to dismiss of *nineteen* defendant-Panel-Members, finding that a plausible rate-manipulation conspiracy was alleged because of circumstantial evidence of governmental investigations, disciplinary actions against defendants' traders, and the likelihood that anti-competitive interbank communications existed given the profit motivation of the defendants. *Id.* at *2–4. The *Frontpoint* court also found personal (specific) jurisdiction to exist over *all* foreign defendant-Panel-Members—even those who may not have traded derivatives in the U.S.—because the "Panel's conspiracy was collectively to profit from the [rate] manipulation [ ], including allowing individual members to trade and profit with unknowing victims[,]" and because the few Panel-Member-defendants who had transacted with plaintiffs had committed "acts in furtherance of the conspiracy," and as such, those acts could justify the exercise of "jurisdiction over all members of the conspiracy, whether or not they themselves traded derivatives in the U.S." *Id*. at *8.

Here, although there are no alleged governmental investigations or disciplinary acts involving FPC and the other Defendants, the Complaint alleges a traditional, plausible, profit-motivated Caustic Soda price-fixing conspiracy in a market conducive to price fixing (¶¶104–126), based on anti-competitive conduct—including manipulation of a price index—engaged in by foreign defendants like FPC and domestic U.S.-based defendants. *See generally supra* pp. 1-5, and *e.g*., ¶¶34–35, 50, 88, 92–94. As alleged, the conspiracy successfully increased Caustic Soda prices and the Defendants' profits after years of poor industry financial performance, even helping FPC achieve the highest pretax profit level in its history. *See, e.g.*, ¶¶34–35, 47, 61, 51–53, 80–85. Further, even stronger than the facts in *Frontpoint*, FPC transacted directly with U.S.-based Caustic Soda purchasers, and also attained record profits from sales to U.S. purchasers

through its U.S. subsidiary, FPC USA. *See generally supra* at pp. 1–11; Ex. 10. Accordingly, *Frontpoint* shows the reasonableness of not only the exercise of personal jurisdiction over FPC, but also the denial of FPC's Rule 12(b)(6) Motion, given FPC's alleged participation in a conspiracy that artificially inflated the prices of Caustic Soda paid by New York and U.S. companies and increased FPC's and the other Defendants' profits.

## IV. CONCLUSION

Despite earning billions of dollars and record profits from its U.S. Caustic Soda and other businesses, FPC argues that it would be unreasonable for it to be haled into this Court to defend allegations that it participated in a price-fixing conspiracy to increase the price of Caustic Soda to U.S. purchasers. But the facts show that were it not for FPC's alleged anti-competitive conduct both domestically and abroad with the other Defendants, including through its U.S. subsidiary FPC USA, Caustic Soda prices to New York and other U.S. customers would not have been artificially increased. FPC has been a participant in and beneficiary of New York and U.S. commerce, and has thus "purposefully availed itself of the privilege of doing business in the" Western District of New York and the United States, and also has received "fair warning" of the risk of being sued here for claims related to its U.S. sales of Caustic Soda and other products. *See* FPC-Def. Br. at 7, citing *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68, 82 (2d Cir. 2018), and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). FPC also has previously litigated not only in the Western District of New York, but also in the Second Circuit, achieving a successful result after exploiting that court's "coercive power." FPC-Def. Br at 2, citing *Goodyear Dunlop Tires Ops, S.A. v. Brown*, 564 U.S. 915, 918-19 (2011); *Sturge*, 848 F.2d at 390 (affirming an award of $581,595.56 to FPC and FPC USA). For the foregoing reasons, Plaintiffs respectfully request that FPC's Motion to Dismiss be denied.

Dated: August 21, 2019

Respectfully submitted,

By: /s/ *Marco Cercone*
RUPP BAASE PFALZGRAF CUNNINGHAM LLC
Marco Cercone, Esq.
R. Anthony Rupp III, Esq.
Arthur N. Bailey, Esq.
1600 Liberty Building
424 Main Street
Buffalo, NY 14202
Telephone: (716) 854-3400
Facsimile: (716) 332-0336
Email: cercone@ruppbaase.com
Email: rupp@ruppbaase.com
Email: bailey@ruppbaase.com

*Attorneys for Individual and Representative Plaintiffs and Interim Liaison Class Counsel*

By: /s/ *Solomon B. Cera*
CERA LLP
Solomon B. Cera, Esq. (*admitted pro hac vice*)
Pamela A. Markert, Esq. *(pro hac vice pending)*
595 Market Street, Suite 1350
San Francisco, CA 94105
Telephone: (415) 777-2230
Email: scera@cerallp.com
Email: pmarkert@cerallp.com

C. Andrew Dirksen, Esq. (*admitted pro hac vice*)
800 Boylston St., 16th Floor
Boston, MA 02199
Telephone: (857) 453-6555
Email: cdirksen@cerallp.com

*Attorneys for Individual and Representative Plaintiff Miami Products & Chemical Company and Interim Co-Lead Class Counsel*

By: /s/ *Robert N. Kaplan*
KAPLAN FOX & KILSHEIMER LLP
Robert N. Kaplan, Esq.
Jeffrey P. Campisi, Esq.
Elana Katcher, Esq.
Matthew P. McCahill, Esq.
850 Third Ave., 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Email: rkaplan@kaplanfox.com
Email: jcampisi@kaplanfox.com
Email: ekatcher@kaplanfox.com
Email: mmccahill@kaplanfox.com

Gary L. Specks, Esq. (*admitted pro hac vice*)
681 Prestwick Lane
Wheeling, Illinois 60090
Telephone: (847) 831-1585
Email: gspecks@kaplanfox.com

*Attorneys for Individual and Representative Plaintiff Amrex Chemical Co., Inc. and Interim Co-Lead Class Counsel*