**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| |
|---|
| IN RE CAUSTIC SODA<br>ANTITRUST LITIGATION |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS |

**ORAL ARGUMENT REQUESTED**

Lead Case No. 1:19-cv-00385-EAW-MJR

**DEFENDANT FORMOSA PLASTICS
CORPORATION, U.S.A.'S SUPPLEMENTAL REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

Preliminary Statement.................................................................................................1

Argument ...................................................................................................................3

I.      THE COMPLAINT FAILS TO ALLEGE PARALLEL CONDUCT BY FPC USA THAT IS SUGGESTIVE OF CONSPIRACY ........................................3

        A.     Plaintiffs' Allegations Specific to FPC USA Do Not Support a Plausible Inference That It Agreed to Participate in a Conspiracy.........................................3

                1.     The Complaint's Allegations of Price Increases Against FPC USA Do Not Support an Inference of Conspiracy.................................................5

                2.     FPC USA's Involvement with Industry Associations Does Not Support an Inference of Conspiracy .............................................6

                3.     Plaintiffs' Allegations of Decreasing Production Capacity Do Not Support an Inference of Conspiracy .............................................8

                4.     Plaintiffs' Allegations of Co-Producer Supply Agreements Do Not Support an Inference of Conspiracy .............................................8

        B.     The Opposition Compounds the Complaint's Reliance on Group Pleading ...........9

Conclusion ...............................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   899 F.3d 87 (2d Cir. 2018)................................................................................................3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................................2

*City Council of Baltimore v. Citigroup, Inc.*,
   709 F.3d 129 (2d Cir. 2013)..............................................................................................4

*Hinds Cty. v. Wachovia Bank N.A.*,
   620 F. Supp. 2d 499 (S.D.N.Y. 2009)..............................................................................10

*In re Interest Rate Swaps Antitrust Litig.*,
   261 F. Supp. 3d 430 (S.D.N.Y. 2017)................................................................................4

*Jordan v. Chase Manhattan Bank*,
   91 F. Supp. 3d 491 (S.D.N.Y. 2015)................................................................................10

*LLM Bar Exam, LLC v. Barbri, Inc.*,
   271 F. Supp. 3d 547 (S.D.N.Y. 2017)......................................................................... *passim*

*Rochester Drug Co-op., Inc. v. Biogen Idec U.S. Corp.*,
   130 F. Supp. 3d 764 (W.D.N.Y. 2015).......................................................................4, 6, 8

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) .....................................................................1

Defendant Formosa Plastics Corporation, U.S.A. ("FPC USA") submits this supplemental reply memorandum of law in further support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Consolidated Class Action Complaint ("Complaint") for failure to state a claim upon which relief can be granted as against FPC USA.

## Preliminary Statement

Plaintiffs' opposition (the "Opposition" or "Opp.") advances a flawed and discredited theory of the federal antitrust laws under which circumstantial allegations of parallel conduct alone – without any compelling "plus factors" leading to a plausible inference that an agreement was made – is enough to state an antitrust claim against FPC USA, thereby subjecting it to years of costly and burdensome discovery.  Like the Complaint, the Opposition struggles to identify factual allegations that even reference FPC USA – most of which are tacked on as afterthoughts to allegations against other Defendants – and, instead, simply hypothesizes that because FPC USA's involvement in the alleged conspiracy is *theoretically possible*, it must have occurred. That fails the pleading standard for antitrust actions in federal court.  Stripped of its legal conclusions and rank speculation, the Opposition only highlights the Complaint's fatal deficiency:  Plaintiffs fail to allege a plausible inference that FPC USA agreed to participate in any conspiracy to fix prices, restrain capacity, or allocate customers for caustic soda.

