**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE CAUSTIC SODA ANTITRUST LITIGATION** | **Lead Case No.: 1:19-cv-00385-EAW-MJR** |
| **THIS DOCUMENT RELATES TO:**<br><br>**INDIRECT PURCHASER ACTION** | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' PARTIAL MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ..... 1

STANDARD OF REVIEW ..... 3

I. THE COURT SHOULD UPHOLD PLAINTIFFS' ANTITRUST CLAIMS. ..... 4

A. Plaintiffs may pursue their antitrust claims under Arizona, Nevada, and Utah state law. ..... 4

1. State law notice provisions do not apply in federal court. ..... 5

2. Even assuming the state law notice provisions apply in federal court, Plaintiffs satisfied the relevant statutory provisions. ..... 6

B. Plaintiffs adequately allege that Defendants' price-fixing conspiracy had the requisite effect on intrastate commerce. ..... 8

C. Plaintiffs can pursue their antitrust claim under the Illinois Antitrust Act on a class-wide basis. ..... 13

D. Plaintiffs' antitrust claims under Montana law should proceed. ..... 14

E. Plaintiffs can bring claims on behalf of Utah residents. ..... 15

II. THE COURT SHOULD UPHOLD PLAINTIFFS' CONSUMER PROTECTION CLAIMS. ..... 16

A. Plaintiffs are "consumers" and defendants' unlawful conduct was directed at consumers under the laws of Arizona, Colorado, Montana, New York, and Utah. ..... 16

B. Defendants' anticompetitive conduct is actionable under the Oregon consumer protection law. ..... 20

C. Plaintiffs' allegations demonstrate unconscionable or deceptive conduct. ..... 21

D. Plaintiffs have adequately pleaded deceptive conduct under the appropriate standards. ..... 23

E. Plaintiffs' reliance on Defendants' misrepresentations is not required. ..... 24

F. Plaintiffs may pursue the Montana consumer protection claim on a class-wide basis. ..... 29

G. Plaintiffs plead sufficient intrastate effects. ..... 29

H. The procedural pre-suit demand requirement in the West Virginia consumer protection statute does not warrant dismissal. ..... 31

I. *Illinois Brick* does not preclude claims under the Alaska and New Jersey consumer protection statutes. ..... 31

J. Plaintiffs may seek damages for violations of Minnesota consumer protection laws. ..... 32

III. THE COURT SHOULD UPHOLD PLAINTIFFS' UNJUST ENRICHMENT CLAIMS. 33

A. Plaintiffs properly pleaded their unjust enrichment claims. ........................................34

B. Plaintiffs may bring their unjust enrichment claims regardless of the underlying statutory basis. ........................................35

C. Whether Plaintiffs received the benefit of the bargain is a factual question not ripe for resolution on a motion to dismiss. ........................................37

D. Plaintiffs may plead their unjust enrichment claims in the alternative. ........................................39

E. Plaintiffs conferred a benefit on Defendants in the form of overpayments. ........................................42

F. Plaintiffs may bring their unjust enrichment claim under New York law. ........................................45

G. Plaintiffs' unjust enrichment claims under California, Illinois, and Tennessee law survive. ........................................47

IV. PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF UNDER THE SHERMAN ACT. ........................................49

CONCLUSION ........................................51

# TABLE OF AUTHORITIES

## Cases


*Ahrenberg v. Liotard-Vogt*,
No. 653687/2015, 2016 WL 4506553 (Sup. Ct. NY Cnty. Aug 29, 2016) ....................................40

*Alaska Tr., LLC v. Bachmeier,*
332 P.3d 1 (AK 2014) ....................................31

*Anderson News, L.L.C. v. Am. Media, Inc.*,
680 F.3d 162 (2d Cir. 2012)....................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)....................................23

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................3

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014) ....................................47

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ....................................18

*Bruton v. Gerber Prods. Co.*,
703 F. App'x 468 (9th Cir. July 17, 2017)....................................47

*Bumpers v. Cmty. Bank of N. Virginia*,
747 S.E.2d 220 (N.C. 2013)....................................26

*Carmona v. Spanish Broad. Sys.*,
No. 08 Civ. 4475(LAK), 2009 WL 890054 (S.D.N.Y. Mar. 30, 2009)....................................44

*Chaluisan v. Simsmetal E. LLC*,
698 F. Supp. 2d 397 (S.D.N.Y. 2010) ....................................39

*Chevron Corp. v. Donziger*,
833 F.3d 74 (2d Cir. 2016)....................................36

*City of Long Beach v. Total Gas & Power N. Am., Inc.*, No. 19 Civ. 8725 (LAK),
2020 WL 3057796 n.192 (S.D.N.Y. June 8, 2020) ....................................48

*City of Rockford v. Mallinckrodt ARD, Inc.*,
360 F. Supp. 3d 730 (N.D. Ill. 2019) ....................................7, 12, 14

*Clark v. Gallup Auto Sales, Inc.*,
No. CIV 2:96-141 LCS/LFG, 1998 WL 36030905 (D.N.M. Mar. 2, 1998) ....................................22

*Cmty. Guardian Bank v. Hamlin*,
898 P.2d 1005 (Ariz. Ct. App. 1995)....................................................................................40

*Collins v. Minnesota School of Business, Inc.*,
655 N.W.2d 320 (Minn. 2003) ..............................................................................................33

*Credit Bureau Servs. v. Experian Info. Sols., Inc.*,
828 N.W.2d 147 (Neb. 2013)................................................................................................12

*Davis v. Lenox Hill Hosp.*,
No. 03cv3746, 2004 WL 1926087 (S.D.N.Y. Aug. 31, 2004) ................................................39

*Derma Pen, LLC v. 4EverYoung Limited*,
No. 2:13-cv-729-DN-EJF, 2017 WL 2258362 (D. Utah 2017) ..............................................20

*Ergowerx Int'l, LLC v. Maxell Corp. of Am.*,
18 F. Supp. 3d 430 (S.D.N.Y. 2014) ......................................................................................24

*Fed. Trade Comm'n v. Qualcomm Inc.*,
411 F. Supp. 3d 658 (N.D. Cal. 2019) ...................................................................................49

*Freeman Indus. LLC v. Eastman Chem. Co.*,
172 S.W.3d 512 (Tenn. 2005)........................................................................................ 12, 49

*Greene v. Gerber Prods. Co.*,
262 F. Supp. 3d 38 (E.D.N.Y. 2017) .......................................................................................5

*Hall v. Walter*,
969 P.2d 224 (Colo. 1998) ....................................................................................................18

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
353 P.3d 319 (Cal. 2015).......................................................................................................47

*Hatchett v. Henry Schein, Inc.*,
No. 3:19-CV-83-NJR, 2020 WL 733834 (S.D. Ill. Feb. 13, 2020)..........................................13

*Hill v. LLR, Inc.*,
No. CV-18-120-GF-BMM-JCL, 2019 WL 2404900 (D. Mont. Mar. 8, 2019) ........................29

*Holeman v. Neils*,
803 F. Supp. 237 (D. Ariz. 1992)................................................................................... 16, 17

*Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharm., Inc.*,
353 F. Supp. 3d 678 (M.D. Tenn. 2018).................................................................................30

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989) ....................................................................................................48

*Ill. Brick Co. v. Illinois*,
431 U.S. 720 (1977) ....................................................................................................37

*In re Aftermarket Filters Antitrust Litig.*,
No. 08 C 4883, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ........................................ 7, 44

*In re Aftermarket Filters Antitrust Litig.*,
No. 08 C 4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) ..........................................44

*In re Aggrenox Antitrust Litig.*,
94 F. Supp. 3d 224 (D. Conn. 2015) .................................................................... 6, 9

*In re Aggrenox Antitrust Litig.*,
No. 3:14-md-2516 (SRU), 2016 WL 4204478 (D. Conn. Aug. 9, 2016) ..................... 13, 14

*In re Aluminum Warehousing Antitru*st Litig.,
No. 13-md-2481, 2014 WL 4743425 (S.D.N.Y. Sep. 15, 2014)........................................46

*In re Asacol Antitrust Litig.*,
No. 15-cv-12730-DJC, 2016 WL 4083333 (D. Mass. July 20, 2016) ..............................15

*In re Automotive Parts Antitrust Litig.*,
29 F. Supp. 3d 982 (E.D. Mich. 2014)............................................................ 30, 37, 38, 49

*In re Broiler Chicken Antitrust Litig.*,
290 F. Supp. 3d 772 (N.D. Ill. 2017) ........................................................................7, 9, 13

*In re Cardizem Antitrust Litig.,*
200 F.R.D. 326 (E.D. Mich. 2001) .................................................................................37

*In re Cardizem CD Antitrust Litig.*,
105 F. Supp. 2d 618 (E.D. Mich. 2000).......................................................................passim

*In re Chocolate Confectionary Antitrust Litig.*,
602 F. Supp. 2d 538 (M.D. Pa. 2009) ............................................................................30

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015) .............................................................................18

*In re Credit Default Swaps Antitrust Litig.*,
No. 13md2476 (DLC), 2014 WL 4379112 (S.D.N.Y. Sep. 4, 2014).................................39

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
No. 9 CV 3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015) ...........................................39

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
903 F. Supp. 2d 198 (S.D.N.Y. 2012) .........................................................................passim

*In re Dealer Mgmt. Sys. Antitrust Litig. MDL,2817*,
362 F. Supp. 3d 510 (N.D. Ill. 2019)................................................................................14

*In re Digital Music Antitrust Litigation*,
812 F. Supp. 2d 390 (S.D.N.Y. 2011) ....................22

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
516 F. Supp. 2d 1072 (N.D. Cal. 2007) ....................21

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*,
336 F. Supp. 3d 1256 (D. Kan. 2018) ....................14, 34, 35, 37

*In re Generic Pharm. Pricing Antitrust Litig.*,
368 F. Supp. 3d 814 (E.D. Pa. 2019) ....................passim

*In re G-Fees Antitrust Litig.*,
584 F. Supp. 2d 26 (D.D.C. 2008)....................36

*In re Glumetza Antitrust Litig.*,
No. C 19-05822 WHA, 2020 WL 1066934 (N.D. Cal. Mar. 5, 2020)....................48

*In re Intel Corp. Microprocessor Antitrust Litig.*,
496 F. Supp. 2d 404 (D. Del. 2007) ....................9, 38

*In re Interest Rate Swaps Antitrust Litig.*,
261 F. Supp. 3d 430 (S.D.N.Y. 2017) ....................46

*In re Inv'rs Funding Corp. Sec. Litig.*,
566 F. Supp. 193 (S.D.N.Y. 1983)....................47

*In re K-Dur Antitrust Litig.*,
338 F. Supp. 2d 517 (D.N.J. 2004)....................34, 35, 38

*In re Light Cigarettes Mktg. Sales Practices Litig.,*
751 F. Supp. 2d 183 (D. Me. 2010) ....................40

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
No. 16-md-2687 (JLL), 2017 WL 3131977 (D.N.J. July 20, 2017)....................9, 14, 39

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-MD-2420 YGR, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014)....................14

*In re Magnesium Oxide Antitrust Litig.*,
No. 10-5943 (DRD), 2011 WL 5008090 (D.N.J. Oct. 20, 2011)....................11, 12

*In re Mercedes-Benz Tele Aid Contract Litig.*,
257 F.R.D. 46 (D.N.J. 2009) ....................34

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
350 F. Supp. 2d 160 (D. Me. 2004)....................19, 38, 50, 51

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.,*
522 F.3d 6 (1st Cir. 2008) ....................50

*In re Nifedipine Antitrust Litigation*,
335 F. Supp. 2d 6 (D.D.C. 2004)....................50

*In re Novartis & Par Antitrust Litig.*,
No. 18 Civ. 4361, 2019 WL 3841711 (S.D.N.Y. Aug. 14, 2019) ....................46

*In re Packaged Ice Antitrust Litig.*,
779 F. Supp. 2d 642 (E.D. Mich. 2011)....................9

*In re Packaged Seafood Prod. Antitrust Litig.*,
242 F. Supp. 3d 1033 (S.D. Cal. 2017)....................21

*In re Pre-Filled Propane Tank Antitrust Litig.*,
No. 14-02567-MD-W-GAF, 2016 WL 6963059 (W.D. Mo. Jan. 13, 2016) ....................51

*In re Processed Egg Prods. Antitrust Litig.*,
851 F. Supp. 2d 867 (E.D. Pa. 2012) ....................passim

*In re Propranolol Antitrust Litig.*,
249 F. Supp. 3d 712 (S.D.N.Y. 2017) ....................7, 14, 34

*In re Refrigerant Compressors Antitrust Litig.*,
No. 2:09-md-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013)....................44

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
355 F. Supp. 3d 145 (E.D.N.Y. 2018) .................... 6, 18

*In re Skelaxin Metaxalone Antitrust Litig.*,
No. 1:12-md-2343, 2013 WL 2181185 (E.D. Tenn. May 20, 2013)....................36

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
No. 14-md-02503-DJC, 2015 WL 5458570 (D. Mass. Aug. 14, 2015)....................12, 43, 49

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
599 F. Supp. 2d 1179 (N.D. Cal. 2009) ....................49

*In re Tobacco II Cases*,
207 P.3d 20 (Cal. 2009).................... 26, 29

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1125 (D. Nev. 2007) ..........41

*In re Wellbutrin XL Antitrust Litig.*,
260 F.R.D. 143 (E.D. Pa. 2009)....................12

*In re Zetia (Ezetimibe) Antitrust Litig.*,
No. 2:18-md-2836, 2019 WL 1397228 (E.D. Va. Feb. 6, 2019)....................7, 12, 14, 34

*In re Zetia (Ezetimibe) Antitrust Litig.*,
400 F. Supp. 3d 418 (E.D. Va. 2019)....................passim

*In re: Celexa & Lexapro Mktg. & Sales Practices Litig.*,
751 F. Supp. 2d 277 (D. Mass. 2010) ....................40

*King Drug Co. of Florence v. Cephalon, Inc.*,
702 F. Supp. 2d 514 (E.D. Pa. 2010) ....................35, 36, 40

*Kivel v. WealthSpring Mortg., Co.*
398 F. Supp. 2d 1049 (D. Minn. 2005) ....................32

*Kraatz v. USAA Casualty Insurance Co.*,
No. 16-cv00103-FPG, 2017 WL 876187 (W.D.N.Y. Mar. 6, 2017) ....................23

*Kuehn v. Stanley*,
91 P.3d 346 (Ariz. Ct. App. 2004) ....................26

*LaChance v. U.S. Smokeless Tobacco Co.*,
931 A.2d 571 (N.H. 2007) ....................29

*Langan v. Johnson & Johnson Consumer Cos.*,
897 F.3d 88 (2d Cir. 2018) ....................11

*Laydon v. Mizuho Bank, Ltd.*,
No. 12-cv-3419 (GBD), 2014 WL 1280464 (S.D.N.Y. Mar. 28, 2014) ....................45, 46

*Lazarek v. Ambit Energy Holdings, LLC*,
No. 15-CV-6361-FPG, 2017 WL 4344557 (W.D.N.Y. Sep. 28, 2017) ....................34, 35

*Levine v. First Am. Title Ins. Co.*,
682 F. Supp. 2d 442 (E.D. Pa. 2010) ....................40

*Ly v. Nystrom*,
615 N.W.2d 302 (Minn. 2000) ....................32

*McInnis–Misenor v. Maine Medical Center*,
319 F.3d (1st Cir. 2003) ....................50

*McMahon v. Bumble Bee Foods LLC,*
148 F. Supp. 3d 708 (N.D. Ill. 2015) ....................48

*MyWebGrocer, Inc. v. Adlife Mktg. & Commc'ns Co.*,
383 F. Supp. 3d 307 (D. Vt. 2019) ....................25

*National Congress for Puerto Rican Rights v. City of New York*,
75 F. Supp. 2d 154 (S.D.N.Y. 1999) ....................50

