UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CAUSTIC SODA ANTITRUST LITIGATION | Lead Case No.: 1:19-cv-00385-EAW-MJR |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | ***REDACTED PUBLIC VERSION*** |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT FORMOSA PLASTIC CORPORATION'S
RENEWED MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINTS FOR LACK OF PERSONAL JURISDICTION OR, IN THE
ALTERNATIVE, FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ................................................................................ 1

II.    LEGAL STANDARDS ....................................................................... 4

III.    ARGUMENT ...................................................................................... 6

    A.    FPC'S CONSPIRATORIAL CONDUCT IN OR AFFECTING THE UNITED STATES CAUSTIC SODA MARKET .................................. 6

        1.    FPC's Direct U.S. Market Participation And Influence .............. 7

            a)    Sales And Pricing To U.S. Customers ............................. 7

                (1)    Direct Sales To ███ ........................................ 9

                (2)    Direct Sales To ████████ ............................. 13

                (3)    Direct Sales To ██████ ................................... 14

            b)    Trade Association Conference Attendance ................... 15

                (1)    AFPM International Petrochemical Conferences ............. 15

                (2)    Tecnon Orbichem June 2017 Conference ........................ 17

                (3)    China International Chlor-Alkali Conferences ................ 19

            c)    Other Suit-Related Conduct Abroad Impacting U.S. Prices ......... 20

        2.    FPC Exercised Some Control Over FPC USA's Caustic Soda Business And FPC USA Acted As FPC's Agent In The United States ................. 21

            a)    Common Ownership of FPC and FPC USA ................................ 23

            b)    Importance of FPC USA's Caustic Soda Profits to FPC ............. 24

            c)    Management and Supervision of FPC USA's Caustic Soda Operations ................................ 24

            d)    Other Suit-Related Conduct, Including Co-Producer Agreements and Transactions ............................ 28

    B.    THE EXERCISE OF JURISDICTION OVER FPC IS REASONABLE ........... 29

    C.    IF THE COURT IS INCLINED TO GRANT FPC'S REQUEST FOR ALTERNATIVE RELIEF UNDER RULE 12(b)(6), PLAINTIFFS SHOULD BE GRANTED LEAVE TO FILE THE PROPOSED FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT ......................... 31

IV.    CONCLUSION ................................................................................ 35

## TABLE OF AUTHORITIES

**Cases**

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*,
480 U.S. 102 (1987) ................................................................................. 30

*Ball v. Metallurgie Hoboken-Overpeld, S.A.*,
902 F.2d 194 (2d Cir. 1990) .................................................................. 4, 5

*Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty.*,
137 S. Ct. 1773 (2017) ............................................................................. 5

*British Telecommunications PLC v. IAC/InteractiveCorp*,
356 F. Supp. 3d 405 (D. Del. 2019) ........................................................ 34

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
370 U.S. 690 (1962) ................................................................................. 33

*Copperweld Corp. v. Independence Tube Corp.*,
467 U.S. 752 (1984) ................................................................................. 30

*CutCo Indus., Inc. v. Naughton*,
806 F.2d 361 (2d Cir. 1986) ..................................................................... 4

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ................................................................................. 22

*Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.*,
722 F. 3d 81 (2013) ................................................................................... 6

*Dorfman v. Marriott Int'l Hotels, Inc.*,
No. 99 Civ. 10496 (CSH), 2002 WL 14363 (S.D.N.Y. Jan. 3, 2002) ............. 21

*Foman v. Davis*,
371 U.S. 178 (1962) ................................................................................. 31

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-MDL-1775 JG VVP, 2010 WL 10947344 (E.D.N.Y. Sept. 22, 2010) ............... 33

*In re Aluminum Warehousing Antitrust Litig.* ("*Aluminum I*"),
90 F. Supp. 3d 219 (S.D.N.Y. 2015) ........................................................ 22

*In re Elec. Carbon Prod. Antitrust Litig.*,
333 F. Supp. 2d 303 (D.N.J. 2004) .......................................................... 33

*In re Processed Egg Prod. Antitrust Litig.*,
821 F. Supp. 2d 709 (E.D. Pa. 2011) ....................................................... 33

*In re Propranolol Antitrust Litig.*,
249 F. Supp. 3d 712 (S.D.N.Y. 2017) ...................................................... 30

*In re SSA Bonds Antitrust Litig.* ("*SSA Bonds I*"),
420 F. Supp. 3d 219 (S.D.N.Y. 2019) ........................................................ 9

*Iowa Public Employees' Retirement System v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
340 F. Supp. 3d 285 (S.D.N.Y. 2018) ................................................ 29, 34

*Jazini v. Nissan Motor Co., Ltd.*,
    148 F.3d 181 (2d Cir. 1998) ................................................................................. 22

*Licci et al. v. Lebanese Canadian Bank, SAL, et al.*,
    732 F.3d 161 (2d Cir. 2013) ............................................................................. 5, 29

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015) ................................................................................. 31

*Mantello v. Hall*,
    947 F. Supp. 92 (S.D.N.Y. 1996) ........................................................................... 4

*Melnick v. Adelson-Melnick*,
    346 F. Supp. 2d 499 (S.D.N.Y. 2004) .................................................................... 4

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ............................................................................... 4, 30

*Miami Products & Chemical Co. v. Olin Corp.*,
    449 F. Supp. 3d 136 (W.D.N.Y. 2020) ........................................................ *passim*

*Midwest Athletics & Sports All. LLC v. Xerox Corp.*,
    No. 6:19-CV-06036 EAW, 2020 WL 4583744 (W.D.N.Y. Aug. 10, 2020) ................... 32

*Milanese v. Rust-Oleum Corp.*,
    244 F.3d 104 (2d Cir. 2001) ................................................................................. 32

Mobil Oil Corp. v. Linear Films, Inc.,
    718 F. Supp. 260 (D. Del. 1989) .......................................................................... 34

*Palmieri v. Estefan*,
    793 F. Supp. 1182 (S.D.N.Y. 1992) ..................................................................... 21

*Pictometry International Corp. v. Air America Flight Center, LLC*,
    394 F. Supp. 3d 320 (W.D.N.Y. 2019) ................................................................. 26

*Porina v. Marward Shipping Co.*,
    521 F.3d 122 (2d Cir. 2008) ............................................................................... 5, 9

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ............................................................................................... 25

*Vasquez v. Hong Kong & Shanghai Banking Corp.*,
    477 F. Supp. 3d 241, 255 (S.D.N.Y. 2020) ........................................................... 9

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
    751 F.2d 117 (2d Cir. 1984) ................................................................................. 21

*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011) ................................................................................. 31

*Xerox Corp. v. Lantronix, Inc.*,
    342 F. Supp. 3d 362 (W.D.N.Y. 2018) ................................................................. 32

*Yousef v. Al Jazeera Media Network*,
    No. 16-CV-6416 (CM), 2018 WL 1665239 (S.D.N.Y. Mar. 22, 2018) .......................... 21

*Yueh-Lan Wang by and through Winston Wen-Young Wong v. New Mighty U.S. Trust*,
    322 F.R.D. 11 (D.D.C. 2017) .......................................................................................... 23

**Statutes, Rules**

15 U.S.C. § 22 ................................................................................................................... 5

Federal Rules of Civil Procedure

    Rule 4(k)(2) .................................................................................................................. 5, 9

    Rule 4(k)(2)(A) ................................................................................................................ 5

    Rule 4(k)(2)(B) ................................................................................................................ 5

    Rule 12(b)(6) ....................................................................................................... 31, 35

    Rule 12(b)(2) ................................................................................................. 3, 4, 31, 35

    Rule 15 ............................................................................................................. 4, 31, 35

    Rule 15(a)(2) ................................................................................................................ 31

Plaintiffs[1] respectfully submit this Memorandum of Law in Opposition to Defendant Formosa Plastic Corporation's Renewed Motion to Dismiss Plaintiffs' Consolidated Class Action Complaints for Lack of Personal Jurisdiction or, in the Alternative, for Failure to State a Claim. Dkt. Nos. 288, 289 ("FPC Br."), 290 ("Jian Decl."), and 291 ("Chen Decl.").

