UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MIAMI PRODUCTS & CHEMICAL CO.,
On Behalf of Itself and All Others Similarly
Situated, et al.,

          Plaintiffs,

      v.

OLIN CORPORATION, et al.,

          Defendants.
_____

AMREX CHEMICAL CO., INC.,
On Behalf of Itself and All Others Similarly
Situated,

          Plaintiff,

      v.

OLIN CORPORATION, et al.,

          Defendants.
_____

MIDWEST RENEWABLE ENERGY,
LLC, On Behalf of Itself and All Others
Similarly Situated,

          Plaintiff,

      v.

OLIN CORPORATION, et al.,

          Defendants.
_____

**DECISION AND ORDER**

1:19-CV-00385 EAW

1:19-CV-00386 EAW

1:19-CV-00392 EAW

_____

MAIN POOL AND CHEMICAL CO.,
INC., On Behalf of Itself and All Others
Similarly Situated,

             Plaintiff,

      v.

OLIN CORPORATION, et al.,

             Defendants.

_____

1:19-CV-00393 EAW

PERRY'S ICE CREAM COMPANY, INC.,
On Behalf of Itself and All Others Similarly
Situated,

             Plaintiff,

      v.

OLIN CORPORATION, et al.,

             Defendants.

_____

1:19-CV-00403 EAW

FINCH PAPER, LLC, On Behalf of Itself
and All Others Similarly Situated,

             Plaintiff,

      v.

OLIN CORPORATION, et al.,

             Defendants.

_____

1:19-CV-00480 EAW

_____

THE TRIPP PLATING WORKS, INC., On
Behalf of Itself and All Others Similarly
Situated, et al.,

          Plaintiffs,

      v.

OLIN CORPORATION, et al.,

          Defendants.

_____

1:19-CV-00975 EAW

PRECIOUS PLATE, INC., On Behalf of
Itself and All Others Similarly Situated, et
al.,

          Plaintiffs,

      v.

OLIN CORPORATION, et al.,

          Defendants.

_____

1:19-CV-00990 EAW

## **INTRODUCTION**

Plaintiffs Miami Products & Chemical Co., Amrex Chemical Co., Inc., Finch Paper, LLC, Main Pool and Chemical Co., Inc., Midwest Renewable Energy, LLC, Perry's Ice Cream Company, Inc., VanDeMark Chemical, Inc., The Tripp Plating Works, Inc., and Precious Plate, Inc. (collectively "Plaintiffs") bring these putative class actions against defendants Olin Corporation, K.A. Steel Chemicals, Inc., Occidental Chemical Corporation, Westlake Chemical Corporation, Shin-Etsu Chemical Co. Ltd. ("Shin-Etsu"),

Shintech Incorporated ("Shintech"), Formosa Plastics Corporation ("Formosa"), and Formosa Plastics Corporation, U.S.A. ("Formosa USA") (collectively "Defendants"), alleging an anticompetitive conspiracy to fix the price of caustic soda within the United States. (Dkt. 51; Dkt. 129) [1].

Presently before the Court are: (1) a renewed motion to dismiss for lack of personal jurisdiction filed by Shin-Etsu (Dkt. 230); and (2) a renewed motion to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state a claim filed by Formosa (Dkt. 288). For the reasons discussed below, the Court grants Shin-Etsu's and Formosa's motions to dismiss, finding that the Court lacks personal jurisdiction over either of these corporations.

## BACKGROUND

### I. Factual Background

As noted above, the instant actions relate to a purported anticompetitive conspiracy by Defendants to fix the price of caustic soda in the United States. (Dkt. 51; Dkt. 129). The details of the alleged conspiracy are set forth at length in this Court's Decision and Order dated March 27, 2020, resolving several prior motions to dismiss (Dkt. 119) (the "March 27th Decision"), familiarity with which is assumed for purposes of this Decision and Order.

---

[1] Unless otherwise noted, all docket references herein refer to Civil Action No. 19-cv-00385 (the "Lead Action").

