**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CAUSTIC SODA ANTITRUST LITIGATION | Lead Case No.: 1:19-cv-00385-EAW-MJR |
| THIS DOCUMENT RELATES TO:<br><br>INDIRECT PURCHASER ACTIONS | |

**INDIRECT PURCHASER PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF <u>CLASS REPRESENTATIVES AND CLASS COUNSEL</u>**

# Table of Contents

Table of Contents ................................................................................................................ ii

Table of Authorities ............................................................................................................ iii

Definitions ........................................................................................................................... x

Introduction ......................................................................................................................... 1

█████████████████████████████ ..................................... 4

    I.    ██████████████████████ ................................. 6

    II.   ██████████████████████████████ .............. 8

    III. ██████████████████████████████

               ................................... 10

    IV.   There is No Rule 23 "Tracing" Requirement for Class Members ................... 13

Argument ............................................................................................................................ 14

    I.    IPPs' Minor Amendments of Their Class Definitions Are Appropriate and Timely ........ 14

    II.   Named IPPs Adequately Demonstrate Class Membership ................................ 15

    III.  The Named Plaintiffs' Claims Are Typical ....................................................... 20

    IV.  ██████████████████████████████ ........... 21

        A.  ██████████████████████████

            ....................................... 21

        B.  ████████████████████████████

                s ................................................ 27

        C.  Common Evidence can be used to Estimate Aggregate Damages ............... 40

        D.  ████████████████████████ ........... 43

        █  ██████████████████████████████ 45

        F.  Common Evidence Demonstrates Class Membership ................................ 46

    V.   The Classes Are Ascertainable ....................................................................... 48

    VI.  Minor State Law Variations Do Not Affect Predominance or Manageability ............ 49

        A.  The Antitrust Class is manageable despite minor variations in applicable state law ..... 50

        B.  The Unjust Enrichment Class is similarly manageable ............................... 51

        C.  Different measures of unjust enrichment damages do not create individual issues ....... 54

Conclusion ......................................................................................................................... 55

## <u>Table of Authorities</u>

**Cases**                                                                                                    **Page(s)**

*In re Air Cargo Shipping Services Antitrust Litig.*,
   No. 06-MD-1175, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ..................................... 29, 44

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06–MD–1775, 2010 WL 4916723 (E.D.N.Y. Nov. 24, 2010) ......................................... 51

*In re Aluminum Warehousing Antirust Litig*,
   336 F.R.D. 5 (S.D.N.Y. 2020) ......................................................................................... 31

*In re Amaranth Nat. Gas Commodities Litig.*,
   269 F.R.D. 366 (S.D.N.Y. 2010) .................................................................................... 16

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ....................................................................................................... 44

*Arden Architectural Specialties, Inc. v. Wash. Mills Electro Minerals Corp.*,
   Nos. 95-cv-7574 CJS, 95-cv-7580 CJS, 2002 WL 31421915 (W.D.N.Y. Sep.
   17, 2002) .................................................................................................................. 19, 37

*Baker v. Saint-Gobain Performance Plastics Corp.*,
   No. 1:16-cv-0917, 2022 WL 9515003 (N.D.N.Y 2022) ................................................... 49

*Bigelow v. RKO Radio Pictures*,
   327 U.S. 251 (1946) ....................................................................................................... 40

*In re Broiler Chicken Antitrust Litig.*,
   2022 WL 1720468 (N.D. Ill. May 27, 2022) .............................................................. *passim*

*In re Capacitors Antitrust Litig. (No. III)*,
   No. 17-md-02801, 2018 WL 5980139 (N.D. Cal. Nov. 14, 2018) ..................................... 28

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. C–07–5944, 2013 WL 5391159 (N.D. Cal. Sept. 14, 2013) ......................................... 2

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   308 F.R.D 606 (N.D. Cal. 2015) ..................................................................................... 28

*In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*,
   679 F. App'x 135 (3d Cir. 2017) ..................................................................................... 32

*Coates v. Johnson & Johnson*,
   756 F.2d 524 (7th Cir. 1985) .......................................................................................... 30

*Cook v. Rockwell Int'l Corp.*,
  580 F.Supp.2d 1071 (D. Colo. 2006) .................................................................22, 30

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ...............................................................................17, 34

*Dial Corp. v. News Corp.*,
  314 F.R.D. 108 (S.D.N.Y. 2015) ..........................................................................6, 38

*In re Digital Music Antitrust Litig.*,
  321 F.R.D. 64 (S.D.N.Y. 2017) ...........................................................................50, 51

*In re Domestic Drywall Antitrust Litig.*,
  163 F. Supp. 3d 175 (E.D. Pa. 2016) .........................................................................46

*In re: Domestic Drywall Antitrust Litig.*,
  322 F.R.D. 188 (E.D. Pa. 2017) ...........................................................................22, 26

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ..........................................................................13, 50

*In re Electronic Books Antitrust Litig.*,
  No. 11 MD 2293, 2014 WL 1282293(DLC), (S.D.N.Y. Mar. 28, 2014) ...................22, 26, 31

*Fero v. Excellus Health Plan, Inc.*,
  502 F. Supp. 3d 724 (W.D.N.Y. 2020) (Wolford, J.) .............................................53

*In re Flash Memory Antitrust Litig.*,
  2010 WL 2332081, *2-13 (N.D. Cal. June 9, 2010) ...............................................45

*In re Flat Glass Antitrust Litig.*,
  385 F.3d 350 (3d. Cir. 2004) ...................................................................................45

*In re Flonase Antitrust Litig.*,
  284 F.R.D. 207 (E.D. Pa. 2012) ...............................................................................50

*Flores v. Anjost Corp.*,
  284 F.R.D. 112 (S.D.N.Y. 2012) ...............................................................................18

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  No. 13 CIV. 7789 (LGS), 2022 WL 3971006 (S.D.N.Y. Aug. 31, 2022) .....................16

*Gordon v. Microsoft Corp.*,
  No. MC 00-5994, 2003 WL 23105550 (D. Minn. Dec. 15, 2003) ..........................34

*In re High–Tech Employee Antitrust Litig.*,
  No 11–CV–02509–LHK, 2014 WL 1351040 (N.D. Cal. Apr. 4, 2014) .....................30

*In re In Re: Celexa And Lexapro Marketing and Sales Practices Litigation*,
915 F.3d 1 (1st Cir. 2019) ............................................................................47

*In re Indus. Diamonds Antitrust Litig.*,
167 F.R.D. 374 (S.D.N.Y. 1996) ...................................................................19

*Kleen Prods. LLC v. Int'l Paper Co.*,
306 F.R.D. 585 (N.D. Ill. 2015) ....................................................................40

*Kleen Prods. LLC v. Int'l Paper Co.*,
831 F.3d 919 (7th Cir. 2016) ............................................................37, 43, 45

*In re Korean Ramen Antitrust Litig.*,
13-cv-04115, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017).....................1, 35

*Korn v. Franchard Corp.*,
456 F.2d 1206 (2d Cir.1972)..........................................................................19

*Kurtz v. Costco Wholesale Corp.*,
818 F. App'x 57 (2d Cir. 2020) ..................................................................3, 21

*Kurtz v. Kimberly-Clark Corp.*,
321 F.R.D. 482 (E.D.N.Y. 2017) ..................................................................20

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
897 F.3d 88 (2d. Cir. 2018)..............................................................................4

*Lazarek v. Ambit Energy Holdings, LLC*,
No. 15-cv-6361-FPG, 2017 WL 4344557 (W.D.N.Y. Sept. 29, 2017) ...................52

*In re Lidoderm Antitrust Litig.*,
No. 14-MD-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ..............49

*In re Linerboard Antitrust Litig.*,
497 F. Supp. 2d 666 (E.D. Pa. 2007) ............................................................45

*Litton Sys., Inc. v. Am. Tel. & Tel. Co.*,
700 F.2d 785 (2d Cir. 1983).........................................................................42

*In re Loestrin 24 FE Antitrust Litig.*,
410 F. Supp. 3d 352 (D.R.I. 2019).................................................................27

*In re Loestrin 24 Fe Antitrust Litig.*,
No. 1:13-MD-2472, 2019 WL 3214257 (D.R.I. July 2, 2019) ..................40

*McDonough v. Toys R Us, Inc.*,
638 F. Supp. 2d 461 (E.D. Pa. 2009) .......................................................20, 41

*Menking v. Daines,*
    287 F.R.D 174 (S.D.N.Y. 2012) ........................................................................14

*Messner v. Northshore Univ. HealthSystem,*
    669 F.3d 802 (7th Cir. 2012) ......................................................................31, 44

*In re Methionine Antitrust Litig.,*
    204 F.R.D. 161 (N.D. Cal. 2001)...................................................................35

*In re Mushroom Direct Purchaser Antitrust Litig.,*
    319 F.R.D. 158 (E.D. Pa. 2016)....................................................................27

*In re Namenda Direct Purchaser Antitrust Litig.,*
    331 F. Supp. 3d 152 (S.D.N.Y. 2018).......................................................14, 15

*In re Namenda Indirect Purchaser Antitrust Litig.,*
    338 F.R.D. 527 (S.D.N.Y. 2021) ............................................................ *passim*

*In re NASDAQ Market-Maker Antitrust Litig.,*
    169 F.R.D. 493 (S.D.N.Y. 1996) .............................................................9, 37, 46

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.,*
    522 F.3d 6 (1st Cir. 2008)...........................................................................35, 45

*In re Nexium Antitrust Litig.,*
    777 F.3d 9 (1st Cir. 2015)................................................................................35

*In re Nexium (Esomeprazole) Antitrust Litig.,*
    297 F.R.D. 168 (D. Mass. 2013)...........................................................19, 49, 53

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC,*
    31 F.4th 651 (9th Cir. 2022) (en banc) *cert denied* 143 S.Ct. 434 (2022)...................... *passim*