Put another way, under Plaintiffs' incorrect legal interpretation, a completely innocent, rational economic market participant acting unilaterally would have no means to avoid protracted antitrust litigation, if a plaintiff could merely characterize its activity, in wholly conclusory terms, as part of a circumstantial conspiracy.  Here, for example, Plaintiffs allege that FPC USA announced caustic soda price increases following similar announcements by other competitors, as market conditions changed; Plaintiffs allege that FPC USA attended trade group meetings, but

1

do not allege that FPC USA had any discussions with any other competitor at those meetings,

much less reached any agreement with any other competitor; and Plaintiffs allege that FPC USA

shut down its caustic soda production from time to time for either regular maintenance or to

repair damage caused by Hurricane Harvey.  Common economic experience and common sense

dictate that all of this alleged conduct is exactly what a rational market participant acting

unilaterally would be expected do in these circumstances.  Plaintiffs cannot seriously argue that

FPC USA should never shut down its plant for mechanical repairs or natural disasters because

that would restrict output in this market.  Nor can they seriously argue that FPC USA should be

prohibited from raising its prices when its competitors have announced price increases, because

that might result in higher profits for FPC USA.  Yet, Plaintiffs make those arguments to justify

embroiling FPC USA in this action, so that they can take burdensome discovery of FPC USA in

search of a viable claim.

Plaintiffs' allegations against FPC USA thus fail the *Iqbal-Twombly* standard, which was

designed to remedy the precise evil of Plaintiffs' pleading approach here:  "Where a complaint

pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

between possibility and plausibility of entitlement to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  And there can be no

plausible inference of conspiracy in the first place when the alleged conduct is fully consistent

with rational business behavior.  *See LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547,

578 (S.D.N.Y. 2017) (courts will not infer conspiracy on the pleadings when "there are obvious

alternative explanations for the facts alleged").  Even "viewed as a whole," FPC USA's conduct

does not violate the Sherman Act; one would be hard pressed to find a manufacturer that does

not periodically raise prices, participate in trade associations and, from time to time, temporarily

shutter a plant to perform maintenance (let alone in response to hurricane damage).  Unless the

Court is willing to subject all such entities to discovery, it should dismiss FPC USA from this

action as the *Iqbal-Twombly* standard requires.

**Argument**

I.      **THE COMPLAINT FAILS TO ALLEGE PARALLEL CONDUCT BY FPC USA THAT IS SUGGESTIVE OF CONSPIRACY**

FPC USA's opening brief demonstrated that Plaintiffs' allegations regarding (i) price

increases, (ii) trade association meetings, (iii) "temporary shutdowns" due to plant maintenance

and Hurricane Harvey, and (iv) co-producer supply agreements, each fail to raise a plausible

inference of conspiracy as opposed to "merely parallel conduct that could just as well be

independent action."  (*See* FPC USA's Br. (ECF 84-1) at 4 (citing *City Council of Baltimore v.

Citigroup, Inc.*, 709 F.3d 129, 137 (2d Cir. 2013)).)  In response, Plaintiffs do not dispute that

FPC USA's conduct in these categories is consistent with unilateral action or rational and pro-

competitive business strategy.  Rather, Plaintiffs suggest that FPC USA's "conduct that standing

alone may appear to be lawful nonetheless *may* provide support—along with other factual

allegations, viewed as a whole—for finding the plausibility of a Sherman Act violation."  (Opp.

at 60 (emphasis added).)

A.      **Plaintiffs' Allegations Specific to FPC USA Do Not Support a Plausible Inference That It Agreed to Participate in a Conspiracy**

Plaintiffs concede that they do not plead direct evidence of a conspiracy (because they

have none), and instead pin their antitrust claims on allegations of parallel conduct purporting to

"strongly show that the conspiracy allegation against [FPC USA] is plausible."  (Opp. at 60.)

But, as set forth in Defendants' opening briefs, Plaintiffs must allege "plus factors" with respect

to FPC USA that, viewed in conjunction with the parallel conduct, "permit a factfinder to infer a

conspiracy."  *Anderson News, L.L.C. v. Am. Media, Inc.*, 899 F.3d 87, 104 (2d Cir. 2018), *cert.*

3

*denied*, 139 S. Ct. 1375 (2019).  (*See* Defs.' Joint Br. (ECF 79-1) at 10; FPC USA's Br. at 4.)

Plaintiffs' failure to plead either direct evidence of conspiracy or parallel conduct combined with

plus factors suggestive of conspiracy—the "basic building block[s] of an antitrust conspiracy"—

therefore requires dismissal of their claims.  *See Barbri*, 271 F. Supp. 3d at 579; *see also In re*

*Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 464-65 (S.D.N.Y. 2017) (dismissing

antitrust claims based on limited "shards" of parallel conduct).