*Nelson v. Lusterstone Surfacing Co.*,
605 N.W.2d 136 (Neb. 2000) ....................30, 31

*New York v. Feldman*,
210 F. Supp. 2d 294 (S.D.N.Y. 2002) ....................19

*Olson v. Microsoft Corp.*,
2001 WL 36083237 (Mont. Dist. Ct. Feb. 15, 2001) ..........15

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
647 N.E.2d 741 (N.Y. 1995) ..........19

*Pearce v. Am. Defender Life Ins. Co.,*
343 S.E.2d 174 (N.C. 1986) ..........26

*Piechur v. Redbox Automated Retail, LLC*,
No. 09-cv-984-JPG, 2010 WL 706047 (S.D. Ill. Feb. 24, 2010) ..........13

*Porter v. Warner Hold. Co.*,
328 U.S. 395 (1946) ..........36

*Ransom v. Marrese*,
524 N.E.2d 555 (Ill. 1988) ..........13

*Reading Int'l, Inc. v. Oaktree Capital Mgmt.*,
317 F. Supp. 2d 301 (S.D.N.Y. 2003) ..........46

*Reynolds v. Lifewatch, Inc.*,
136 F. Supp. 3d 503 (S.D.N.Y. 2015) ..........23

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*,
62 P.3d 142 (Colo. 2003) ..........18

*Ries v. Arizona Beverages USA LLC*,
287 F.R.D. 523 (N.D. Cal. 2012) ..........26

*Rindal v. Sohler*,
658 N.W.2d 769 (S.D. 2003) ..........41

*Rodriguez v. It's Just Lunch, Int'l*,
No. 07 Civ. 9227 (SHS)(KNF), 2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) ..........40

*Royal Host Realty, LLC v. 793 Ninth Avenue Realty, LLC*,
192 F. Supp. 3d 348 (S.D.N.Y. 2016) ..........47

*Samiento v. World Yacht Inc.*,
883 N.E.2d 990 (N.Y. 2008) ..........41

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Act*avis, PLC,
No. 15 Civ. 6549 (CM), 2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018) ..........passim

*Securitron Magnalock Corp. v. Schnabolk*,
65 F.3d 256 (2d Cir. 1995) ..........19

*Sellinger v. Freeway Mobile Home Sales, Inc.*,
521 P.2d 1119 (Ariz. 1974) .......... 16, 17

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) .......... 4, 5, 6, 8, 14, 49

*Shannon v. Boise Cascade Corp.*,
805 N.E.2d 213 (Ill. 2004) .......... 27

*Smith v. Video Lottery Consultants, Inc.*,
858 P.2d 11 (Mont. 1993) .......... 15

*Spacesaver Corp. v. The Marvel Group, Inc.*,
621 F. Supp. 2d 659 (W.D. Wis. 2009) .......... 27

*Sperry v. Crompton Corp.*,
863 N.E.2d 1012 (N.Y. 2007) .......... 45, 46

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
No. 14-CV-3826 (MKB), 2015 WL 5579872 (E.D.N.Y. Sep. 22, 2015) .......... 48

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*,
971 F.2d 401 (9th Cir. 1992) .......... 28

*Sykes v. Mel S. Harris and Assoc's LLC*,
780 F.3d 70 (2d Cir. 2015) .......... 49

*Tatone v. SunTrust Mortg., Inc.*,
857 F. Supp. 2d 821 (D. Minn. 2012) .......... 32

*United States v. W.T. Grant Co.*,
345 U.S. 629 (1953) .......... 49

*Vantage Mobility Int'l LLC v. Kersey Mobility LLC,*
No. CV-19-04684-PHX-JJT, 2020 WL 411188 (D. Ariz. Jan. 24, 2020) .......... 17

*VCS, Inc. v. La Salle Dev., Ltd. Liab. Co.*,
293 P.3d 290 (UT 2012) .......... 40

*W. Star Trucks, Inc. v. Big Iron Equip. Serv.*,
101 P.3d 1047 (AK 2004) .......... 31

*Waldman v. New Chapter, Inc.*,
714 F. Supp. 2d 398 (E.D.N.Y. 2010) .......... 45, 46

*Wal-Mart Stores, Inc. v. Dukes*,
13 S. Ct. 2541 (2011) .......... 49

*Watts v. Medicis Pharm. Corp.*,
365 P.3d 944 (Ariz. 2016) .......... 17

*White v. Wyeth*,
705 S.E.2d 828 (W. Va. 2010) .......... 26

*Williams v. Wells Fargo Bank*, N.A.,
No. 11-21233-CIV, 2011 WL 4368980 (S.D. Fla. Sep. 19, 2011) ....................43

*Wilson v. Gen. Motors Corp.*,
921 A.2d 414 (N.J. 2007) ....................32

*Wittman v. CB1, Inc.*,
CV-15-105-BLG-BMM, 2016 WL 3093427 (D. Mont. 2016) ....................29

*Workers Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teikoku Pharma USA, Inc.*,
74 F. Supp. 3d 1052 (N.D. Cal. 2014) ....................33

**Statutes**

740 ILL. COMP. STAT. 10/7(2) (2010) ....................13

815 ILCS 505/10a(a) (West 2000) ....................27

ALASKA STAT. § 45.50.471(b)(14) ....................31

ALASKA STAT. § 45.50.531(a) (2020) ....................31

ALASKA STAT. §§ 45.50.471 (2020) ....................31

ARIZ. REV. STAT. ANN. § 44-1522 ....................16

ARIZ. REV. STAT. ANN. § 44-1521(6) ....................16

ARIZ. REV. STAT. ANN. § 44-1521(1) ....................16

ARIZ. REV. STAT. ANN. §§ 44-1521(5) and (7) ....................16

ARIZ. REV. STAT. § 44-1415(A) ....................6

COLO. REV. STAT. § 6–1–105 (kkk) (2020) ....................18

COLO. REV. STAT. § 6–1–105(u) (2020) ....................18

MINN. STAT. § 8.31 (2020) ....................32

MONT. CODE ANN. § 30-14-222(1) ....................15

MONT. CODE ANN. § 30-14-133(1) ....................19

N.H. REV. STAT. § 358-A:2 ....................29

N.M. STAT. §§ 57-12-2(D)(11) ....................22

NEV. REV. STAT. ANN. § 598A.210(3) ....................7

OR. REV. STAT. § 646.608(s) ....................20

OR. REV. STAT. § 646.638(1) ....................20

UTAH CODE ANN. § 13-11-3(5) (2020)....................20

UTAH CODE ANN. § 76-10-3109(9) (2019) ....................7

UTAH CODE ANN. § 13-11-3(2)(a) ....................20

VT. STAT. ANN. 9, § 2451(a) ....................25

VT. STAT. ANN. 9, § 2453....................25

VT. STAT. ANN. 9, § 2461(b)....................24, 25

VT. STAT. ANN. 9, § 2465....................25

**Rules**

FED. R. CIV. P. 8(a)(2) ....................3, 4

FED. R. CIV. P. 8(d)(2) ....................39, 46

FED. R. CIV. P. 8(d)(3) ....................39

**Other Authorities**

RESTATEMENT (FIRST) OF RESTITUTION § 1 (1937)....................34

RESTATEMENT (FIRST) OF RESTITUTION § 107(1) (1937)....................38

## INTRODUCTION

Plaintiffs The Tripp Plating Works, Inc. and Precious Plate, Inc. are businesses that purchased caustic soda from distributors for end-use. Consolidated Class Action Complaint ("Complaint" or "Compl."), ECF No. 129, at ¶¶ 9, 18-19.[1] They seek relief from the anticompetitive conspiracy among Defendants[2] to fix, raise, and maintain the price of caustic soda in the United States. The Complaint describes a mature market for caustic soda featuring dispersed buyers and concentrated sellers. *Id.* ¶¶ 101-104, 117-118. The opportunity for collusion in this market has been ripe. Strong entry barriers insulate the Defendants from outside competition based on high fixed costs, significant financial investment in the necessary production technology and facilities, regulatory approvals, and complex supply chain relationships needed for a prospective competitor to become a viable market participant. *Id.* ¶¶ 105-109. With only a handful of influential players, the caustic soda market is amenable to contact, communication, and coordination among competitors through, for example, membership in industry trade associations. *Id.* ¶¶ 97-98, 119-123. The caustic soda market bears all the touchstones of a market susceptible to conspiratorial price-fixing.

Defendants sell billions of dollars of caustic soda every year and collectively account for at least 90% of the caustic soda supply in the United States. *Id.* ¶¶ 2, 42. For years, however, they had been battling flat or declining prices due to overcapacity and sluggish demand. *Id.* ¶¶ 3, 5. Plaintiffs allege that Defendants hatched and implemented an anticompetitive scheme to raise and fix the price at which caustic soda was sold in the United States to improve industry financials and increase their profits. Over the course of three years, the industry experienced a turnaround as Defendants

[1] Plaintiffs presume the Court's familiarity with the allegations in the Consolidated Class Action Complaint and set forth only a limited summary of the allegations therein. *See* Decision and Order, ECF No. 55, at pp. 4-13.

[2] "Defendants" refer to Olin Corporation, K.A. Steel Chemicals, Inc., Occidental Petroleum Corporation, Occidental Chemical Corporation (d/b/a OxyChem), Westlake Chemical Corporation, Shin-Etsu Chemical Co., Ltd., Shintech Incorporated, Formosa Plastics Corporation, and Formosa Plastics Corporation, U.S.A. *See* Compl. ¶¶ 20-32.

implemented in tandem thirteen nearly identical price increases, which raised the price of caustic soda by more than 50% from $600 per short ton to approximately $900 per short ton. *Id.* ¶¶ 5, 51-75. Their profit margins increased by hundreds of millions of dollars alongside the rising prices. *Id.* ¶¶ 77-81.

The price increases are indicative of anticompetitive price and supply coordination among Defendants. Plaintiffs allege that Defendants' price increases occurred in the face of industry metrics that would otherwise dictate stable or declining prices. During the putative class period, the cost of energy and other key raw materials remained stable and even declined, demand for caustic soda remained relatively flat, as reflected by the level of industrial production in the United States, and excess capacity continued to plague the industry. *Id.* ¶¶ 40, 43, 47, 75, 82. Plaintiffs allege that Defendants overcame this unfavorable pricing environment by entering into agreements to increase or maintain the price of caustic soda in the United States, including through coordinated supply reductions and redirection of domestic caustic soda supply to the export market. *Id.* ¶¶ 45-47, 83, 85, 87-91. The purportedly "tight" supply of caustic soda was used as pretext to justify the price increases. *Id.* ¶¶ 85, 96. But the price increases were caused by nothing more than coordination and cooperation among competitors to stifle competition. As a result of the challenged anticompetitive conduct, Plaintiffs and the proposed class have been overcharged on their caustic soda purchases by hundreds of millions of dollars. *Id.* ¶ 126.

Defendants do not dispute that Plaintiffs' allegations, if proven, constitute a violation of state antitrust and consumer protections statutes. Nor could they. On March 27, 2020, the Court issued an Order sustaining claims[3] based on allegations that are virtually identical to those comprising Plaintiffs' Complaint.[4] The Court held that the Direct Purchaser Plaintiffs plausibly alleged that Defendants

---

[3] The claims against Occidental Petroleum Corporation were dismissed without prejudice. The Court sustained claims against the remaining Defendants and ordered jurisdictional discovery against Defendants Shin-Etsu Chemical Co. Ltd. and Formosa Plastics Corporation.

[4] The elements of Plaintiffs' state antitrust claims track the elements of the federal claims upheld in the Court's March 27 Order. ECF No. 55.

entered into an antitrust conspiracy, finding, *inter alia*, that their complaint sufficiently alleged parallel conduct and pretextual misrepresentations to support a nationwide price-fixing conspiracy.

Accepting this reality, Defendants now move to dismiss some of Plaintiffs' antitrust claims, some of the little-FTC Acts claims, and Plaintiffs' common-law claims with a patchwork of technical arguments better determined after discovery. They have conceded the sufficiency of the pleadings as to the unlawful conduct and the claims should proceed. Regardless, they generally i) rely on narrow constructions of broadly drafted and interpreted state statutes; ii) disregard the remedial intent of those statutes; iii) try to improperly enforce state law procedural rules in federal court; and iv) otherwise ask the Court to impose pleading requirements on Plaintiffs that are not supported by the law. Defendants notably do not move to dismiss Plaintiffs' antitrust claims in California, Iowa, New Hampshire, New York, Rhode Island, Vermont, and Wisconsin.[5] Thus, those claims survive. Plaintiffs address and dispel each of Defendant's remaining arguments in turn.

## STANDARD OF REVIEW

On a motion to dismiss, the Court must accept as true the complaint's factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." (citation omitted)).

Under Rule 8(a), a motion to dismiss should be denied if the complaint alleges facts that support a "plausible" claim to relief. *Twombly*, 550 U.S. at 570 (holding that the plausibility requirement "simply calls for enough fact to raise a reasonable belief that discovery will reveal evidence [of plaintiff's claim]."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

[5] Defendants also concede that Plaintiffs' claims under Florida's consumer protection laws may proceed, arguing only that restitution is not an available remedy. *See* Defs.' Brief, sect. I.J.

defendant is liable for the misconduct alleged." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). *Twombly* and *Iqbal* did not supersede FED. R. CIV. P. 8(a)(2), nor did they establish a requirement for heightened specificity at the pleading stage. *See Twombly*, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

Should the Court grant any part of Defendants' partial motion to dismiss, the "usual practice" in the Second Circuit is to permit leave to replead to correct pleading deficiencies. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *Frederick v. New York*, 232 F. Supp. 3d 326, 335 (W.D.N.Y. 2017) (Wolford, J.). The Court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

## I. THE COURT SHOULD UPHOLD PLAINTIFFS' ANTITRUST CLAIMS.

The antitrust claims under the twenty-eight statutes pleaded in the Complaint should proceed to discovery. Defendants concede that Plaintiffs have adequately pleaded claims under the antitrust statutes of seven jurisdictions. In an attempt to dismiss the antitrust claims under the remaining statutes, Defendants commit a litany of errors. They ignore a wealth of authority sustaining antitrust claims regardless of compliance with statutory notice requirements; proffer an overly restrictive interpretation of intrastate conduct requirements; ignore recent and pertinent in-Circuit precedent refusing to adopt the Illinois class action prohibition in federal court; and misapply the Utah antitrust statute's residency requirement in the context of a proposed class action. Plaintiffs dispense with each of these arguments.

### A. Plaintiffs may pursue their antitrust claims under Arizona, Nevada, and Utah state law.

Defendants ask the Court to dismiss the antitrust claims under Arizona, Nevada, and Utah state law for a purported failure to satisfy statutory notice provisions. Defs.' Br. at 30-31. Pursuant to the Supreme Court's plurality opinion in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S.

393 (2010), and the cases analyzing state law notice provisions in light of that decision, these procedural notice rules do not require dismissal of otherwise properly pleaded claims. Although the Second Circuit has not directly addressed whether Justice Stevens' concurring opinion controls, several courts within the Second Circuit have concluded that it does. For purposes of their analysis, Plaintiffs assume that it controls here, too. *See, e.g., Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 60 (E.D.N.Y. 2017) ("[T]he Court agrees with the majority of district and circuit courts that have found Justice Stevens' concurring opinion controls[.]").

Under Justice Stevens' concurrence in *Shady Grove*, where a state law conflicts with federal law, a court sitting in diversity must analyze whether the state law is substantive or procedural, since federal procedural law typically applies in federal court. *Shady Grove*, 559 U.S. at 417 ("It is a long-recognized principle that federal courts sitting in diversity apply state substantive law and federal procedural law." (internal quotation marks and citation omitted)). And if the court determines that the state law is procedural, whether it should nonetheless control in federal court. *Id.* at 418-419, 422.