## I.   INTRODUCTION

Substantial evidence exists supporting the reasonableness of this Court's exercise of jurisdiction over defendant Formosa Plastics Corporation ("FPC" or "FPC Taiwan"). The evidence adduced through jurisdictional discovery shows that FPC participated in the alleged price-fixing conspiracy directly by pricing and selling tens of millions of dollars of caustic soda to U.S. customers during the Class Period,[2] and limiting the volume of caustic soda that it would sell to one of the largest distributors of caustic soda in the United States and the world, who was also a customer of the other Defendants.[3] The evidence also shows that FPC determined the volumes and prices of caustic soda sold and shipped to U.S. customers, including in relation to the IHS Markit caustic soda price index, and that those prices increased not only at the same times as the other Defendants' prices to their customers, but also around the times of trade association meetings both in the U.S. and abroad that were attended by FPC and other

---

[1] "Plaintiffs" as used herein are the direct purchaser plaintiffs in this case: Amrex Chemical Co., Inc., Main Pool & Chemical Company, Inc., Miami Products & Chemical Company, Midwest Renewable Energy LLC, Perry's Ice Cream Company, Inc., and VanDeMark Chemical, Inc., on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"). The Indirect Purchaser Plaintiffs join this opposition to FPC's Motion.

[2] "Class Period" as used herein refers to October 1, 2015, to the present. Dkt. 51, ¶ 1.

[3] "Defendants" as used herein refers to, unless otherwise indicated: Olin Corporation and K.A. Steel Chemicals, Inc. (collectively, "Olin"); Occidental Chemical Corporation (d/b/a OxyChem); Westlake Chemical Corp. ("Westlake"); Shin-Etsu Chemical Co. Ltd. ("Shin-Etsu"); Shintech Inc. ("Shintech"); FPC; and FPC USA.

Defendants' employees, including employees of FPC's U.S. subsidiary, Formosa Plastics

Corporation U.S.A. ("FPC USA"). FPC has also made hundreds of millions of dollars in profits

from its U.S. caustic soda transactions both directly and through its supervision of FPC USA,

which assisted FPC in executing its global strategic plans, including those relating to caustic

soda and caustic soda prices in the United States. FPC employees directly engaged in the "suit-

related" conduct alleged in the Complaint (Dkt. 51), namely, actions involving the sale, pricing,

production, marketing and distribution of caustic soda both in the U.S. and abroad that impacted

caustic soda prices paid in the U.S. by Class Members. In addition, FPC exercised control over

FPC USA through various executives including its Vice President Walter Chen, who was also

FPC USA's Executive Vice President. FPC USA was FPC's agent in the U.S. for purposes of the

transactions involving FPC USA alleged in the Complaint.

FPC contends that it "does not exercise *any control* over FPC USA's production or sale

of caustic soda in the United States," "did not engage in *any* [ ] suit-related conduct in the

forum[,]" and "does not have sufficient suit-related contacts with the United States." FPC Br. at

2, 5 (emphasis added). These factual claims are flatly controverted by evidence of FPC's

conspiratorial conduct and its control of FPC USA that impacted the prices of caustic soda paid

by U.S. customers. It is also undermined by evidence that FPC sold tens of millions of dollars of

both liquid and dry caustic soda <u>directly</u> to U.S. customers at prices and in quantities that it set,

and those prices dramatically increased during the Class Period, consistent with the Complaint's

allegations. *See generally* ¶¶55-73.[4] The exercise of jurisdiction over FPC is thus legally

warranted. Even a *single* act of suit-related commercial activity in the forum may justify a

court's jurisdiction. *See* Dkt. 119 ("Order") at 60; *see also Miami Products & Chem. Co. v. Olin*

---

[4] References to "¶__" are to the Complaint (Dkt. 51) unless otherwise indicated.

*Corp.*, 449 F. Supp. 3d 136, 178-79 (W.D.N.Y. 2020). Here, FPC engaged in *hundreds* of caustic

soda transactions with U.S. entities during the relevant period. *Miami Products*, 449 F. Supp. 3d

at 179 (commercial acts must form the basis of the claim). Evidence also shows FPC's

significant engagement in FPC USA's caustic soda business, including approval of caustic soda

co-producer transactions with other Defendants. Indeed, for several decades, FPC and FPC USA

have operated a common, global enterprise with respect to the sale and distribution of caustic

soda. The Court has reasoned that such a showing should be sufficient to establish agency. *Id.* at

181 (records indicating an agency relationship must "specifically relate[ ] to caustic soda" and

also "sufficiently tie Formosa into the caustic soda conspiracy").

FPC has engaged in continuous and systematic U.S. conduct involving the sale of caustic

soda to U.S. customers. FPC thus has purposefully availed itself of the benefits and protections

of U.S. laws.[5] *See* Order at 59, 62; *Miami Products,* 449 F. Supp. 3d at 178-80. FPC is therefore

reasonably subject to this Court's jurisdiction with respect to the Sherman Act claim which has

been plausibly alleged against it, and its Motion under Rule 12(b)(2)[6] should be denied.

However, as discussed below, Plaintiffs respectfully request that if the Court is inclined to

consider separately FPC's alternative request for dismissal for failure to state a claim, that

Plaintiffs be granted leave to file a First Amended Consolidated Class Action Complaint

---

[5] In support of this opposition, Plaintiffs submit examples of the probative evidence to the Court, which is voluminous. Additional evidence will be provided to the Court upon request. This evidence is attached as exhibits to the Declaration of C. Andrew Dirksen In Support Of Plaintiffs' Memorandum of Law in Opposition to Defendant Formosa Plastics Corporation's Renewed Motion to Dismiss Plaintiffs' Consolidated Class Action Complaints for Lack of Personal Jurisdiction or, in the Alternative, for Failure to State a Claim ("Decl"). Exhibits to the Decl. are referred to herein as "**Ex.** __", and references to the Decl. are cited as "**Decl.** __," unless otherwise indicated.

[6] References to "Rule __" are to the Federal Rules of Civil Procedure unless otherwise indicated.

("FAC") pursuant to Rule 15, which incorporates evidence developed from limited jurisdictional discovery. *See* **Ex. 1** (proposed FAC with redlined revisions highlighting new allegations regarding FPC).

## II.    LEGAL STANDARDS

After being afforded jurisdictional discovery, a plaintiff's *prima facie* showing necessary to defeat a Rule 12(b)(2) motion "'must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant.'" *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Ball v. Metallurgie Hoboken-Overpeld, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Courts apply a preponderance-of-the-evidence standard in analyzing the evidence submitted in support of a *prima facie* case for jurisdiction, and the "evidentiary materials must be 'construed in the light most favorable to the plaintiff and all doubts are resolved in its favor.'" *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 503 (S.D.N.Y. 2004) (quoting *Mantello v. Hall*, 947 F. Supp. 92, 96 (S.D.N.Y. 1996), quoting *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). "Once a plaintiff has alleged facts, which if proved would support jurisdiction, a defendant cannot win a Rule 12(b)(2) motion merely by denying plaintiff's allegations. Rather, **the defendant's moving papers must entirely refute the plaintiff's allegations**." *Mantello*, 947 F. Supp. at 96 (internal quotations omitted) (emphasis added).

Three requirements must be satisfied for this Court to exercise jurisdiction over FPC: "(1) [FPC] must have been properly served, (2) the court must have a statutory basis for exercising personal jurisdiction, and (3) the exercise of personal jurisdiction must comport with constitutional due process." *Miami Products*, 449 F. Supp. 3d at 175. FPC is at home in Taiwan (¶ 34) and accepted service of the Complaint by stipulation. Dkt. 61. In denying FPC's initial

motion to dismiss, the Court found that as a statutory basis for establishing jurisdiction over FPC, Plaintiffs may rely on Rule 4(k)(2) to render service on FPC effective, instead of Section 12 of the Clayton Act, 15 U.S.C. § 22, if Plaintiffs filed a certification that FPC was not subject to suit in any state court of general jurisdiction. *See* Order at pp. 57-58. Plaintiffs filed that certification on March 31, 2020. Dkt. 120. Under Rule 4(k)(2), for federal claims, "serving a summons [. . .] establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." *Miami Products*, 449 F. Supp. 3d at 176; *see also Porina v. Marward Shipping Co. Ltd.*, 521 F.3d 122, 126 (2d Cir. 2008).