## II.    Procedural Background

The procedural background of these matters is also set forth in detail in the March 27th Decision.  The Court sets forth the salient and subsequent procedural developments below.  It is necessary to note as an initial matter that there are two operative complaints in this matter—a consolidated class action complaint filed by Amrex Chemical Co., Inc., Finch Paper, LLC, Main Pool & Chemical Company, Inc., Miami Products & Chemical Company, Midwest Renewable Energy LLC, Perry's Ice Cream Company, Inc., and VanDeMark Chemical, Inc. (collectively the "Direct Purchaser Plaintiffs") (Dkt. 51 (the "direct purchaser complaint")) and a consolidated class action complaint filed by The Tripp Plating Works, Inc. and Precious Plate, Inc. (collectively the "Indirect Purchaser Plaintiffs") (Dkt. 129 (the "indirect purchaser complaint")).

Shin-Etsu and Formosa previously filed motions to dismiss the claims set forth in the direct purchaser complaint for lack of personal jurisdiction.  (Dkt. 86; Dkt. 103).  In its Match 27th Decision, the Court denied Shin-Etsu's and Formosa's motions without prejudice to renewal after completion of jurisdictional discovery.  (Dkt. 119).

Shin-Etsu filed its renewed motion to dismiss on November 30, 2020, seeking dismissal of all claims asserted against it in both the direct purchaser complaint and the indirect purchaser complaint.  (Dkt. 230).  The Direct Purchaser Plaintiffs filed opposition papers on December 10, 2020, and indicated therein that "The Indirect Purchaser Plaintiffs join this opposition to Shin-Etsu's motion."  (Dkt. 239 at 6 n.1).  Shin-Etsu filed its reply on December 31, 2020.  (Dkt. 242).

Formosa filed its renewed motion to dismiss on February 8, 2021, also seeking dismissal of all claims asserted against it in both the direct purchaser complaint and the indirect purchaser complaint. (Dkt. 288). The Direct Purchaser Plaintiffs filed opposition papers on March 1, 2021, again noting that "The Indirect Purchaser Plaintiffs join this opposition to [Formosa's] motion." (Dkt. 294-1 at 6 n.1). Formosa filed its reply on March 22, 2021. (Dkt. 297).

## DISCUSSION

## I. Legal Standard on Motions to Dismiss for Lack of Personal Jurisdiction

"On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, [the] plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). "The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause. . . . It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). "Federal courts must satisfy three requirements in order to exercise personal jurisdiction over an entity: (1) the entity must have been properly served, (2) the court must have a statutory basis for exercising personal jurisdiction, and (3) the exercise of personal jurisdiction must comport with constitutional due process." *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16 CIV. 5263 (AKH), 2018 WL 4830087, at *6 (S.D.N.Y. Oct. 4, 2018). Here, the Court has already determined in the March 27th Decision that the first two prongs of this standard

are satisfied; accordingly, the issue before the Court is whether constitutional due process permits it to exercise personal jurisdiction over Shin-Etsu or Formosa.

"Due process permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not 'offend traditional notions of fair play and substantial justice.'" *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted)). To determine whether exercising personal jurisdiction comports with due process, "we ask whether the defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction." *Id.* "The constitutional minimum contacts inquiry for personal jurisdiction requires us to distinguish between two forms of jurisdiction." *Id.* "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state. General jurisdiction, in contrast, permits a court to adjudicate any cause of action against the . . . defendant, wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). Here, as explained in the March 27th Decision, Plaintiffs do not contend that general jurisdiction exists, and so the Court's inquiry is direct to the issue of specific jurisdiction. "If the defendant has sufficient minimum contacts, we proceed to the second stage of the due process inquiry, and consider whether the assertion of personal jurisdiction is reasonable under the circumstances of the particular case." *Porina*, 521 F.3d at 127 (quotation omitted).

Where, as here, a Rule 12(b)(2) motion is made after jurisdictional discovery has been conducted, a plaintiff must make a "factually supported" *prima facie* showing of

personal jurisdiction. *Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 250 (S.D.N.Y. 2020). More specifically, the plaintiff must make "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (citation and alteration omitted). "[T]he standard is akin to that on a motion for summary judgment. The pleadings, documents, and other evidentiary materials must be construed in the light most favorable to plaintiff and all doubts are resolved in its favor." *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 503 (S.D.N.Y. 2004) (quotations omitted).