*In re Optical Disk Drive Antitrust Litig.,*
    3:10-md-2143, 2016 WL 467444 (N.D. Cal. Feb. 8, 2016) ....................................1, 21, 28, 30

*In re Packaged Seafood Prods. Antitrust Litig.,*
    332 F.R.D. 308 (S.D. Cal. 2019) ........................................................... *passim*

*In re Petrobras Sec.,*
    862 F.3d 250 (2d. 2017).............................................................................48, 49

*In re Polyester Staple Antitrust Litig.,*
    No. MDL 3:03CV1516, 2007 WL 2111380 (W.D.N.C. July 19, 2007) ................................33

*In re Polyurethane Foam Antitrust Litig.,*
    314 F.R.D. 226 (N.D. Oh. 2014) ........................................................... *passim*

*In re Polyurethane Foam Antitrust Litig.*,
   No. 10–2196, 2014 WL 6461355 (N.D. Ohio Nov. 17, 2014) ..........................37, 42

*In re Potash Antitrust Litig.*,
   159 F.R.D. 682 (D. Minn. 1995) ...............................................................................37

*In re Pre-Filled Propane Tank Antitrust Litig.*,
   No. 14-02567-MD-W-GAF, 2021 WL 5632089 (W.D. Mo. Nov. 9, 2021) ...................32, 33

*In re Processed Egg Prod. Antitrust Litig.*,
   312 F.R.D. 124 (E.D. Pa. 2015) ................................................................................32

*In re Processed Egg Prods. Antitrust Litig.*,
   81 F. Supp. 3d 412 (E.D. Pa. 2015) ....................................................................37, 45

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   725 F.3d 244 (D.C. Cir. 2013) .................................................................................31

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
   338 F.R.D. 294 (D. Mass. 2021) .............................................................................27

*Resco Products, Inc. v. Bosai Minerals Grp.*,
   No. 06-235, 2015 WL 5521768 (W.D. Pa. Sept. 18, 2015) .........................................24

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   335 F.R.D. 1 (E.D.N.Y. 2020) ....................................................................... *passim*

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ...............................................................................9, 42

*Russell v. Forster & Garbus*, LLP,
   No. 17-CV-4274(JS)(AYS), 2020 WL 1244804 (E.D.N.Y. Mar. 16, 2020) ..........................18

*Savanna Grp., Inc. v. Trynex, Inc.*,
   No. 10-CV-7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013) ...........................................14

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ..............................................................................13

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d. Cir. 2010) ......................................................................................9

*In re Smart Techs., Inc. S'holder Litig.*,
   295 F.R.D. 50 (S.D.N.Y. 2013) ................................................................................48

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   No. CV 14-MD-02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017) .................49, 50, 53, 54

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
    264 F.R.D. 603 (N.D. Cal. 2009)..............................................................2, 6, 37, 47

*In re Suboxone Antitrust (Buprenorphine Hydrochlorine & Naloxone) Litig.,*
    967 F.3d 264 (3d Cir. 2020)...................................................................................27

*Sykes v. Mel S. Harris Assocs. LLC,*
    780 F.3d 70 (2d. Cir. 2015)....................................................................................39

*In re Terazosin Hydrochloride Antitrust Litig.,*
    220 F.R.D. 672 (S.D. Fla. 2004)...............................................................19, 50, 54

*Texas Indus., Inc. v. Radcliff Materials, Inc.,*
    451 U.S. 630 (1981)...............................................................................................12

*In re TFT-LCD Antitrust Litig.,*
    267 F.R.D. 583 (Mar. 28, N.D. Cal. 2010) .................................................2, 38, 42

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    No. M 07-1827 SI, 2012 WL 555090 (N.D. Cal. Feb. 21, 2012).....................36, 46

*Tyson Foods, Inc. v. Bouaphakeo,*
    577 U.S. 442 (2016)....................................................................................... *passim*

*In re U.S. Foodservice Inc. Pricing Litig.,*
    729 F.3d 108 (2d Cir. 2013).....................................................................................4

*U.S. Football League v. Nat'l Football League,*
    842 F.2d 1335 (2d Cir. 1988)................................................................................41

*U.S. v. Container Corp. of Am.,*
    393 U.S. 333 (1969)...............................................................................................33

*In re Urethane Antitrust Litig.,*
    166 F. Supp. 3d 501 (D.N.J. 2016) .......................................................................29

*In re Urethane Antitrust Litig.,*
    251 F.R.D. 629 (D. Kan. 2008)................................................................................9

*In re Urethane Antitrust Litig.,*
    768 F.3d 1245 (10th Cir. 2014) .............................................................................37

*Vargas v. Howard,*
    324 F.R.D. 319 (S.D.N.Y. 2018) ..........................................................................17

*Vincent v. Money Store,*
    304 F.R.D. 446 (S.D.N.Y. 2015) ..........................................................................15

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d. Cir. 2017)......................................................................................39

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
395 U.S. 100 (1969)...................................................................................................37

*In re Zetia (Ezetimibe) Antitrust Litig.*,
No. 2:18-MD-2836, 2020 WL 5778756 (E.D. Va. Aug. 14, 2020)......................49, 50, 51, 53

*In re Zetia (Ezetimibe) Antitrust Litig.*,
No. 20-2184, 2021 WL 3379035 (4th Cir. Aug. 4, 2021) ......................................27

**Other Authorities**

F.R.E 702 ...................................................................................................................24

Fed. R. Civ. P. 23 ............................................................................................. *passim*

Fed. R. Civ. P. 23(a)(3) .......................................................................................37, 38

Fed. R. Civ. P. 23(b)(3).............................................................................................50

**Definitions**

| | |
|---|---|
| **Macartney Decl.** | The Declaration of Dr. Gareth Macartney, Ph.D., in Support of Indirect Purchaser Plaintiffs' Motion for Class Certification dated September 26, 2022 (filed under seal). |
| **IPPs' Mem. of L.** | Indirect Purchaser Plaintiffs' Memorandum of Law in Support of Motion for Class Certification and Appointment of Class Representatives and Class Counsel dated September 26, 2022 (redacted version Dkt. 514-6, unredacted version filed under seal). |
| **Hart Decl.** | Declaration of Barbara J. Hart in Support of Indirect Purchaser Plaintiffs' Motion for Class Certification, Appointment of Class Representatives and Class Counsel dated September 26, 2022, at Dkt. 514-1. |
| **Hart R. Decl.** | Declaration of Barbara J. Hart in Support of Indirect Purchaser Plaintiffs' Reply Brief in Support of Motion for Class Certification, Appointment of Class Representatives and Class Counsel dated January 26, 2023. |
| **Ex. 1** | Exhibit 1 of the Hart R. Decl., attaching The Reply Declaration of Dr. Gareth Macartney, Ph.D., in Support of Indirect Purchaser Plaintiffs' Motion for Class Certification Dated January 26, 2023 |
| **Ex. __** | Unless otherwise specified, exhibits accompanying the Hart. R. Decl. |
| **Opp.** | Defendants' Opposition to Indirect Purchaser Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel dated November 22, 2022 (redacted version at Dkt. 532, unredacted filed under seal) |
| **Johnson Rpt.** | [Corrected] Expert Report of Dr. John H. Johnson, IV, dated November 28, 2022 (filed under seal). |
| **DPPs' R. Br.** | Direct Purchaser Plaintiffs' Reply Memorandum of Law in Support of Motion for Class Certification and Appointment of Class Representatives and Class Counsel dated August 25, 2022 (redacted version at Dkt. 499, unredacted filed under seal) |
| **Class Period** | October 1, 2015 to December 31, 2019. |

**Introduction**

Defendants fundamentally misconstrue Rule 23. They are wrong on the law, cite irrelevant facts, and, when all else fails, deny IPPs have a case. Cutting through the noise, IPPs clearly meet Rule 23's requirements. Defendants implicitly concede numerosity and commonality, and the common questions are exactly what IPPs pointed to in their opening brief: whether Defendants conspired to raise prices, whether those price increases caused harm, and whether the resulting damages are measurable on a classwide basis. ████████████████████████



███████████████████████████████████████████████ ██████████

██████████████ ███████████████ ████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████[5]

---

[1] *See, e.g.,* Macartney Decl., ¶¶ 86-97 █████████████████
███.
[2] *See, e.g.,* Macartney Decl., ¶¶ 76-79; *see also* DPPs' Reply Br. at 13 (███
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████.
[3] *See, e.g.,* Ex. 5, ███████
████████████████████████████████████████████
████████████████████████████.
[4] *See, e.g.,* Macartney Decl., ¶¶ 75-81.
[5] *See, e.g., Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc) *cert denied* 143 S.Ct. 434 (2022); *In re Broiler Chicken Antitrust Litig.*, 2022 WL 1720468 (N.D. Ill. May 27, 2022); *In re Korean Ramen Antitrust Litig.*, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017); *In re Optical Disk Drive Antitrust Litig.*, 3:10-md-2143, 2016

Unable to deny that a conspiracy readily lends itself to classwide proof, Defendants bet the farm on excluding Dr. Macartney's overcharge and pass-through models. █████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████.

███████████████████████ ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████

███████████████████████████████████████████████

████████████████████████████████████████ Macartney Decl., ¶ 134. ███

---

WL 467444 (N.D. Cal. Feb. 8, 2016); *In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226 (N.D. Oh. 2014); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5391159 (N.D. Cal. Sept. 14, 2013); *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 583 (Mar. 28, N.D. Cal. 2010); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603 (N.D. Cal. 2009).

[6] ████████████████████████████████████████████████████
████████████████ *See generally* Macartney Decl., ¶¶ 34-108.

████████████████████████████████████████████████████████

██████████████████████████████████████████ *Compare* Opp. at 3 with

*infra* at n. 16.