But even if a plaintiff can allege both parallel conduct and "plus factors," this still may

"not support a Section 1 claim." *Barbri*, 271 F. Supp. 3d at 578.  "An inference of conspiracy

will not arise when the conspirators' parallel conduct made perfect business sense, there are

obvious alternative explanations for the facts alleged, or the alleged facts suggest competition at

least as plausibly as they suggest anticompetitive conspiracy." *Id.* (internal quotation marks and

alterations omitted).  The "determination of whether a complaint states a plausible claim for

relief will be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Rochester Drug Co-op., Inc. v. Biogen Idec U.S. Corp.*, 130 F.

Supp. 3d 764, 769 (W.D.N.Y. 2015) (Wolford, J.) (quoting *Twombly*, 550 U.S. at 679) (internal

quotation marks and alterations omitted).

Plaintiffs cannot overcome FPC USA's motion to dismiss by alleging conduct that is

equally consistent with unilateral or parallel conduct, because that would "risk propelling

defendants into expensive antitrust discovery on the basis of acts that could just as easily turn out

to have been rational business behavior as they could a proscribed antitrust conspiracy."

*Citigroup*, 709 F.3d at 137.

The Opposition attempts to rely on the four purported "plus factors" already addressed

and debunked in FPC USA's opening brief:  that FPC USA (1) increased its prices for caustic

soda in line with other Defendants; (2) attended industry meetings around the time of the price

increases; (3) decreased its caustic soda production capacity; and (4) entered into co-producer

supply agreements with other Defendants.  (*See* Opp. at 59-62.)  Like the parallel conduct at

issue in *Twombly*, these allegations are "just as much in line with a wide swath of rational and

competitive business strategy" as they are with an unlawful agreement.  550 U.S. at 554; *see also*

*Barbri*, 271 F. Supp. 3d at 578.  None of these purported "plus factors" support a claim against

FPC USA.

> 1.      The Complaint's Allegations of Price Increases Against FPC USA Do Not
>         Support an Inference of Conspiracy

Plaintiffs concede, as they must, that "[a] unilateral announcement of a price increase by

a competitor in a market behaving competitively is not unlawful."  (Opp. at 60.)  Consistent with

this well-established maxim, FPC USA demonstrated that its unilateral price increase

announcements were neither uniform nor simultaneous with respect to the price increase

announcements of other Defendants, and are therefore more consistent with rational pricing in a

concentrated industry than with a conspiracy to fix prices.  (*See* FPC USA's Br. at 5-6.)  *See*

*Barbri*, 271 F. Supp. 3d at 578 ("An inference of conspiracy will not arise when the conspirators'

parallel conduct 'made perfect business sense'").

Plaintiffs attempt to bolster their allegations of parallel conduct against FPC USA by

arguing that its price increase announcements, following those of other Defendants, are "strongly

suggestive of a sudden pivot which implies prior knowledge as well as coordination" (Opp. at

21-22, citing Complaint ¶¶ 54, 58, 65, 70-72, 74), and that "other Defendants acted 'similarly'

and in concert with respect to [FPC USA]'s price increase announcements, both in amount and

timing," (Opp. at 60, citations omitted.)  But these conclusory inferences are mere hypotheticals

that assume an agreement and ignore *Twombly*'s requirement that allegations of "parallel

conduct and a bare assertion of conspiracy will not suffice" to state a claim for violation of

Section 1 of the Sherman Act.  550 U.S. at 556-57; *see also Rochester Drug*, 130 F. Supp. 3d at

774 ("[T]he Court need not accept as true Plaintiff's conclusory allegation that Defendant . . .

'must have' entered into an agreement or arrangement . . . .").  Simply put, FPC USA's alleged

price increases are fully consistent with rational business behavior, *see Barbri*, 271 F.Supp.3d at

578, and do not support an inference of conspiracy.[1]

Plaintiffs appear to suggest that the financials of Defendant Formosa Plastics Corporation

("FPC"), which owns a minority stake in FPC USA, are relevant to whether FPC USA conspired

with other Defendants to raise prices.  (*See* Opp. 3-4, 11, citing Compl. ¶ 83, alleging that FPC's

consolidated operating profit increased 68.5% from 2016 to 2017.)  But the Complaint contains

no allegations regarding either FPC's or FPC USA's margins or profitability with respect to

caustic soda, or the effect of caustic soda prices on FPC's or FPC USA's overall financials.