A state law procedural rule controls in federal court only when it is "part of a State's framework of substantive rights or remedies." *Id.* at 419. A procedural rule meets that threshold when it "exist[s] to influence substantive outcomes and may in some instances become so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy." *Id.* at 419-20 (internal citations omitted). If it rises to that level, then the federal rule must yield to the state law. *Id.* at 423. As recognized by several courts, however, the notice provisions at issue here do not meet that threshold.

**1. State law notice provisions do not apply in federal court.**

The notice provisions in the antitrust statutes of Arizona, Nevada, and Utah do not warrant dismissal of Plaintiffs' claims. Defs.' Br. at 30-31. The notice provisions "do not alter the substantive elements of Plaintiffs' claims and are not a pleading requirement for the [c]omplaint[]." *In re Generic*

*Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 835 (E.D. Pa. 2019) (denying motion to dismiss Arizona, Nevada, and Utah antitrust claims). They merely prescribe additional procedures governing service and filing of certain claims in state court. In other words, they are not "so bound up with" the substantive causes of action that they "define the scope" of Plaintiffs' claims. *Shady Grove*, 559 U.S. at 419-20. *Cf. In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 355 F. Supp. 3d 145, 155-56 (E.D.N.Y. 2018) (finding that a state law notice provision "does not alter the substantive elements of plaintiffs' claims"); *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 254 (D. Conn. 2015) (analyzing state law notice provision and concluding that the "procedural prerequisites are [not] sufficiently a 'part of a State's framework of substantive rights or remedies' to be controlling in federal court. . ."). Therefore, because the state law notice rules are purely procedural, they are superseded by the federal rules. Any purported failure to comply with the notice provisions does not warrant dismissal of Plaintiffs' claims. *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*, No. 15 Civ. 6549 (CM), 2018 WL 7197233, at *26 (S.D.N.Y. Dec. 26, 2018) (finding "Arizona's pre-suit notice requirement [to be] purely procedural" and denying motion to dismiss Arizona and Nevada antitrust claims).

**2. Even assuming the state law notice provisions apply in federal court, Plaintiffs satisfied the relevant statutory provisions.**

Even assuming the state law notice provisions apply in federal court, Plaintiffs have substantially complied with the relevant statutory technicalities.

Contemporaneously with the filing of their individual complaints, and approximately eight months before they filed the operative Complaint, Plaintiffs sent notice letters to the attorney general of each state, thus substantively complying with the state statutes. *See* Declaration of Ryan Gellman ¶¶ 4-5; Ariz. Rev. Stat. § 44-1415(A) ("A person filing a complaint. . .for any violation of the provisions of this article shall simultaneously with the filing of the pleading. . . serve a copy of the complaint. . .on the attorney general. Proof of service on the attorney general shall be filed with the court."); Nev.

Rev. Stat. Ann. § 598A.210(3) ("Any person commencing an action for any violation of the provisions of this chapter shall, simultaneously with the filing of the complaint with the court, mail a copy of the complaint to the Attorney General."); Utah Code Ann. § 76-10-3109(9) ("The attorney general shall be notified by the plaintiff about the filing of any class action involving antitrust violations that includes plaintiffs from this state."). The Court should not dismiss Plaintiffs' claims under these statutes simply because they may not have exactly complied with the procedural notice provisions. *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836, 2019 WL 1397228, at *25 (E.D. Va. Feb. 6, 2019) ("Although notice [to the state attorneys general of Arizona, Nevada, and Utah] may have followed initiation of the suit it was provided early in litigation and prior to consolidation or the commencement of any discovery."), *adopted as modified*, 400 F. Supp. 3d 418, 433-34 (E.D. Va. 2019) ("Assuming arguendo that the statutory notice requirements apply in federal court, the statutes do not require dismissal for failing to comply precisely with the notice requirement."); *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 765 (N.D. Ill. 2019) (denying motion to dismiss Arizona, Nevada, and Utah antitrust claims for failure to comply with notice provisions where plaintiffs made "post-filing efforts" to provide notice); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 817 (N.D. Ill. 2017) (declining to dismiss Arizona antitrust claim notwithstanding late notice to attorney general). *Cf. In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 728 n.24 (S.D.N.Y. 2017) ("The Court is persuaded, however, that the statute does not require dismissal for failure to [fully] comply with [the Hawaii] procedural rule."); *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *6 (N.D. Ill. Nov. 5, 2009) (denying motion to dismiss for failure to comply with state law notice provision, finding that "Plaintiffs are correct that nothing in the statutory scheme suggests that defendants may use the statute as a shield to avoid answering for alleged anti-competitive behavior"). Defendants do not claim any prejudice arising from the timing or manner of notice to the state attorneys general; nor has any state attorney general complained or sought to intervene in this case.

To dismiss these claims now would "be an inefficient and heavy-handed remedy for a relatively minor delay, as to which no one claims prejudice." *Zetia*, 2019 WL 1397228, at *25. Thus, even assuming *Shady Grove* requires compliance with the state law notice provisions, the Court should nonetheless deny the motion to dismiss the Arizona, Nevada, and Utah antitrust claims.

**B. Plaintiffs adequately allege that Defendants' price-fixing conspiracy had the requisite effect on intrastate commerce.**

The allegations in the Complaint demonstrate that Defendants' anticompetitive conduct had a substantial effect on intrastate commerce. Plaintiffs allege that Defendants account for 90% of the domestic supply of caustic soda. Compl. ¶ 2. As a key ingredient in a variety of industries, from food processing and pharmaceuticals to water treatment,[6] caustic soda is distributed to every corner of the United States in a "continuous and uninterrupted flow of interstate commerce." *Id.* ¶¶ 36-39, 42. Defendants' nationwide price-fixing scheme had substantial intrastate effects in that, among other things, the distributors from whom Plaintiffs and the proposed class purchase caustic soda have been denied the ability to purchase caustic soda at competitive prices in each state. The overcharges to the distributors flow down the distribution chain to Plaintiffs and the proposed class. *Id.* ¶¶ 5, 52, 55-56, 60, 136. As a result, the challenged conduct materially deprived the consuming public—including hundreds, if not thousands, of purchasers in each state—of any choice to purchase caustic soda at competitive prices and forced them to pay artificially inflated prices instead. *See id.* ¶¶ 20, 24-25, 27, 32 (alleging that Defendants sell caustic soda throughout the United States, including but not limited to Alabama, Kansas, Louisiana, Nevada, New York, Tennessee, and Texas); *see also id.* ¶ 148 (alleging that Defendants' conduct violated state antitrust laws with respect to purchases within each state). The agreement among Defendants to institute a nationwide moratorium on price competition in the

---

[6] There are nearly 15,000 wastewater treatment plants in the United States that serve roughly 240 million Americans—approximately 76% of the U.S. population—in addition to the 309,000 public swimming pools located throughout the country. ASCE, *2017 Infrastructure Report Card*, at hyperlink; Lisa Hallett Taylor, *Fascinating Facts About Pools, Spas, Swimming and Safety*, at hyperlink.

United States over a multi-year period has, and continues to, directly and substantially affect and disrupt commerce within each state.

By asserting that Defendants' anticompetitive conduct directly impacted commerce throughout the United States, including with respect to purchases within each state, Plaintiffs have established a sufficient nexus to intrastate commerce. It is well settled that a complaint alleging a nationwide antitrust violation satisfies "intrastate" pleading requirements. *See In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687 (JLL), 2017 WL 3131977, at *24 (D.N.J. July 20, 2017) ("[T]his Court agrees with IPP that pleading intrastate conduct and allegations of nationwide price-fixing satisfies the nexus requirement for asserting claims under state antitrust and/or consumer fraud statutes."); *Aggrenox*, 94 F. Supp. 3d at 253 ("It is true that all of the claims essentially allege national anticompetitive conduct, but it is not obvious why the *intra*state effect of anticompetitive conduct would not be reached by the cited statutes merely because *inter*state conduct predominates.") (denying motion to dismiss claims under Mississippi, New York, Tennessee, Wisconsin, and the District of Columbia); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 664 (E.D. Mich. 2011) ("Several courts have found that the 'intrastate effects' requirement is met at the pleading stage by allegations, like those in the instant case, claiming that the anticompetitive conduct caused supracompetitive price effects nationwide."). The logic behind this is straightforward: a nationwide antitrust violation decreases competition in each state, thereby increasing or artificially stabilizing the price of goods paid by purchasers in those states. *See Broiler Chicken*, 290 F. Supp. 3d at 816 ("In light of the obvious fact that Broilers are purchased in substantial numbers throughout the United States, these allegations plausibly establish 'substantial' *intra*state effects in the District of Columbia and Wisconsin"); *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 411–14 (D. Del. 2007) (finding it "reasonable to infer" from allegations of "indirect purchaser injury throughout the United States" that the anticompetitive conduct included sales within the relevant states, and denying motion to dismiss

claims under the laws of Mississippi, Nevada, South Dakota, West Virginia, and the District of Columbia).

Notwithstanding the comprehensive scope of the alleged price-fixing conspiracy, Defendants argue that Plaintiffs have failed to allege that the challenged conduct "took place exclusively within," or "affected or restrained intrastate trade to the degree required" in, eighteen jurisdictions.[7] Defs.' Br. at 29. But the intrastate nexus requirement is broadly construed, and there is no requirement that conduct take place wholly or exclusively within a given jurisdiction. *See, e.g., In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 665-668 (E.D. Mich. 2000) (rejecting strict intrastate conduct requirement under Tennessee and Wisconsin state law); *Zetia*, 2019 WL 1397228, at *24 ("Cases examining the antitrust laws in these states generally agree that they require allegations of intrastate conduct or effects but define those terms to give the statutes broad scope."). The relevant inquiry is whether the challenged conduct—though it may have originated out-of-state—likely effected commerce in-state, such as by causing residents to pay artificially inflated prices. *Id.* When read, as it must, with all reasonable inferences construed in Plaintiffs' favor, the Complaint answers that inquiry in the affirmative.

Defendants' argument erroneously presumes caustic soda is a low revenue product with modest sales volume, thus rendering the effect that their conduct had on the commerce of any given state uncertain at best or unlikely at worst. Contrary to such an argument, caustic soda is a versatile commodity product sold throughout and thus within each of the United States; it is utilized for a variety of purposes, for both industrial and household use, and it brings in billions of dollars in sales for Defendants each year. The ubiquity of caustic soda and the size of the industry lead to the conclusion that any impact that Defendants' conduct had on commerce in the challenged states,

---

[7] Arizona, Connecticut, District of Columbia, Kansas, Maine, Maryland, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, and West Virginia.

including with respect to the sale of caustic soda, would certainly meet the low pleading threshold here. Caustic soda is everywhere; it is used to grow the food we eat, to treat the water we drink, and to create the clothes we wear. It is used in the creation of paper, soap, aluminum,[8] plastics and pharmaceuticals. Compl. ¶¶ 2, 39. It is therefore reasonable to infer[9] that Defendants' conduct had a substantial effect on intrastate commerce in every state based on allegations of a nationwide price-fixing conspiracy that caused indirect purchasers to pay more for caustic soda.

Defendants rely heavily on a footnote from out-of-circuit *In re Magnesium Oxide Antitrust Litig.*, No. 10-5943 (DRD), 2011 WL 5008090 (D.N.J. Oct. 20, 2011), to support their argument. Defs.' Br. at 28-30; Appendix C (citing *Magnesium Oxide* as supporting dismissal of fifteen of the eighteen claims challenged on intrastate conduct). But the cited footnote in *Magnesium Oxide* dealt with a different question; it does not address what Plaintiffs must allege to establish an intrastate connection with respect to Defendants' anticompetitive conduct, and it does not stand for the proposition that a lack of alleged in-state purchases by the named plaintiffs is equivalent to an absence of in-state impact. *See Id.* at *8 & n. 10. Insofar as Defendants try to recast the intrastate conduct requirement as a backdoor challenge to Plaintiffs' Article III standing to assert claims under these state laws, the Second Circuit's recent opinion in *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88 (2d Cir. 2018), would preclude that argument here. *Compare Id.* at 93 ("[A]s long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule

[8] In 2014, smelters in the United States produced more than 1.7 million metric tons—almost $4 billion—of primary, non-recycled aluminum. USGS, National Minerals Information Center, *Aluminum Statistics and Information* (last visited July 10, 2020), *available at* usgs.gov/centers/nmic/aluminum-statistics-and-information.

[9] Given the market reality that tens of millions of tons of caustic soda is used across the globe every year, it is implausible that commerce in any state would go unaffected by Defendants' price-fixing conspiracy.

23(b)(3), not a question of adjudicatory competence under Article III." (internal citations and quotations omitted)), *with Magnesium Oxide*, 2011 WL 5008090 at *8 n. 10 ("Plaintiffs lack Article III standing to assert violations of the following state antitrust laws because they fail to allege a causal connection between their injuries and the conduct prohibited by the laws of those states. . ."). Defendants' additional authority is similarly off-target. *See, e.g, Credit Bureau Servs. v. Experian Info. Sols., Inc.*, 828 N.W.2d 147, 150 (Neb. 2013) (discussing the scope of a statutory provision (Neb. Code. Ann. § 59-805) designed to protect Nebraska businesses from concerted efforts by competitors to drive them out of business); *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512 (Tenn. 2005) (New York-based plaintiff in an individual action failed to allege purchases in Tennessee or from the Tennessee-based defendant).

"At this stage of the litigation," the "allegations of a broad nationwide-scheme to fix [prices] are enough to satisfy the nexus requirement for asserting claims under the relevant state antitrust laws." *Generic Pharm.*, 368 F. Supp. 3d at 836-838 (citations omitted) (denying motion to dismiss claims under the antitrust laws of the District of Columbia, Kansas, Maine, Minnesota, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, and West Virginia); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503-DJC, 2015 WL 5458570, at *16 (D. Mass. Aug. 14, 2015) (finding that plaintiffs had sufficiently alleged intrastate conduct based on "allegations of a nationwide antitrust violation that increased prices paid by the end payors in each state"); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 166 (E.D. Pa. 2009) (denying motion to dismiss Tennessee antitrust claim even though "the allegations of the amended complaint contain little information as to the specific impact of the defendants' alleged conduct with respect to any particular state"). Whether Plaintiffs can "prove the requisite nexus is a separate question to be addressed later in this litigation." *Generic Pharm.,* 368 F. Supp. 3d at 838; *see also City of Rockford*, 360 F. Supp. 3d at 761 (denying motion to dismiss Arizona, Kansas, Michigan, Minnesota, Mississippi, Nebraska, Nevada,

New Mexico, North Carolina, North Dakota, Oregon, South Dakota, and Tennessee claims because "plaintiffs have met their bare pleading requirements at this stage that unnamed class members purchased Acthar in these states" and reserving for class certification the determination of whether any unnamed class members purchased the product in those states); *Zetia*, 2019 WL 1397228, at *24 (denying motion to dismiss District of Columbia, Mississippi, Nevada, North Carolina, South Dakota, Tennessee, and West Virginia claims).

Therefore, because Plaintiffs allege a nationwide conspiracy to raise the prices that indirect purchasers in each state paid for caustic soda, they have adequately alleged the requisite effect on intrastate commerce to proceed with their claims under the challenged jurisdictions.

### C. Plaintiffs can pursue their antitrust claim under the Illinois Antitrust Act on a class-wide basis.

The Illinois Antirust Act expressly provides that "[n]o provision of th[e] Act shall deny any person who is an indirect purchaser the right to sue for damages," but prohibits indirect purchasers from bringing a class action "in any court of this State." 740 Ill. Comp. Stat. 10/7(2).[10] Therefore, by its own terms, the class action limitation does not affect a plaintiff's substantive rights under the Illinois antitrust statute; "any indirect purchaser procedurally blocked from participation in a class action would still have the same remedy in an individual action." *In re Aggrenox Antitrust Litig.*, No. 3:14-md-2516 (SRU), 2016 WL 4204478, at *6 (D. Conn. Aug. 9, 2016). Because the class action procedural bar is not "so intertwined" with Plaintiffs' substantive claim under Illinois law, it does not apply in federal court and does not warrant dismissal of the Illinois antitrust claim. *See Hatchett v. Henry Schein, Inc.*, No. 3:19-CV-83-NJR, 2020 WL 733834, at *3 (S.D. Ill. Feb. 13, 2020); *Broiler Chicken*, 290 F. Supp.