To satisfy Rule 4(k)(2)(A), Plaintiffs again certify that they are unaware of any state court in which FPC would be subject to general jurisdiction. Under Rule 4(k)(2)(B), Plaintiffs must show the Court that its exercise of jurisdiction over FPC in this case is "consistent with the United States Constitution and laws," by demonstrating not only that FPC had minimum contacts with the United States out of which Plaintiffs' Sherman Act claim against FPC arose, but also that the Court's exercise of jurisdiction over FPC in light of those contacts is reasonable. *See, e.g., Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780 (2017); *Licci et al. v. Leb. Can. Bank, SAL, et al.*, 732 F.3d 161, 169-70 (2d Cir. 2013); *Porina*, 521 F.3d at 127; *Miami Products*, 449 F. Supp. 3d at 178. As demonstrated below, Plaintiffs satisfy these tests.[7]

---

[7] The Court need not conduct an evidentiary hearing on FPC's Motion. After a *prima facie* case for jurisdiction is established, one "must prove jurisdiction by a preponderance of the evidence at a pretrial hearing **or at trial**." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 n.3 (2d Cir. 1990) (emphasis added). Whether to hold a jurisdictional evidentiary hearing is a matter of discretion and, further, the reason the *Ball* footnote contains the "or at trial" phrase is because of a plaintiff's Seventh Amendment constitutional right to trial by jury of the merits of its claim

## III.   ARGUMENT

### A.   FPC'S CONSPIRATORIAL CONDUCT IN OR AFFECTING THE UNITED STATES CAUSTIC SODA MARKET

FPC's contacts with the U.S. both directly and through FPC USA must "specifically relate[ ] to caustic soda" to justify this Court's exercise of jurisdiction. *Miami Products*, 449 F. Supp. 3d at 181. FPC's contacts with the U.S. must indicate its direct participation in conduct alleged in the Complaint (*e.g.*, by showing "how Formosa assisted with either raising prices or contributing to the appearance of a constrained supply") or indirectly tie FPC into the alleged conspiracy through its supervision of FPC USA's caustic soda business or attendance at trade association meetings around the times of U.S. price increases. *Miami Products*, 449 F. Supp. 3d at 164-65, 178-81. As discussed below, the evidence shows that but for FPC's purposeful U.S. caustic soda related conduct, the alleged price-fixing conspiracy would not have been effective in raising Defendants' caustic soda prices to U.S. customers to a supra-competitive, artificially inflated level. Plaintiffs' claim against FPC thus "in some way arise[s] from [FPC's] purposeful contacts with" the United States. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018) (internal cites and quotes omitted).

---

under the preponderance of the evidence standard. As the Second Circuit has reasoned in *Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.*, 722 F. 3d 81, 87 (2013), where, as here—and as recognized by this Court, *see Miami Prod.*, 449 F. Supp. 3d at 189—the jurisdictional inquiry is interwoven with the merits of the case, then the court must leave the jurisdictional issue for trial: If "'the overlap in the evidence is such that fact-finding on the jurisdictional issue will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury, then the [District] Court **must leave the jurisdictional issue for the trial**,' but [also may] 'make a preliminary finding on jurisdictional facts, subject to revision later in the proceedings **or at trial**.'" *Dorchester Fin.*, 722 F.3d at 87 (emphasis added). An evidentiary hearing to resolve the jurisdictional motions is not warranted.

### 1.      FPC's Direct U.S. Market Participation And Influence

FPC's "direct participation" in U.S. conduct sufficient to justify the exercise of specific jurisdiction may be shown by evidence of "how Formosa assisted with either raising [caustic soda] prices or contributing to the appearance of a constrained supply[.]" *Miami Products*, 449 F. Supp. 3d at 178. Evidence produced by FPC shows its direct sales to three U.S. customers of over ███████████████████████████████████████████████████ ███████████████████████████████. Decl. ¶ 12.  Importantly, FPC increased its U.S. caustic soda pricing during this period to those customers not only at around the same times as caustic soda prices to other U.S. customers increased, but also at around the same times as trade association meetings participated in by FPC and the other Defendants' employees. FPC also limited the volume of caustic soda it agreed to sell to its U.S. customers, ███████████████████ ███████████████████████████. This is consistent with the Complaint's allegations of successful price increases by Defendants to their U.S. customers at around the times of their contacts with each other, including at trade association meetings, as well as acts suggesting constrained U.S. caustic soda supply. *See generally* ¶¶ 55-69, 90-94; Order at pp. 31-32; *Miami Products*, 449 F. Supp. 3d at 164-65.

### a)      Sales And Pricing To U.S. Customers

FPC contends that it had no caustic soda sales to U.S. customers other than FPC USA and that it did not engage in any suit-related conduct in this country. FPC Br. at 2, 5-10, 13; Sunny Jian Decl. ¶ 7 ("For the period October 1, 2015 through March 22, 2019, FPC's only caustic soda customer in the United States was FPC USA.")). In fact, in his *first* declaration in support of FPC's first motion to dismiss, Mr. Jian, FPC's Sales Director of its Plastics Division during the relevant period, declared that "FPC has no control over, or involvement in, FPC USA's activities

related to the manufacture, distribution, or sale of caustic soda in the United States." *See* **Ex. 2**,

Dkt. 86-2 at ¶ 6.  FPC's contentions and Mr. Jian's statements are demonstrably false in light of

evidence produced.

    First, FPC admitted in its responses to interrogatories that ███████████████

███████████████████████████████████████. *See* **Ex. 3**, FPC's

responses to Interrogatory Nos. 8 and 9 within its Second Supplemental Objections and

Responses to DPPs' First Set of Interrogatories Relating to Jurisdiction ("2d Supp. O&Rs"), at 2-

3. Data produced by FPC shows ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████. Decl. ¶ 12.[8] Even assuming (as claimed by FPC) that FPC USA

was FPC's sole "customer" and that FPC USA assumed financial responsibility for transoceanic

shipment of the caustic soda at FPC's Mailiao port in Taiwan, FPC's sales data and other

evidence shows that ██████████████████████████████████

████████████████████████████. *Id*. These customers

believed they were dealing with FPC and in fact dealt directly with FPC concerning these

transactions, including with respect to pricing. And other records further substantiate that it was

FPC, not FPC USA, selling caustic soda to these entities in the U.S. during the relevant period.[9]

---

[8] These U.S. customers are identified by name in the ████████████████████
columns within that data, and █████████████████████████████ is
listed in a "██████████" column in the data. Decl. ¶ 12.

[9] FPC argues that the named plaintiffs must have had contacts with it (or FPC USA) in order to
justify this Court's jurisdiction, citing *In re SSA Bonds Antitrust Litig.* ("*SSA Bonds I*"), 420 F.

(1)     **Direct Sales To** ███████

Approximately ████████████ of FPC's sales to the U.S. were to ███████████ ████████████████████████████ in the United States. Decl. ¶ 13, and **Ex. 8** (FPX-JXD-00027149, ███████████████). The transactional sales data produced by *FPC USA* shows sales of over ███████████ during the ████████ period, and these transactions are independent of and separate from *FPC's* ███████████ ██████ in the ██████████████ period. Decl. ¶ 12. FPC determined the volumes and prices of its Taiwan-made caustic soda that it sold and shipped from its Mailiao (Taiwan) port facility ████████████ understood it was dealing principally with FPC, not FPC USA, with respect to these purchases. For example, in an email exchange ██████████ ██████—at a time when the domestic Defendants were trying to increase prices ███████ █████████ ¶¶57-58—with the subject line "████████████████," FPC USA's Vice President and General Manager, Philip Chen, wrote to ████████████ ████████████████████████████████████

---

Supp. 3d 219, 233 (S.D.N.Y. 2019) and *Vasquez v. Hong Kong & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 255 (S.D.N.Y. 2020) ("In an action brought as a class action, personal jurisdiction is based on a defendant's contacts *with the forum state* and actions giving rise to the named plaintiffs' causes of action. Contacts with unnamed class members [outside of New York] may not be used as a jurisdictional basis, especially before a class has been certified.") (emphasis added). FPC Br. at 6-7. But the plaintiffs in *Vasquez* and *SSA Bonds I* needed to show the defendants' "New York contacts" to justify jurisdiction over them *under the Clayton Act*, not their contacts with the United States sufficient to justify jurisdiction under Rule 4(k)(2). *Vasquez*, 477 F. Supp. 3d at 255-56; *SSA Bonds I*, 420 F. Supp. 3d at 231. Where named plaintiffs in a class action rely on Rule 4(k)(2) and not the Clayton Act to justify jurisdiction, it is that foreign defendant's (here, FPC's) contacts with the United States that must be sufficiently minimum and suit-related to reasonably justify this Court's jurisdiction. *See, e.g., Porina*, 521 F.3d at 127 ("First, we ask whether the defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction. . . [T]he question [here] is whether [the foreign defendant] has sufficient affiliating contacts with the United States in general, rather than with New York in particular, with which it has none.").