A.    <u>Shin-Etsu</u>

Shin-Etsu is a Japanese corporation with its principal place of business in Tokyo, and Shintech, which is based in the United States, is one of its wholly-owned subsidiaries. (Dkt. 119 at 66). Plaintiffs argue that the Court can exercise personal jurisdiction over Shin-Etsu because: (1) Shin-Etsu directly participated in conduct related to the instant lawsuit; (2) Shin-Etsu exercised "some control" over Shintech's caustic soda business; and (3) Shin-Etsu is an alter-ego of Shintech. (Dkt. 239). These contentions cannot bear scrutiny.

Before delving into the specifics of Plaintiffs' arguments as to Shin-Etsu, the Court addresses first an issue that permeates Plaintiffs' opposition. It is undisputed that Yasuhiko Saitoh ("Saitoh") is president of both Shin-Etsu and Shintech. (*See* Dkt. 231 at ¶ 4). Plaintiffs' personal jurisdiction arguments as to Shin-Etsu rely almost entirely on this fact, inasmuch as Plaintiffs contend that Saitoh's actions, even when taken in his capacity as

president of Shintech, are attributable to Shin-Etsu. However, this contention runs afoul of well-established caselaw and accordingly cannot be sustained.

As the Supreme Court explained in *United States v. Bestfoods*, 524 U.S. 51 (1998), "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *Id*. at 69 (quotation omitted). Moreover, there is a presumption that overlapping officers "are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary," and "it cannot be enough to establish liability . . . that dual officers and directors made policy decisions and supervised activities" for the subsidiary. *Id*. at 69-70 (citation omitted). It is Plaintiffs' obligation to come forward with evidence that "rebuts the presumption that dual officers and directors can faithfully serve both parent and subsidiary." *Consol. Edison Co. of N.Y. v. UGI Utilities, Inc.*, 153 F. App'x 749, 752 (2d Cir. 2005). Otherwise, the Court cannot attribute to the parent the actions of a dual officer taken with respect to the subsidiary's business.

Here, Plaintiffs have not addressed *Bestfoods* and its progeny and have not come forward with or pointed to any evidence from which the Court could conclude that Saitoh was wearing his "parent hat" when taking actions on behalf of Shintech. Accordingly, they have not rebutted the presumption that Saitoh's actions taken while acting as president of Shintech are not attributable to Shin-Etsu.

### 1.    Direct Contacts

With that baseline issue resolved, the Court turns to Plaintiffs' assertion that Shin-Etsu directly participated in conduct aimed at the United States and related to this lawsuit.

As the Court explained in the March 27th Decision, in order to establish specific jurisdiction based on Shin-Etsu's direct contacts with the United States, Plaintiffs must show that such contacts (1) connect Shin-Etsu to the claimed price-fixing scheme and (2) are, at a minimum, a "but-for" cause of Plaintiffs' claimed injuries. (Dkt. 119 at 67-68); *see SPV Osus Ltd. v. UniCredit Bank Austria,* No. 18-CV-3497(AJN), 2019 WL 1438163, at *6 (S.D.N.Y. Mar. 30, 2019) (explaining that to support an exercise of personal jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum" and "[c]ourts require either proximate or but-for causation depending on the extent of a defendant's contacts with the forum."). These requirements are not satisfied here.

Setting aside the actions that Saitoh took on behalf of Shintech, which—as discussed above—cannot support the Court's exercise of personal jurisdiction over Shin-Etsu, the contacts alleged by Plaintiffs are as follows: (1) Saitoh "exploited" his position as president of Shin-Etsu to sell caustic soda on behalf of Shintech; (2) Shin-Etsu executives "monitored the other Defendants' public statements about the U.S. caustic soda market"; and (3) Shin-Etsu "appears to have at least considered engaging in a caustic soda transaction outside of the United States . . . at a time when it was concerned that weakness in the price of caustic soda in Asia could lead to a decline in U.S. caustic soda market prices." (Dkt. 239 at 16-18). These "contacts" identified by Plaintiffs simply are not enough to demonstrate that Shin-Etsu "purposefully availed itself of the forum by deliberately directing its conduct" at the United States and that "the matter at issue . . . arose out of, or is sufficiently related

to, [Shin-Etsu's] in-forum conduct." *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 330 (S.D.N.Y. 2018).