     In addition to the other common questions, the admissibility of Dr. Macartney's model is itself a question common to the class, as are the myriad attacks pressed by Defendants against his report. ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ An expert's choice of variables "will affect the analysis' probativeness, not its admissibility." *Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57, 62 (2d Cir. 2020) (quoting *Bazemore v. Friday*, 478 U.S. 385, 400 (1986) (Brennan, J., concurring in part and joined by all members of the Court)); *In re Ethylene Propylene Diene Monomer* ("*EPDM*") *Antitrust Litig.*, 256 F.R.D. 82, 102 (D. Conn. 2009). "And the use of an aggregate model to estimate damages 'is well established in federal court and implied by the very existence of the class action mechanism itself.'" *In re Namenda Indirect Purchaser Antitrust Litig.* ("*Namenda IPP*"), 338 F.R.D. 527, 546 (S.D.N.Y. 2021) (citation omitted).

     Defendants' remaining arguments against certification are inconsequential. █████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████ To the extent that Defendants extend

this "tracing" requirement to other putative class members as a Rule 23 prerequisite for certification, Opp. at 12, 53, that burden is a complete fiction in the Second Circuit. ██████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████ Ex. 1, ¶ 83.

Lastly, a large number of cases hold that the antitrust and unjust enrichment laws of different states are sufficiently similar for class certification.[7] Seeking to deny this reality, Defendants cite *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88 (2d. Cir. 2018), but they ignore *Langdon*'s actual holding which states, "[v]ariations in state laws *do not necessarily* prevent a class from satisfying the predominance requirement." *Id.* at 97 (emphasis added). *Langan* cited an earlier case *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013), which affirmed certification for contract claims under the laws of the 50 states and held predominance concerns "are lessened where the states' laws do not vary materially," as they do not here. *Id.* at 127.

### The Mechanics of the Caustic Soda Industry Support Classwide Impact

Nothing about caustic soda makes it too "complicated" for IPPs to prove common impact. Opp. at 9. ██████████████████████████ ██████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

---

[7] *See infra*, nn. 77, 78

[8] Macartney report at 57-67 ██████████████████████████████████████████ ████

[9] Macartney Decl., ¶ 36, Fig. 3 ██████████████████████████████████████ ██████████████████



The distribution chain is also relatively simple.[10]

███████████████████████████████████████████████████████████████████████.

*See SRAM*, 264 F.R.D. at 614 (granting class certification where "Defendants possessed sixty to seventy percent" of the market); *see supra*, n. 4. ███████████████████████████████████



███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████.

**I.**   ████████████████████████████████████████

███████████████████████████████████████████████ ██████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████ █████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████ █████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████. *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 115 (S.D.N.Y. 2015); *EPDM*, 256 F.R.D. at 100 ("[T]he issue . . . is not which expert is the most credible, or the most accurate modeler, but rather have the plaintiffs demonstrated that

───────────────────

[11] ██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████ s. Ex. 1, ¶ 25.
[12] *See, e.g.*, ██████████████████████████████████████████████████████
████████████████████.
[13] *Foam*, 314 F.R.D. at 281 (favoring broad geographic market because "Defendants themselves did not distinguish between local markets when announcing price increases.").

6

there is a way to prove a class-wide measure of [impact].").



*see Broiler Chicken*, 2022 WL 1720468, at *18,

_____

[14] ██████████████████████████.
[15] Macartney Decl., ¶ 132.
[16] Ex. 9,

7

███████████████████████████████████████████████████

███████████████████████████████████████████████████

*Broiler Chicken*, 2022 WL 1720468, at *18.

████████████████████████████████   █████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

**II.** ██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████ *See, e.g.,*

[17] *See* Ex. 12, Macartney Tr.  88:7-17 ████████████████████████
████████████████████████████████████████████

Macartney Decl., ¶ 114.[18] "[P]ricing structures," such as the one here, establish "an artificially inflated baseline" for negotiated pricing, so even if some distributors or indirect purchasers obtained discounts or other benefits, there is still "generalized proof" of impact.[19]

On this, Defendants essentially make two points. ████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

████████████████████[20] This is also why any overcharge "on a single purchase suffices to show—as a legal and factual matter—impact" and class membership. *Namenda IPP*, 338 F.R.D. at 557.

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

---

[18] ████████████████████████████████████████████████████████████
████████████████████████████████████████████

[19] *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 638 (D. Kan. 2008); *infra*, n. 65.

[20] *In re NASDAQ Market-Maker Antitrust Litig.*, 169 F.R.D. 493, 523 (S.D.N.Y. 1996); *see also Seijas v. Republic of Argentina*, 606 F.3d 53, 57-58 (2d. Cir. 2010) ("[T]hat damages may have to be ascertained on an individual basis is not sufficient to defeat class certification."); *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).



**III.**

Dr. Macartney accounts for the issues they raise, and none of them are fatal.



[21] Ex. 19,

[22] Ex. 22,





*See*, Macartney Decl., ¶ 134; Ex. 1, ¶ 140; Ex. 26, Macartney Tr. Vol. II, 367:7-25, 368:1. Ex. 1, ¶ 141.

Macartney Decl., ¶ 135; *see also In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 16 (E.D.N.Y. 2020) (when

aggregate damages can exclude non-qualifying purchases, defendant "will not be forced to pay a penny more than the damages the jury determines it caused, protecting its due process rights.").[25]

## IV.     There is No Rule 23 "Tracing" Requirement for Class Members

As demonstrated *infra*, ███████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████. There is no further Rule 23 requirement that IPPs must establish a "method" for purchasers to "trac[e]" caustic soda back to Defendants.  Opp. at 12, 26. To ensure due process, a damages model only needs to roughly reflect classwide harm, *infra* at 41, and the Second Circuit has repeatedly stated that issues of damages allocation do not defeat predominance. *See supra*, n. 20. The Supreme Court made a similar point in *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 461 (2016) when it called concerns over identifying uninjured class members "premature" and best reserved for challenging the "proposed method of allocation when the case returns to the District Court for disbursal of the award." 577 U.S. at 461. Similarly, courts in this circuit have repeatedly emphasized that declining "to certify classes when [some] consumers are likely to lack proof of purchase 'would [wrongly] render class actions against producers almost impossible to bring.'" *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 404 (S.D.N.Y. 2015) (quoting *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014)).

---

[25] Defendants  make  several  additional  throw-away  arguments. ████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████ Defendants' so-called "uncontested" facts will be appropriately addressed at summary judgment. Opp. at 17.

**Argument**

Plaintiffs seek certification of two classes:[26] (1) a State Antitrust Class asserting violations of the antitrust laws for 27 states, and; (2) an Unjust Enrichment Class asserting violations of the laws for 19 states.[27] Both classes satisfy the pre-requisites for certification.

## I.   IPPs' Minor Amendments of Their Class Definitions Are Appropriate and Timely

This court "is not bound by the class definition proposed in [IPPs'] complaint," and courts routinely allow plaintiffs to change their class definitions at the class certification stage. *In re Namenda Direct Purchaser Antitrust Litig.* ("*Namenda DPP*"), 331 F. Supp. 3d 152, 212 (S.D.N.Y. 2018) (quoting *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir 1993)).[28]   Here, IPPs proposed minor changes to the class definition to include both residential and commercial end users of caustic soda. Defendants complain "it is 'unfair to defendants' and might necessitate additional discovery," *see* Opp. at 20, but they fail to explain how this minor, proposed change would be unfair or how discovery would have been any different if residential end users had been expressly identified. ███████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

In this regard, *Namenda* is instructive.   There, plaintiffs sought to modify the class definition to expressly include certain purchasers of a generic drug who were not included in the

---

[26] IPPs are no longer pursuing certification of the Colorado Class.

[27] The states included in the Antitrust Class and Unjust Enrichment classes respectively are listed in IPPs' Mem. of L., 2-3. Where context permits, IPPs refer to both classes collectively as "the Class."

[28] *See also Menking v. Daines*, 287 F.R.D 174, 181 (S.D.N.Y. 2012) (allowing plaintiffs to expand class definition in the motion for class certification); *Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-CV-7995, 2013 WL 66181, at *3 (N.D. Ill. Jan. 4, 2013) (change of the class definition at the class certification stage was "consistent with Rule 23[.]").

original class definition.   331 F. Supp. 3d at 210.  After reviewing the relevant case law, the court allowed the expansion because it was made with a timely motion for class certification, did not raise any notice issues and would not necessitate the reopening discovery.  The same is true here.

*Vincent v. Money Store*, 304 F.R.D. 446 (S.D.N.Y. 2015) is distinguishable. There, plaintiffs attempted to change their class definition for both the time period and the precipitating event for class membership, which would have extended the class period an additional three years. These changes are vastly different from the minor change proposed here, which does not alter the nature of the challenged conduct, extend the time period, or necessitate additional discovery.  This court should not "disregard" the class now proposed simply because it modifies an earlier non-binding definition. *Namenda DPP*, 331 F. Supp. 3d at 212.

## II.   Named IPPs Adequately Demonstrate Class Membership

The  record  establishes  that  Tripp  and  Finch  meet  the  class  definition:



29 *See* Ex. 1, ¶ 82, nn.189, 199

31

█████████████████ *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 CIV. 7789 (LGS), 2022 WL 3971006, at *4 (S.D.N.Y. Aug. 31, 2022) (standing and class membership established where class includes only persons who suffered harm caused by defendants' conduct); *In re Amaranth Nat. Gas Commodities Litig.*, 269 F.R.D. 366, 379-81 (S.D.N.Y. 2010) (plaintiffs need not prove injury-in-fact to establish class membership).

Defendants do not cite contrary evidence. ██████████████████

███████████████████████████████████████████

███████████████████████████████ But even a *single purchase* of Defendants' caustic soda is sufficient to establish standing, class membership, and entitlement to relief. *Namenda IPP.*, 338 F.R.D. at 557. ████████████████████████

███████████████████████████████████████████

███████████████████████████████████████ .[32]

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

───────────────────

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████ .