Plaintiffs' reference to FPC's "operating profit" is meaningless in the absence of any allegations

as to the impact of FPC USA's alleged caustic soda price increase announcements.

> 2.     FPC USA's Involvement with Industry Associations Does Not Support an
>        Inference of Conspiracy

Plaintiffs do not dispute that membership in industry associations and participation in

industry association meetings are insufficient to show the plausibility of their conspiracy

allegations, as required by *Twombly*.  (*See* Opp. at 61.)  However, Plaintiffs contend that they

plausibly allege a conspiracy with allegations that industry meetings occurred around the times

---

[1] Plaintiffs' argument that FPC USA's alleged price increase announcements were effective "despite the existence of excess capacity, flat demand, and flat or declining costs," (Opp. at 60), is wholly unsupported by the Complaint.  There is not a single allegation in the Complaint that FPC USA suffered from excess capacity, flat demand, and flat or declining costs.  Without such, the Complaint does not support an inference that FPC USA's alleged price increase announcements are suggestive of a conspiracy.

that "Defendants were in process of increasing prices to their U.S. customers." (*Id.*, citation omitted.)

Notably, both the Complaint and the Opposition fail to tie FPC USA to a single industry association meeting, or to link any single price increase to a period during or directly after an industry association meeting. Rather, the Complaint vaguely alleges only that industry meetings occurred around the same time as price increases. (*See, e.g.,* Compl. ¶ 93 ("the Vinyl Institute's annual meetings took place in November 2015 and 2017, and in September 2016, when the Defendants were increasing U.S. prices"); *id.* ¶ 92 ("Defendants have been increasing U.S. prices during most of the months in which" meetings took place).)[2]

Plaintiffs' failure to allege that employees or representatives of FPC USA attended any specific meeting – let alone a meeting that coincided with a price increase *by FPC USA* in a way that might raise an inference of conspiratorial interfirm communications – demonstrates that these industry meeting allegations do not support an inference of conspiracy as against FPC USA.[3]

---

[2] Given the vague nature of the allegations in the Complaint, it is no surprise that the Opposition is similarly vague. (*See*, *e.g.*, Opp. at 37 (Industry meetings "coincided throughout the Class Period with the months in which Defendants were implementing quarterly price increases.").)

[3] Plaintiffs' reference in the Opposition to a report purporting to state that "Chlor-Alkali producers [including Westlake and FPC USA] seemed to all be on the same page" at an American Fuel & Petrochemical Manufacturers meeting (*see* Opp. at 42) is not supported by the Complaint. The Complaint does not refer to FPC USA as attending the meeting or being on the "same page" as any other Defendant, and therefore cannot support any inferences with respect to FPC USA. (*See* Compl. ¶ 124.) Even if the statement did refer to FPC USA, it says nothing about FPC USA's views on pricing or any interfirm communications involving FPC USA.

3.     Plaintiffs' Allegations of Decreasing Production Capacity Do Not Support an Inference of Conspiracy

The Opposition, like the Complaint, fails to raise an inference that any reduction of

production capacity by FPC USA is suggestive of a conspiracy.  Plaintiffs imply that they satisfy

their burden of plausibility as against FPC USA by alleging that "Defendants in a coordinated

fashion . . . began to idle or shut down (or 'rationalize') hundreds of thousands of tons of

capacity."  (Opp. at 61.)  But this is just the type of conclusory allegation that *Twombly* prohibits.

Notably, Plaintiffs do not allege in the Complaint (or explain in the Opposition) how FPC USA

"coordinated" with any other Defendant.