[10] A federal court sitting in New York is not "of" the state of Illinois. Thus, the class action bar does not apply in federal court. *See, e.g., Ransom v. Marrese*, 524 N.E.2d 555, 559 (Ill. 1988) (Illinois state court applying Indiana law was not a court "of" the state of Indiana); *Piechur v. Redbox Automated Retail, LLC*, No. 09-cv-984-JPG, 2010 WL 706047, at *4 (S.D. Ill. Feb. 24, 2010) (Illinois federal court "may sit *in* the state of Illinois, [but] is not a court of the state *of* Illinois")

3d at 818 ("[W]hether such plaintiffs may bring a class action does not affect their substantive rights. The availability of the class action procedure does not change the substantive rights or remedies available to them under Illinois law."); *In re Dealer Mgmt. Sys. Antitrust Litig.*, MDL 2817, 362 F. Supp. 3d 510, 553 & n. 13 (N.D. Ill. 2019); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *21 (N.D. Cal. Oct. 2, 2014) (explaining that the Illinois "antitrust law[] merely forbid[s] procedural aggregation of individual claims; [it] do[es] not change how a court decides whether such claims prevail or, importantly, the nature of any one individual's right to relief.").

Recent decisions, including several from this Circuit, have allowed Illinois antitrust claims to move forward in federal court, despite the statutory prohibition against indirect purchaser class actions in Illinois state court. *See Sergeants*, 2018 WL 7197233, at *32 ("The Court agrees with those cases in this circuit that have treated the [Illinois Antitrust Act] as stating a procedural rule applicable in Illinois state courts, rather than a substantive rule applicable to federal courts sitting in diversity jurisdiction in New York."); *Propranolol*, 249 F. Supp. 3d at 728 ("The Court is persuaded that [the Illinois] state procedural rule does not control in federal court, where Rule 23 sets the only relevant requirements to file a class action."); *Aggrenox*, 2016 WL 4204478 at *5-6; *see also City of Rockford*, 360 F. Supp. 3d at 765; *Zetia*, 2019 WL 1397228 at *26 ("Even if, contrary to its text, the bar applies in this court, I am persuaded by those courts which have concluded that under *Shady Grove*, Rule 23 governs class actions in federal court and permits the EPPs' suit under the Illinois statute."); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1311-12 (D. Kan. 2018); *Liquid Aluminum*, 2017 WL 3131977 at *24. The Court should allow the Illinois antitrust claim to proceed here as well.

### D. Plaintiffs' antitrust claims under Montana law should proceed.

Defendants effectively concede that neither the Montana state legislature nor the state's Supreme Court has expressly eliminated an indirect purchaser's standing to sue under the Montana

antitrust statute. Defs.' Br. at 32. The Montana statute confers standing broadly to "[a] person who is or will be injured" by anticompetitive conduct. Mont. Code Ann § 30-14-222(1). At least one Montana state court decision following *Smith v. Video Lottery Consultants, Inc.*, 858 P.2d 11 (Mont. 1993), on which Defendants rely, has held that nothing in the "plain language of the statute" suggests that *Illinois Brick* should limit standing under Montana law to direct purchasers. *Olson v. Microsoft Corp.*, 2001 WL 36083237 (Mont. Dist. Ct. Feb. 15, 2001). Plaintiffs' claim may therefore proceed. *See In re Asacol Antitrust Litig.*, No. 15-cv-12730-DJC, 2016 WL 4083333, at *12-13 (D. Mass. July 20, 2016).

**E. Plaintiffs can bring claims on behalf of Utah residents.**

Defendants argue that the claim under the Utah antitrust statute must be dismissed because neither Plaintiff is a citizen or resident of Utah. Defs.' Br. at 32. But residency of the named Plaintiffs is not dispositive here. Nothing in the text of the Utah antitrust statute requires a named plaintiff to be a resident of Utah. *See Zetia*, 400 F. Supp. 3d at 434-35 (rejecting argument that "the Utah Antitrust Act requires that a named EPP or class representative is a Utah citizen or resident" because "there is no such requirement in the text of the statute"). The proposed class is nonetheless defined to include citizens or residents of Utah who were overcharged on their caustic soda purchases and who may recover damages under the Utah Antitrust Act. Compl. ¶ 148.[11] "Allegations that members of the putative class presumably include Utah. . . citizens and residents are sufficient to overcome a motion to dismiss." *Generic Pharm.*, 368 F. Supp. 3d at 838 (citations omitted). "Thus, a class representative that is not a Utah citizen or resident may bring claims on behalf of absent class members who are citizens or residents of Utah." *Zetia*, 400 F. Supp. 3d. at 435.

[11] To the extent Plaintiffs' claim under the Utah Antitrust Act can be construed to permit recovery to non-residents, Plaintiffs acknowledge that they may bring their antitrust claim under Utah state law only on behalf of Utah citizens or residents.

## II. THE COURT SHOULD UPHOLD PLAINTIFFS' CONSUMER PROTECTION CLAIMS.

### A. Plaintiffs are "consumers" and defendants' unlawful conduct was directed at consumers under the laws of Arizona, Colorado, Montana, New York, and Utah.

The consumer protection laws of the following states are broader than Defendants assert.[12]

**Arizona:** Corporate plaintiffs are not barred from pursuing claims under the Arizona Consumer Fraud Act (the "ACFA"). Defendants cannot point to any authority to argue that Plaintiffs are not "consumers" for purposes of the ACFA. The ACFA defines "person" to include "any company, trust, business entity or association." Ariz. Rev. Stat. Ann. § 44-1521(6). The definitions of "sale," "merchandise," and "advertisement" are also informative. "Sale" includes "any sale, offer for sale or attempt to sell **any merchandise** for any consideration," and "merchandise" includes "any objects, wares, goods, **commodities**, intangibles real estate or services." Ariz. Rev. Stat. Ann. §§ 44-1521(5) and (7) (emphasis added). The ACFA's definition of "advertisement" includes solicitations made "directly or indirectly [to] **any person**." Ariz. Rev. Stat. Ann. § 44-1521(1) (emphasis added). Therefore, when Ariz. Rev. Stat. Ann. § 44-1522 declares unlawful all deceptive or unfair acts "in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled," the focus is on the alleged violator's conduct, not the identity of the injured party. Plaintiffs here are consumers of Defendants' "merchandise"— they do not purchase caustic soda for resale. Plaintiffs use or "consume" caustic soda. Under the statute's broad language, Plaintiffs properly bring an action pursuant to the ACFA.

Defendants' case law does not help them. For example, Defendants rely on *Sellinger v. Freeway Mobile Home Sales, Inc.*, 521 P.2d 1119, 1121 (Ariz. 1974), and *Holeman v. Neils*, 803 F. Supp. 237, 242

---

[12] Plaintiffs forego consumer protection claims under the laws of Arkansas, Delaware, District of Columbia, Georgia, Idaho, Indiana, Kansas, Louisiana, Maine, Massachusetts, Michigan, Mississippi, Missouri, Pennsylvania, Rhode Island, South Carolina, Virginia, Wisconsin, and Wyoming. Therefore, Plaintiffs will not analyze the laws of those states in any of the following subparts of Section II.

(D. Ariz. 1992), to argue that ACFA's private right of action is somehow "limited." Defs.' Br. at 12. However, far from limiting a private right of action under the ACFA, the *Sellinger* Court definitively upheld the private right of action, noting that the ACFA "contemplates that a person who has been damaged by the practices declared to be unlawful may exert a claim by reason of such acts." *Sellinger*, 521 P.2d at 1122. Furthermore, the *Holeman* court denied the defendant's motion for summary judgment based on the argument that defendant was not a merchant, holding, "Although the Act . . . appears to require merchant-consumer transactions, there is no requirement in the statute that there be a merchant, only that merchandise is involved." *Holeman*, 803 F. Supp. at 243. Applying this rationale here, the Court should not impose a requirement based on a narrow definition of "consumer," but rather focus on consumption of the product.

Defendants' reliance on *Watts v. Medicis Pharm. Corp*., 365 P.3d 944 (Ariz. 2016), and *Vantage Mobility Int'l LLC v. Kersey Mobility LLC,* No. CV-19-04684-PHX-JJT, 2020 WL 411188, at *9 (D. Ariz. Jan. 24, 2020), is equally misplaced. *Watts* did not address the issue of who constitutes a proper plaintiff under the ACFA. *Watts*, 365 P.3d 944. The *Watts* court did, however, identify the two elements of an ACFA claim, neither of which preclude Plaintiffs' claims here. *Id.* at 953 ("Rather, to succeed on a claim for consumer fraud, a plaintiff must show (1) a false promise or misrepresentation made in connection with the sale or advertisement of 'merchandise,' and (2) consequent and proximate injury resulting from the misrepresentation."). The holding in *Vantage Mobility* is similarly inapposite. While the plaintiff there was a business—and its claim under the ACFA was dismissed—the claim was not dismissed based on plaintiff's corporate status. *Vantage Mobility*, 2020 WL 411188, at *9. Instead, the court dismissed the ACFA claim because the plaintiff *manufactured* the product rather than consuming it, holding, "[t]he ACFA does not apply to protect VMI, **as the manufacturer**, in its contractual relation with Kersey, as its seller, and VMI's ACFA claim thus fails." *Id.* (emphasis added). Plaintiffs here do not argue that the ACFA should apply to non-consumers—just that Plaintiffs *are* consumers

for the purposes of an ACFA claim. Therefore, Defendants' motion to dismiss Plaintiffs' ACFA claim should be denied.

**Colorado:** The Colorado Supreme Court has held that to establish a claim under the Colorado Consumer Protection Act ("CCPA"), a private plaintiff must show that "the challenged practice caused the plaintiff's injury." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003). The CCPA enumerates a list of behaviors prohibited as "deceptive trade practices," and Plaintiffs here assert more specifically that Defendants "[f]ail[ed] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction," Colo. Rev. Stat. § 6–1–105(u), and "[e]ither knowingly or recklessly engage[d] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice." § 6–1–105(kkk); *see Restasis*, 355 F. Supp. 3d at 159–60 (rejecting argument that the complaint was "not sufficiently specific to provide notice of that claim, given that it cites only to the entire consumer protection statute"); *see also In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 223–24 (S.D.N.Y. 2012) (finding that "Plaintiffs have plausibly pleaded a claim under the CCPA"). Contrary to what Defendants assert, "the deceptive conduct does not need to be aimed at consumers." *Restasis*, 355 F. Supp. 3d at 159 (citing *DDAVP*, 903 F. Supp. 2d at 223–24). The CCPA was "enacted to regulate commercial activities and practices, which because of their nature, may prove injurious, offensive, or dangerous to the public." *Rhino Linings*, 62 P.3d at 146. The Supreme Court of Colorado has directed that the "CCPA is liberally construed to serve its broad purpose and scope." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 987–88 (C.D. Cal. 2015) (quoting *Hall v. Walter*, 969 P.2d 224, 230 (Colo. 1998)), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), and *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017); *see also DDAVP*, 903 F. Supp. 2d at 223-24 ("In *Hall*, the Supreme Court of Colorado held that a misrepresentation made to

a third party could be actionable under the CCPA."). Therefore, Plaintiffs' may bring a claim pursuant to the CCPA.

**Montana**: Montana allows claims by any "consumer." Mont. Code Ann. § 30-14-133(1); *see Generic Pharm.*, 368 F. Supp. 3d at 847–48 n.156 (citing *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 193 (D. Me. 2004) ("application of the Montana consumer protection statute is not limited to those who engage directly in consumer transactions"). The *New Motor Vehicles* court concluded that "conduct violating the FTC Act would violate Montana's consumer protection statute as well." 350 F. Supp. 2d at 192 (noting that the Montana statute closely resembles the FTC Act). Defendants cite no authority interpreting Montana consumer protection law. *See* Defs.' Br. at 7-12. Therefore, Defendants' motion to dismiss Plaintiffs' Montana consumer protection claim should be denied.

**New York**: While it is true that the first element of a Section 349 claim requires a plaintiff to plead a "consumer-oriented act," this is "a term that is 'construed liberally' and includes actions that 'cause any "consumer injury or harm to the public interest."'" *DDAVP*, 903 F. Supp. 2d at 228 (quoting *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995))). "A plaintiff will satisfy the pleading burden by 'demonstrat[ing] that the acts or practices have a broader impact on consumers at large.'" *Id.* (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (1995)); *see also Feldman*, 210 F. Supp. 2d at 301–02 (plaintiffs stated claim under Section 349 where defendants rigged bids and skewed prices, thereby depriving the public of an "honest marketplace" at public stamp auction, because defendants' conduct caused injury to marketplace participants who relied on competitive bidding process to obtain best prices for stamps offered).

The case Defendants rely upon demonstrates the low threshold imposed by the "consumer-oriented" requirement. In *Oswego*, the Court of Appeals found that the defendant's conduct was

consumer-oriented because the defendant's actions "were not unique to [the] two parties, nor were they private in nature or a 'single shot transaction" and because the defendant dealt with the plaintiff "as any other customer." N.E.2d at 745. Similarly, Plaintiffs here do not allege a "single shot" transaction that was confined to the two parties. Instead, Plaintiffs allege that the deceptive acts were aimed at all of Defendants' customers over the course of several years. *See, e.g.,* Compl. ¶¶ 52-72. Accordingly, Plaintiffs have pleaded "consumer-oriented" conduct, and Defendant's motion to dismiss Plaintiffs' New York consumer protection claim should be denied.

**Utah**: The court in *Sergeants*, 2018 WL 7197233 at *50–52, rejected the same arguments Defendants make in this case. The court noted that "the UCSPA contemplates sales made both 'to' and 'apparently to' a person for personal, family, or household purposes." *Id.* (quoting Utah Code § 13-11-3(2)(a)). Under the USCPA, a "person" expressly includes corporations, partnerships, or "any other legal entity." Utah Code § 13-11-3(5). The U.S. District Court for the District of Utah has also upheld a corporate plaintiff's claims made pursuant to the UCSPA in *Derma Pen, LLC v. 4EverYound Limited*, 2017 WL 2258362, at *15 (D. Utah 2017) (concluding that Derma Pen, LLC was entitled to actual damages for the defendant's violation of §§ 13-11-1 *et seq.*). Defendants cite no authority interpreting Utah consumer protection law. *See* Defs.' Br. at 7-12. Accordingly, Defendants' motion to dismiss Plaintiffs' UCSPA claim should be denied.

### B. Defendants' anticompetitive conduct is actionable under the Oregon consumer protection law.

To state a claim for a violation of the Oregon Unfair Trade Practices Act ("OUTPA"), plaintiffs must allege that they "suffer[ed] an ascertainable loss of money . . . as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608 . . . ." Or. Rev. Stat. § 646.638. It is unlawful to make "false or misleading representations of fact concerning the offering price of . . . real estate, goods, or services." Or. Rev. Stat. § 646.608(s).

Here, the Complaint alleges that Defendants made false or misleading representations concerning the reasons for their price increases. For example, Plaintiffs allege that Defendants' justifications for price increases—including GDP growth, tight supplies, increasing demand, and increased cost of production—were pretexts meant to induce market participants to pay higher prices for caustic soda. Compl. ¶¶ 49-50, 59, 64, 72. Additionally, the complaint alleges that Defendants provided false, misleading transactional data to IHS Markit for use in the calculation of the IHS Markit Caustic Soda Index. *See* Compl. ¶¶ 92-95. Defendants also refused to sell caustic soda to customers, or refused to increase their orders, based on the fiction that supplies could not keep up with demand, when the truth was that Defendants agreed not to compete for each other's business. *See* Compl. ¶ 96.