████████████████████████████████████████████

███████████████████████." [sic] **Ex. 9** (FPC-JXD-00025978 - 81_CT0001 at 25980 (emphasis

added)). ████████████████████████████████████

████████████████████████████████████████████

████████████████ *Id.* at 25979.

In internal follow-up emails in that same email thread dated ████████████ translated

from Mandarin, FPC USA's Philip Chen asks FPC's Duncan Tseng for ██████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ *Id.* at 25978_CT0001 –

25979_CT0001.[10] In another email concerning ████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ **Ex. 10** (FPC-USA-DPP-

00143317-18) (emphasis added); *cf. Miami Products*, 449 F. Supp. 3d at 178 ("Plaintiffs do not

---

[10] *Cf.* Chen Decl. ¶¶ 10-13 ("[¶ 10] FPC has no control over the terms of FPC USA's sales of caustic soda to its customers, including its customers on the west coast. FPC USA sets those terms without any direction from FPC. . . . [¶ 11] The price at which FPC USA resells the imported caustic soda—like the price at which FPC USA sells the caustic soda it produces itself in Texas—is set by me or someone on my team, without involvement by FPC[.]").

allege specifics as to how Formosa assisted with either raising prices or contributing to the appearance of a constrained supply[.]").

In addition, ████████████████████ with FPC employees in English in connection with the shipping details of exports from Taiwan to the U.S of Taiwanese-made liquid caustic soda from FPC's Mailiao facility. *See, e.g.*, **Ex. 11**, FPX-JXD-00007822-24,

████████████████████████████████████

████████████████████████████████████

████████████████████████████████. *See* **Ex. 12**, FPX-JXD-00061020_CT0001 – 61035_CT0001, email dated ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████. *See, e.g.*, **Ex. 13,** FPX-JXD-00015902_CT0001 – 15904_CT0001, ████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████

██████████████████████████████████
█████████████████████████████████
██████████████████████████████████
███████████████████████████████████
██████████████████████████████████
██████████████████████

Ex. 13 at 15903_CT0001 – 15904_CT0001 (emphasis added); *cf. Miami Products*, 449 F. Supp.

3d at 188 ("It is not clear from the submissions how much of Formosa USA's [ ] success in

increasing the caustic soda prices is attributable to Formosa [ ] or how involved Formosa [was],

if at all, with the decisions surrounding the increased prices."); *see also* **Ex. 14** , FPC-JXD-

00075549-50_CT0001, an email dated ████████████████████████████

█████████████████████████████████████████████

████████████████████████; **Ex. 15,** FPX-JXD-00032668-69_CT0001, a ███████████

email thread with subject line "███████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████. Ex. 8 at FPC-JXD-00027160.

　　These joint selling and marketing efforts █████████ by FPC and FPC USA were effective.

Despite █████████ impressive buying power as one of the world's largest purchasers of caustic

soda, █████████ average purchase price per ton of caustic soda from both FPC USA and FPC, in

separate transactions, ████████████ between 2016 and 2017, consistent with the

Complaint's allegations of Defendants' anti-competitive conduct both domestically "and abroad"

impacting U.S. customers. Decl. ¶ 13, *see also, e.g.,* ¶¶58-67, 88, 90-94, 119. Indeed, but for

FPC's setting of caustic soda prices ███████████████████████████

███████████████the domestic Defendants would not have been able to maintain an

artificially high U.S. caustic soda price level or limit domestic supply, given ███████size and

purchasing power.

**(2)     Direct Sales To ██████████████**

FPC's transactional sales data shows ████████████████████████

███████████████. Decl. ¶ 12. In fact, record evidence indicates that ██████████

was <u>FPC's</u> U.S. dry caustic soda distributor. In an ██████████ email, ██████████

████████████████████████████████████████

████████████████████████████████████████

███████████████. *See* **Ex. 16** (FPC-USA-DPP-00059237-41, ████████

████████████████████████████████████████

███████████████; *see also* **Ex. 17,** FPC-JXD-00034897 ██████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████

███████████████**Ex. 18**, FPC-USA-

DPP-00206709-12, ████████████████████

████████████████████████████████████████

███████████████**Ex. 19**, FPC-USA-DPP-

00204952-53, ██████████████ during the course of a domestic caustic soda

price increase (¶ 65), ████████████████████████

13

███████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████ Although ████████████████

████████████████████████████████████████████████ . **Ex.**

**20**, FPC-JXD-00016178_CT0001 – 16180_CT0001, an email showing that██████████

███████████████████████████████████████████████████

████████████████████████████████████████ *Id.* at

16178_CT0001.

(3)    **Direct Sales To** ████████████

FPC's data shows █████████████████████████, ███████

███████████, ████████████████████████████████████

██████████████████ . Decl. ¶ 13. Records show that ███████████████

███████████████████████████████████████████████████

█████████████████████████████ . *See* **Ex. 21** (FPC-JXD-

00024178-82). Even class representative plaintiff Amrex knew that █████████████

████████████████████████████████████████████████████

███████████ . *See* **Ex. 22** (AMREX001419-21 at 1420, █████████████

████████████████████████████████████████ ).[11]

---

[11] FPC contends that its export sales to U.S. customers show the implausibility of the Complaint's allegation of a conspiracy among Defendants "to constrict United States caustic soda supply" and "reduce domestic supply" and export as much excess caustic soda as possible from the U.S. FPC Br. at 13-14. This argument is baseless. First, █████████████████████████████████████████████████, a form of caustic soda that no entity other than Westlake produced in the U.S.; the Defendants primarily made and sold liquid caustic

### b)    Trade Association Conference Attendance

The Court has acknowledged the significance of Defendants' alleged contacts with each other when industry price increases were afoot, including contacts at and around the time of trade association conferences. *See, e.g., Miami Products*, 449 F. Supp. 3d at 164-65; ¶¶ 90-93 (allegations that Defendants' representatives with suit-related caustic soda responsibilities attended trade association and other meetings around the times that caustic soda price increase announcements had been made, including annual meetings and International Petrochemical Conferences of American Fuel & Petrochemical Manufacturers ("AFPM") in and about March 2016, 2017, 2018, and 2019, and annual ICIS and Tecnon OrbiChem World Chlor-alkali meetings). Evidence produced by FPC and also by non-party AFPM and the other Defendants shows that FPC employees (including Walter Chen, both an FPC Vice President and FPC USA's Executive Vice President) attended AFPM meetings in San Antonio, Texas, as well as other industry conferences worldwide.

### (1)    AFPM International Petrochemical Conferences

The Court referred in its Order to Defendants' attendance at meetings of AFPM. *Miami Products*, 449 F. Supp. 3d at 152-53, 168, 170. FPC and FPC USA employees, including FPC's Sunny Jian and Duncan Tseng, ██████████████████████████████████████████ ██████████████████████████████████████. *See, e.g.,* **Ex. 23**, FPC-JXD-

---

soda ("LCS"). Second, ████████████████████████████ and keeping it supplied with LCS from abroad that was priced in a way that would not lower the overall average net domestic U.S. market price was important not only to FPC and FPC USA, but to the other Defendants, ████████████████. Decl. ¶ 12. Indeed, that the average price per ton of caustic soda ████ ████████████████        ████████████████ during the relevant period indicates coordination at least between FPC and FPC USA—if not also, as alleged, the other Defendants— not simply with respect to supply (the volume imported), but also with respect to its price. *Id.*; *see also* Ex. 13 (explicitly referring to ████████████ between FPC and FPC USA).