As to the first of the claimed contacts, Plaintiffs have submitted to the Court evidence that (1) Saitoh was identified as the president of Shin-Etsu on a list of planned attendees at a Shintech meeting with a caustic soda customer and (2) that Toshiaki Ansai ("Ansai"), Shintech's vice-president, identified Saitoh as the "President of Shin-Etsu/Shintech" in an email thread discussing a letter that Ansai sent to a third-party complaining about its reporting of caustic soda export prices in the United States. (*See* Dkt. 239 at 16-17). The first of these actions is completely untethered to the price-fixing conspiracy alleged by Plaintiffs; there is no evidence that any sales of caustic soda were made or even discussed at the meeting in question. As such, even assuming the Saitoh was wearing his "parent hat" at this meeting, that does not implicate Shin-Etsu in the conduct at issue in this lawsuit.

With respect to the email from Ansai, the fact that Ansai correctly described Saitoh as president of both Shin-Etsu and Shintech does not indicate that Saitoh was wearing his "parent hat" when communicating regarding the price of United States caustic soda pricing. Ansai has explained that the letter discussed in the email was sent by Shintech and not Shin-Etsu and that the response letter was not forwarded to Shin-Etsu. (Dkt. 243 at ¶¶ 4-5). Again, the mere fact of Saitoh's dual roles does not allow this Court to transform his actions taken on behalf of Shintech into conduct by Shin-Etsu.

As to the second and third "contacts" identified by Plaintiffs, they are not contacts with the United States at all. Neither reading reports produced by a company from the

United States nor merely thinking about engaging in a commercial transaction in Asia that could have some impacts in the United States but not ultimately doing so constitutes conduct that was "deliberately directed" at this forum. *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 97 (S.D.N.Y. 2015). As Shin-Etsu aptly notes, if merely considering taking action that could impact markets in the United States was sufficient to support an exercise of personal jurisdiction, there would be no real "minimum" to the "minimum contacts" test. (*See* Dkt. 242 at 12 ("If thoughts and ruminations alone can suffice to establish personal jurisdiction, then there is no 'minimum' to minimum contacts.")).

In sum, Plaintiffs have not come forward with evidence from which a reasonable factfinder could conclude that Shin-Etsu had sufficient direct contacts with the United States related to the alleged price-fixing conspiracy at issue in this lawsuit to support an exercise of personal jurisdiction.

### 2.  Agency

Plaintiffs next contend that Shin-Etsu is "subject to [personal] jurisdiction under an agency theory" because it engaged in a "common business enterprise" related to caustic soda with Shintech while exercising "some control" over Shintech's caustic soda operations. (Dkt. 239 at 22-23). The Court considered this argument in the March 27th Decision and concluded that, at that point in time, Plaintiffs had "failed to make the showing necessary to establish specific jurisdiction pursuant to an agency theory" because they had "not demonstrated that Shin-Etsu is dependent on Shintech's caustic soda business." (Dkt. 119 at 75-76). Plaintiffs have not, after completion of jurisdictional discovery, come forward with evidence that would warrant changing that conclusion.

Plaintiffs' argument again hinges almost entirely on their erroneous attribution of actions taken by Saitoh, in his role as president of Shintech, to Shin-Etsu. (*See* Dkt. 239 at 27-36). As the Court discussed at length above, there is no basis for the conclusion that Saitoh was actually acting on behalf of Shin-Etsu when functioning as Shintech's president. Accordingly, Plaintiffs' assertions regarding Saitoh's involvement in the management and supervision of Shintech's caustic soda operations, including his communications with Ansai regarding a caustic soda price index, cannot establish personal jurisdiction over Shin-Etsu.

Viewing the evidence regarding actions taken by Saitoh in the appropriate context, Plaintiffs have not identified evidence from which a reasonable factfinder could conclude that Shin-Etsu and Shintech were involved in a "common business enterprise" related to caustic soda. In this regard, "the essential question is whether the services that [Shintech] provided to [Shin-Etsu] were essential to [Shin-Etsu], such that the corporation itself would perform equivalent services if no agent were available." *Yousef v. Al Jazeera Media Network*, No. 16-CV-6416 (CM), 2018 WL 1665239, at *9 (S.D.N.Y. Mar. 22, 2018) (quotation omitted). A rational factfinder could not answer that question in the affirmative. There is no evidence that Shintech imports or distributes caustic soda on behalf of Shin-Etsu, nor that Shin-Etsu directed Shintech's actions with regard to its sales of caustic soda—instead, Shintech's production of caustic soda is tied to its forecast of the demand for PVC, which it determines independently of Shin-Etsu. (*See* Dkt. 234 at ¶¶ 37-50). Moreover, as Shin-Etsu has demonstrated in its reply, the financial calculations relied upon by Plaintiffs in contending that Shin-Etsu is somehow dependent on Shintech's caustic