[32] ████████████████████████████████████████
████████████████████████ . If accepted, Defendants' argument would preclude not only class certification, but also any individual recovery for the thousands of class members who paid overcharges because of Defendants' misconduct. This Court should view such an argument "with great skepticism." *See In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. at 26 ("defendant's assertion that a small percentage of brand retainers should prevent over one million people and 30,000 to 40,000 TPPs from suing collectively runs afoul of Rule 23, as interpreted by the Supreme Court and Second Circuit").



Ex. 1, ¶ 83.

### III.     The Named Plaintiffs are Adequate Representatives.

Adequacy tests whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 95, 99 (2d Cir. 2007). Defendants address neither prong under *Cordes*. Instead, they make unsupported factual assertions impugning named IPPs' interests in vigorously pursuing the litigation.

*First*, named IPPs have demonstrated their interest in vigorously pursuing this litigation by participating in discovery, producing documents, and sitting for depositions.  This is sufficient. *Vargas v. Howard*, 324 F.R.D. 319, 328 (S.D.N.Y. 2018) (finding class representatives adequate where they responded to discovery and sat for depositions); *Packaged Seafood Prod.*, 332 F.R.D. at 330 (similar). ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[33] ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████.

[34] See Dkt. no. 493-2 Declaration of Jennifer W. Sprengel in Support of IPPs' Motion for a Protective Order and to Quash Defendants' Subpoena for the Deposition of Alex Rotolo, at p.2.



*Flores v. Anjost Corp.*, 284 F.R.D. 112, 129 (S.D.N.Y. 2012) (lack of knowledge did not negate its ability to adequately represent the class because "[t]he bar for showing sufficient knowledge is quite low[,]" "[k]nowledge of all the intricacies of the litigation is not required[,]", and "plaintiffs are entitled to rely on their counsel for the legal underpinnings of their claims[.]"); *Mendez v. U.S. Nonwovens* Corp., 314 F.R.D. 30, 57 (E.D.N.Y. 2014) ("[T]he knowledge requirement for being a class representative [is] low and . . . satisfied by showing a general knowledge of the case and a willingness to pursue litigation on behalf of the class."); *Packaged Seafood Prod.*, 332 F.R.D. at 330 (similar).[35]

That argument turns class action jurisprudence on its head.

---

[35] *Russell v. Forster & Garbus*, LLP, No. 17-CV-4274(JS)(AYS), 2020 WL 1244804, at *4–5 (E.D.N.Y. Mar. 16, 2020) is distinguishable because the court found that plaintiff had virtually no familiarity with the action, no understanding of his role as class representative, did not speak with his attorney before initiating the action, had not seen the complaint before his deposition, did not know the class he purports to represent and did not know if his counsel ever informed him of the existence of a class. *Id.* Those are not the facts here.

T███████████████████████████████████████████ and courts resoundingly

reject the notion that a small stake in the litigation disqualifies a class representative or member.[36]



Ex. 1, at ¶ 37.

Finally, Defendants challenge named IPPs' adequacy to represent residential end user class

members. Not only do Defendants fail to articulate a basis for a conflict between the interests of

commercial buyers and residential end users, but courts routinely certify classes containing

different types of end users over objection.  *Restasis*, 335 F.R.D. at 13 (rejecting argument that

third-party payors could not adequately represent consumers); *In re Nexium (Esomeprazole)*

---

[36] *Arden Architectural Specialties, Inc. v. Wash. Mills Electro Minerals Corp.*, Nos. 95-cv-7574 CJS, 95-cv-7580 CJS, 2002 WL 31421915, *6-7 (W.D.N.Y. Sep. 17, 2002) (rejecting that plaintiff was not adequate representative because it purchased "small amounts" of product); *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 380 (S.D.N.Y. 1996) (similar); *see also Korn v. Franchard Corp.*, 456 F.2d 1206, 1214 (2d Cir.1972) ("[O]ne of the chief goals of Rule 23 [is] to protect claimants whose 'individual claims would be too small to justify separate litigation[.]'") (quoting 3 B Moore, Fed. Practice 23.45[3] at 23802)*; In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985)).

[37] ████████████████████████████████████████████████ Opp. at 22. ████████████████████████████████████████████████ *See* Dkt. no. 504, (Order limiting the Rotolo deposition to three hours, and prohibiting "questions about Atlas Holdings and other [non-party] entities[.]").

*Antitrust Litig.*, 297 F.R.D. 168, 172–73 (D. Mass. 2013) (rejecting defendants' argument that union plan sponsors were inadequate representatives for other types of indirect purchasers).

### III.   The Named Plaintiffs' Claims Are Typical

Disputing typicality, Defendants incorrectly argue there are "substantial differences" between the named IPPs' claims and defenses and those of absent class members. As for claims, Defendants point to only *one* difference in their brief—the fact that Connecticut allows recovery for only one year of the class period—so that "IPPs' claims would require argument and proof about different conduct and distract from the Connecticut claim's presentation at trial."  Opp. at 24.  This is nonsense.  At trial, Plaintiffs will prove, with common evidence, the existence of the conspiracy, and its effect throughout the entire class period on all class members in the 30 states under which laws these claims are asserted.  The fact that Connecticut purchasers can only recover for purchases made after 2018 has absolutely no effect on the evidence that plaintiffs will submit to prove their claims. *See Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 533 (E.D.N.Y. 2017) (rejecting argument that difference in date of the conspiracy under Connecticut law renders plaintiffs' atypical"); *Namenda IPP*, 338 F.R.D. at 547 (typicality "requires only that each class member makes similar legal arguments, not identical ones") (citing cases).



, Opp. at 24,

*McDonough v. Toys R Us, Inc.*, 638 F. Supp. 2d 461, 476 (E.D. Pa. 2009) (rejecting defendants' unique defense argument that plaintiffs who valued non-price factors could not prove injury).

In any event, Defendants' characterization of the record is incorrect.



**IV.** ██████████████████████████████████████

    **A.** ████████████████████████████████████████

Dr. Macartney included and properly calibrated all of the necessary variables in his initial report. ████████████████████████████████████████

███████████████████████████████████████████████ ██████████

██████████████████████████████████████████████████

██████████████████. As demonstrated below, Dr. Macartney's model is "capable" of showing classwide injury, even if some variables remain in dispute. *See supra*, 6; *see also Kurtz*, 818 F. App'x at 62; *Optical Disk Drive*, 2016 WL 467444, at *7 (stating that "quarrels" about proper "variables" do not show that an expert's model is "methodologically unsound.").

---

[38] █████████████████████████████████████████████████
███████████████████████████████ *See* Ex. 12, Macartney Tr. at 89:21-25, 90:1-3.

**1.** 

---

[39] *In re Electronic Books Antitrust Litig.*, No. 11 MD 2293, 2014 WL 1282293(DLC), at *26 (S.D.N.Y. Mar. 28, 2014); *Cook v. Rockwell Int'l Corp.*, 580 F.Supp.2d 1071, 1102 (D. Colo. 2006) ("Defendants nonetheless implied . . . that statistical significance is a threshold requirement. . . They failed, however, to cite any scientific or legal authority[.]").

[40] *In re: Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188, 212 (E.D. Pa. 2017) (citing Daniel L. Rubinfeld, Econometrics in the Courtroom, 85 Colum. L. Rev. 1048, 1065 (1985)).

[41] *Electronic Books Antitrust Litig.*, 2014 WL 1282293 at *26.

[42] *Id.* at *26, n. 34; *Foam*, 314 F.R.D. at 259 ("[M]ulticollinearity . . .not grounds for [exclusion].").

[43] Macartney Decl., ¶ 127; Ex. 12, Macartney Tr. 171:6-15; Ex. 1, ¶ 115.



**2.** ████████████████████████████

Defendants next attempt to stick Dr. Macartney with an error he obviously understands. As they point out, he co-authored a paper discussing model endogeneity bias *in antitrust class proceedings*. *See* Opp. at 32. ██████████████████████████

---

[45] ████████████████████████████████████████████.
*See* https://www.census.gov/naics/?input=polyurethane&year=2022&details=326150.



. *See* Ex 1, ¶¶

50-54, 118, Fig. 12; *see also* DPPs' R. Br. at 23-24.

*See, e.g., Resco Products, Inc. v. Bosai Minerals Grp.*, No.

06-235, 2015 WL 5521768, at *8 (W.D. Pa. Sept. 18, 2015) ("The extent to which Chinese

domestic RGB prices influenced . . . [prices for] exported Chinese RGB is a matter [for the fact

finder.]")(citing *Bazemore*, 478 U.S. at 400).

**3.**

---

[46]

.

[47] While the "first test of endogeneity" is "intuition," endogeneity can be confirmed with certain specification tests. *Econometrics*, American Bar Association (2014), at 84.

. Ex. 1, ¶ 118, n. 290.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████. *See* Opp. at 34.

███████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████. *Id.*[48]

**4.** █████████████████████████████████████████
████████████████████

Defendants' arguments are frivolous. ████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

[48] Nor are Defendants' criticisms reasons to deny class certification. *See EPDM*, 256 F.R.D. at 98, 104 (granting certification despite criticisms of expert's supply and demand variables).

██████████████████████████████████████████████████████ *See id.*;

*Packaged Seafood Prods.*, 332 F.R.D. at 327 (rejecting similar criticism of cost index by Dr.

Johnson). Moreover, ████████████████████████████████████████████████

███████████████████ Ex. 1, ¶ 41.

        **5.**  █████████████████████████████████

        █████████████████████████████████████

████████████████████████████████████████████████████████

███████████████. Opp. at 38.

        ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████. *Id.* at ¶ 124, Fig. 42.

        ████████████████████████████████, *In re Electronic Books Antirust Litig.* quickly

dismissed a similar argument that plaintiffs' expert had not accounted for non-conspiratorial

factors in his model for similar reasons that apply here. 2014 WL 1282293 at *27-28. But, unlike

Defendants, Apple actually offered examples of non-conspiratorial factors the expert purportedly

ignored. *Id.* Dr. Johnson's Chow tests have also been dismissed by other courts, and the same result should obtain here. *Olean*, 31 F.4th at 674, 675-7.