Indeed, the Complaint's allegations regarding production capacity against FPC USA, (*see*

*id.* at 61-62), show that any reduction of that capacity was temporary and done only for

legitimate reasons.  Plaintiffs cite to paragraph 48 of the Complaint, which alleges that

"maintenance issues may even have reduced capacity by as much as 10% in the fourth quarter of

2016 alone."  Similarly, Plaintiffs cite to paragraph 50 of the Complaint, which alleges that

Hurricane Harvey "disrupt[ed] over one-third of domestic capacity for a brief time."  But the

courts recognize that "common economic experience, and simple common sense" dictate that

these alleged maintenance shutdowns support an inference that FPC USA acted as any rationale

producer would, and certainly not against its self-interest.  *Rochester Drug*, 130 F. Supp. 3d at

774.  *See also Barbri*, 271 F. Supp. 3d at 578 (finding no inference of conspiracy where "there

are obvious alternative explanations for the facts alleged").

4.     Plaintiffs' Allegations of Co-Producer Supply Agreements Do Not Support an Inference of Conspiracy

The Opposition all but concedes that the Complaint contains no allegations against FPC

USA with respect to co-producer agreements, suggesting instead that the Complaint "alleges far

more than just co-producer transactions."  (Opp. at 62.)  The one paragraph of the Complaint that

Plaintiffs cite against FPC USA in this regard (¶ 94) does not identify a single co-producer

agreement that FPC USA is alleged to have entered into, or any other agreements entered into by

FPC USA.  That paragraph alleges that "Defendant Olin . . . supplies *one or more of the other*

*Defendants or their affiliates* with" precursor chemicals used to manufacture PVC.  (*Id.*

(emphasis added).)  But the Complaint does not actually allege that FPC USA purchases

anything from any other Defendant.

**B.      The Opposition Compounds the Complaint's Reliance on Group Pleading**

Given Plaintiffs' failure to plausibly allege any conduct suggesting that FPC USA entered

into a conspiracy, Plaintiffs resort to improper reliance on group-pleading allegations throughout

the Opposition.  Notably, the Complaint does not contain a single allegation regarding any

communication between FPC USA and a customer, any price at which FPC USA actually sold

caustic soda, or any refusal to deal with a customer.

Plaintiffs defend their group pleading as to FPC USA by suggesting that the Complaint

"alleges each Defendant's participation in the unlawful conspiracy separately, while elsewhere

referring to their collective actions."  (Opp. at 41 & n.29, 60.)  This is wrong.   The Complaint

does not allege anything "separately" as to FPC USA.  For example, Plaintiffs claim that the

Complaint includes a specific allegation that FPC USA participated in the conspiracy when it

"agreed upon 'temporary shutdowns for plant maintenance and outages throughout 2016.'"

(Opp. at 42, citing Compl. ¶¶ 48-49.)  But the Complaint does not allege that FPC USA "agreed"

to anything, only that "[t]here were also temporary shutdowns for plant maintenance and outages

throughout 2016, including by defendants Olin, OxyChem, [FPC USA], and Westlake" and that

"both planned and unplanned outages purportedly occurred at . . . [FPC USA]'s Point Comfort,

Texas, plant".  (Compl. ¶¶ 48-49.)  The Opposition similarly misquotes the Complaint when it

claims that there is an allegation that FPC USA "was 'on the same page' as the other producers

9

regarding pricing" (Opp. at 42, citing Compl. ¶ 124); the Complaint actually quotes an

unidentified report that does not reference FPC USA at all.  (*See* Compl. ¶ 124.)  "It is axiomatic

that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."

*Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015) (alteration omitted).

Notwithstanding Plaintiffs' vain attempt to rewrite the generalized allegations in the Complaint,

the Complaint does not support any inference that FPC USA "participated in the alleged

conspiracy."  *Hinds Cty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 513 (S.D.N.Y. 2009).

## Conclusion

For the foregoing reasons, and those set forth in the Defendants' moving memoranda, the

Court should dismiss the Complaint as against FPC USA with prejudice.


Dated:  New York, New York
       August 27, 2019

Respectfully submitted,

SIDLEY AUSTIN LLP

By:  /s/ Alan M. Unger
    Alan M. Unger
    John J. Lavelle
    Tom A. Paskowitz
    Peter J. Mardian
    787 Seventh Avenue
    New York, New York 10019
    Telephone: (212) 839-5300
    aunger@sidley.com
    jlavelle@sidley.com
    tpaskowitz@sidley.com
    pmardian@sidley.com

*Attorneys for Defendant Formosa Plastics Corporation, U.S.A.*