These allegations are analogous to those in *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1083-84 (S.D. Cal. 2017), where OUTPA claims were sustained. The plaintiffs in *Packaged Seafood* alleged that the defendants made false or misleading statements in furtherance of their price-fixing conspiracy. *Id.* The court sustained the OUTPA claim based on those allegations. *Id.* Similar to the defendants in *Packaged Seafood*, Defendants here incorrectly rely on *In re Dynamic Random Access Memory (Dram) Antitrust Litig.* ("*DRAM*"), 516 F. Supp. 2d, 1072, 115 (N.D. Cal. 2007), to support their argument that price-fixing claims are not actionable under OUTPA. The court in *Packaged Seafood* rejected that argument, holding that because "OUTPA is to be liberally construed to protect consumers" and "Plaintiffs here (unlike the *DRAM* Plaintiffs) plausibly allege affirmative misrepresentations," the plaintiffs stated a valid claim under OUTPA. *See Packed Seafood*, 242 F. Supp. 3d, 1083-84. Accordingly, Defendants' request to dismiss Plaintiffs' OUTPA claim should be denied.

**C. Plaintiffs' allegations demonstrate unconscionable or deceptive conduct.**

Defendants have purported to identify seven states that require Plaintiffs to plead deceptive acts and move to dismiss claims arising from the consumer protections laws of those states, arguing

that "Plaintiffs do not allege deceptive or fraudulent conduct." *See* Defs.' Br.at 16. This argument, however, is incorrect, particularly for Minnesota, New Mexico, North Dakota, and South Dakota.

As mentioned above, Plaintiffs have plausibly alleged that Defendants made several, repeated deceptive acts to further their anticompetitive conduct and to conceal their conspiracy. *See* Section I.B., *supra*. For example, the Complaint alleges that Defendants: (1) misrepresented the state of supply and demand in the caustic soda market to induce buyers to pay a higher price; (2) falsely justified price increases because of GDP growth or increases in the cost of production, both of which remained flat or decreased during the class period; (3) skewed the data they provided to IHS Markit; and (4) misrepresented the reasons for closing facilities and decreasing production. *See* Compl. ¶¶ 45-50, 59, 60, 62, 64, 72, 82-85, 92-96. Each of these acts constitutes unconscionable or deceptive conduct.

Furthermore, Defendants incorrectly argue that Plaintiffs are required to plead unconscionable acts in order to maintain claims pursuant to New Mexico Unfair Practices Act ("NMUPA"). *See* Defs' Br., Sect. I.D. The plain language of NMUPA, in contrast, states that claims may be brought for "unfair or deceptive trade practices," which includes, among others, instances where a defendant "mak[es] false or misleading statements of fact concerning the price of goods or services." N.M. Stat. §§ 57-12-2(D)(11), 57-12-3; *see, e.g., Clark v. Gallup Auto Sales, Inc.*, No. CIV 2:96-141 LCS/LFG, 1998 WL 36030905, at *4. In any case, "[f]ederal courts have generally permitted claims under the [NMUPA] in price fixing cases if the plaintiff alleges a gross disparity between the price paid for the product and the value received." *In re Digital Music Antitrust Litigation*, 812 F.Supp.2d 390, 409-10 (S.D.N.Y. 2011). Plaintiffs allege that they paid supracompetitive prices for caustic soda, satisfying the "gross disparity" element. *See id.* ("[T]he TCAC's allegation that Plaintiffs paid supracompetitive prices for the music they purchased is sufficient to allege gross disparity." (internal quotations and citations omitted)).

Therefore, Plaintiffs have pleaded allegations sufficient to maintain actions under the unfair and deceptive trade practice laws of Minnesota, New Mexico, North Dakota, and South Dakota.

**D. Plaintiffs have adequately pleaded deceptive conduct under the appropriate standards.**

As explained above, Rule 8 applies to Plaintiffs' state consumer protection, antitrust, and unjust enrichment claims. If Rule 9(b) applies as Defendants suggest to a subset of Plaintiffs' claims, which it does not, it is a relaxed Rule 9(b) standard. *See Kraatz v. USAA Casualty Insurance Co.*, No. 16-cv00103-FPG, 2017 WL 876187, *4 (W.D.N.Y. 2017) (the level of pleading detail under Rule 9(b) "depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship between the parties, and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading.") (citing *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 522 (S.D.N.Y. 2015)). Plaintiffs are not required to provide a verbatim recitation of each misrepresentation, nor do they need to identify any specific employee of a defendant. *Id.* (stating that plaintiff's allegations satisfied Rule 9(b), despite paraphrasing the material substance of the statements and failing to identify the individual who made the fraudulent statement other than as an agent of the defendant); *see also Reynolds*, 135 F. Supp. 3d at 522-23 (holding that it satisfied Rule 9(b) to identify the defendant that the speaker represented). As a result, "the plaintiff need not plead manipulation to the same degree of specificity as a plain misrepresentation," especially when the claim "involve[s] facts solely within the defendant's knowledge." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007).

Given the complexity and secretive nature of a price-fixing conspiracy, the Complaint contains enough factual information "to provide [Defendants] with sufficient information to formulate a defense." *Kraatz*, 2017 WL 876187, at *4. The Complaint sets forth several allegations that identify (1) the date of the misrepresentations; (2) the name of the Defendant, (3) the content of the misrepresentation; and (4) why the statements were deceptive. For example, Plaintiffs allege that (1)

on February 17, 2017, (2) Olin, OxyChem, Westlake, Formosa USA, and Shintech (3) justified price increases by claiming tight supplies and strong demand, but (4) Plaintiffs allege that the price increases were actually the result of collusion among Defendants. *See* Compl. ¶¶ 60, 83-84. Allegations such as these can be found throughout the Complaint, enabling Defendants to identify the exact statements that are at the heart of Plaintiffs' claims—*i.e.* each announcement or private correspondence that justified price increases through false pretenses. *Id.* ¶¶ 55-72. Plaintiffs also allege in detail how Defendants manipulated the IHS Markit Caustic Soda Index to induce their customers to pay a higher price. Compl. ¶¶ 92-95. More specifically, "Defendants reached an understanding or agreement to manipulate the IHS Markit price index by selectively providing information to IHS Markit, or even false information, in order to ensure that the index reflected (and continues to reflect) the highest average contract price level practicable." *Id.* at ¶ 93. Plaintiffs also provide indirect evidence of Defendants' manipulation, such as (1) opportunity, (2) motive, (3) suspicious movements in the index itself, and (4) indicia that the integrity of the was called into question from within IHS Markit. *Id.* at ¶¶ 92-94. These specific allegations put Defendants "on notice as to the precise misconduct with which [they are] charged," and in combination with the indirect evidence in the remainder of the complaint "give[s] rise to a strong inference of fraudulent intent." *Ergowerx Int'l, LLC v. Maxell Corp. of Am.*, 18 F. Supp. 3d 430, 445 (S.D.N.Y. 2014) (internal citations omitted).

Accordingly, Plaintiffs have alleged facts with sufficient particularity to satisfy the appropriate pleading requirements as called for in this case.

**E. Plaintiffs' reliance on Defendants' misrepresentations is not required.**

Plaintiffs are not required to plead reliance to state a claim under the Vermont Consumer Protection Act ("VCPA"). By its plain language, § 2461(b) of the VCPA creates a private right of

action for "[a]ny consumer[13] who contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453 of this title, or who sustains damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453 of this title." Vt. Stat. Ann. 9, § 2461(b). First, the VCPA creates an independent remedy for violations of Vt. Stat. Ann. 9, § 2453, which prohibits unfair methods of competition, separate and apart from the remedies created by Vt. Stat. Ann. 9, § 2465. Therefore, an action under the VCPA can survive a motion to dismiss when, as here, plaintiffs allege losses as a result of unfair competition—no allegations of fraud or reliance are required.

Second, Plaintiffs can maintain a VCPA claim by alleging that they sustained damages *as a result of* Defendants' misrepresentations. *See* Vt. Stat. Ann. 9, § 2461(b). It is sufficient under the VCPA to allege that Defendants made misrepresentations to Plaintiffs' suppliers, which in turn caused Plaintiffs to pay supracompetitive prices for caustic soda. *See MyWebGrocer, Inc. v. Adlife Mktg. & Commc'ns Co.*, 383 F. Supp. 3d 307, 312 (D. Vt. 2019) (holding that allegations that defendant's misrepresentations to plaintiff's customers caused plaintiff to incur damages satisfied the "damage or injury as a result of any false or fraudulent representations" element of § 2461(b)). Therefore, Plaintiffs' reliance on Defendants' misrepresentations is not an element of a VCPA claim under these circumstances. *See Id.* (denying defendant's motion to dismiss while acknowledging that plaintiffs did not make any allegation of reliance for claim based on injuries "due to" defendant's prohibited practices). Therefore, Defendants' contention that Plaintiffs' must plead reliance to maintain an action under the VCPA is incorrect.

---

[13] "Consumer" is defined under the VCPA to include "a person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his or her trade or business but for the use or benefit of his or her business or in connection with the operation of his or her business." Vt. Stat. Ann. 9, § 2451(a)

As for Plaintiffs' consumer protection claims under the laws of Arizona, California, Illinois, North Carolina, and West Virginia, Plaintiffs are not required to plead reliance. *See Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 529 (N.D. Cal. 2012) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009)) ("Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct. A plaintiff may establish that the defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct."); *White v. Wyeth*, 227 W. Va. 131, 140, 705 S.E.2d 828, 837 (2010) ("[P]roof of a causal nexus between the deceptive conduct giving rise to the private cause of action and the ascertainable loss may require proof of reliance in some but not all instances."); *Bumpers v. Cmty. Bank of N. Virginia*, 367 N.C. 81, 89, 747 S.E.2d 220, 227 (2013) (quoting *Pearce v. Am. Defender Life Ins. Co.,* 316 N.C. 461, 471, 343 S.E.2d 174, 180 (1986)) ("Reliance, in turn, demands evidence "showing that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation."); *Oliveira Kuehn v. Stanley*, 208 Ariz. 124, 129, 91 P.3d 346, 351 (App. 2004) (linking the "consequent and proximate injury" element to reliance).

Plaintiffs here do not allege that Defendants' misrepresentation induced Plaintiffs to buy caustic soda. Plaintiffs' decision to purchase caustic soda is not like the *Ries* plaintiff's decision to buy Arizona Iced Tea because it was labelled as "natural." Caustic soda is a commodity used in Plaintiffs' respective businesses—they have been buying caustic soda long before Defendants began making their misrepresentations. Plaintiffs, however, do not (by definition) purchase caustic soda from Defendants. So, while many of the announcements were made to the public at large, they were certainly designed to deceive anyone who read them, including Plaintiffs, and they had the effect of inflating the price of caustic soda throughout the supply chain, beginning with their direct customers. Under these facts, the proper causal connection between Defendants' deceptive conduct and

Plaintiffs' injuries is that Defendants' customer—i.e. direct purchasers—relied on Defendants' misrepresentations, thus paying an artificially high price for caustic soda, who then resold the caustic soda to Plaintiffs in the normal course of business at artificially high prices, thereby damaging Plaintiffs. *Compare to Spacesaver Corp. v. Marvel Group, Inc.*, 621 F.Supp.2d 659 (W.D. Wis. 2009) (dismissing claim where Defendant's representations to third parties misled third parties but did not affect any purchases made by Plaintiffs themselves).

The Illinois Supreme Court articulated this exact sentiment in *Shannon v. Boise Cascade Corp.*, 208 Ill.2d 517, 805 N.E.2d 213 (2004). In *Shannon*, the Court stated:

> **Although proof of actual deception of a plaintiff is required, this is not to say that the deception must always be direct between the defendant and the plaintiff to satisfy the requirement of proximate cause under the Act. For instance, if the product literature had in fact deceived a particular builder, architect, or contractor, resulting in the installation of defective siding on a home, the damage could arguably have occurred "as a result of" the indirect deception, as required by section 10a(a) of the Act (815 ILCS 505/10a(a) (West 2000)). In those circumstances, the purchaser, who may have no independent knowledge of the qualities or expected performance standards of siding, is deceived because of the deception of the builder, architect or contractor, who reasonably should have had correct knowledge.**

*Id.* at 218 (emphasis added).

This is not to be confused with a "fraud-on-the-market" theory of reliance. Plaintiffs do not argue that caustic soda trades on an efficient market or that Defendants' conduct was a part of the flow of information that the market somehow incorporated into the price of caustic soda. Likewise, Plaintiffs do not argue that reliance should be presumed, nor do Plaintiffs allege a long and attenuated causal chain between Defendants' misrepresentations and Plaintiffs' damages that requires an expert-level understanding of economics to unpack. Plaintiffs do, however, assert a simple theory of causation and argue that in a case such as this, where Defendants deceived each of their customers—including caustic soda resellers—via direct business interactions, the element of proximate causation can be satisfied when Plaintiffs purchase caustic soda at artificially high prices from those resellers who were the direct targets of Defendants' deceptive conduct.

Plaintiffs allege sufficient facts to satisfy the element of proximate causation. Plaintiffs allege that Defendants' customers were deceived by and relied on Defendants' misrepresentations. Defendants began their deceptive conduct in the fourth quarter of 2015, after Olin purchased Dow's chloralkali assets. Compl. ¶ 52. They began to justify price increases based on GDP growth, increased cost of production, and tight supplies. *Id.* ¶¶ 49-50. These justifications, however, merely obfuscated the true cause underlying the price increases—that the major U.S. manufacturers were colluding to inflate the price of caustic soda. *Id.* Although Defendants had attempted to increase prices in the past, those attempts were unsuccessful. *Id.* ¶ 51. As Defendants commenced their deceptive course of conduct, however, caustic soda prices began a sharp and steady rise despite opposing macroeconomic forces. *Id.* ¶¶ 49-52. This Court noted in its March 27 Order that "Defendants led their customers to believe that caustic soda supply was 'tight' and product 'scarce' or otherwise limited," and that at least one caustic soda distributor did indeed rely on Defendants' statements at the AFPM conference. ECF No. 55, p. 8. The Court also emphasized that Defendants frequently reached out directly to their customers. *See, e.g., Id.*, pp. 8-10, 19, 21, 38, 42-43. Clearly, the increases were successful, at least in part, because Defendants' customers (who sell caustic soda to Plaintiffs) were deceived by and relied on Defendants' individualized, targeted misrepresentations, inducing them to pay higher prices for caustic soda. The causal chain, therefore, is simple: Defendants deceived their customers via direct communications into paying higher prices for caustic soda, many of whom resold to Plaintiffs, passing the overcharge onto Plaintiffs and causing them to "have paid more for the Caustic Soda they purchased during the Class Period than they otherwise would have paid in the absence of the Defendants' conduct." *Id.* ¶ 136; *Compare to Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (unlike here, dismissing Arizona CFA counterclaim because parties were not in a merchant-consumer relationship).

Accordingly, Plaintiffs' reliance on Defendants' misrepresentations should not be an element here, and Plaintiffs plead the requisite causal connection to establish that Defendants' misrepresentations caused, in part, Plaintiffs' injuries. *See Ries*, 287 F.R.D. at 529-30 (quoting *Tobacco II*, 207 P.3d 20 (holding that a plaintiff was only required to allege that a defendant's misrepresentation was one of several causes of the plaintiff's damages).

**F. Plaintiffs may pursue the Montana consumer protection claim on a class-wide basis.**

The Supreme Court decision in *Shady Grove* applies to Plaintiffs' Montana Consumer Protection Act claim. The prohibition of class actions under the MCPA "remains procedural in nature and [ ] Rule 23 applies to determine whether a claim may be brought as a class action." *Wittman v. CB1, Inc.*, CV-15-105-BLG-BMM, 2016 WL 3093427, at *6 (D. Mont. 2016); *see also Hill v. LLR, Inc.*, No. CV-18-120-GF-BMM-JCL, 2019 WL 2404900, at *11 (D. Mont. 2019) (denying defendant's motion to dismiss because arguments did not "warrant departing from Judge Morris's well-reasoned decision in *Wittman*"). Accordingly, Defendants' motion to dismiss claims brought under Montana's Consumer Protection Act should be denied.