00051323_CT0001, ██████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████; **Ex. 24,** FPC-JXD-00016499-507, ████████

██████████████████████████████████████

████████ *Id.* at 16499; *see also* **Ex. 25,** FPC-JXD-00051324_CT0001,

██████████████████████████████████

██████████████████████████████████████

████████████████████████████ (*id.* at 51324_CT0002), and it appears from its cover

page that ██████████████████████████████████

████████████ *Id.* The ██████████████████████████

██████████████████████████████████

████████████████████████████████ *Id.* at 51324_CT0003. The

██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

*Id.* at 53124_CT00019.

FPC has implied admitted that ████████████████████████████████

████████████████. *Cf.* **Ex. 4** (FPC's First Supp. Objections and Responses to DPPs' First

Set of Interrogatories Relating to Jurisdiction ("1st Supp. O&Rs"), at p. 5, "████████████

████████████████████████████") and Ex. 3

(2d Supp. O&Rs) at p. 4, "████████████████████████

████████████████████████████████████████

████████████████████████.").[12]

### (2)      Tecnon Orbichem June 2017 Conference

Tecnon Orbichem World Chlor-alkali Conferences took place annually in June and "at

least several Defendants' representatives [gave] presentations" at them. ¶ 93. For example,

FPC's Duncan Tseng, among other FPC employees, planned to ████████████████████

████████████████████████████████. *See,*

*e.g.,* **Ex. 26** (FPC-USA-DPP-00064409_CT0001 – 64411_CT0001); **Ex. 5** (FPC USA's Second

Supplemental Objections and Responses to DPPs First Set of Interrogatories to the Domestic

Defendants) at p. 3, "████████████████████████████████████

████████████████████████"). This particular

---

[12] Attendee data produced by AFPM in response to a document subpoena is incomplete, because

████████████████████████████████████████████

██████████████. Decl. ¶ 17.

AFPM's IPC could have also been attended by ████████████████████████

████████████████████████████

████████  *Id.* Although the data that AFPM produced ████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████.  *Id.*

conference proved to be important with respect to caustic soda, at least according to Olin's ██

██████████████████████ who wrote in part in an email dated ███████████

████████████████████████



**Ex. 27** (OLN-000067943-48 at 67944).

FPC USA also produced a memo that appears to be a summary of this same Tecnon

conference. Although it is ████████████████████████████████

████████████████████████████████████████

████████████████████████████████ **Ex. 28**

(FPC-USA-DPP-00204057 – 204063_CT0001 at 204057_CT0001); Decl. ¶ 16.X. The report

states in part at its beginning (translated from Mandarin):

Ex. 28 at 204057_CT0001 (emphasis added). Employees of ██████████████████

████████████████████████████████ following the Kuala

Lumpur Tecnon conference. **Ex. 29** (FPC-USA-DPP-00194093-94, ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████

### (3)    China International Chlor-Alkali Conferences

In November 2017, when FPC USA and the other domestic Defendants were increasing

U.S. caustic soda prices (¶ 65), FPC's Sunny Jian ████████████████████████████

████████████████████████████████████████████ at the

China International Chlor-Alkali Conference ("CICAC"). **Ex. 30** (FPC-JXD-00003644_

CT0001). ███████████████████████████████████████████████

████████████████ *Id.* at slide 43. ████████████████████████████

████████████ Olin's ████████████████████████████, who also attended and gave a

presentation at the conference. Decl. ¶ 18. Olin's ████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████ **Ex. 31**

(FPC-JXD-00073970). An OxyChem employee, ██████████████████████████████

██████████████ also attended the conference,

███████████████████ *See* **Ex. 32** (OCC_00656709-16 at 656709), and **Ex. 33**

OCC_00655557-59 (████████████████████████████).[13]

**c)**     **Other Suit-Related Conduct Abroad Impacting U.S. Prices**

FPC has produced evidence that in addition to ███████████████

██████ ███████████████ (as discussed above), it ███████████████

███████████████████████████████. In an

email exchange dated ███████████ (at a time when Defendants were in the process of

increasing prices to U.S. customers, ¶ 63, and only weeks before █████████████ as

discussed above).██████████████████████████████

████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████

██████████ **Ex. 35** (FPC-JXD-00074515-17) (emphasis added). In other words, FPC's

███████████████████████████████████████

██████████████████████████████████

██████. *Cf. Miami Products*, 449 F. Supp. 3d at 182 ("None of these 'contacts' connects

[Formosa] to the alleged price-fixing scheme[.]").

Further, as explained by FPC's Duncan Tseng in an email ██████████████

███████████████████████████████████

████████████████████████████████████

---

[13] Although few records have been produced to date concerning it, FPC's Jian and other
Defendants' employees appear to ███████████████████████. *See* **Ex. 34**
(OCC_00322983-97), ███████████████████████████████████
████████████████████████████████████████.

20

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████ [sic] **Ex. 36** (FPC-

JXD-00013123_CT0001 – 13127_CT0001 at 13123_CT0001); *cf. Miami Products*, 449 F. Supp.

3d at 178 ("Plaintiffs do not allege specifics as to how Formosa assisted with either raising prices

or contributing to the appearance of a constrained supply[.]").

## 2. FPC Exercised Some Control Over FPC USA's Caustic Soda Business And FPC USA Acted As FPC's Agent In The United States

FPC is also subject to jurisdiction if it engaged in a common business enterprise with

FPC USA while exercising "some control" over FPC USA in commercial activities "related to

caustic soda." *Miami Products*, 449 F. Supp. 3d at 181, citing and quoting *Yousef v. Al Jazeera

Media Network*, No. 16-CV-6416 (CM), 2018 WL 1665239, at *9 (S.D.N.Y. Mar. 22, 2018)

(citing *Dorfman v. Marriott Int'l Hotels, Inc.*, No. 99 Civ. 10496 (CSH), 2002 WL 14363, at *10

(S.D.N.Y. Jan. 3, 2002)); *Schwab*, 883 F.3d at 85; *Palmieri v. Estefan*, 793 F. Supp. 1182, 1194

(S.D.N.Y. 1992) ("[W]hen two corporations have common ownership and their activities are

interrelated as here, they may have an agency relationship for jurisdictional purposes, even if the

resident corporation is not controlled by the nonresident entity."). Courts in this Circuit often use

the four-factor test of *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117

(2d Cir. 1984), to evaluate the reasonableness of a court's exercise of jurisdiction in the context

of a federal claim alleged against a foreign parent based on its domestic subsidiary's minimum

suit-related contacts with a forum: "(1) common ownership, (2) financial dependency, (3) the

degree to which the parent interferes with the selection and assignment of executive personnel

and fails to observe corporate formalities, and (4) the parent's degree of control over the marketing and operational policies of the subsidiary." *See In re Aluminum Warehousing Antitrust Litig.* ("*Aluminum I*"), 90 F. Supp. 3d 219, 228 (S.D.N.Y. 2015), *citing Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998).[14]

FPC does not cite *Beech*, but contends that it "neither controlled FPC USA's production or sale of caustic soda in the United States, nor engaged with FPC USA in a common business enterprise such that an agency relationship existed among the parties." FPC Br. at 9. FPC also argues that the Court should "reject" the "standard" in *Yousef* for finding that a parent and its subsidiary engaged in a common enterprise, namely, that agency may be found if the agent's "services that [it] provided to [its parent] were essential to [the parent], such that the [the parent] itself would perform equivalent services if no agent were available." FPC Br. at 11-12.[15] But the key inquiry here is whether the evidence shows that FPC and FPC USA engaged in a common

---

[14] Plaintiffs do not dispute that FPC USA is a separate company from FPC and that both appear to generally respect corporate formalities. But as regards "the degree to which the parent interferes with the selection and assignment of executive personnel," FPC and FPC USA employees routinely communicate in Mandarin about the caustic soda business, and FPC USA's Chlor-Alkali Vice President, Philip Chen, reported only to Walter Chen, an executive of both FPC and FPC USA (from whom FPC noticeably proffers no declaration), and so FPC no doubt exercised at least "some control" consistent with *Schwab* over selecting FPC USA's executives. *See, e.g.*, **Ex. 37** (FPC-USA-DPP-00178151-162) at 178155, Exs. 9, 12-15, 25-26 (generally)