soda profits, thus implying an agency relationship, are faulty.  In particular, Plaintiffs have improperly compared Shin-Etsu's operating income to Shintech's gross profits in making their comparisons, leading Plaintiffs to grossly overstate the significance of Shintech's caustic soda sales to Shin-Etsu's overall business.  (*See* Dkt. 242 at 17-18).  On this record, the Court cannot exercise personal jurisdiction over Shin-Etsu on an agency theory.

### 3.   Alter-Ego

Plaintiffs' final argument as to Shin-Etsu is that Shintech can be considered Shin-Etsu's alter-ego for purposes of personal jurisdiction.  This argument warrants little discussion, as it is wholly contradicted by the evidence of record.

In considering whether a subsidiary is the parent corporation's alter-ego for jurisdictional purposes, the Court considers "the failure to observe corporate formality; inadequate capitalization; intermingling of personal and corporate funds; the sharing of common office space, address and telephone numbers of the alleged dominating entity and the subject corporation; an overlap of ownership, directors, officers or personnel; the use of the corporation as a means to perpetrate the wrongful act against the plaintiff; as well as any other evidence tending to show that the company is being used as a mere shell." *Miramax Film Corp. v. Abraham*, No. 01 CV 5202 (GBD), 2003 WL 22832384, at *8 (S.D.N.Y. Nov. 25, 2003).  Of course, "[t]hese factors are not exhaustive, nor is proof of any one factor or a combination of factors necessarily determinative." *Id*.  However, in this case, the relevant considerations overwhelmingly demonstrate that Shintech is not a mere shell.

It is undisputed that "Shintech is robustly capitalized" (Dkt. 239 at 37), and Plaintiffs similarly concede that "Shin-Etsu and Shintech have many separate employees and offices worldwide, and have generally respected corporate formalities. . ." (*id*. at 36). On this record, a rational factfinder could not find that Shintech is Shin-Etsu's alter-ego.

For all these reasons, the Court finds that Shin-Etsu has demonstrated its entitlement to dismissal of the claims against it for lack of personal jurisdiction.

## B. **Formosa**

The Court turns next to Formosa's assertion that the Court lacks personal jurisdiction over it. As the Court explained in the March 27th Decision, Formosa is a Taiwanese parent corporation to Formosa USA. (Dkt. 119 at 52, 54). Plaintiffs contend that the Court can exercise personal jurisdiction over Formosa based on: (1) Formosa's direct influence and participation in the United States caustic soda market; and (2) an agency relationship between Formosa and Formosa USA. The Court considers these arguments below.

As an initial matter, the Court notes that in its reply papers, Formosa asks the Court to strike portions of the attorney declaration of C. Andrew Dirksen (Dkt. 294 (the "Dirksen Declaration")) on the basis that they contain inadmissible hearsay and irrelevant attorney commentary. (*See* Dkt. 297 at 5-8). The Court declines to strike any portion of the Dirksen Declaration, inasmuch as Formosa has failed to make any legal argument as to the propriety of that remedy. *See Bass v. Miss Porter's Sch.,* No. CIV 3:08CV1807 JBA, 2010 WL 122602, at *1 (D. Conn. Jan. 5, 2010) (denying motion to strike portions of affidavits that the plaintiff argued, among other things, constituted inadmissible hearsay and unsupported

legal conclusions, because striking is a "drastic remedy" and the plaintiff had "neither argued nor shown that she . . . suffered any prejudice by these assertions' inclusion in the record, or that the challenged matter has no bearing on the subject matter of the litigation," but the court would consider the plaintiff's "objections when considering the pending motion for summary judgment"). However, as discussed more fully below, the Court agrees with Formosa that much of the Dirksen Declaration is not admissible evidence and thus cannot be relied upon to provide the necessary support for an exercise of personal jurisdiction.