. *See supra* at 6-7.

There is no doubt that regression models may use average pricing to support class certification. Not only is average data routinely used in class antitrust cases, but often, it is "the only practicable means to collect and present relevant data." *Tyson Foods*, 577 U.S. at 455. Averaging data enables experts to determine common impact and aggregate class damages, and a panoply of cases validate this practice. *E.g.*, *In re Ranbaxy Generic Drug Application Antitrust Litig.,* 338 F.R.D. 294 (D. Mass. 2021).[49]

---

[49] *See also Namenda IPP*, 338 F.R.D. at 546; *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 20-2184, 2021 WL 3379035, at *6 (4th Cir. Aug. 4, 2021); *Restasis*, 335 F.R.D. at 25; *In re Loestrin 24 FE*

Despite consistent legal support for data averaging, "attacking averaged data is a standard defense tactic [against class actions] in antitrust cases." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D 606, 625 (N.D. Cal. 2015). 

*Id.* at ¶ 19.

*Antitrust Litig.*, 410 F. Supp. 3d 352, 389-93 (D.R.I. 2019); *In re Suboxone Antitrust (Buprenorphine Hydrochlorine & Naloxone) Litig.*, 967 F.3d 264, 272 (3d Cir. 2020).

[50] *See, e.g., Packaged Seafood Prods.*, 332 F.R.D. at 323-28 (granting class certification over Dr. Johnson's objections, in part, because of Dr. Johnson's insufficient sample sizes); *In re Capacitors Antitrust Litig.* (*No. III*), No. 17-md-02801-JD, 2018 WL 5980139, at *8 n.4 (N.D. Cal. Nov. 14, 2018) (granting class certification where "Dr. Johnson's analysis appears to suffer from data sets that are too small"); *see also* Asher, Arenson & Lamb, Losing the Forest for the Trees: On the Loss of Economic Efficiency and Equity in Federal Price-Fixing Class Actions, 16 Va. L. & Bus. Rev. 293 (2022) (criticizing Dr. Johnson's approach in antitrust cases as incorrectly assuming that impact must be identical for all proposed class members).

[51] Asher, Arenson & Lamb, 16 Va. L. & Bus. Rev. at 318-19; *see also* Robert D. Liebenberg and Ellen Meriwether, Antitrust Class Certification: The Use of Statistical and Representative Evidence to Establish Predominance of Common Proof, 93 Temple L. R. 553, 566 (2021) ("As the transactions are divided into more and more subgroups, the number of observations per grouping declines, which makes a test of coefficient stability or robustness less reliable.").

████████████████████████████████████. *Optical Disk Drive*, 2016 WL 467444, at

*7 (dismissing argument about the improper aggregation of data). Dr. Macartney's overcharge and

pass-through models are "sufficiently reliable to merit the court's consideration of it as proof

common to the class," *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-MD-1175

(JG)(VVP), 2014 WL 7882100, at *59 (E.D.N.Y. Oct. 15, 2014), and "each class member could"

rely on those models "to establish liability if he or she had brought an individual action." *Tyson

Foods, Inc*, 577 U.S. at 455. At trial, "Defendants will be free to show why they think [Dr.

Macartney] is wrong," but IPPs have satisfied Rule 23. *See id.*



have admitted models at lower levels,[52] and the ABA has said that "90 percent" confidence intervals "are also common[.]" *Id.* at ¶ 114, n. 273.

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████ *See supra*, n. 50; *Coates v. Johnson & Johnson*, 756 F.2d 524, 541 (7th Cir. 1985) (explaining that "statistical significance becomes harder to attain as the sample size shrinks.").

**2.** ████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

---

[52] *See, e.g., In re High–Tech Employee Antitrust Litig.*, No 11–CV–02509–LHK, 2014 WL 1351040, *14-15 (N.D. Cal. Apr. 4, 2014); *see also Cook*, 580 F.Supp.2d at 1102; *In re Urethane Antitrust Litig.*, 166 F. Supp. 3d 501, 508 (D.N.J. 2016).
[53] Ex. 1, ¶¶ 29-32. ████████████████████████████████
Macartney Decl., ¶ 128.
[54] ████████████████████████████████████████████
████████████████████████████████████████████ Johnson Rpt., ¶¶ 83-

████████████████████████████████████████ *See Optical Disk Drive*, 2016 WL 467444 at *8 ("IPPs' renewed motion . . . [successfully] makes the important point that the price-fixing in this case is alleged to have consisted of efforts to slow the decline [of prices].");
*see also* Ex. 49, Johnson Tr. 139:25-140:1-3.

Defendants citations to the *In re Rail Freight*[55] opinions are also inapposite. *Rail Freight I* relied on a concession by plaintiff's expert that his model "yielded false positives." *In re Electronic Books Antitrust Litig.*, 2014 WL 1282293 at *26. A similar problem persisted in *Rail Freight III*, where plaintiffs' expert's own calculations still showed thousands of uninjured class members. 934 F.3d at 624. ████████████████████████████████████
██████████████████████████████████████████ *See id.*

In any event, *Rail Freight* is not the law of this circuit. ████████████████████
████████████████████████████████ "[t]he Supreme Court and Second Circuit . . . have never suggested that a certain percentage or number of uninjured plaintiffs would automatically bar class certification." *Restasis*, 335 F.R.D. at 17. To the contrary, at least the Seventh and Ninth Circuits have eschewed such an approach. *Olean*, 31 F.4th at 669, n. 13; *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012).

---

84. ███████████████████████████████████████████████████████████████████████████.
Ex. 1 at 29-31, Figures 4-6.

[55] *In re Rail Freight Fuel Surcharge Antitrust Litig.* ("*Rail Freight I*"), 725 F.3d 244, 252 (D.C. Cir. 2013); *Rail Freight II*, 292 F. Supp. 3d 14, 137 (D.D.C. 2017); *Rail Freight III*, 934 F.3d 619, 626-627 (D.C. Cir. 2019). *In re Aluminum Warehousing Antirust Litig.*, 336 F.R.D. 5, 49 (S.D.N.Y. 2020): Not only did plaintiffs have an "idiosyncratic" theory of harm based on a conspiracy to lengthen load-out "queues" for warehouses, 336 F.R.D. at 12, 62, but also, plaintiff's expert did not even model damages off of this peculiar theory of harm. 336 F.R.D. at 62. When defendants' expert re-ran the model "directly" measuring damages from plaintiffs' theory, he showed that over 50 percent of class members were uninjured. *Id.* at 62. No such mismatch exists here.

**3.**   

---

[57] Defendants' reliance on *Propane*, *Eggs*, and *In re Class 8* is unavailing. Those cases involved significantly smaller datasets than the data relied on by Dr. Macartney here. *See In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2021 WL 5632089, at *12 (W.D. Mo. Nov. 9, 2021) (analysis based on data that "comprise[d] less than 10% of sales to the putative class."); *In re Processed Egg Prod. Antitrust Litig.*, 312 F.R.D. 124, 158 (E.D. Pa. 2015) (analysis

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████[58] The concern with averaged data is whether it conceals the existence of *uninjured* class members.[59] ████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████ Defendants have failed to demonstrate, estimate, or *even argue* that "a great many" class members suffered no injury at the hands of the alleged cartel, *Restasis*, 335 F.R.D. at 17 (quoting *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009)), and the Court should reject Defendants' attacks on the use of averages here.

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

Opp. at 52 (citing Johnson Rpt., Exs. 32 & 33).[61] ████████████████████████

---

based on a single retailer); *In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*, 679 F. App'x 135, 141 (3d Cir. 2017) (analysis based on "less than one percent of total truck sales").

[58] Insofar as Defendants suggest that IPPs must demonstrate "uniform" pass through rates or price increases to class members, that requirement is nowhere to be found in Rule 23. *See infra* at 43.

[59] *See Pre-Filled Propane Tank*, 2021 WL 5632089, at *12 (rejecting analysis where "[t]he only evidence in the record . . . casts doubt on whether there was any pass-through at all.").

[60] *See Olean*, 31 F.4th at 679 (explaining that it is "irrelevant whether actual sales data shows a specific class member was overcharged by more or less than" the estimated rate because the focus is instead on "whether each member of the class can rely on [the] model to show antitrust impact of any amount.").

[61] ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████



Ex. 1, ¶¶ 157-158; Johnson Rpt., ¶¶ 205-206 & Ex. 45; *Broiler Chicken*, 2022 WL 1720468, at *19 (rejecting Dr. Johnson's "unpool[ing]" analysis because the "lowest pass-through rate specifically identified by Johnson [of] 57%" was "still sufficiently significant to demonstrate damages."); *Gordon v. Microsoft Corp.*, No. MC 00-5994, 2003 WL 23105550, at *2-3 (D. Minn. Dec. 15, 2003) ("[T]he use of average pass through rates, even in combination with Microsoft's evidence that individual distributors sometimes absorbed specific cost increases, falls short of suggesting that any significant number of class members escaped injury.").[62]

Ex. 1, ¶ 158 & Table 60; *Olean*, 31 F.4th at 684 (affirming finding of

*See U.S. v. Container Corp. of Am.*, 393 U.S. 333, 337 (1969) ("Stabilizing prices as well as raising them is within the ban of § 1 of the Sherman Act."); *Cordes*, 502 F.3d at, 107 ("If the fee paid were higher than the but-for fee, then the plaintiff suffered an injury-in-fact."); *In re Polyester Staple Antitrust Litig.*, No. MDL 3:03CV1516, 2007 WL 2111380, at *26 (W.D.N.C. July 19, 2007).