**G. Plaintiffs plead sufficient intrastate effects.**

Plaintiffs allege that Defendants engaged in a nationwide price-fixing conspiracy and bring claims under the New Hampshire Consumer Protection Act only on behalf of those who purchased caustic soda in the state of New Hampshire. Compl. ¶ 157, xxiv. By definition, Defendants can only be found liable for violations of the New Hampshire Consumer Protection Act related to the impact their price-fixing conspiracy had in that state. Given the New Hampshire Supreme Court's interpretation of N.H. Rev. Stat. §§ 358-A:2—namely that the New Hampshire legislature intended for indirect purchasers to bring antitrust actions under that statute—it would be at odds with the "expansive remedial goals" of the Consumer Protection Act to allow out-of-state Defendants to avoid liability for damages sustained by New Hampshire residents and businesses. *See LaChance v. U.S.*

*Smokeless Tobacco Co.*, 931 A.2d 571 (N.H. 2007). Therefore, the Court should deny Defendants' motion to dismiss claims brought pursuant to New Hampshire's Consumer Protection Act.

The North Carolina statute similarly requires that Plaintiffs allege that Defendants' price-fixing conspiracy caused supracompetitive prices in North Carolina. *See Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharm., Inc.*, 353 F. Supp. 3d 678, 695 (M.D. Tenn. 2018) (citing *In re Automotive Parts Antitrust Litig.*, 29 F.Supp.3d 982, 1010 (E.D. Mich. 2014); *In re Chocolate Confectionary Antitrust Litig.*, 602 F.Supp.2d 538, 581 (M.D. Pa. 2009)). Plaintiffs allege that Defendants entered into a nationwide price-fixing conspiracy, and the North Carolina claims are limited to purchases made in North Carolina. Accordingly, Defendants' motion to dismiss Plaintiffs' claim brought pursuant to North Carolina's Unfair and Deceptive Trade Practices Act should be denied.

Plaintiffs allegations are also sufficient to maintain a claim under Nebraska's Consumer Protection Act ("NCPA"). The NCPA does not require named plaintiffs to be Nebraska residents, nor does it require named plaintiffs to make purchases in Nebraska—it does require named plaintiffs to allege conduct that affects the people of the State of Nebraska. *See, e.g., Sergeants*, 2018 WL 7197233 at *46 (denying defendants' motion to dismiss price-fixing claim brought under the NCPA even though plaintiffs were a New York fund and did not allege making any purchases in Nebraska). Furthermore, Defendants' reliance on *Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 142 (Neb. 2000), is inapposite. Far from supporting dismissal, *Nelson* provides strong support that Plaintiffs' claims are exactly the type of claims meant to be brought pursuant to the NCPA. *Nelson* involved a single transaction between a single consumer and a car dealership. *Id.* at 139. The Nebraska Supreme Court held that the NCPA did not apply that transaction, nor to "flea markets or garage sales," but instead was enacted "as an antitrust measure to protect Nebraska consumers from monopolies and price-fixing conspiracies." *Id.* at 142.

Plaintiffs here allege a nationwide price-fixing conspiracy among Defendants to inflate the price of caustic soda, including caustic soda purchased in Nebraska. *See supra* Section I.B. These allegations are much more akin to those in *Sergeants* than to the single transaction in *Nelson*. Indeed, Plaintiffs allegations are exactly what the Nebraska legislature had in mind when it enacted the NCPA. Accordingly, Defendants' motion to dismiss claims brought pursuant to the NCPA should be denied.

**H. The procedural pre-suit demand requirement in the West Virginia consumer protection statute does not warrant dismissal.**

Defendants claim that Plaintiffs' purported failure to comply with the pre-suit demand requirement of the West Virginia consumer protection statute is fatal their claims. Defs.' Br. at 26. This argument is meritless; the pre-suit demand requirement is procedural and does not apply in federal court. *See supra* Section I.A.

**I. *Illinois Brick* does not preclude claims under the Alaska and New Jersey consumer protection statutes.**

**Alaska**: Defendants concede there is no statutory ban on indirect purchaser actions under the Alaska Unfair Trade Practices and Consumer Protection Act. Defs.' Br. at 14-15; *see also* Alaska Stat. §§ 45.50.471, *et seq*. They nonetheless ask this Court to create such a limitation. The Alaska statute allows a "person who suffers an ascertainable loss of money or property as a result of another person's act or practice. . . [to] bring a civil action to recover for each unlawful act or practice. . ." Alaska Stat. § 45.50.531(a). Where the plain meaning of a statute is clear, any contrary interpretation bears a heavy persuasive burden. *See, e.g., Alaska Tr., LLC v. Bachmeier,* 332 P.3d 1, 7 (Alaska 2014); *W. Star Trucks, Inc. v. Big Iron Equip. Serv.*, 101 P.3d 1047, 1049-50 (Alaska 2004) (rejecting argument that Alaska Stat. § 45.50.471(b)(14) applies only to consumer goods and services in part because such an interpretation was "not supported by the literal language of the act"). A burden that Defendants have not met here. Because indirect purchasers fall within the plain language of the statute, the motion should be denied.

**New Jersey**: Defendants argue that *Illinois Brick* precludes Plaintiffs' claim under the New Jersey consumer protection statute "in the absence of any communications directly to consumer

plaintiffs" related to the challenged transactions. Defs.' Br. at 14. The language from the case cited by Defendants, *Wilson v. Gen. Motors Corp.*, 921 A.2d 414, 417 (N.J. 2007), prohibits indirect purchaser actions under *Illinois Brick* unless there is "a direct *or* indirect statement or communication" with the plaintiffs. *Id.* (emphasis added). Here, Plaintiffs have alleged that Defendants facilitated their price-fixing conspiracy in part through representations made to various price indexes, which they used to mask the artificially inflated prices as true market prices. *See* Compl. ¶¶ 4, 92-95. This price index manipulation was designed to give Plaintiffs and the proposed class the impression that they were paying competitive—and even discounted—prices for caustic soda, rather than the supracompetitive prices they were actually paying. *Id.* ¶ 93. Plaintiffs further allege that the reasons communicated to the market for the price increases were mere pretext meant to induce market participants to pay higher prices for caustic soda. *Id.* ¶¶ 49-50, 59, 64, 72. These are sufficient allegations of Defendants' communications. Plaintiffs' claim under the New Jersey consumer protection statute should proceed.

### J. Plaintiffs may seek damages for violations of the Minnesota consumer protection laws.

Defendants incorrectly state that damages are unavailable in a private cause of action brought under the Minnesota Unfair and Deceptive Trade Practices Act ("MUTDPA"). Indeed, Plaintiffs may bring actions for damages under both the MUDTPA and the Minnesota Consumer Fraud Act through the state's "private attorney general" statute. *See Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 836-37 (D. Minn. 2012). To bring a claim via the private attorney general statute, Minn. Stat. § 8.31, Plaintiffs are required to "demonstrate that their cause of action benefits the public." *Tatone*, 857 F. Supp. 2d at 836 (citing *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000). The public benefit requirement is intended to be applied in such cases that would advance Minnesota's interests. *See Id.* (citing *Kivel v. WealthSpring Mortg. Co.*, 398 F. Supp. 2d 1049, 1056 (D. Minn. 2005)). The requirement cannot be satisfied by allegations of one-on-one transactions, but rather by statements made to larger

audiences or the public at large. *See Collins v. Minnesota School of Business, Inc.*, 655 N.W.2d 320, 330 (Minn. 2003).

Plaintiffs' claims are precisely the type meant to be enforced through the private attorney general statute. Defendants made public announcements concerning their price increases and the state of the caustic soda market and engaged in a price-fixing scheme that inflated the price of caustic soda for everyone, including buyers in Minnesota. *See* Compl. ¶¶ 55-72. Defendants did not engage in unfair practices that affected a single consumer, but instead injured any and all members of the public who purchased this ubiquitous chemical commodity. Accordingly, Defendants' motion to dismiss claims brought pursuant to MUDTPA or MCFA should be denied.

## III. THE COURT SHOULD UPHOLD PLAINTIFFS' UNJUST ENRICHMENT CLAIMS.

Defendants challenge the unjust enrichment claims on numerous grounds; none of which are persuasive nor mandate dismissal. In asking the Court to dismiss these claims, Defendants attempt to pin the success of the unjust enrichment claims on the fate of Plaintiffs' antitrust and consumer protection claims (and baselessly assume that the antitrust and consumer protection claims will fail); insist that *Illinois Brick* deprives Plaintiffs of both statutory and equitable remedies in non-repealer jurisdictions; ask the Court to resolve disputed factual issues at the pleadings stage; and seek to impose pleading requirements not justified under the challenged state laws, while simultaneously trying to strip Plaintiffs of their rights under the federal rules. As explained below, their challenges are meritless and have been rejected in this Circuit and elsewhere.

Although Defendants also criticize Plaintiffs for failing to plead the specific elements of an unjust enrichment claim under each state's law, they offer very little state-specific authority themselves. They primarily direct the Court to an appendix of cases that they contend support their arguments. This is improper, and the Court may deny Defendants' motion on this basis alone. *See United Food & Commer. Workers Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teikoku Pharma USA, Inc.*,

74 F. Supp. 3d 1052, 1090 (N.D. Cal. 2014) (finding "that defendants—in omitting substantive state-by-state analysis from their briefing and asking the Court instead to conduct that analysis by reviewing a list of cases provided in appendices—have not properly raised their arguments," and denying motion to dismiss unjust enrichment claims).

**A. Plaintiffs properly pleaded their unjust enrichment claims.**

Plaintiffs bring unjust enrichment claims under the laws of forty-eight states and the District of Columbia. *See* Compl. Fourth Claim for Relief. Defendants first criticize Plaintiffs for failing to "identify—or plead the elements of—the unjust enrichment laws of any particular jurisdiction." Defs.' Br. at 33. Despite the argument that the "requirements for unjust enrichment vary significantly by jurisdiction," courts have found that the elements of an unjust enrichment claim take on a universal form regardless of the state law invoked. *Propranolol*, 249 F. Supp. 3d at 729 (finding that the "elements of unjust enrichment are similar in every state" (citations omitted)); *Lazarek v. Ambit Energy Holdings, LLC*, No. 15-CV-6361-FPG, 2017 WL 4344557, at *6 (W.D.N.Y. Sep. 28, 2017) ("The elements of unjust enrichment are similar in every state."). *Cf. In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009), *clarified by,* F.R.D. 113 (D.N.J. 2010) ("While there are minor variations in the elements of unjust enrichment under the laws of the various states, those differences are not material and do not create an actual conflict."). To state a claim for unjust enrichment, a plaintiff must generally allege: (1) at the plaintiff's expense, (2) the defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying for it. *See* Restatement (First) of Restitution § 1 (1937); *Zetia*, 2019 WL 1397228 at *35; *EpiPen*, 336 F. Supp. 3d at 1345-46; *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004). Plaintiffs have stated a claim for unjust enrichment here.

Plaintiffs allege that they conferred an economic benefit on Defendants in the form of their overpayments for caustic soda. Compl. Fourth Claim for Relief ¶¶ 23-25. This economic benefit is

reflected by the increased profits obtained by Defendants and is directly traceable to their unlawful and inequitable conduct. *Id.* ¶¶ 23-25, 28. And it would be unjust for Defendants to retain those ill-gotten gains because they were procured through an anticompetitive agreement to eliminate price competition between competitors. *Id.* ¶¶ 29-30. These allegations state a claim for unjust enrichment, *EpiPen*, 336 F. Supp. 3d at 1345-46, and there is no dispute that Plaintiffs have alleged facts plausibly supporting these universal elements. To "[r]equir[e] recharacterization of every allegation into an unjust enrichment framework would create needlessly repetitive pleading." *Zetia*, 2019 WL 1397228, at *35. Where, as here, the elements of unjust enrichment have otherwise been adequately pleaded, courts have refused to dismiss unjust enrichment claims simply because the plaintiff did not enumerate the specific elements of the cause of action. *Id.*, *adopted at* 400 F. Supp. 3d 418, 441 ("[T]he court agrees with the Magistrate Judge's reasoning and conclusion that when considering the EPPs' Consolidated Complaint as a whole, it satisfies the Rule 8 pleading requirement for pleading unjust enrichment."); *Lazarek*, 2017 WL 4344557, at *6. The Court should deny the motion to dismiss the unjust enrichment claims.

**B. Plaintiffs may bring their unjust enrichment claims regardless of the underlying statutory basis.**

Unjust enrichment is a separate and distinct legal claim from a statutory antirust or consumer protection claim. Although Plaintiffs' unjust enrichment claims are based on conduct that also violates state antitrust and consumer protection laws, their unjust enrichment claims do not rise and fall alongside those statutory claims. Arguing to the contrary, Defendants contend that Plaintiffs' claims fail for the same reasons as the underlying state law statutory claims, while also asserting that *Illinois Brick* precludes unjust enrichment claims in non-repealer jurisdictions. *See* Defs.' Br. at 35-37. Neither argument is persuasive.

"[U]njust enrichment claims are viable regardless of the applicable state antitrust laws." *King Drug Co. of Florence v. Cephalon, Inc.*, 702 F. Supp. 2d 514, 540 (E.D. Pa. 2010), *abrogated by In re K-Dur*

*Antitrust Litig.,* 686 F.3d 197 (3d Cir. 2012). As such, the mere enactment of statute does not displace the Court's inherent equitable powers. *See Chevron Corp. v. Donziger*, 833 F.3d 74, 138 (2d Cir. 2016) (explaining that "unless a statute expressly, 'or by a necessary and inescapable inference, restricts the court's jurisdiction in equity,' we will infer that 'all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction.'" (quoting *Porter v. Warner Hold. Co.*, 328 U.S. 395, 398 (1946)). The court in *Cardizem*, for example, warned against confusing "[p]laintiffs' right to recover an equitable remedy under a common law claim based upon principles of unjust enrichment with its right to recover a remedy at law for an alleged violation of a state's antitrust laws." *Cardizem*, 105 F. Supp. 2d at 669. Rejecting the same argument Defendants make here, the court noted that common law claims may be successfully asserted even where statutory or contract claims are unsuccessful. *Id.*; *see also In re Skelaxin Metaxalone Antitrust Litig.*, No. 1:12-md-2343, 2013 WL 2181185, at *25 (E.D. Tenn. May 20, 2013). Thus, Plaintiffs' unjust enrichment claims may proceed even if some of their statutory claims are dismissed.

Defendants' assertion that Plaintiffs "may not use unjust enrichment claims to circumvent *Illinois Brick*" is similarly unavailing. Defs.' Br. at 35, 37. A state's position on *Illinois Brick* does not dictate the outcome of Plaintiffs' unjust enrichment claims. "No reason or logic supports a conclusion that a state's adherence to the rule of *Illinois Brick* dispossesses a person not only of a statutory legal remedy for an antitrust violation, but also dispossesses the same person of his right to pursue a common law equitable remedy." *Generic Pharm.*, 368 F. Supp. 3d at 850 (quoting *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 46 (D.D.C. 2008)); *see also King Drug Co. of Florence v. Cephalon, Inc.,* 702 F. Supp. 2d at 540. Importantly, the issues at the heart of the *Illinois Brick* decision—tracing overcharges throughout the distribution chain and the fair apportionment of damages—are not implicated by an unjust enrichment claim, thus assuaging any policy concerns over duplicative recovery and the purported complexity of resolving indirect purchaser actions. *See Generic Pharm.*, 368 F. Supp. 3d at

850 (citing *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 737 (1977)). The focus is on the Defendants' conduct and inequitable profits they unlawfully obtained, not Plaintiffs' losses. *Id.*; *In re Cardizem Antitrust Litig.*, 200 F.R.D. 326, 352 (E.D. Mich. 2001) ("[T]he nature of Plaintiffs' restitution claim for unjust enrichment and disgorgement is undivided and integrated[.]"). *Illinois Brick* should not act as a bar to Plaintiffs' claims.