[15] FPC also argues that the Supreme Court criticized this reasoning in *Daimler AG v. Bauman*, 571 U.S. 117, 135-36 (2014), which it did, but in the context of general jurisdiction. FPC appears to make this argument because, in its Order, the Court noted with respect to defendant Shin-Etsu that although "Plaintiffs may have demonstrated that Shin-Etsu would step into the American *PVC* market if Shintech stopped producing PVC, [ ] they have not made the same showing with regards to *caustic soda*." *Miami Products*, 449 F. Supp. 3d at 187 (emphasis added). But caustic soda is only made as a byproduct of chlorine, which itself is used to make ethylene dichloride (aka "EDC") and vinyl chloride monomer ("VCM") to make PVC. In other words, a vertically integrated PVC producer with a chlor-alkali plant—which all Defendants are except Olin—has no choice but to participate in the caustic soda business, as one cannot make chlorine and, ultimately, PVC without also making caustic soda.

caustic-soda-related course of business *out of which Plaintiffs' lawsuit arises.* There exists voluminous evidence—only a small part of which is summarized here—that it does. For example, the evidence shows that FPC not only exercised "some control" over FPC USA's caustic soda sales and pricing to U.S. customers (consistent with *Schwab*), but also gave guidance to FPC USA with respect to overall U.S. caustic soda supply and pricing strategy.[16]

a)      **Common Ownership of FPC and FPC USA**

The Complaint alleges that the privately held FPC USA is owned by FPC and members of the Wang family. ¶ 34. Approximately ▮▮▮▮ the shares of FPC USA during the 2015-2019 period were held by FPC ▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which is controlled (and at least partly owned) by two managing directors of FPC, Susan Wang and William Wong. Decl. ¶ 19; **Ex. 6** (FPC USA's O&Rs to DPPs Interrogatories Regarding Ownership Structure) at p. 6; **Ex. 7** (FPC's O&Rs to DPPs' Second Set of Interrogatories Relating to Jurisdiction) at pp. 9-10.[17]

---

[16] This is true even setting aside the facts that FPC created FPC USA forty-three years ago, that both companies use the same logo, and that FPC USA's routine marketing presentations to customers ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 37 at FPC-USA-DPP-00178154, 178159.

[17] ▮▮▮▮▮▮ has been engaged in years of litigation with an allegedly disinherited Wang family member (Formosa Group's founder died intestate in 2008), and ▮▮▮▮▮ beneficiary is the New Mighty Foundation. *See Yueh-Lan Wang by and through Winston Wen-Young Wong v. New Mighty U.S. Trust,* 322 F.R.D. 11, 16-17, 30-31 (D.D.C. 2017); **Ex. 38** (Declaration of William Wen-Yuan Wong at ¶ 2, where he admits to being one of ▮▮▮▮▮ managers); **Ex. 39** (Declaration of Susan Wang at ¶ 2, where she admits to being on the Board of the New Mighty Foundation); **Ex. 40** at 6 (the Foundation's Form 990-PF for 2019 confirms that FPC Managing Directors William Wong and Susan Wang are also directors of the Foundation along with two other Wang family members). Neither ▮▮▮▮▮ nor the Foundation are mentioned in FPC's statements to investors, ▮▮▮▮▮▮▮▮▮▮▮▮▮. Decl. ¶ 19.

**b)** **Importance of FPC USA's Caustic Soda Profits to FPC**

In its Order, the Court reasoned that Plaintiffs may be able to establish jurisdiction under an agency theory if they could "provide support for the proposition that [FPC's] profits are a result of [FPC USA's] caustic soda sales and not one of the other industries in which Formosa USA participates." *Miami Products*, 449 F. Supp. 3d at 181. Limited jurisdictional discovery shows that FPC USA's caustic soda profits were important to FPC, helping FPC attain the record financial results alleged in the Complaint. ¶¶ 34-35. Between 2015-2019, FPC USA's caustic soda net profits totaled ███████, and FPC USA's net income totaled ███████, while FPC's share of FPC USA's net income as a percentage of FPC's consolidated net income averaged ███████ over the 2015-2019 period, which is material by any standard. *See* **Ex. 41** (an analysis of FPC USA's NaOH (caustic soda) annual sales, profits, and average net sales price, FPC USA's net income, and FPC's share of FPC USA's net income, as compared with FPC's consolidated net income). For example, in 2018 alone, FPC USA's caustic soda profits were ███████, which was *more than* ███ *times* FPC USA's ███████ caustic soda profits in 2015. *Id.* And in 2018, FPC's share of FPC USA's caustic soda profits constituted ███████ of FPC's consolidated net income for the year. *Id.* FPC USA's caustic soda sales and profits during the relevant time period thus improved FPC's annual earnings.

**c)** **Management and Supervision of FPC USA's Caustic Soda Operations**

FPC USA's Philip Chen routinely reported in Mandarin to the "███████" at FPC about the U.S. caustic soda business and market, at times explicitly requesting FPC's guidance and direction, including when a caustic soda price increase—driven in part by the IHS Markit price

index—was afoot in the U.S.[18] For example, in an email translated from Mandarin ███████

████████████████████████ FPC USA's Philip Chen wrote to FPC's Jian,

Tseng, and "ST Chen", who is Walter Chen, an FPC Vice President and also FPC USA's

Executive Vice President:

**Ex. 44,** FPC-JXD-00013228_CT0001-13229_CT0001.[19]

---

[18] FPC employees routinely received IHS caustic soda supply and pricing data, and at times met with IHS. *See, e.g.*, **Ex. 42,** FPC-JXD-00068413-40 (████████████████████████ ████████████████████). FPC USA employees even ████████████████████ ██████████████. *See, e.g.*, **Ex. 43** (FPC-USA-DPP-00253118), indicating that ████████████████████████ ████████████████████████████████████

[19] It "is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, **and that fact alone** may not serve to expose the parent corporation to liability for its subsidiary's acts." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (emphasis added). But if a foreign parent exercises even "some control" over its domestic subsidiary in accord with *Schwab* with respect to the subject matter of the lawsuit (including through executives it shares in

FPC argues that it did not engage in any caustic soda sales or pricing conduct in the U.S. either directly or through FPC USA. FPC Br. at 10. But Philip Chen's declaration is careful to avoid stating whether or not his FPC "████████" and "████████████████ ever gave him and FPC USA general caustic soda market sales or pricing "████████" or approval or instructions. *Cf.* Chen Decl. ¶ 10 ("FPC has no control *over the terms* of FPC USA's sales of caustic soda to *its* customers, including its customers on the west coast. FPC USA sets *those terms* [meaning terms to specific customers] without any direction from FPC.") (emphasis added). This is likely because FPC did in fact give U.S. caustic soda market sales and pricing guidance to FPC USA, and FPC USA assisted FPC in its strategic plans globally as well.

For example, in a presentation entitled "████████████████████████," which begins by ████████████████████████████ ████████████████████ (¶¶ 48-51) and also describes ████████████████ (¶ 59), the slide deck concludes: "████████████████████ ████████████████████████████████ ████████████████████." **Ex. 45** (FPC-DPP-USA-00102655-58 at 102657-58) (emphasis in original). Other emails also reflect FPC USA receiving direction from FPC and assisting FPC's caustic soda business activities. *See, e.g.,* **Ex. 46** (FPC-JXD-00074439 – 74442_CT0001, an email ████████████, in which Philip Chen states in part to FPC's Jian and Tseng (translated from Mandarin) regarding ████████████████

---

common with the subsidiary), then that parent may be subject to jurisdiction. *See Schwab*, 883 F.3d at 84; *Pictometry International Corp. v. Air America Flight Center, LLC*, 394 F. Supp. 3d 320, 331 (W.D.N.Y. 2019) (Wolford, J.) (denying motion to dismiss for lack of jurisdiction over nonresident defendant in part because it allegedly supervised and controlled the trade secret misappropriation out of which the lawsuit arose).

███████████████████████████████████████████

███████████████████████████████████████████

*Id.* at 74440_CT0001 (emphasis added); **Ex. 47**, FPC-JXD-00013852 – 13857_CT0001, an

email ████████████████████ from FPC USA's Philip Chen to Walter Chen █████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████ *Id.* at 13853_CT0001; *see also* ¶ 71 (referring to

Defendants' implementation of a $50/dst price increase privately to customers that Olin had

announced on August 28, 2018, ██████ days prior to Ex. 46 (the increase would not take effect

until October 1, 2018, for ████████████████████████████████ )).