### 1. Direct Contacts

Plaintiffs' arguments regarding Formosa's purported direct contacts with the United States' caustic soda market rely largely on their position that Formosa made sales of caustic soda to three customers in the United States, using Formosa USA as a mere nominal middleman. (*See* Dkt. 294-1 at 13). Formosa strongly disputes this characterization of its conduct, contending that it sold caustic soda to Formosa USA in Taiwan, and Formosa USA then resold the materials to its own customers without any involvement on Formosa's part other than delivering the material as directed by its customer, Formosa USA. Formosa further argues that no reasonable factfinder could resolve this dispute in Plaintiffs' favor, because Plaintiffs' argument is based on attorney speculation and inadmissible hearsay, whereas Formosa has submitted sworn declarations from individuals with personal knowledge of the facts. (*See* Dkt. 297 at 8-13).

The Court agrees with Formosa. "A court, in resolving a Rule 12(b)(2) motion made after jurisdictional discovery, may consider only admissible evidence. Accordingly,

affidavits or declarations in support of personal jurisdiction must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 251 (S.D.N.Y. 2020) (citations and quotations omitted). Formosa has satisfied this burden and has submitted to the Court sworn declarations by individuals with personal knowledge confirming that the United States-based corporations at issue were not, as Plaintiffs claim, *de facto* customers of Formosa. (*See, e.g.,* Dkt. 290 at ¶ 7; Dkt. 298 at ¶¶ 2-5).

In opposition to Formosa's motion, Plaintiffs rely on the Dirksen Declaration. In the Dirksen Declaration, counsel makes numerous assertions about Formosa's and Formosa USA's sales to the three United States customers at issue, based on "an analysis and comparison of [Formosa's] and [Formosa USA's] transactional sales date by Plaintiffs' economic consultants[.]" (*Id*. at ¶ 13). Counsel's secondhand summary of an analysis performed by unnamed economic experts whose credentials have not even been provided to the Court is not admissible evidence. *See Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 202 (2d Cir. 1999) ("[A] district court must act as a gatekeeper to exclude invalid and unreliable expert testimony.").[2]

---

[2]     The importance of the Court's gatekeeping function is amply illustrated by the fact that Plaintiffs' unnamed "economic experts" apparently made a rudimentary mistake in analyzing the documents produced by Formosa, and incorrectly assumed that Formosa had recorded shipment dates in terms of the Gregorian calendar when they had instead recorded them in terms of the Taiwanese calendar. (*See* Dkt. 297 at 10; Dkt. 298 at ¶¶ 7-8).

Further, counsel's assertion, without citation to any authority, that "in a contract of carriage, a 'consignee' is typically the buyer of an exported or imported commodity product, who assumes financial responsibility for receipt of the shipment and who pays any duties and taxes" (Dkt. 294 at ¶ 12) is not admissible evidence. *See Jamaica Ash & Rubbish Removal Co. v. Ferguson*, 85 F. Supp. 2d 174, 182 (E.D.N.Y. 2000) ("An attorney's statement or argument is not evidence."). Formosa has provided information from a source with personal knowledge that the term consignee, in the documents at issue, "identifies the entity to whom [Formosa] shipped the caustic soda" at Formosa USA's direction and that Formosa would not "invoice or collect payment from the consignee, because the consignee is not [Formosa's] customer." (Dkt. 298 at ¶ 5). Plaintiffs cannot overcome this admissible evidence with unsupported attorney commentary on the general meaning of consignee.

Finally, counsel's recitation of information purportedly provided to him by attorneys for non-party American Fuel and Petrochemical Manufacturers ("AFPM") (*see* Dkt. 294 at ¶ 17) is inadmissible hearsay and cannot be considered by the Court in resolving the jurisdictional dispute. "While it is proper for a court to rely on affidavits to establish jurisdictional facts, hearsay evidence submitted by a plaintiff is not sufficient to defeat a motion to dismiss for lack of personal jurisdiction." *Gosain v. State Bank of India*, 689 F. Supp. 2d 571, 582 (S.D.N.Y. 2010), *vacated in part on other grounds*, 414 F. App'x 311 (2d Cir. 2011); *see also J.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004) ("We may consider affidavits and other materials beyond the pleadings to resolve the

jurisdictional issue, but we may not rely on conclusory or hearsay statements contained in the affidavits.").