[62]

impact to indirect purchasers based on an "estimated pass-through rate of 100 percent for the entire

class" despite variation that "ranged from 65.3 to 135 percent"). ███████████████████

█████████████████████████████████████████████████████████████████████████

████████████████████████████████████ *Korean Ramen*, 13-cv-04115, 2017 WL

235052 at *19 (rejecting challenge to experts' use of a 100% pass-through rate based on "an

admittedly small sampling of [two] resellers").[63]

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████.

████████████████████████████████████████

████████████████████████████████████████████████

---

[63] Defendants' reliance on *New Motor Vehicles* and *Methionine* is misplaced. Opp. at 52. First, contrary to Dr. Macartney's analysis here, the court in *New Motor Vehicles* discussed a "novel and complex" theory of impact that the plaintiffs' expert had not yet fully developed. *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 29 (1st Cir. 2008) (explaining that "[a]t the time of class certification, more work remained to be done in the building of plaintiffs' damages model and the filling out of all steps of plaintiffs' theory of impact."). Second, the *Methionine* court discussed a model that purported to analyze overcharges to indirect purchasers that included resellers, ultimate consumers, and those who were both. *In re Methionine Antitrust Litig.*, 204 F.R.D. 161, 164 (N.D. Cal. 2001). The court distinguished the *Methionine* case from other cases where indirect purchaser classes did not include resellers or products that had been incorporated as components into different products. *Id.* at 165-166.

of the class period did not suffer injury[.]" *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015). ████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████ *Foam*, 314 F.R.D. at 286 (explaining that examples of instances where a direct purchaser failed to pass-through an overcharge in the short term "cannot defeat an otherwise proper offer of generalized evidence of overcharge passthrough."); *see also Restasis*, 335 F.R.D. at 18 ("[A] consumer need incur only one overcharge to experience antitrust injury[.]").

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████. Opp. at 53-55.[64] This has been rejected elsewhere. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 WL 555090, at *4 (N.D. Cal. Feb. 21, 2012) (concluding that plaintiffs "need not trace that specific overcharge through the manufacturing and retail chains to the ultimate purchaser."). ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████ Ex. 1, ¶ 140 & n. 364. ████████████████████████

---

[64] ██████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████ Ex. 1, ¶¶ 73-83.

████████████████████████████████████████████████████████████

███████████████████████████████████

Defendants offer no evidence, analysis, or argument that Dr. Macartney's pass-through model could result in false positive pass-through rates from distributors to class members. ████████

████████████████████████████████████████████████████████████

██████████████████████████ *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 114 n. 9 (1969) (Plaintiff satisfies burden by proof "of some damage flowing" from the conspiracy.). Thus, "the use of averaged and aggregated data is not fatal to [ ] Plaintiffs' econometric model[]." *SRAM*, 246 F.R.D. at 614.

**4.**   ████████████████████████████████████████

Rather than addressing the myriad cases rejecting their arguments,[65] ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████ ██████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[65] *See EPDM*, 256 F.R.D. at 89 (explaining the difference between impact and damages, collecting cases showing that negotiated prices do not undermine injury, and finding that "six across-the-board list price increases" demonstrated common impact in spite of "discounts" and "contract terms[.]"); *NASDAQ*, 169 F.R.D. at 523; *Arden*, 2002 WL 31421915, *1-11 (Plaintiff "would have paid an artificially high price regardless of whether or not it negotiated."); *see also In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1249 (10th Cir. 2014) ("[C]lass-wide impact is especially strong where . . . evidence [shows] the conspiracy artificially inflated the baseline for price negotiations."); *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 928-29 (7th Cir. 2016) (similar); *In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d 412, 433 (E.D. Pa. 2015) (similar); *In re Polyurethane Foam Antitrust Litig.*, No. 10–2196, 2014 WL 6461355, at *33 (N.D. Ohio Nov. 17, 2014) (similar); *see also In re Potash Antitrust Litig.*, 159 F.R.D. 682, 690-91 (D. Minn. 1995) ("Rule 23(a)(3) does not require that all members of a proposed class . . . use similar purchase methods[.]").



### 5. *Comcast* Does Not Bar Certification

Defendants inappropriately recast IPPs' allegation of a single price-fixing conspiracy into multiple theories of harm. *Compare* Opp. 40 *with* DPPs' Reply Br. at 20. While there may be



multiple constituent acts, these serve a single conspiracy to raise prices. *See, e.g., Dial Corp.*, 314 F.R.D. at 117-18 (*Comcast* does not bar certification "because Plaintiffs present one theory of antitrust impact: Defendants agreed to fix prices[.]"); *TFT-LCD*, 267 F.R.D. at 303.

Defendants also "misstate the central holding of *Comcast*," *Sykes v. Mel S. Harris Assocs. LLC*, 780 F.3d 70, 88 (2d. Cir. 2015), which precluded certification "only . . . because the sole theory of liability that the district court determined was common in that antitrust action . . . was a theory of liability that the plaintiffs' model *indisputably failed* to measure when determining the damages for that injury." *Waggoner v. Barclays PLC*, 875 F.3d 79, 105-6 (2d. Cir. 2017) (emphasis added). This is a far cry from the granularity Defendants demand. Because "[t]his is not a case where" where Dr. Macartney's damages model fails to "track [plaintiffs'] theory of liability," *Comcas*t does not bar certification. *Id.*

### 6. There is No Price Correlation Issue

Defendants' arguments are vacuous. They either repeat the same points raised earlier or make baffling statements about Dr. Macartney's model. ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████



. *See id.* at

¶¶ 96, 131.

### C.  Common Evidence can be used to Estimate Aggregate Damages

. Opp. at

56-60. These challenges do not prevent certification here. "[I]n a complicated antitrust case such

as this, where the theory of harm is that the entire market price of a product was inflated as a result

of a conspiracy, 'plaintiffs are permitted to use estimates and analysis to calculate a reasonable

approximation of their damages.'" *Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585, 605 (N.D. Ill.

2015) (quoting *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 493 (7th Cir. 2002)). As the

Supreme Court has held, "[t]he most elementary conceptions of justice and public policy require

that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created."

*Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265 (1946).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████ Macartney Decl., ¶¶ 135-136; *Restasis*, 335 F.R.D. at 31 ("The Second Circuit has accepted the use of aggregate classwide damages so long as they 'roughly reflect' the harm caused to plaintiffs."); *McDonough*, 638 F. Supp. 2d at 490 (approving calculation based on "the average markup of a comparable distributor"). Dr. Macartney's methodology is consistent with the "considerable latitude" given to plaintiffs in proving antitrust damages. *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1378 (2d Cir. 1988).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

───────────────────────

███████████████████████████████████████████████████████
██████████████████████████████████████.



*TFT-LCD*, 267 F.R.D. at 823-25; *see also Litton Sys., Inc. v. Am. Tel. & Tel. Co.*, 700 F.2d 785, 825 (2d Cir. 1983) (upholding antitrust damages verdict based in part on assumptions about market size and share derived from industry data and public sources).[69]

Finally, although issues related to individual damages allocation do not prevent class certification in the Second Circuit, *Roach*, 778 F.3d at 405, Plaintiffs have nonetheless proposed a procedure that would allocate damages based on class members' purchases of caustic soda. *See* Dkt. No. 514-2 at 8-9. █████████████████████████████

███████████████████████████ Opp. at 58-59. ████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████ *Foam*, 2014 WL 6461355 at *66. ████████

█████████████████████████████████████. *See, e.g.,*

Ex. 51, Plan of Allocation, *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*, 2:17-md-02785 (D. Kan.), Dkt. No. 2590-9 (Feb. 28, 2022); Ex.52, Plan of Allocation, *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*, 1:18-md-02819 (E.D.N.Y.), Dkt. No. 715-6 (Dec. 12, 2021).



**D.** █████████████████████████

█████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████ █ ████████████

████████████████████████████████████

████[71] Defendants ask this Court to make key factual determinations that should be reserved for the factfinder or simply ignore the law. Their arguments are addressed seriatim. Opp. at 40-43.

***First*,** ████████████████████████████████

████████████████████████████████████

Nowhere do Defendants dispute this. Instead, Defendants attempt to create a straw man by asserting a "market characteristics assessment is insufficient by itself to show predominance as a matter of law." So what? Dr. Macartney's assessment is only piece of the predominance inquiry. The full context of Defendants' disingenuous quote from *Air Cargo* opinion says precisely that: "[T]he court agrees . . . that [plaintiffs' expert's] market analysis does not establish . . . impact 'on

---

[70] *Compare Kleen Prods.*, 831 F.3d at 927 *with* Macartney Decl., ¶¶ 54-56 ████████████
████████████████████████████████.

[71] *Kleen Prods.*, 831 F.3d at 927 (collecting cases); *see also EPDM Antitrust Litig.*, 256 F.R.D. at 91, 95 (considering similar characteristics as "conducive to a conspiracy[.]").

its own.' . . . ***It does not need to, however***. [His] analysis will have to be considered . . . as perhaps

one weight on the scale ***favoring*** predominance."[72]

      Defendants also argue the court cannot presume impact, but, as the Supreme Court has

said, "Predominance is a test readily met in certain cases alleging . . . violations of the antitrust

laws."[73] This rule equally applies to antitrust indirect purchaser cases, who, like direct purchasers

rely on the same factual evidence to answer the same questions about liability and harm. *Namenda*

*IPP*, 338 F.R.D. at 571 (collecting cases).



      ***Second***, [REDACTED]

      ***Third***, [REDACTED]

n. *See supra* at n. 19;

*Messner*, 669 F.3d at 818 (vacating denial of class certification where district court made

"uniformity of nominal price increases a condition for class certification."). The two cases cited

by Defendants do not suggest a different rule, or, in any event, are not the law of this circuit. *In re*

---

[72] *Air Cargo*, 2014 WL 7882100, at *49 (emphasis added).
[73] *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).
[74] [REDACTED] *see also* Macartney Decl., 57-59.

*Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2010 WL 2332081, *2-13 (N.D. Cal. June 9, 2010) is a component case where three direct purchasers bought 82% of over 2,000 different types of chips to incorporate them into a multitude of new and different products. *Id.* Apart from an obvious pass-through problem, a highly concentrated distributor market meant that each distributor's contract lacked *any* type of a pricing baseline, such as "a future price, pricing formula or reference-pricing method," all of which are present here. *Id.* at *8. *New Motor Vehicles*, 522 F.3d at 22-31 is even more off base, as plaintiffs relied on a "novel and complex" attenuated theory of harm involving the restriction of lower-priced imports. *Supra* at n. 63.

 **Fourth**, Defendants do not seem to understand the difference between a market conducive to collusion and a conclusion that collusion is present. Ex. 1, ¶¶ 9, 12. n, including the motion to dismiss opinion they cite, because it well-accepted that highly concentrated markets are vulnerable to collusion. *Kleen Prods. LLC*, 831 F.3d at 927; *In re Processed Egg Prods.*, 81 F. Supp. 3d at 421-25; *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 360 (3d. Cir. 2004). IPPs are also under no obligation to show a benchmark period different in every respect from the Class Period. In fact, some overlap among anticompetitive characteristics between the benchmark and Class Period makes ▮▮▮▮▮▮▮▮. *In re Linerboard Antitrust Litig.*, 497 F. Supp. 2d 666, 675 (E.D. Pa. 2007); Ex. 12, Macartney Tr. 44:23-25; 45:1-4.

   **E.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ Opp. at 60-61. But this is not what Plaintiffs allege, nor what their opening brief suggests. Plaintiffs simply reference the

legal theory that antitrust defendants may use third parties as "conduits" to facilitate price-fixing conspiracies, such as by "signaling" price increases between competitors, but that does not transform the conduits into co-conspirators. *See In re Domestic Drywall Antitrust Litig.,* 163 F. Supp. 3d 175, 241-243 (E.D. Pa. 2016). As such, Defendants cannot manufacture predominance concerns related to the role of distributors in *their* price-fixing conspiracy. *See also NASDAQ*, 169 F.R.D. at 518–19 (holding the complaint confirmed allegations of single conspiracy).

### F.  Common Evidence Demonstrates Class Membership

Defendants make the same argument in various iterations throughout their brief: class members have no way to prove, with either common or individualized evidence, that the caustic soda they purchased was manufactured by a Defendant.  *See* Opp. at 26-27, 53-54, 63. Thus, while claiming that individual inquiries are required to trace IPPs' purchases back to a Defendant, Defendants also argue such inquiries would be futile, ████████████████████████████ ████████████████████████████████████████████████████████████ *See* Opp. at 27, 53. These arguments must be rejected.[75]

First, common evidence may be used to demonstrate that IPP class members purchased Defendants' caustic soda. ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[75] Individual class members are not required to "trace" the overcharges down the chain of distribution as a pre-requisite to certification. Opp. at 53. *See* In re *TFT–LCD (Flat Panel) Antitrust Litig.*, 2012 WL 555090, at *3-4, 9 (rejecting similar burden); *see supra*, 12-13.

██████████.[76] *See Tyson Foods*, 577 U.S. at 454–55 (2016) (representative evidence that is relevant and reliable may be used to establish class member injury); *see also Restasis*, 335 F.R.D. at 31 (citation omitted) ("[T]he Second Circuit has accepted the use of representative evidence and statistical observations to prove classwide injury."); *cf., In re In Re: Celexa And Lexapro Marketing and Sales Practices Litigation,* 915 F.3d 1, 13 (1st Cir. 2019) (denying summary judgement on causation where there would be a 98% chance that at least one of the prescriptions was the result of off-label marketing); *SRAM*, No. 07-MD-01819, 2010 WL 5071694, at *11 (N.D. Cal. Dec. 7, 2010) (rejecting that plaintiffs "lack[ed] sufficient evidence" they purchased products containing Defendants' SRAM where they relied in part on the fact that Defendants' combined market share was over fifty percent).

Second, Defendants' argument, if accepted, would preclude not only a recovery by the class, but also any individual recovery as well.  A similar tactic was rejected in *Restasis*, 335 F.R.D. at 26. There, defendant contended that while it had the right to question every individual class member to determine if he or she would have purchased generic Restasis had one become available, "determining the hypothetical actions of a consumer is 'next to impossible'" because a generic equivalent of Restasis never entered the market. *Id.*  Citing *Tyson Foods*, 577 U.S. at 454-55, the *Restasis* court rejected that argument:

> [Defendants'] argument about the likely impossibility of individualized proof does not appear limited to class actions. . . . *Tyson Foods* accepted the plaintiffs' method of proving classwide liability in part because they could have relied on the same method to establish individual liability. . . By analogy, I view with great skepticism an argument against class certification that would prevent individual lawsuits as well.

---

[76] T███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ *See supra* at 12-13.

*Id*. at 26.

Here, as in *Restasis* and *Tyson*, Defendants may not defeat class certification by insisting that individualized inquiries are required to establish that class members purchased Defendants' caustic soda, while also claiming that those inquiries would be futile. Common evidence of the statistical probability that class members purchased at least some of Defendants' caustic soda is both relevant and reliable, especially in light of the purported lack of an alternative proof.

Third, even if some individualized inquiry may be required to establish a right to recovery in a small number of cases, such an inquiry will arise and can be managed within the context of a claims process; it will not overwhelm the predominantly common issues. *Compare In re Smart Techs., Inc. S'holder Litig.,* 295 F.R.D. 50, 61–62 (S.D.N.Y. 2013) (finding tracing requirement under securities laws did not result in individual issues predominating); *see supra*, 43.



, and an affirmation to that effect on a claim form would be more than sufficient to satisfy the requirements for class certification. *Restasis*, 335 F.R.D. at 24 (in the second circuit, self-identifying affidavits may be used to establish proof of a product's purchase where such evidence does not otherwise exist.).

## V.   The Classes Are Ascertainable

Opp. at 63. Ascertainability is a "modest" requirement that "will only preclude certification if a proposed *class definition* is

indeterminate in some fundamental way." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d. 2017) (emphasis added). Defendants make no such argument here, and their reliance on *Petrobas* is misplaced. *Petrobras* specifically distinguished the "mini-hearing" language from an earlier case as "not strictly a part of [its] holding" and clarified that the dicta really only applied where a class lacked "objective criteria," which would inefficiently require "a mini-hearing on the *merits* of each [plaintiff's] case." *In re Petrobras*, 862 F.3d at 266-67 (2d. 2017) (emphasis added) (quoting *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2nd Cir. 2015)); *see also Baker v. Saint-Gobain Performance Plastics Corp.*, No. 1:16-cv-0917 (LEK/DJS), 2022 WL 9515003 at *12 (N.D.N.Y 2022) (The Class . . . is defined by objective criteria . . . thus allowing the Court to readily identify Class members without needing to resolve the merits of Plaintiffs' claims.").

As demonstrated above, membership in the class is defined by objective criteria.  Common evidence, along with self-identifying affidavits, if need be, are available and satisfy the requirements of Rule 23.

## VI.     Minor State Law Variations Do Not Affect Predominance or Manageability

Defendants contend that the classes cannot be certified because the application of the multiple states' laws defeats predominance and superiority.  Numerous courts disagree. Courts routinely certify indirect purchaser antitrust classes under the laws of multiple states and resoundingly reject the very argument Defendants make here.[77] Courts also routinely certify state unjust enrichment claims under multiple states laws based on conduct that would violate antitrust

---

[77] *See e.g., Namenda IPP,* 338 F.R.D. at 542 (certifying class for 29 states and the District of Columbia);  *Restasis,* 335 F.R.D. at 29–30 (similar, 30 states); *Nexium*, 297 F.R.D. at 176 (similar, 26 states); *In re Lidoderm Antitrust Litig*., No. 14-MD-02521-WHO, 2017 WL 679367, at *3 (N.D. Cal. Feb. 21, 2017) (similar, 17 state*s); Foam*, 314 F.R.D. at 232 (similar, 29 states and D.C.); *Packaged Seafood Prods.*, 332 F.R.D. at 340 (similar, 30 states, D.C. and Guam).

statutes.[78]  Defendants ignore all of these cases. Importantly, the "Second Circuit has instructed that 'failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule.'" *Ebin*, 297 F.R.D. at 567 (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001)).

### A.  The Antitrust Class is manageable despite minor variations in applicable state law.

In their opening brief, Plaintiffs demonstrated that the antitrust laws of the twenty-seven states that allow damages recoveries by indirect purchasers substantially mirror one another and submitted a state law chart demonstrating the same.  IPPs' Mem. of L. at 22-23; Hart Decl. Appendix A. Defendants complain this is "not enough," but this type of legal proof is typically accepted as sufficient in indirect purchaser class certification cases. *See Zetia*, 2020 WL 5778756, at *26–28 (applicable state antitrust statutes mirror federal antitrust laws, contain harmonization provisions, and/or has been interpreted in harmony with federal law); *see also Solodyn*, 2017 WL 4621777, at *20 ("EPPs have provided a compilation of state laws . . . and [there are] substantial similarities in the language among states and between state and federal antitrust provisions." (citation omitted)).  Here, IPPs have met their burden. *Zetia*, 2020 WL 5778756, at *26–28 ("Plaintiffs' burden is . . .  that variations among them can be dealt with in a manageable way[.]").