### C. Whether Plaintiffs received the benefit of the bargain is a factual question not ripe for resolution on a motion to dismiss.

Defendants challenge the unjust enrichment claims under all state laws because Plaintiffs allegedly received the benefit of the bargain. Defs.' Br. at 38-39. They essentially argue that Plaintiffs got what they paid for and, therefore, Defendants should not be held liable for their unjust and injurious conduct. That Plaintiffs received caustic soda in return for their artificially inflated payments does not mean the supracompetitive profits derived by Defendants were equitable and that they should be able to retain those profits. To the contrary, Plaintiffs unwittingly—without knowledge of the underlying anticompetitive conduct—paid supracompetitive prices for caustic soda such that "it would be unjust under the alleged circumstances" for Defendants to keep those profits. *Cardizem*, 105 F. Supp. 2d at 671. Defendants cannot exploit Plaintiffs' individual demand for caustic soda as an essential part of their business operations to shield their conduct from liability.

Furthermore, in upholding unjust enrichment claims at the pleadings stage, courts have found that the inquiry into whether a plaintiff received the benefit of the bargain is a factual question not suitable for resolution on a motion to dismiss. *See EpiPen*, 336 F. Supp. 3d at 1345 ("The court cannot conclude—as a matter of law—that the class plaintiffs' unjust enrichment claims fail simply because they have alleged that they received the EpiPen in exchange for their payments."); *Auto. Parts*, 29 F. Supp. 3d at 1015. When properly framed, "[t]he issue is whether the transaction was unjust," and Plaintiffs' allegations that they "overpaid for [caustic soda] because Defendants fixed the prices of [caustic soda] . . . [gives] rise to factual questions as to whether the consideration was reasonable,

valuable or adequate." *Auto. Parts*, 29 F. Supp. 3d at 1015-1029 (rejecting defendants' benefit of the bargain argument under numerous state laws).

As support for their broadside against the unjust enrichment claims, Defendants cite principally to the Restatement (First) of Restitution § 107(1). Defs.' Br. at 38. In doing so, "Defendants do not raise appropriate grounds for such a dismissal because their argument is based upon what is essentially a model law rather than actual law." *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 918-919 (E.D. Pa. 2012). Defendants' case support similarly leans on the Restatement and on a feedback loop of cases citing to the Restatement. *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d at 210 (citing the Restatement); *Intel Corp.*, 496 F. Supp. 2d at 421 (citing *New Motor Vehicles*); *In re Dig. Music Antitrust Litig.*, 812 F. Supp. 2d 390, 412 (S.D.N.Y. 2011) (citing *Intel Corp.* and *New Motor Vehicles*). And Appendix D is devoid of any state-specific authority whatsoever supporting application of this principal in any jurisdiction. Instead, Defendants offer nothing more than a conceptual basis for dismissal. *Processed Egg*, 851 F. Supp. 2d at 919 ("Because Defendants have expressed their argument in terms of a model principle of unjust enrichment—as opposed to the actual law of the 21 jurisdictions at issue—the Court determines that it cannot dismiss the Plaintiffs' unjust enrichment claims on these conceptual grounds as a matter of law."). The Court should therefore reject the argument that "any consideration" given in return for caustic soda defeats Plaintiffs' unjust enrichment claims and deny the motion to dismiss. *See K-Dur*, 338 F. Supp. 2d at 545 ("The various decisions cited by Defendants do not support their contention that 'any consideration' given for a benefit conferred necessarily defeats unjust enrichment claims."); *Auto. Parts*, 29 F. Supp. 3d at 1015 (disagreeing with defendants that "the exchange of Fuel Senders for payment acts as a flat ban on [plaintiffs'] unjust enrichment claims").

### D. Plaintiffs may plead their unjust enrichment claims in the alternative.

Defendants argue that the unjust enrichment claims under the laws of Arizona, Delaware, Illinois, Massachusetts, Minnesota, Montana, Nevada, New Hampshire, New York, North Dakota, South Dakota, Utah fail because Plaintiffs have not alleged an "absence of remedy provided by law." Defs.' Br. at 37-38. To begin, the absence of an adequate remedy at law is not a requirement for several of the states challenged here. *See Processed Egg*, 851 F. Supp. 2d at 915-18 n.50 (analyzing unjust enrichment law of Massachusetts, Minnesota, Nevada, South Dakota, and Utah). Moreover, even in states where an adequate legal remedy would ultimately preclude their recovery on the unjust enrichment claims, Plaintiffs may plead their claims in the alternative. As such, it would be premature to dismiss the unjust enrichment claims before a determination on Plaintiffs' available remedies.

Pursuant to Fed. R. Civ. P. 8(d)(2), a party "may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Plaintiffs may also "state as many separate claims or defenses as [they have], regardless of consistency." Fed. R. Civ. P. 8(d)(3). Thus, "while a plaintiff cannot obtain a double recovery under the [antitrust laws] and state unjust enrichment law, there is no bar to pleading both claims simultaneously." *In re Credit Default Swaps Antitrust Litig.*, No. 13md2476 (DLC), 2014 WL 4379112, at *18 (S.D.N.Y. Sep. 4, 2014) (quoting *Chaluisan v. Simsmetal E. LLC*, 698 F. Supp. 2d 397, 406-07 (S.D.N.Y. 2010)). *Cf. Davis v. Lenox Hill Hosp.*, No. 03cv3746, 2004 WL 1926087, at *7 (S.D.N.Y. Aug. 31, 2004) ("[The defendants] correctly note that [a plaintiff] cannot *recover* under both federal and state law for the enforcement of the same right. At the pleading stage, however, parties are entitled to plead causes of action under both state and federal law to vindicate the same right unless the federal law preempts the state claim."). Defendants' challenge thus fails at the pleading stage, because Plaintiffs may properly plead their unjust enrichment claims in the alternative. *Liquid Aluminum*, 2017 WL 3131977 at *29*; In re Dairy*

*Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 WL 3988488, at *36 (N.D. Ill. June 29, 2015); *King Drug*, 702 F. Supp. 2d at 540 ("[I]t has long been recognized that plaintiffs are allowed to plead alternative causes of action and unjust enrichment is commonly recognized as one (1) of those permissible causes of action."); *In re: Celexa & Lexapro Mktg. & Sales Practices Litig.*, 751 F. Supp. 2d 277, 297 (D. Mass. 2010); *see also Rodriguez v. It's Just Lunch, Int'l*, No. 07 Civ. 9227 (SHS)(KNF), 2010 WL 685009, at *11 (S.D.N.Y. Feb. 23, 2010) ("Since the plaintiffs have not, as of yet, demonstrated the existence of an enforceable contract(s), their unjust enrichment claim is not precluded, as a matter of law.").

Moreover, Defendants do not argue that the state antitrust and consumer protection statutes provide the exclusive remedies for injuries arising from the challenged conduct, such that they should preclude parallel unjust enrichment claims at the pleadings stage. *See In re Light Cigarettes Mktg. Sales Practices Litig.,* 751 F. Supp. 2d 183, 192-193 (D. Me. 2010); *Levine v. First Am. Title Ins. Co.*, 682 F. Supp. 2d 442, 468 (E.D. Pa. 2010). Nor does the existence of *any* legal remedy necessarily constitute an *adequate* legal remedy. *See id.* Indeed, Defendants' case citations generally do not explain what it means for Plaintiffs to have an "adequate remedy at law" other than for contractual remedies, let alone clarify what that concept means in the context of an alleged price-fixing conspiracy, nor do they divest Plaintiffs of their ability to plead unjust enrichment in the alternative. *See, e.g., Cmty. Guardian Bank v. Hamlin*, 898 P.2d 1005 (Ariz. Ct. App. 1995) (analyzing whether post-divorce wage garnishment was proper following default judgment against defendant for unjust enrichment); *VCS, Inc. v. La Salle Dev., Ltd. Liab. Co.*, 293 P.3d 290, 300 (UT 2012) (explaining that unjust enrichment was unavailable where the plaintiff had failed to exhaust remedies in the "mechanic's lien context"); *Ahrenberg v. Liotard-Vogt*, No. 653687/2015, 2016 WL 4506553, at *14 (Sup. Ct. NY Cnty. Aug 29, 2016) ("Therefore, defendants are incorrect to argue that an unjust enrichment claim cannot be brought in the alternative to a fraud or breach of contract claim. Only if the other routes for remedies succeed does an unjust

enrichment claim become duplicative." (discussing *Samiento v. World Yacht Inc.*, 883 N.E.2d 990 (N.Y. Ct. App. 2008)); *Rindal v. Sohler*, 658 N.W.2d 769, 772 (S.D. 2003) (unjust enrichment not available where the plaintiffs had "a plain, adequate and speedy remedy at law for money damages for breach of contract"); *see also Nemec v. Shrader*, 991 A.2d 1120, 1130 (De. 2010) (affirming on other grounds a lower court opinion finding that Delaware courts "have consistently refused to permit a claim for unjust enrichment when the alleged wrong arises from a relationship governed by contract"); *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004) (where "an automobile insurance policy governed the relationship of the parties," "the unambiguous contract language [] control[led], not equitable considerations"); *Santagate v. Tower*, 833 N.E.2d 171, 176 (Mass. Ct. App. 2005) (citing *Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982) (finding that "plaintiff has made no showing that its remedy at law against Southfield based upon the construction contract is inadequate"))); *Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992) ("Appellants had a means of remedy through the use of their mechanics' liens or in a breach of contract suit against Van Abel."); *Bullard v. Zimmerman*, 268 P. 512, 517 (Mont. 1928) ("[I]n order to refuse a suitor relief in equity, it is not sufficient that he have a remedy at law; that does not fulfill the requirement; it is necessary that he have a plain, speedy and adequate remedy at law."); *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1125 (D. Nev. 2007) (explaining that "the statutory provisions [at issue] may not provide as complete a remedy as unjust enrichment" and denying motion to dismiss unjust enrichment claim); *E. Elec. Corp. v. FERD Constr., Inc.*, No. 05-cv-303JD, 2005 WL 3447957, at *2 (D.N.H. Dec. 15, 2005) ("Eastern's argument, however, does not explain why the remedy it seeks against FERD for breach of contract, seeking damages for the amounts that it alleges have not been paid, is not adequate."); *Parsons Infrastructure & Tech. Grp., Inc. v. Gilbane Bldg. Co.*, No. 05-cv-01-PB, 2005 WL 2978901, at *1 (unjust enrichment

unavailable in part because defendant had a "counterclaim for breach of contract against [the plaintiff] that it has so far failed to pursue").

Therefore, "regardless of whether or not a jurisdiction requires proving the absence of an adequate remedy at law as part of the *prima facie* claim for unjust enrichment, an unjust enrichment claim cannot be deficient on the grounds that the complaint also alleges claims at law for alternative forms of relief." *Processed Egg*., 851 F. Supp. 2d at 915. The Court should deny the motion to dismiss.

**E. Plaintiffs conferred a benefit on Defendants in the form of overpayments.**

Plaintiffs conferred a benefit on Defendants that is directly traceable to their anticompetitive conduct. The caustic soda supply chain, as it relates to Plaintiffs and the proposed class, is short and direct. By manipulating the supply-side of the caustic soda market, Plaintiffs' demand-side purchases conferred a benefit upon Defendants by enabling them to profit off their anticompetitive price increases. In fact, without Plaintiffs and the proposed class to pay the supracompetitive prices imposed upon (and passed along by) the direct purchaser distributors, Defendants would have been unable to overcharge the distributors in the first instance.

"It is a foundational principle of antitrust law that overcharges are passed along the distribution chain to consumers." *Sergeants*, 2018 WL 7197233, at *59. Plaintiffs allege that they were left with no choice but to accept the price increases, because when "there are few or no substitutes for a product, purchasers have little choice but to pay higher prices" in order to produce their own goods and services. Compl. ¶ 113. Given the lack of adequate substitutes for caustic soda, customers, including Plaintiffs and the proposed class, "paid all or a portion of" the anticompetitive price increases. *Id.* ¶ 114. Plaintiffs therefore "plausibly conferred some benefit on Defendants, albeit indirectly, by purchasing [caustic soda] at elevated prices, and Defendants profited from the individual demand of the [caustic soda] consumers, the ultimate victims of Defendants' unlawful conduct." *DDAVP*, 903 F. Supp. 2d at 234; *see also Cardizem*, 105 F. Supp. 2d at 671 (plaintiffs conferred a benefit

"in the form of overpayments and increased profits"). "[T]he mere fact that there has been no direct contact between a defendant and the plaintiff does not preclude a finding that the defendant received a direct benefit from that plaintiff." *Williams v. Wells Fargo Bank*, *N.A.*, No. 11-21233-CIV, 2011 WL 4368980, at *9 (S.D. Fla. Sep. 19, 2011) (citation omitted).

Defendants' assertion that Plaintiffs must allege that they conferred a benefit directly on Defendants under the laws of nineteen jurisdictions[14] is mistaken. Defs.' Br. at 39. They suggest that, "by definition," only direct purchasers could ever confer a direct benefit on them. Defs.' Br. at 40. But the "direct benefit" requirement has been analyzed by several courts in indirect purchaser actions, and the pleading standard that Defendants seek to impose on Plaintiffs does not exist or is much less stringent than they suggest. The focus is on whether Plaintiffs bestowed at least some benefit—financial or otherwise—on Defendants, which they have done here. *See, e.g., Generic Pharm.*, 368 F. Supp. 3d at 851 ("The EPPs and IRPs have plausibly alleged that their alleged losses from purchasing Group 1 drugs at inflated prices are connected to benefits incurred by Defendants who allegedly conspired to raise the prices of those drugs.") (rejecting direct benefit challenge to the unjust enrichment claims under the laws of Alabama, Arizona, the District of Columbia, Florida, Georgia, Idaho, Kansas, Maine, Michigan, New Jersey, New York, North Carolina, North Dakota, Pennsylvania, Rhode Island, and Utah); *Sergeants*, 2018 WL 7197233, at *58-69 (analyzing direct benefit requirements under state law and refusing to dismiss unjust enrichment claims under the laws of Alabama, Arizona, Florida, Kansas, Maine, Massachusetts, New York, North Carolina, North Dakota, Rhode Island, Utah, West Virginia, Wisconsin, and the District of Columbia); *Solodyn*, 2015 WL 5458570 at *18 ("District courts interpreting the laws of Florida, Kansas, Michigan, North Carolina and Utah have refused to dismiss unjust enrichment claims on this basis, finding that these states'

[14] Alabama, Arizona, Florida, Georgia, Idaho, Kansas, Maine, Massachusetts, Michigan, New Jersey, New York, North Carolina, North Dakota, Pennsylvania, Rhode Island, Utah, West Virginia, Wisconsin, and the District of Columbia.

unjust enrichment laws do not necessarily require a plaintiff to plead a conferral of a direct benefit."); *Processed Egg*, 851 F. Supp. 2d at 924-35 (analyzing direct benefit requirements under state law and refusing to dismiss unjust enrichment claims under the laws of the District of Columbia, Florida, Kansas, New York, North Carolina, Utah, and West Virginia); *Cardizem*, 105 F. Supp. 2d at 671 (explaining that "courts dismiss [unjust enrichment] claims only where the plaintiffs fail to allege facts showing that they have bestowed some sort of benefit upon the defendant that the defendant ought not keep in equity and good conscience").