   In fact, at least once, FPC USA was directly asked by FPC's ██████████ to ██████

████████████████████████████████████████ . *See* **Ex.**

**48,** FPC-JXD-00007277 – 7280_CT0001, ████████████████████████████████

██████████████████████████████████████████

█████████████████████████ (*id.* at 7278_CT0001), ████████████████

██████████████████████████████████████████

█████████████████████████ *Id.* at 7277_CT0001.[20]

   Detailed reports concerning FPC USA's businesses, including its caustic soda business,

were also ████████████████████████████ . *See* **Ex. 49**, FPC-JXD-

---

[20] Given this representation by ██████████████ that ███████████████████████████
████████████████ it is telling that FPC proffered no declaration from him in support of its Motion.

0007390_CT0001, 73933_CT0001 – CT0005, at 73933_CT0004, ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

### d)   Other Suit-Related Conduct, Including Co-Producer Agreements and Transactions

FPC and FPC USA and the other Defendants "entered into sales agreements as well as swap agreements of Caustic Soda and other products (including chloralkali derivatives) with each other in both North America and abroad." ¶ 94. Although FPC has been careful to state that it ███████████████████████   ██████████████████████████ and the extent of its direct dealings with any ███████████████████ is unclear (*see* Ex. 3 (2d Supp. O&Rs) at 4-5, "████████████████████████████████ ████████████████████████████████████" (emphasis added)), FPC exercised at least "some control" (consistent with *Schwab*, 883 F.3d at 85) over FPC USA's co-producer transactions with other Defendants. For example, Walter Chen (aka "ST Chen"), FPC's Vice President and FPC USA's Executive Vice President, █████████████████████████ ████████████████████████████████, and also directed an FPC USA employee to ███████████████████████████████. *See* **Ex. 50**, FPC-USA-DPP-00111494 – 111496_CT0001, ████████████████████████████ ████████; **Ex. 51**, FPC-USA-DPP-00120259-62, ████████████████████████ ████████; **Ex. 52**, FPC-USA-DPP-00120640-43, ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████ *Id.* at 120640.

Furthermore, the Defendants' transactional data shows ██████████████████████ ████████████████████████████████████████████████████████████████

██████████████████████████████████████████. Decl. ¶ 15; *cf.* ¶ 94 ("Swaps and sales of products inspire and reward exchanges of commercially sensitive information among the Defendants, and [ ] help to foster Caustic Soda industry cooperation rather than competition . . ."); *see also e.g.*, *Iowa Pub. Emples. Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 340 F. Supp. 3d 285, 339-40 (S.D.N.Y. 2018) (citing *Schwab*, 883 F.3d at 87, and exercising personal jurisdiction over a domestic defendant's foreign affiliate "because [a foreign company's] co-conspirators' 'overt acts in furtherance of the conspiracy' [in the U.S.] may be imputed to it for purposes of exercising jurisdiction [over it]."). In fact, in ███████████

██████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████ Ex. 9 at FPC-JXD-00025979_CT0001. Although it is unclear why ████████████████████████████████████████████, this email nonetheless shows that ████████████████████████████, and that they ██████████████████.

## B.    THE EXERCISE OF JURISDICTION OVER FPC IS REASONABLE

Due Process requires that the exercise of jurisdiction over a foreign defendant must be reasonable under the circumstances. *See, e.g., Licci*, 732 F.3d at 169-70. If a court finds that a foreign defendant's minimum U.S. contacts are sufficient to justify exercising jurisdiction, it

becomes the defendant's burden to show that the court's exercise of jurisdiction over it in the

forum will make litigating the case "'so gravely difficult and inconvenient that [it] unfairly is at a

severe disadvantage in comparison to [its] opponent.'" *In re Propranolol Antitrust Litig.*, 249 F.

Supp. 3d 712, 731 (S.D.N.Y. 2017) (exercising jurisdiction over non-resident defendants with

"global bases of operation" and U.S. distribution networks).

    After citing the *Metro. Life* reasonableness factors, FPC contends that its "burden [ ] of

further litigating the case in New York would be severe" given its purported lack of "contacts to

the forum" and because "its witnesses and other evidence are located in Taiwan." FPC Br. at 15;

*Metro. Life,* 84 F.3d at 568. FPC even cites *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano*

*Cnty.*, 480 U.S. 102, 113 (1987), contending that the "absence of any [U.S. suit-related]

contacts" by FPC means that the Court's exercise of personal jurisdiction over it "would offend

traditional notions of fair play and substantial justice." *Id.* This is disingenuous. Indeed, the

reverse is true. FPC is a global multi-national corporation that has earned billions of dollars in

revenues from its U.S. subsidiaries including FPC USA, and FPC itself has substantial U.S.

caustic soda sales and an enormous number of caustic-soda-related U.S. contacts (a small portion

of which are discussed above). *See, generally, supra* at pp. 7-29. And there can be no doubt that

the "most efficient resolution of [this] controversy" is before this Court, which has been

adjudicating Plaintiffs' plausible Sherman Act claim against, and exercising jurisdiction over,

defendants FPC USA, Shintech, Olin, OxyChem, and Westlake for almost two years. *Metro.*

*Life*, 84 F.3d at 568. *See also Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984)

(parent and its subsidiaries are considered a single collective entity for purposes of conspiracy

liability under Section 1 of the Sherman Act, and cannot be liable for conspiring with each other

under the Act). The Second Circuit has instructed that "dismissals resulting from the

application of the reasonableness test **should be few and far between**", and a defendant must

present "**a compelling case** . . . [to] render jurisdiction unreasonable." *Licci*, 732 F.3d at 173-74

(citations and quotations omitted) (emphasis added). FPC has presented nothing of the sort. The

pertinent *Metro. Life* "reasonableness" factors thus strongly favor this litigation proceeding

against FPC in this Court.

> **C.    IF THE COURT IS INCLINED TO GRANT FPC'S REQUEST FOR
> ALTERNATIVE RELIEF UNDER RULE 12(b)(6), PLAINTIFFS SHOULD
> BE GRANTED LEAVE TO FILE THE PROPOSED FIRST AMENDED
> CONSOLIDATED CLASS ACTION COMPLAINT**

FPC also requests that the Court dismiss Plaintiff's Complaint under Rule 12(b)(6). FPC

Def. Br. at 16-19. In its Order, the Court recognized that FPC's grounds for dismissal "overlap

with the issues raised by" its Rule 12(b)(2) motion, and thus denied it without prejudice and with

leave to renew after the completion of jurisdictional discovery. *Miami Products*, 449 F. Supp. 3d

at 189. Consistent with the Second Circuit's "strong preference for resolving disputes on the

merits," *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (internal citations and

quotations omitted), and in light of the additional facts developed through discovery, Plaintiffs

respectfully request, pursuant to Rule 15, for leave to file an amended complaint, and submit that

any consideration of FPC's Rule 12(b)(6) motion should be with respect to it, because it reflects

new allegations largely based on evidence produced by FPC in limited jurisdictional discovery.

Rule 15(a)(2) provides that courts "should freely give leave" to amend a complaint

"when justice so requires." Fed. R. Civ. P. 15(a)(2). In this Circuit, this is a "liberal" or

"permissive" standard. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160,

190 (2d Cir. 2015); *accord Foman v. Davis,* 371 U.S. 178, 182 (1962) ("If the underlying facts

or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be

afforded an opportunity to test his claim on the merits."). A party opposing leave to amend bears

the burden of proving that leave to amend will be futile; and absent bad faith, undue delay, or

undue prejudice, "leave to amend will be denied as futile only if the proposed new claim cannot

withstand a 12(b)(6) motion to dismiss for failure to state a claim." *Xerox Corp. v. Lantronix,*

*Inc.*, 342 F. Supp. 3d 362, 372 (W.D.N.Y. 2018) (Wolford, J.) (citing and quoting *Milanese v.*

*Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)). In determining the futility of a proposed

amendment, courts apply the same plausibility standard used to assess the adequacy of pleadings.

*Midwest Athletics & Sports All. LLC v. Xerox Corp.*, No. 6:19-CV-06036 EAW, 2020 WL

4583744, at *7 (W.D.N.Y. Aug. 10, 2020) (Wolford, J.).