Considering only the admissible evidence, no reasonable factfinder could conclude that Formosa made direct sales to the three United States-based companies identified by Plaintiffs, nor that it attended multiple trade conferences in the United States, as Plaintiffs contend. Instead, the record before the Court demonstrates that the only contact with the United States that Formosa had during the relevant time period, is a single trip to Texas, around the time of the 2017 International Petrochemical Conference hosted by AFPM, at which Formosa representatives discussed the sale of caustic soda with employees of Formosa USA.[3] (*See* Dkt. 298 at ¶¶ 10-11). Plaintiffs have failed to connect this single trip to the United States to the unlawful conduct alleged in this lawsuit, much less to show that it was a but-for cause of Plaintiffs' claimed injuries.

Plaintiffs also make a somewhat convoluted argument that Formosa engaged in conduct aimed at the United States by withholding caustic soda from the United States' market. (*See* Dkt. 297 at 16). However, Formosa has presented unrebutted evidence that its sales of caustic soda to Formosa USA actually increased from 2016 to 2018. (Dkt. 298 at ¶¶ 8-9).

---

[3] Representatives of Formosa also attended trade conferences abroad during the relevant time period. (*See* Dkt. 294-1 at 22-23). However Plaintiffs have failed to point to evidence tying these international conferences to the price-fixing schemed alleged in this lawsuit, or otherwise establishing that Formosa's attendance threat constitutes conduct aimed at the United States.

For all these reasons, the Court finds that it cannot exercise personal jurisdiction over Formosa based on its own direct contacts with the United States.

## 2. Agency

The Court further concludes that no reasonable factfinder could determine that Formosa USA was acting as Formosa's agent with respect to its caustic soda operations in the United States. As an initial matter, the Court notes that in making many of their arguments regarding agency, Plaintiffs have erroneously conflated Walter Chen, the former executive vice-president of Formosa USA, with Shao-Ter Chen, the current vice-president of Formosa. (*See* Dkt. 301 at ¶¶ 1-2). Formosa has established that Walter Chen and Shao-Ter Chen are two different people, and so Plaintiffs' arguments that rely on the assumption that Walter Chen was an executive at both Formosa and Formosa USA are without merit and are accordingly disregarded by the Court.

Plaintiffs' remaining arguments, in essence, are that Formosa provided Formosa USA with "guidance" regarding "U.S. caustic soda market sales." (Dkt. 294-1 at 31). However, providing advice and guidance is very different than exercising control, as is required for a finding of agency. It is undisputed that Formosa had no control over the terms of Formosa USA's sales of caustic to its customers in the United States. (*See id*.). Plaintiffs have cited no cases in which a court exercised personal jurisdiction based on a parent corporation's provision of guidance to its subsidiary. To the contrary, as the Supreme Court noted in *Bestfoods*, "monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of

general policies and procedures" are all normal parent corporation behaviors that do not render such parent corporation liable for the actions of its subsidiary. 524 U.S. at 72.

In sum, no rational factfinder could conclude, based on the evidence before the Court, that Formosa USA was acting as Formosa's agent with respect to the conduct at issue in this lawsuit. Formosa has demonstrated its entitlement to dismissal for lack of personal jurisdiction. Having reached this conclusion, the Court need not and does not reach Formosa's alternative request for dismissal for failure to state a claim.

## CONCLUSION

For the reasons set forth above, the Court grants Shin-Etsu Chemical Co. Ltd.'s and Formosa Plastics Corporation's respective motions to dismiss for lack of personal jurisdiction. (Dkt. 230; Dkt. 288). The Direct Purchaser Plaintiffs' and the Indirect Purchaser Plaintiffs' claims against these defendants are dismissed without prejudice. *See Smith v. United States*, 554 F. App'x 30, 32 n.2 (2d Cir. 2013) ("[A] dismissal for want of personal jurisdiction is without prejudice."). The Clerk of Court is direct to terminate Shin-Etsu Chemical Co. Ltd. and Formosa Plastics Corporation as defendants in these actions.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: June 24, 2021
Rochester, New York