Relying on *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 99 (S.D.N.Y. 2017), Defendants point to purported differences among the states laws that create insurmountable

---

[78] *See Namenda IPP*, 338 F.R.D. at  574-75 (certifying claims under 14 states' unfair competition and unjust enrichment laws); *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2020 WL 5778756 (E.D. Va. Aug. 14, 2020) report and recommendation adopted, No. 2:18MD2836, 2021 WL 3704727 (E.D. Va. Aug. 20, 2021) (similar, 25 states and D.C.);  *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. CV 14-MD-02503, 2017 WL 4621777, at *11 (D. Mass. Oct. 16, 2017) (similar, 37 states, D.C. and Puerto Rico); *In re Terazosin Hydrochloride*, 220 F.R.D. at 702 (similar, 17 states); *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 237 (E.D. Pa. 2012) (similar, 3 states).

manageability problems. Opp. at 62. First, they argue that the "'requisite proof of injury' under Florida's, Michigan's, and Minnesota's statutes require 'a somewhat stronger and more precise showing of individual impact' than do the laws of other states." Opp. at 62 (*quoting Digital Music*, 321 F.R.D. at 99). A nearly identical argument was rejected in *Restasis*, where court held instead that "the requirements for showing individual impact, and also damages, are essentially the same in all of the states under which plaintiffs sue [and] therefore there are no individualized issues regarding these three states." 335 F.R.D. at 36; *see also Zetia*, 2020 WL 5778756, at *27 (also rejecting analysis in *Digital Music* on Michigan and Minnesota).

Again citing *Digital Music*, Defendants assert that elements to establish the defense of unclean hands in California, Florida and South Dakota vary. See Opp. at 62. But Defendants point to no legal or factual basis for a conclusion that such a defense would apply to the claims asserted here. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06–MD–1775, 2010 WL 4916723, at *4 (E.D.N.Y. Nov. 24, 2010)("The Supreme Court has clearly expressed that an *in pari delicto* defense. . . may be asserted in an antitrust case only where, as a direct result of the claimant's conduct, the claimant bears at least substantially equal responsibility for the violations he seeks to redress.") (internal citation and quotation omitted).

### B. The Unjust Enrichment Class is similarly manageable.

Plaintiffs do not argue that the requirements for an unjust enrichment claim are identical in each of the relevant states. Nor do they need to. *Zetia*, 2020 WL 5778756, at *26. The issue is whether the differences can be managed within the context of the litigation, or whether those differences would overwhelm common proof relating to violation and impact. *Id.* IPPs' Appendix C in their opening brief demonstrates precisely this by showing that under the relevant states' laws, the common evidence sufficient to establish an antitrust violation also establishes a claim for unjust enrichment. *See* Dkt. no. 514-2 (Appendix C). Moreover, this Court has dismissed a number of

unjust enrichment claims, allowing to proceed only claims that can be established with proof of an antitrust violation. *See generally* Dkt. 50.

While Defendants point to differences among the laws of the states, they do not examine how the differences would actually matter in proving the elements of the claims, nor how those differences would overwhelm the common evidence relating to conspiracy, impact and aggregate damages. *See, supra*, n. 78; *Namenda IPP*, 338 F.R.D. at 542 ("Defendants fail to show . . . the statutes would be applied differently in antitrust cases like this one."); *cf. Lazarek v. Ambit Energy Holdings, LLC*, No. 15-cv-6361-FPG, 2017 WL 4344557, at *6 (W.D.N.Y. Sept. 29, 2017) ("The elements of unjust enrichment are [sufficiently] similar in every state[.]")).

For example, Defendants point to New York law and the requirement that the relationship among the parties is "not too attenuated" as a difference.  Opp. at 71.   In its dismissal decision, however, this Court held that the New York law's "not to attenuated" requirement is satisfied "where the indirect purchaser is asserting an unjust enrichment claim against the manufacturer of the product itself," which "is the case here[.]" *Id.*

The other so-called differences that Defendants point to are equally unimpressive. *See* Opp. at 71-72 (listing variations in state laws).  ███████████████████████████████ ███████████████████████████████████████████████.  *See In re Air Cargo* at *4 (explaining the limited application of the defense of unclean hands).  The statute of limitations is certainly not in issue, and the only claims that remain in the case are claims arising under state laws where the courts have concluded that conferring a "direct benefit" is not required.  See Dkt. no. 501 at pp. 5-8 (dismissing claims requiring a "direct benefit.").[79]  Similarly, Defendants argue

---

[79] Defendants also cite as one of the "varying" state law requirements "whether unjust enrichment is an independent cause of action."   Again, defendants make no effort to describe how this "variation" (if it exists) would actually matter.  Moreover, this Court already held that unjust

that the requirement of "unjustness" focuses on the "totality of the [factual] circumstances." Opp. at 70. But the point is that the state law unjust enrichment claims that remain in the case are provable with evidence that Defendants engaged in a conspiracy to fix prices, and that Defendants benefitted from that conduct at the expense of Plaintiffs. Thus, proof of the antitrust violation will sufficiently establish that Defendants' conduct was "unjust" under the state unjust enrichment claims that remain in the case. *Solodyn*, 2017 WL 4621777 at *20 (proof of anticompetitive conduct establishes a violation of each state's unjust enrichment laws."); *Namenda IPP*, 338 F.R.D. at 574-75 (acknowledging that IPPs' allegations of defendants' anticompetitive conduct established violations under each states' unfair competition and unjust enrichment laws).[80]

Defendants cite *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 740–42 (W.D.N.Y. 2020) (Wolford, J.) for the blanket proposition that "[u]njust enrichment claims have 'individualized issues of causation that overwhelm the common questions of law and fact.'" *See* Opp. at 73-74. But, this Court did not make such an assertion. Rather, in that case, the viability of class members' unjust enrichment claims rested on the nature of each class member's relationship with the defendant. Because that inquiry was necessarily individualized, including involving whether a class member had a contract with the defendant and the terms of that contract, the court held that predominance could not be satisfied for those claims. *Id.* at 742.

Next, Defendants claim that differences in state law trigger a complex choice of law analysis creating additional individual issues. Opp. at 73. In fact, choice of law analyses are

---

enrichment claims pled here are "parasitic" of the state antitrust claims. Dkt. no. 501 at 9. If variation creates a   problem under a specific state's law, it should be addressed at summary judgment.

[80] Defendants contend that the proposed verdict form does not adequately account for the relevant variations. Even if true, there is no impediment to assessing the necessity of additions or changes to a verdict form as the case develops. *Nexium*, 297 F.R.D. at 183 ("management for trial is a dynamic process . . . [that] requires constant reevaluation and adjustment").

routinely handled in complex class action litigation and the application of different laws does not prevent class certification. *Zetia*, 2020 WL 5778756 at *26 (conducting a choice of law analysis on the EPPs' claims brought in 25 states, the District of Columbia and Puerto Rico).

But in any event, under New York conflicts laws, the domicile of the plaintiff will determine which state law to apply.[81] Defendants' contrary assertion, without any authority, that "different transactions by the same class member may be subject to different laws depending on which Defendant manufactured the caustic soda they purchased, where the parties entered into that transaction and where the alleged overcharge was paid[,]" Opp. at 73, must be rejected.

### C. Different measures of unjust enrichment damages do not create individual issues.

As demonstrated above, through Dr. Macartney's analysis, Plaintiffs can establish the unjust enrichment damages in the various states. Citing to their Appendix C, Defendants contend that the states vary in how they measure unjust enrichment damages. *See* Opp. at 74. The appended chart, however, shows a striking similarity in the laws relating to the measure of damages on an equitable claim for unjust enrichment—specifically, *the value of the benefit conferred or retained by the defendant. See* Opp. App. C. *See Solodyn*, 2017 WL 4621777, at *19 (finding EPPs' unjust enrichment damages calculation sufficient when based on the difference between actual profits and profits that would have been acquired without anticompetitive behavior); *Terazosin*, 220 F.R.D. at 699 (EPPs' damages methodology for unjust enrichment claims was sufficient because they "need only show that the proof they will utilize is sufficiently generalized."). Whether that benefit is measured by Defendants' entire gross profits on these sales, or by the excessive profits received in light of the overcharges – it is nevertheless a measure of

---

[81] *In re Restasis*, 335 F.R.D. at 34 (the state of purchase provides the appropriate substantive law for class members' claims.).

damages from the perspective of the Defendants, and is not individual to class members. Moreover, even if the method of calculation varies from state to state, there is no impediment to calculating damages on a state-by-state basis.

### Conclusion

For the foregoing reasons, the Court should grant Indirect Purchaser Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel.

Dated: January 26, 2023                          Respectfully submitted,


By: */s/ Barbara J. Hart*

Barbara J. Hart
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, NY 10017
Tel: (646) 722-8526
bhart@gelaw.com

Chad Holtzman (*pro hac vice*)
Nathan Reeder (*pro hac vice*)
**GRANT & EISENHOFER P.A.**
123 Justison Street
7th Floor
Wilmington, DE 19801
Tel: (302) 622-7154
choltzman@gelaw.com
nreeder@gelaw.com

**WEXLER BOLEY & ELGERSMA LLP**
Kenneth A. Wexler
Justin N. Boley
Tyler J. Story
311 S. Wacker Drive, Suite 5450
Chicago, IL 60606
312-346-2222
kaw@wbe-llp.com
jnb@wbe-llp.com
tjs@wbe-llp.com

Ellen Meriwether (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
205 N. Monroe St.
Media, PA 19063
Tel: 215-864-2800
emeriwether@caffertyclobes.com

Jennifer W. Sprengel (*pro hac vice*)
Kaitlin Naughton (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
135 S. LaSalle St.
Suite 3210
Chicago, IL 60603
Tel: 312-782-4882
jsprengel@caffertyclobes.com
knaughton@caffertyclobes.com

Ryan L. Gellman
**COLUCCI & GALLAHER, P.C.**
2000 Liberty Building
424 Main Street
Buffalo, NY 14202
Tel.: 716-853-4080
rlg@cgbuffalo.com

*Attorneys for Indirect Purchaser Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Barbara J. Hart, do hereby certify that on January 26, 2023, I caused a true and correct copy of the foregoing to be served upon all counsel of record via electronic mail and/or the Court's ECF/Pacer system.

/s/ Barbara J. Hart
Barbara J. Hart