Defendants rely upon *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2013 WL 1431756, at *24-26 (E.D. Mich. Apr. 9, 2013), and *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 1416259, at *2-3 (N.D. Ill. Apr. 1, 2010), in support of their direct benefit argument. Defs.' Br. at 39-40. In both cases, however, the products subject to the price-fixing conspiracies were components in the end-products or services purchased by the plaintiffs. *See Refrigerant Compressors*, 2013 WL 1431756 at *11 ("The TCAC alleges that each of the named IP Plaintiffs purchased products that contain hermetic compressors."); *Aftermarket Filters* 2009 WL 3754041, at *8 (explaining that the indirect purchasers included retail consumers who bought and installed filters themselves and those who purchase maintenance services that include changing the filter). The plaintiffs were therefore farther removed from the defendants and, unlike Plaintiffs here, paid for the price-fixed products incidentally as components of the end-product or with other services.

*Carmona v. Spanish Broad. Sys.*, No. 08 Civ. 4475(LAK), 2009 WL 890054 (S.D.N.Y. Mar. 30, 2009), is similarly distinguishable. There, the plaintiffs asserted an unjust enrichment claim against the defendant radio station that promoted a scam trivia contest for an "all-expenses paid" vacation package provided by co-defendant travel company. But "[o]ther than listening to [defendant's] broadcasts," there was no relationship between the plaintiffs and the radio station, since the contest was fully administered by the travel company. *Id.* at *6. And the plaintiffs' allegations that the radio

station was able "to reap untold advertising revenue" by promoting the contest were insufficient to plausibly allege that it was enriched by their payments of administration fees to the travel company. *Id.* The Court should deny the motion to dismiss.

**F. Plaintiffs may bring their unjust enrichment claim under New York law.**

Defendants ask the Court to dismiss the unjust enrichment claim under New York law because (1) the link between the parties is "too attenuated," (2) the claim is duplicative of other claims asserted by Plaintiffs, and (3) the claim is too vague. Defs.' Br. at 40-42. These arguments are unpersuasive.

Defendants argue that New York law requires a direct relationship between the parties to sustain an unjust enrichment claim. They rely on *Sperry v. Crompton Corp.*, 863 N.E.2d 1012 (N.Y. 2007), in support. But *Sperry* is distinguishable: it dealt with an unjust enrichment claim by tire purchasers against the producers of chemicals involved in the rubber-making process of those tires. *Sperry,* 863 N.E.2d at 1018 ("Here, the connection between the purchaser of tires and the producers of chemicals used in the rubber-making process is simply too attenuated to support such a claim."). More simply, *Sperry* was concerned with the link between the purchaser of an end-product and the producer of an ingredient incorporated into the end-product; whereas, Plaintiffs here purchased caustic soda in its original form, not incidentally as an ingredient or component of a finished product. Recognizing this distinction, other courts have allowed New York unjust enrichment claims by indirect purchasers to proceed. *See Zetia*, 400 F. Supp. 3d at 442; *Processed Egg*, 851 F. Supp. 2d at 930 ("One federal court has explained that this means that 'a product's indirect purchaser cannot assert an unjust enrichment claim against an entity that manufactured one of that product's ingredients,' but that an 'indirect purchaser can assert such an unjust enrichment claim against the manufacturer of the product itself.'" (quoting *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 403-04 (E.D.N.Y. 2010)).

Defendants also rely on *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD), 2014 WL 1280464 (S.D.N.Y. Mar. 28, 2014), to support the proposition that New York law requires "some type

of direct dealing or actual, substantive relationship with a Defendant." Defs.' Br. at 40-41. But *Laydon* relies on authority that pre-dates the New York Supreme Court's decision in *Sperry*. *See Laydon*, 2014 WL 1280464 at *42 (quoting *Reading Int'l, Inc. v. Oaktree Capital Mgmt.*, 317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003)). *Sperry* permits a broader scope of unjust enrichment claims, so long as the relationship between the parties is not "too attenuated." Thus, because Plaintiffs need not be in privity with Defendants, *Sperry,* 863 N.E.2d at 1018, the link between the parties here is not too attenuated to support a claim for unjust enrichment. *Waldman*, 714 F. Supp. 2d at 403 ("New York law does not require a plaintiff to plead 'direct dealing,' or an 'actual, substantive relationship with the defendant.'").

Defendants cite *In re Novartis & Par Antitrust Litig.*, No. 18 Civ. 4361, 2019 WL 3841711 (S.D.N.Y. Aug. 14, 2019), as support for their argument that Plaintiffs' unjust enrichment claim under New York law is duplicative of their other claims. Defs.' Br. at 41. The holding in *Novartis & Par* is unpersuasive as it directly contradicts Fed. R. Civ. P. 8(d)(2), which allows Plaintiffs to state their claims in the alternative. Defendants' additional case support is similarly meritless; the unjust enrichment claims in those cases were dismissed because the relationship between the parties was too attenuated or because the underlying statutory claims had been dismissed (neither of which apply to Plaintiffs here). *See* Defs.' Br. at 41 (citing *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 500 (S.D.N.Y. 2017) (dismissing unjust enrichment claim because "[t]here is no relationship, direct or indirect," between the parties), and *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481, 2014 WL 4743425, at *4 (S.D.N.Y. Sep. 15, 2014) (dismissing unjust enrichment claim predicated on dismissed antitrust and consumer protection claims), *aff'd*, 833 F.3d 151 (2d Cir. 2016). Defendants have not challenged Plaintiffs' antitrust claim under New York law, and it will therefore proceed to discovery. As such, they have failed to offer any persuasive authority justifying dismissal of the unjust enrichment claim under New York law.

Defendants' final challenge to the New York unjust enrichment claim is that it is based on "vague, general, and conclusory allegations." Defs.' Br. at 41. For the reasons set forth in Section III.A, *supra*, Plaintiffs have adequately pleaded their unjust enrichment claim under New York law. The unjust enrichment claim is supported by the facts alleged in the 60-page complaint, which sets forth in detail Defendants' unjust and injurious conduct and its harmful effects. Defendants' citation to *Royal Host Realty, LLC v. 793 Ninth Avenue Realty, LLC*, 192 F. Supp. 3d 348 (S.D.N.Y. 2016), is inapposite. Unlike the present case, the unjust enrichment claim in *Royal Host* relied on and was duplicative of the plaintiff's fraud claim, thus imposing a more stringent pleading requirement upon the plaintiffs. *See id.* at 357 ("Where, as here, an unjust enrichment claim is premised on claims of fraudulent conduct, the facts alleging that conduct are subjected to the higher pleading standard of Rule 9(b)."); *see also id.* (citing *In re Inv'rs Funding Corp. Sec. Litig.*, 566 F. Supp. 193, 203 (S.D.N.Y. 1983) (dismissing unjust enrichment claim "set forth in the barest and most generalized of terms")). The Court should deny the motion to dismiss the New York unjust enrichment claim.

### G. Plaintiffs' unjust enrichment claims under California, Illinois, and Tennessee law survive.

Defendants challenge the unjust enrichment claims under California, Illinois, and Tennessee law for state-specific reasons. They argue that neither California nor Illinois provide an independent cause of action for unjust enrichment, while Tennessee requires Plaintiffs to exhaust all other remedies before pursuing their unjust enrichment claim. Each argument fails.

**California**: Defendants argue there is no cause of action for unjust enrichment under California law. Defs.' Br. at 42. Despite some uncertainty surrounding the status of unjust enrichment in California, the California Supreme Court allowed an independent unjust enrichment claim to proceed in an insurance dispute. *See Bruton v. Gerber Prods. Co.*, 703 F. App'x. 468, 470 (9th Cir. July 17, 2017) (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 353 P.3d 319 (Cal. 2015)). And the Ninth Circuit has treated unjust enrichment as a separate cause of action. *Berger v. Home Depot USA, Inc.*, 741

F.3d 1061, 1070 (9th Cir. 2014). Absent explicit authority to the contrary, the Court should allow the claim to proceed. *See In re Glumetza Antitrust Litig.*, No. C 19-05822 WHA, 2020 WL 1066934, at *12 (N.D. Cal. Mar. 5, 2020); *Sergeants*, 2018 WL 7197233 at *59; *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 WL 5579872, at *28-29 (E.D.N.Y. Sep. 22, 2015); *Processed Egg*, 851 F. Supp. 2d at 913; *see also City of Long Beach v. Total Gas & Power N. Am., Inc.*, No. 19 Civ. 8725 (LAK), 2020 WL 3057796, at *21 n.192 (S.D.N.Y. June 8, 2020) (explaining that "California law permits a claim for restitution that resembles what other states, including New York, call unjust enrichment").

**Illinois**: Defendants similarly argue that unjust enrichment is not an independent cause of action under Illinois law. Defs.' Br. at 42. Their argument assumes that the unjust enrichment claim would proceed as a standalone claim. Because the antitrust claim under Illinois law survives (*see supra* Section I.C), it will not stand alone, and the Court should deny the motion. *See McMahon v. Bumble Bee Foods LLC,* 148 F. Supp. 3d 708, 715 (N.D. Ill. 2015). In any event, the Illinois Supreme Court has recognized unjust enrichment as an independent cause of action. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989); *Sergeants*, 2018 WL 7197233 at *61-62; *McMahon*, 148 F. Supp. 3d at 715. Insofar as the appellate court opinions cited by Defendants call into question the viability of unjust enrichment as a standalone claim under Illinois law, the Court should follow the controlling view of the Illinois Supreme Court and allow the claim to proceed here. *Sergeants*, 2018 WL 7197233 at *61-62; *McMahon,* 148 F. Supp. 3d at 715.

**Tennessee**: Defendants contend that dismissal of Plaintiffs' unjust enrichment claim under Tennessee law is "required" because they "fail to allege either exhaustion of remedies or that exhaustion would be futile." Defs.' Br. at 42. But Plaintiffs have alleged just that. *See* Compl. Fourth Claim for Relief ¶¶ 26 ("It would be futile for Plaintiffs to seek a remedy from any party with whom they have privity of contract with for its indirect purchases of Caustic Soda."), 27 ("It would be futile for Plaintiffs to seek to exhaust any remedy against the immediate intermediary in the chain of

distribution from which it indirectly purchased Caustic Soda, as they are not liable and would not compensate Plaintiffs for unlawful conduct caused by Defendants."). Defendants' reliance on *Freeman Indus. LLC v. Eastman Chem. Cp.*, 172 S.W.3d 512 (Tenn. 2005), is misplaced. *Freeman* was decided at summary judgment—not on the pleadings—and explained that "a plaintiff is not required to exhaust all remedies against the party with whom the plaintiff is in privity if the pursuit of the remedies would be futile." *Id.* at 526. Because Plaintiffs do not allege that the distributors from whom they purchased caustic soda were involved in the price-fixing conspiracy, the futility of forcing Plaintiffs to exhaust all their remedies against them is "self-evident." *See Auto. Parts*, 29 F. Supp. 3d at 1027 (citing in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1192-93 (N.D. Cal. 2009)); *Solodyn*, 2015 WL 5458570, at *20; *Processed Egg*, 851 F. Supp. 2d at 920 ("Plaintiffs have plausibly suggested that the pursuit of any remedies against the parties from whom they directly purchased eggs (and thus presumably with whom Plaintiffs were in privity of contract) would be futile because those parties are, as alleged, not directly or indirectly liable for the Plaintiffs' losses due to their lack of involvement in the conspiracy.").

## IV. PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF UNDER THE SHERMAN ACT.

Injunctive relief is warranted when "there exists some cognizable danger of recurrent violation." *Fed. Trade Comm'n v. Qualcomm Inc.*, 411 F.Supp.3d 658, 812 (N.D. Cal. 2019) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). It is sufficient to allege that there is a threat of injury from "a contemporary violation likely to continue to recur." *DDAVP*, 903 F. Supp. 2d at 209. Moreover, an injunction is appropriate when "a single injunction would provide relief to each member of the class." *Sykes v. Mel S. Harris and Assoc's LLC*, 780 F.3d 70, 97 (2d Cir. 2015) (citing *Wal-Mart Stores, Inc. v. Dukes*, 13 S. Ct. 2541, 2557 (2011)).

Plaintiffs readily meet this standard. Here, Plaintiffs do not allege an isolated instance of price-fixing. Instead, Plaintiffs allege continuing and systemic antitrust violations that began as early as

October 1, 2015 and are continuing to today. *See, e.g.,* Compl. ¶ 1. Such a pattern of misconduct is a factor in favor of granting an injunction. *See National Congress for Puerto Rican Rights v. City of New York*, 75 F. Supp. 2d 154, 161 (S.D.N.Y. 1999) (holding that allegations of "pervasive pattern" of violations and Plaintiffs' inability to avoid future violations absent an injunction satisfied the "real and immediate threat" standard). Plaintiffs here use caustic soda in their businesses. If Defendants are not enjoined from continuing the alleged anticompetitive conduct, Plaintiffs will sustain future losses. Furthermore, all members of the putative class will benefit from a single injunction—there is no need for several injunctions to redress the threat of future harm across the proposed class.

Defendants' reliance on *In re New Motor Vehicles Canadian Exp. Antitrust Litig.,* 522 F.3d 6, 13 (1st Cir. 2008) is misplaced. In *New Motor Vehicles*, the First Circuit dismissed plaintiffs' injunctive relief claim "for lack of a live controversy between the parties." *Id.* at 16. Defendants in that case could not have maintained the alleged conspiracy because the "perfect storm" and "exceptional" market conditions that enabled their unlawful conduct such as "a combination of relaxed trade restrictions between the United States and Canada, physical harmonization of cars manufactured for the two markets, and a differential between the values of American and Canadian currencies" no longer existed and "ceased long ago," making plaintiffs' theory of threatened future harm "speculative." *Id.* at 14-15.

Unlike in *New Motor Vehicles*, Plaintiffs' injury here is not "contingent on several events which may or may not happen." *Id.* at 15 (quoting *McInnis–Misenor v. Maine Medical Center*, 319 F.3d at 68, 72 (1st Cir. 2003)). Instead, the injury is likely to persist because the market conditions have remained the same: "high market concentration, high barriers to entry, interchangeability of Defendants' products, inelastic demand, weak demand, a larger number of purchasers with limited buying power, and relatively easy information exchanges among the Defendants." Compl., ¶ 4. Thus, the market is ripe for an "ongoing threat of recurrent violations." *In re Nifedipine Antitrust Litigation*, 335 F. Supp. 2d 6, 19 (D.D.C. 2004). Indeed, Plaintiffs continue to be injured with every sale of caustic soda "because it

has remained at an inflated price." *In re Pre-Filled Propane Tank Antitrust Litig.,* No. 14-02567-MD-W-GAF, 2016 WL 6963059, at *4 (W.D. Mo. Jan. 13, 2016), *aff'd in part*, 893 F.3d 1047 (8th Cir. 2018).

Moreover, Defendants in this case, unlike the *New Motor Vehicles* defendants, have not shown exactly how market conditions surrounding the conspiracy have changed. By contrast, the *New Motor Vehicles* defendants showed that market conditions made future antitrust violations impossible. *New Motor Vehicles*, 350 F. Supp. 2d at 167–68. Defendants here fail to identify how the market has changed and how those changes preclude future violations—likely because the market remains ripe for their price-fixing. In sum, Plaintiffs here have alleged sufficient facts, including market conditions ripe for an ongoing conspiracy, to show that they are entitled to injunctive relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' partial motion to dismiss be denied.

Dated: July 13, 2020

Respectfully submitted:

**LOWEY DANNENBERG, P.C.**

By: /s/ Barbara Hart
Barbara Hart
Craig Maider
Christina McPhaul
44 South Broadway
Suite 1100
White Plains, NY 10601
914-997-0500
BHart@lowey.com

**WEXLER WALLACE LLP**

By: /s/ Kenneth A. Wexler
Kenneth A. Wexler
Justin N. Boley
Tyler J. Story
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
312-346-2222
kaw@wexlerwallace.com
jnb@wexlerwallace.com
tjs@wexlerwallace.com

**COLUCCI & GALLAHER, P.C.**

By: /s/ Ryan L. Gellman
Ryan L. Gellman
2000 Liberty Building
424 Main Street
Buffalo, NY 14202
716-853-4080
rlg@cgbuffalo.com