Plaintiffs have submitted a redlined "First Amended Consolidated Class Action

Complaint" ("FAC") as **Exhibit 1** to the Decl. It substantively amends only those allegations of

the Complaint (Dkt. 51) pertinent to FPC.[21] For example, the FAC contains specific allegations

against FPC that it directly sold tens of thousands of pounds of dry and liquid caustic soda to

U.S. customers ███████████████████████████████ during the relevant period,

including sales to one of the largest purchasers of caustic soda in the U.S. and the world (Ex. 1 at

¶ 34); that FPC supervised and exercised some control over FPC USA's sales and pricing of

caustic soda in the U.S. (both dry caustic soda made in Taiwan and liquid caustic soda made in

both Taiwan and the U.S.) (*id.* at ¶¶ 34-35); that FPC and FPC USA operated in a common,

global caustic soda business enterprise, often collaborating in the sale, pricing, marketing, and

distribution of Caustic Soda both in the United States and abroad (*id.* at ¶ 35); that the prices

FPC charged U.S. customers for caustic soda not only increased but also increased at times when

FPC USA's and the other Defendants' caustic soda customers' prices also were increasing (*id.* at

---

[21] The only non-FPC substantive revisions to the Complaint concern a withdrawn named
plaintiff, a dismissed defendant, and a correction to reflect that OxyVinyls is a subsidiary of
defendant OxyChem. *See* Ex. 1 at p. 1 and ¶¶ 19, 28-29, 61, 92, 94, 124.

¶ 34); that FPC personnel attended a variety of trade association meetings and conferences in the U.S. and abroad with FPC USA and even other Defendants' employees at times that the Defendants were increasing caustic soda prices (*id.* at ¶¶ 35, 91, 93); that FPC's Vice President Walter Chen, who was also FPC USA's Executive Vice President, ██████████████ (*id.* at ¶ 94); and facts concerning FPC USA's ownership by FPC and members of the Wang family. *Id.* at ¶ 35.

These allegations are more than sufficient to link FPC to the alleged price-fixing conspiracy. *In re Elec. Carbon Prod. Antitrust Litig.*, 333 F. Supp. 2d 303, 311 (D.N.J. 2004) (at the 12(b)(6) stage, plaintiffs must allege that each defendant joined the conspiracy and "played some role in it."). An agreement to join a conspiracy by each defendant in an antitrust case may be implicit, and motives may vary among each member of a conspiracy. *In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709, 718 (E.D. Pa. 2011). "To evaluate the articulated allegations as to an individual defendant in the context of a multi-defendant, multi-faceted conspiracy, the conspiracy must not be 'compartmentalized.'" *Id.* (quoting *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 699 (1962)). *Accord In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MDL-1775 JG VVP, 2010 WL 10947344, at *8 (E.D.N.Y. Sept. 22, 2010) (*"*No defendant goes unmentioned in the complaint. Each is alleged to have engaged in some specified conduct, even if in the defendants' eyes it amounts to very little.").

The proposed amended complaint (Ex. 1) plausibly alleges that FPC directly participated in the alleged conspiracy and the U.S. caustic soda market, including by supplying caustic soda directly to one of the world's largest caustic soda customers. Ex. 1 at ¶¶ 34-35, 90-91, 93, 94; *see, generally, supra* at pp. 7-29. FPC also directly sold dry caustic soda to other U.S. customers, and sold caustic soda indirectly to U.S. customers through its supervision and guidance over FPC

33

USA's caustic soda business. *Id.* Prices to FPC's U.S. customers increased during the alleged conspiracy at and around the same times that the FAC alleges the other Defendants increased prices, and FPC profited from FPC USA's caustic soda business, the profits of which skyrocketed between 2015 and 2018 in particular, as discussed above. Ex. 1 at ¶¶ 34-35, 90; Ex. 41 (generally). FPC also benefited from the allegedly artificial price inflation of the IHS Markit caustic soda price index in its negotiations with U.S. customers, and attended trade association conferences in the U.S. and abroad at which caustic soda U.S. market conditions were discussed and during times in which U.S. caustic soda prices were increasing. Ex. 1 at ¶¶ 35, 77, 86, 90-91, 93, 96-97. These allegations are sufficient to show "a factual connection between [FPC] and the alleged conspiracy[.]" *Miami Products*, 449 F. Supp. 3d at 167, quoting *Iowa Pub.*, 340 F. Supp. 3d at 316.

In addition, FPC is also liable for the alleged conspiracy entered into on its behalf by FPC USA. Ex. 1 at ¶ 35. The Court has previously held that the law of the state of incorporation of a subsidiary governs the adequacy of vicarious liability allegations against its parent, thus, Delaware law governs the sufficiency of Plaintiffs' proposed amended agency claims against FPC. Ex. 1 at ¶¶ 34-35. Under Delaware law, an "agency relationship may develop whether the two separate corporations are parent and subsidiary or are completely unrelated outside of the limited agency setting." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 271 (D. Del. 1989). Complete domination is unnecessary. *British Telecomms. PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 409 (D. Del. 2019). The allegations must simply establish "a close connection between the relationship of the two corporations and the cause of action." *Mobil Oil Corp.*, 718 F. Supp. at 271. In light of the evidence discussed above, this standard is satisfied here. FPC not only supervised and provided guidance to FPC USA in connection with the sale,

34

pricing, marketing, and distribution of caustic soda in the U.S. to U.S. customers, FPC and FPC

USA routinely collaborated and engaged in caustic soda business activities, including sales to

one of the largest caustic soda buyers in the U.S. and the world. Ex. 1 at ¶¶34-35, 90-91, 93-94.

Because the proposed FAC plausibly alleges FPC's direct and vicarious liability for the alleged

conspiracy, FPC's alternative request for Rule 12(b)(6) relief should be denied, and Plaintiffs'

Rule 15 motion for leave to file the FAC should be granted.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that FPC's Motions to Dismiss

under Rule 12(b)(2) and 12(b)(6) both be denied and that it be ordered to answer the Complaint

(Dkt. 51) or, in the alternative, that Plaintiffs be permitted to publicly file the FAC (Ex. 1), and

that FPC be ordered to answer it.

Dated: March 1, 2021                                Respectfully submitted,


By:   /s/ *Marco Cercone*
RUPP BAASE PFALZGRAF CUNNINGHAM LLC
Marco Cercone, Esq.
R. Anthony Rupp III, Esq.
Arthur N. Bailey, Esq.
1600 Liberty Building
424 Main Street
Buffalo, NY 14202
Telephone: (716) 854-3400
Facsimile: (716) 332-0336
Email: cercone@ruppbaase.com
Email: rupp@ruppbaase.com
Email: bailey@ruppbaase.com

*Attorneys for Individual and Representative Plaintiffs*
*and Interim Liaison Class Counsel*


By:   /s/ *C. Andrew Dirksen*          By:   /s/ *Elana Katcher*
CERA LLP                               KAPLAN FOX & KILSHEIMER LLP
Solomon B. Cera, Esq. (*admitted pro hac*   Robert N. Kaplan, Esq.
*vice*)                                Jeffrey P. Campisi, Esq.

Pamela A. Markert, Esq. *(admitted pro hac vice)*
595 Market Street, Suite 1350
San Francisco, CA 94105
Telephone: (415) 777-2230
Email: scera@cerallp.com
Email: pmarkert@cerallp.com

C. Andrew Dirksen, Esq. *(admitted pro hac vice)*
800 Boylston St., 16th Floor
Boston, MA 02199
Telephone: (857) 453-6555
Email: cdirksen@cerallp.com

*Attorneys for Individual and Representative Plaintiff Miami Products & Chemical Company and Interim Co-Lead Class Counsel*

Elana Katcher, Esq.
Matthew P. McCahill, Esq.
850 Third Ave., 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Email: rkaplan@kaplanfox.com
Email: jcampisi@kaplanfox.com
Email: ekatcher@kaplanfox.com
Email: mmccahill@kaplanfox.com

Gary L. Specks, Esq. *(admitted pro hac vice)*
681 Prestwick Lane
Wheeling, Illinois 60090
Telephone: (847) 831-1585
Email: gspecks@kaplanfox.com

*Attorneys for Individual and Representative Plaintiff Amrex Chemical Co., Inc. and Interim Co-Lead Class Counsel*