**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CAUSTIC SODA ANTITRUST LITIGATION | **Lead Case No.: 1:19-cv-00385-EAW-MJR** |
| **THIS DOCUMENT RELATES TO:**<br><br>**ALL INDIRECT PURCHASER ACTIONS** | **PUBLIC VERSION** |

Defendants' Opposition to Indirect Purchaser Plaintiffs'
Motion for Class Certification and Appointment of Class Representatives and Class Counsel

Table of Contents

Introduction ........................................................................................................................1

Factual Background ...........................................................................................................5

    A.    Caustic Soda Is a Global Industry With Regional Dynamics. .................................5

    B.    Global Supply and Demand Shocks Tightened Caustic Soda Supply, Driving Up Global and U.S. Prices During the Proposed Class Period. .................7

    C.    Distributors Are Diverse Participants in the Global Industry and Have Complicated Purchase and Sales Relationships. ........................................................9

        1.    Distributor Purchases of Caustic Soda Vary in Price Based on Contracts, Negotiation, Competition, and Other Factors. .........................10

        2.    Distributors Bought and Sold Caustic Soda from Non-Defendants. .............................................................................................12

        3.    Co-Mingling, Reselling, Storage Time, and Product Dilution Complicate the Distribution Channel. .........................................................12

        4.    There Is No Standard Markup to Purported Class Members. ...................14

    D.    Indirect Purchasers Have Widely Varying Purchasing Preferences and Pricing. ....................................................................................................................15

    E.    IPPs' Class Certification Motion Rests on Shifting, Inconsistent Allegations. ..............................................................................................................16

Legal Standard .................................................................................................................18

Argument .........................................................................................................................20

I.    The State Antitrust Class Should Not Be Certified. .............................................20

    A.    IPPs May Not Expand Their Proposed Class Definition to Include Residential End-Users. .......................................................................................20

    B.    IPPs Cannot Satisfy the Requirements of Rule 23(a) for the State Antitrust Class. .................................................................................................20

        1.    Named Plaintiffs Have Not Established Their Class Membership. ..........................................................................................21

        2.    Named Plaintiffs Do Not Adequately Serve the Interests of the Proposed State Antitrust Class. ................................................................21

|  |  | a. | IPPs Failed to Provide Sufficient, or Any, Evidence to Establish Their Adequacy | 22 |

b. Neither Named Plaintiff Has Sufficient Interest In Vigorously Pursuing the Claims of the Class ...............................22

c. Named Plaintiffs Have Not Established That They Can Adequately Represent Residential End-Users. ...........................23

3. Named Plaintiffs' Claims and Defenses Are Not Typical of the State Antitrust Class...............................................................................24

C. IPPs Cannot Establish That Common Issues Predominate for the State Antitrust Class as Required by Rule 23(b)(3)........................................25

1. IPPs Cannot Prove Membership in the State Antitrust Class Using Common, or Individualized, Proof......................................26

2. IPPs Cannot Establish That All or Nearly All Distributors Experienced an Overcharge By Common Proof.........................28

a. Dr. Macartney's Overcharge Model Is Fatally Flawed. ...............29

(i) The Overcharge Regression Mismeasures Chlorine Demand. ...............................................30

(ii) The Overcharge Regression Mismeasures International Demand and Suffers from Endogeneity Bias. ...............................................32

(iii) The Overcharge Regression Mismeasures Domestic Demand and Domestic Supply of Caustic Soda...............................................34

(iv) The Overcharge Regression Generates False Positives. ...............................................35

(v) The Overcharge Regression Masks That Many Distributors Paid No Overcharge Even In Dr Macartney's Model. ...............................................37

(vi) The Overcharge Regression Does Not Account For Non-Conspiratorial Differences Between the Benchmark Period and Proposed Class Period.................38

(vii) Dr. Macartney's Overcharge Regression Does Not Account For Regional Differences in Pricing. ...............................................39

(viii)   The Overcharge Regression Cannot Isolate the Impact of Any One of IPPs' Individual Theories of Antitrust Harm. ...................................40

b.    Dr. Macartney's Market Characteristics Opinion Is Fatally Flawed. ...............................................40

c.    Dr. Macartney's Price Correlation Analysis Is Fatally Flawed. ...............................................43

d.    Varying Contracts and Negotiations Prevent IPPs from Showing Distributors Experienced an Overcharge on a Class-wide Basis. .......................................44

3.    IPPs Cannot Show Pass-Through from Distributors to Purported Class Members by Common Proof. ...........................47

a.    Dr. Macartney's Pass-Through Model is Fatally Flawed. ...............................................47

(i)    The Pass-Through Model Ignores 98% of Distributors That Bought Caustic Soda from Defendants and 62% of Defendants' Sales to Distributors. ...........................................48

(ii)   Dr. Macartney's Pass-Through Model Uses Average Data, Which Masks Individualized Issues. ...................................................49

(iii)  The Pass-Through Model Cannot Trace Indirect Purchasers' Purchases Back to a Defendant. ....................53

b.    IPPs Cannot Show Pass-Through on a Class-wide Basis Due to Varying Markups, Contracts, and Negotiation. ................55

4.    Calculating Damages for Each Purported Member of the State Antitrust Class Would Require an Individualized Inquiry. ....................56

5.    IPPs' Allegation that Distributors Facilitated Defendants' Alleged Conspiracy Is Not Subject to Class-Wide Proof. .........................60

D.    IPPs Cannot Establish Superiority for the State Antitrust Class as Required by Rule 23(b)(3). ....................................61

E.    The State Antitrust Class Is Not Ascertainable ....................................63

II.    The Colorado Consumer Protection Class Should Not Be Certified. ...............................64

A.      IPPs May Not Expand Their Proposed Class Definition to Include Residential End-Users..................................................................................64

B.      The Colorado Class Consumer Protection Class Cannot Be Certified as a Damages Class. ...................................................................................64

C.      IPPs Cannot Satisfy the Requirements of Rule 23(a) for the Colorado Consumer Protection Class. .................................................................65

      1.      Named Plaintiffs Do Not Adequately Serve the Interests of the Proposed Colorado Consumer Protection Class. ......................................65

            a.      Named Plaintiffs Are Not Members of the Colorado Consumer Protection Class and Lack Standing to Bring Those Claims. .................................................................65

            b.      Named Plaintiffs Are Otherwise Inadequate Class Representatives. .................................................................65

      2.      Named Plaintiffs' Claims Are Not Typical of the Colorado Consumer Protection Class. ........................................................66

D.      IPPs Cannot Establish Common Issues Predominate as Required by Rule 23(b)(3) For the Proposed Class.....................................................66

      1.      Determining Membership in the Colorado Consumer Protection Class Requires an Individualized Inquiry. ....................................................66

      2.      IPPs Cannot Establish the Elements of the CCPA on a Class-Wide Basis. .................................................................66

      3.      IPPs Cannot Establish Injury and Causation on a Class-wide Basis for the Colorado Consumer Protection Class. .................................67

      4.      Calculating Damages for Each Purported Member of the Colorado Consumer Protection Class Would Require an Individualized Inquiry.................................................................68

E.      IPPs Cannot Establish Superiority for the Colorado Consumer Protection Class as Required by Rule 23(b)(3).....................................68

F.      The Colorado Consumer Protection Class Is Not Ascertainable. .........................68

III.      The Unjust Enrichment Class Should Not Be Certified. ...................................................68

A.      IPPs May Not Expand Their Proposed Class Definition to Include Residential End-Users..................................................................................69

B.   IPPs Cannot Satisfy the Adequacy or Typicality Requirements of Rule 23(a) for the Unjust Enrichment Proposed Class....................................................69

C.   IPPs Cannot Establish Common Issues Predominate as Required by Rule 23(b)(3) For the Unjust Enrichment Class. ....................................................69

  1.   Determining Membership in the Unjust Enrichment Class Will Require an Individualized Inquiry. ............................................................69

  2.   Individualized Issues Pertaining to Differing State Laws Will Overwhelm Any Common Issues for the Unjust Enrichment Class..........................................................................................................70

  3.   IPPs Cannot Establish Causation and Injury by Class-wide Proof.........................................................................................................73

  4.   Unjust Enrichment Damages Vary By State and Their Calculation Requires Individualized Proof.................................................74

D.   IPPs Cannot Establish Superiority for the Unjust Enrichment Class as Required by Rule 23(b)(3). ......................................................................................75

E.   The Unjust Enrichment Class Is Not Ascertainable. .............................................75

Conclusion ............................................................................................................................75

Table of Authorities

**Page(s)**

**Cases**

*Adkins v. Morgan Stanley*,
   307 F.R.D. 119 (S.D.N.Y. 2015) ............................................................................61

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..............................................................................................25

*Blades v. Monsanto Co.*,
   400 F.3d 562 (8th Cir. 2005) ...............................................................................19

*Brecher v. Republic of Argentina*,
   806 F.3d 22 (2d Cir. 2015) ...................................................................................64

*Bunker's Glass Co. v. Pilkington PLC*,
   75 P.3d 99 (Ariz. 2003) ........................................................................................63

*Calvo v. City of New York*,
   No. 14-CV-7246 (VEC), 2018 WL 1633565 (S.D.N.Y. Apr. 2, 2018) .................27

*City of Colorado Springs v. Powell*,
   156 P.3d 461 (Colo. 2007) ...................................................................................64

*Clay v. Am. Tobacco Co.*,
   188 F.R.D. 483 (S.D. Ill. 1999) ...........................................................................62

*Coleman v. Dydula*,
   139 F. Supp. 2d 388 (W.D.N.Y. 2001) ...............................................................33

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ..................................................................................... *passim*

*Cordes & Co Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) ...........................................................................21, 65

*County of Champaign v. Hanks*,
   353 N.E.2d 405 (Ill. App. Ct. 1976) ....................................................................74

*Curley v. AMR Corp.*,
   153 F.3d 5 (2d Cir. 1998) .....................................................................................73

*Diaz v. Residential Credit Sols., Inc.*,
   297 F.R.D. 42 (E.D.N.Y. 2014) ...........................................................................22

*DiDonato v. GC Servs. Ltd. P'ship*,
  No. 20 CIV. 2154 (LGS), 2021 WL 4219504 (S.D.N.Y. Sept. 16, 2021) ............................ 66

*Fero v. Excellus Health Plan, Inc.*,
  502 F. Supp. 3d 724 (W.D.N.Y. 2020) ................................................................................. 74

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ...................................................................................................... 21, 65

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ............................................................................................................. 18

*Hamelin v. Faxton-St. Luke's Healthcare*,
  274 F.R.D. 385 (N.D.N.Y. 2011) ........................................................................................ 19

*Hanks v. Lincoln Life & Annuity Co. of New York*,
  330 F.R.D. 374 (S.D.N.Y. 2019) ........................................................................................ 71

*Hickory Sec. Ltd. v. Republic of Argentina*,
  493 F. App'x 156 (2d Cir. 2012) ........................................................................................ 58

*Hughes v. The Ester C Co.*,
  317 F.R.D. 333 (E.D.N.Y. 2016) ................................................................................... 71, 75

*Hunter v. Time Warner Cable Inc.*,
  No. 15-CV-6445 (JPO) 2019 WL 3812063 (S.D.N.Y. Aug. 14, 2019) ........................ 27, 28

*In re Actiq Sales & Mktg. Pracs. Litig.*,
  307 F.R.D. 150 (E.D. Pa. 2015) .......................................................................................... 72

*In re Air Cargo Antitrust Litigation*,
  2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ................................................................ 41, 58

*In re Aluminum Warehousing Antitrust Litig.*,
  336 F.R.D. 5 (S.D.N.Y. 2020) ................................................................................. 29, 35, 37

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) .............................................................................................. 62

*In re Brand Name Prescription Drugs Antitrust Litig.*,
  No. 94 C 897, 1994 WL 663590 (N.D. Ill. Nov. 18, 1994) ................................................. 53

*In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*,
  140 F. Supp. 3d 339 (D. Del. 2015) .................................................................................... 30

*In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*,
  679 F. App'x 135 (3d Cir. 2017) ........................................................................................ 49

*In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*,
    691 F.2d 1335 (9th Cir. 1982) ...................................................................60

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
    317 F.R.D. 675 (N.D. Ga. 2016) ................................................................58

*In re Digital Music Antitrust Litig.*,
    321 F.R.D. 64 (S.D.N.Y. 2017) ........................................................ *passim*

*In re Domestic Drywall Antitrust Litig.*,
    No. 13-MD-2437, 2017 WL 3700999 (E.D. Pa. Aug. 24, 2017) ...........58

*In re Fine Paper Antitrust Litig.*
    685 F.2d 810 (3d Cir. 1982)........................................................................60

*In re Fla. Cement & Concrete Antitrust Litig.*,
    278 F.R.D. 674 (S.D. Fla. 2012)..........................................................25, 52

*In re Flash Memory Antitrust Litig.*,
    No. C 07-0086 SBA, 2010 WL2332081 (N.D. Cal. June 9, 2010) ............... *passim*

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
    407 F. Supp. 3d 422 (S.D.N.Y. 2019)........................................................19

*In re Fresh Del Monte Pineapples Antitrust Litig.*,
    No. 1:04-MD-1628RMB, 2008 WL 5661873 (S.D.N.Y. Feb. 20, 2008)................47

*In re Graphics Processing Units Antitrust Litig.*,
    253 F.R.D. 478 (N.D. Cal. 2008)..........................................................3, 25, 41

*In re Hydrogen Peroxide Antirust Litigation*,
    552 F.3d 305 (3d Cir. 2009)................................................................18, 19

*In re Initial Public Offerings Securities Litigation*,
    471 F.3d 24 (2d Cir. 2006)..........................................................................19

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    2014 WL 6601941 .....................................................................................49

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    No. CA 05-485-JJF, 2010 WL 8591815 (D. Del. July 28, 2010)....................49, 62

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    299 F. Supp. 3d 430 (S.D.N.Y. 2018)................................................19, 24, 44, 71

*In re Literary Works in Elec. Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011)........................................................................21

*In re Loestrin 24 FE Antitrust Litig.*,
410 F. Supp. 3d 352 (D.R.I. 2019) ......................................................................70

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*,
422 F. Supp. 3d 194 (D.D.C. 2019) ...............................................................69, 72

*In re Methionine Antitrust Litigation*,
204 F.R.D. 161, 165 (N.D. Cal. 2001) ...............................................................52

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
522 F.3d 6 (1st Cir. 2008) ............................................................................42, 52

*In re Optical Disk Drive Antitrust Litig.*,
303 F.R.D. 311 (N.D. Cal. 2014) .......................................................................41

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017) .................................................................25, 26, 63

*In re Pharmacy Benefit Managers Antitrust Litig.*,
No. CV 03-4730, 2017 WL 275398 (E.D. Pa. Jan. 18, 2017) ................................61

*In re Polyurethane Foam Antitrust Litig.*,
No. 1:10 MD 2196, 2014 WL 6461355 (N.D. Ohio Nov. 17, 2014)................................53, 59

*In re Pre-Filled Propane Tank Antitrust Litig.*,
No. 14-02567, 2021 WL 5632089 (W.D. Mo. Nov. 9, 2021) ........................................ *passim*

*In re Processed Egg Prods. Antitrust Litig.*,
312 F.R.D. 124 (E.D. Pa. 2015) ....................................................................... *passim*

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
292 F. Supp. 3d 14 (D.D.C. 2017) ...................................................................3, 38

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
725 F.3d 244 (D.C. Cir. 2013) ......................................................................35, 36

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
934 F.3d 619 (D.C. Cir. 2019) ...........................................................................37

*In re Rezulin Prods. Liability Litig.*,
210 F.R.D. 61 (S.D.N.Y. 2002) ...................................................................72, 73, 74

*In re Steel Antitrust Litig.*,
No. 08 C 5214, 2015 WL 5304629 (N.D. Ill. Sept. 9, 2015)........................................38

*Johnson v. Nextel Commc'ns Inc.*,
780 F.3d 128 (2d Cir. 2015)..................................................................18, 62, 73

*Kendler v. Federated Dep't Stores, Inc.*,
    88 F.R.D. 688 (S.D.N.Y. 1981) ..........................................................................60

*King Cnty., Wash. v. IKB Deutsche Industriebank AG*,
    No. 09 CIV. 8387 (SAS), 2010 WL 2010943 (S.D.N.Y. May 18, 2010)..............65

*Kottler v. Deutsche Bank AG*,
    No. 08 CIV.7773(PAC), 2010 WL 1221809 (S.D.N.Y. Mar. 29, 2010)................72

*Kreger v. Gen. Steel Corp.*,
    No. CIV. 07-575, 2010 WL 2902773 (E.D. La. July 19, 2010) ..............................68

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
    897 F.3d 88 (2d Cir. 2018)..............................................................................3, 70

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*,
    709 F.3d 129 (2d Cir. 2013)................................................................................43

*Mazzei v. Money Store*,
    829 F.3d 260 (2d Cir. 2016)................................................................................27

*Morris v. Davita Healthcare Partners, Inc.*,
    308 F.R.D. 360 (D. Colo. 2015) ..........................................................................68

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)................................................................................18

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*,
    62 P.3d 142 (Colo. 2003)....................................................................................67

*Rodriguez v. It's Just Lunch, Int'l*,
    300 F.R.D. 125 (S.D.N.Y. 2014) ..........................................................................71

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
    No. 14-CV-4394 (AJN), 2018 WL 1750595 (S.D.N.Y. Apr. 11, 2018) ...................26, 56, 59

*Russell v. Forster & Garbus, LLP*,
    No. 17-CV-4274(JS)(AYS), 2020 WL 1244804 (E.D.N.Y. Mar. 16, 2020)..........................23

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
    22 F.4th 103 (2d Cir. 2021) ................................................................................59

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*,
    No. 15 CIV. 6549 (CM) 2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018)................70

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)............................................................................................64

*Sicav v. Wang*,
    No. 12 Civ. 6682 (PAE), 2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) ................................. 56

*Simmons v. Author Sols. LLC*,
    No. 13CV2801 DLC, 2015 WL 4002243 (S.D.N.Y. July 1, 2015) ........................................ 64

*South County Post & Beam, Inc. v. McMahon*,
    116 A.3d 204 (R.I. 2015) .................................................................................................... 74

*Spencer v. Hartford Fin. Servs. Grp., Inc.*,
    256 F.R.D. 284 (D. Conn. 2009) ........................................................................................ 71

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ............................................................................................................ 25

*Vandiver v. MG Billing Ltd.*,
    2022 WL 4938472 (D. Colo. Oct. 4, 2022) ........................................................................ 64

*Vincent v. Money Store*
    304 F.R.D. 446, 453 (S.D.N.Y. 2015) ................................................................................ 20

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
    No. 2:06-CV-1833, 2015 WL 3623005 (E.D. Pa. June 10, 2015) ........................................ 72

*Vogel v. City of New York*,
    No. 14 CIV. 9171 (RMB), 2017 WL 4712791 (S.D.N.Y. Sept. 19, 2017) ............................ 28

*Wal-Mart Stores, Inc. v Dukes*,
    564 U.S. 338 (2011) .................................................................................................. 5, 19, 41

*Wang v. Tesla, Inc.*,
    338 F.R.D. 428 (E.D.N.Y. 2021) ........................................................................................ 63

**Statutes**

Colo. Rev. Stat. § 6-1-101 et seq. ................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

**Other Authorities**

Federal Judicial Center, *Reference Manual on Scientific Evidence* 314 (3d ed.
    2011) .......................................................................................................................... 30, 32, 33

Hausfeld, Rausser & Macartney, et al., *Antitrust Class Proceedings – Then and
    Now*, *in The Law and Economics of Class Actions* 112 (2014) ........................................ 32, 33

<u>Introduction</u>

Indirect Purchaser Plaintiffs ("IPPs") have filed a factually and legally deficient motion seeking to certify three Rule 23(b)(3) damages classes consisting of indirect purchasers who bought Defendant-manufactured caustic soda from distributors in 30 jurisdictions and did not resell it.  IPPs allege that Defendants conspired to fix prices, restrict supply, and allocate customers and thereby raised the prices all indirect purchasers paid from October 2015 to December 2019.

Their case has fatal flaws.  First, IPPs have no evidence of a conspiracy—none. Defendants' contemporaneous business documents and data and their witnesses' testimony have disproven IPPs' speculative theories.  Here are a few examples:

- There is zero evidence showing any agreement among Defendants to fix prices, coordinate price increase announcements, restrict supply, or allocate customers.
- Every current and former employee witness who was asked ███████████████████████
- Defendant producers increased, not reduced, their caustic soda production during the proposed class period, and they did so in different amounts, at different times— directly refuting claims of a supply restriction conspiracy.
- IPPs also have no support for allegations that Defendants coordinated outages, manipulated price indexes, or limited domestic supply in favor of exports.

While IPPs suggest Defendants' price increase announcements are proof of a conspiracy, such announcements are not price increases, did not always lead to price increases, and were similar in amount and frequency before the proposed class period.  And now, IPPs say the conspiracy continued for an entire year after Direct Purchaser Plaintiffs ('DPPs') say the conspiracy ended—a year during which caustic soda prices were dropping dramatically.

To obtain class certification, Rule 23(a) of the Federal Rules of Civil Procedure requires that plaintiffs show, inter alia, adequacy and typicality of proposed class representatives.  Rule 23(b)(3) requires that for a damages class plaintiffs must show that issues common to the class predominate over individual issues and that the class mechanism is superior to individual actions.

IPPs try to end-run the predominance requirement for all three proposed classes—State Antitrust, Colorado Consumer Protection, and Unjust Enrichment—by positing that if their price-fixing conspiracy allegation is a common issue, their burden is met.  But that is not the law.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 37 (2013).  Even where plaintiffs offer common evidence of a conspiracy, individualized issues on injury, causation, or damages often preclude certification.  *In re Digital Music Antitrust Litig.* ("*Digital*"), 321 F.R.D. 64, 93-94  (S.D.N.Y. 2017).

In fact, in indirect purchaser cases, such as this one, the importance of showing injury and causation on a class-wide basis is magnified because indirect purchasers bear a "double burden" of showing not only that (a) the defendants injured direct purchasers—here, distributors—in the form of an overcharge but also that (b) distributors passed an overcharge to the indirect purchasers.

IPPs primarily rely on their expert ████████████████████████████, which IPPs ████████████████████████████████████████████████████████████████████████

However, ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

Indeed,  by  assuming  that  all  distributors  were  overcharged  by  the  same  amount,

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████   *See In re Rail Freight Fuel Surcharge Antitrust Litig.* ("*Rail Freight II*"), 292 F. Supp. 3d 14, 137 (D.D.C. 2017) (collecting cases) (noting that "5% to 6% constitutes the outer limits of a *de minimis* number of uninjured class members").

IPPs also argue they can show class-wide impact based on ██████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████. But ███████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████.

Further, courts do not accept debatable inferences about market conditions as a basis for class certification. *In re Graphics Processing Units Antitrust Litig.* ("*Graphics*"), 253 F.R.D. 478, 502 (N.D. Cal. 2008). That is especially true where, as here, the expert's description of the market is wrong. To that end, empirical evidence and ██████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████. Mot. 1. IPPs are wrong. "Putative class actions involving the laws of multiple states are often not properly certified pursuant to Rule 23(b)(3) because variation in the legal issues to be addressed overwhelms the issues common to the class." *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 95 (2d Cir. 2018). Without individualized inquiry into class members' claims under each state's idiosyncratic laws, IPPs will not be able to prove their case.

IPPs' certification motion fails to satisfy Rule 23 for each of the three state law classes:

1.      ***State Antitrust Class.***  IPPs' attempt to expand their class definition to include residential end-users after the close of fact discovery is prejudicial and should be rejected.  With respect to Rule 23(a), Named Plaintiffs Finch Paper and Tripp Plating are inadequate class representatives because they have not established class membership, lack an interest in vigorously pursuing the case, and have not shown they can adequately represent residential end-users.  For similar reasons, their claims are atypical of the class.  With respect to Rule 23(b)(3), IPPs lack any way to determine which indirect purchasers are class members because they cannot trace caustic soda purchases back to Defendants or exclude sales to indirect purchasers who resold caustic soda.  Pivotally, IPPs lack any reliable method to show distributors were overcharged and cannot reliably establish that distributors passed on any overcharge.  In other words, IPPs lack common proof of injury and causation and have no means to prove damages on a class-wide basis.  Due to these individual issues, the class mechanism is not superior.  IPPs' class is also not ascertainable.

2.      ***Colorado Consumer Protection Class.***  Importantly, the operative Colorado statute does not permit damages class actions like the one asserted here.  Moreover, Finch Paper and Tripp Plating are not members of the Colorado Consumer Protection Class, so they lack standing and are inadequate class representatives, even apart from the fact that their claims are atypical.  Furthermore, proving a Colorado Consumer Protection Act violation will require additional proof of the statute's unique elements.  Otherwise, the proposed Colorado Consumer Protection Class faces the same shortcomings as the State Antitrust Class.

3.      ***Unjust Enrichment Class.***  IPPs have not done the work necessary to show that the state laws under which they sue do not materially differ.  Such analysis reveals that state unjust enrichment causes of action vary greatly and an antitrust violation does not always state an unjust enrichment violation.  Moreover, often the requisite elements of such claims focus on the totality

of the circumstances or the particular plaintiff's conduct, which are necessarily individualized issues. Damages calculations also vary between states and require individualized proof. Otherwise, this class cannot be certified for the same reasons as the State Antitrust Class.

In sum, IPPs cannot meet their significant burden by shifting their legal theories, glossing over important differences among state laws, and relying on their ███████████████████ ██████████████████ Rule 23 requires more than mere pleadings. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v Dukes*, 564 U.S. 338, 350 (2011). It strains credulity to think that the IPP case could be tried as a class action. The Court should deny certification.

Factual Background



██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████. Ex. 11, Bowen Tr. 201:6-21, 258:20-25.[1] ███████████████████
██████████████████████████████████████████████
████████████████████████████ Ex. 1, Johnson Rep. ¶ 37.

A.    Caustic Soda Is a Global Industry With Regional Dynamics.

██████████████████████████████ Ex. 7, Green Tr. 45:14-18. ███████████████████
██████████████████████████████████████████████ Ex. 8, Whigham Tr. 341:17-342:10; Ex. 7, Green Tr. 136:24-137:10; Ex. 6, Sams Tr. 87:15-20, 92:11-15. ███████████████████████████████████████████████
████████ Ex. 1, Johnson Rep. ¶¶ 56-63.

---

[1] Exhibits and appendices to this Brief are filed herewith as attachments to the Declaration of Elizabeth B. Hadaway. **Appendix A** contains a list of citation abbreviations used herein and their corresponding long forms.

Defendants are five producers and one distributor of caustic soda who compete in this global industry.[2]  The distributor, KA Steel Chemicals, ("KA Steel"), was acquired by Olin in 2012 and does not make caustic soda but rather buys caustic soda manufactured by Defendants and other suppliers.  The five producers, Formosa Plastics Corporation, U.S.A. ("FPC USA"), Occidental Chemical Corporation ("OxyChem"), Olin Corporation ("Olin"), Shintech Incorporated ("Shintech"), and Westlake Chemical Corporation ("Westlake"), are vertically integrated chemical companies with chlor-alkali manufacturing facilities in North America.

Caustic soda is a co-product of chlorine.  ████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████. Ex. 2, Kreuz (II) Tr. 429:10-16, 443:20-444:9, 541:17-542:20; Ex. 3, D. Johnson Tr. 219:9-20.  ████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████. *See* Ex. 2, Kreuz (II) Tr. 429:10-16; Ex. 4, Sams 5 at BRENN-CS-SUB-0000594.  ████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████.

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[2] IPPs' expert Dr. Gareth Macartney ██████████████████████████████████████████████████████████████████████████████████. Ex. 46, Macartney Decl. ¶¶ 4, 47, 48. ████████████████████████████████████████████████████████ *See* Mot. 1 n.1.

███████████████████████████████████████████████████

███████████████); Ex. 34, BRENN-CS-SUB-0003483 at p.7; Ex. 6, Sams Tr. 93:10-19

("████████████████████████████████████████"); Ex. 50,

UNIV-CS-SUB-0069677 at p. 19 (2017 Univar presentation on West Coast market presence).

As a result, ████████████████████████████. *See, e.g.,*

Ex. 6, Sams Tr. 165:2-167:4; Ex. 19, Gable Tr. 123:8-14; Ex. 36, Eisenhauer 8 at Argus_CS000190

("██████████████████████████████████████

████████████████"). ███████████████████████

██████████████████████████████████████████████

██████████████████████████████████████" Ex. 6,

Sams Tr. 275:3-7, 276:6-7. █████████████████████

███████████████████████████████████ Ex. 6, Sams Tr.

275:8-278:3; *see* Ex. 17, Sams 20 at WL_0000199062; *see also* Ex. 33, Bowen 6 at p. 11

("██████████████████████████████████████████

██████████████████████████████████).

B.    Global Supply and Demand Shocks Tightened Caustic Soda Supply, Driving Up Global and U.S. Prices During the Proposed Class Period.

Between October 2015 and December 2019, a series of events in the chlor-alkali industry

caused dramatic shifts in global markets. █████████████████████████

██████████████████ Ex. 1, Johnson Rep. ¶66. █████████████████

█████████████████████████ *Id.* ¶ 67. █████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████ *Id.* ██████████████████████████



. *Id.* ¶¶ 66-68.

Several significant events occurred.

. *See id.* ¶ 66.  T

Ex. 25, Kreuz 17 at IHSM005406; Ex. 23, IHSM008046 at IHSM008078, IHSM008079; Ex. 2, Kreuz (II) Tr. 465:2-467:22.

*See* Ex. 2, Kreuz (II) Tr. 469:20-471:25.

*See* Ex. 1, Johnson Rep. ¶ 66; Ex. 2, Kreuz (II) Tr. 473:15-474:19; Ex. 27, IHSM035195.

Ex. 7, Green  Tr.  97:16-19.

Ex. 1, Johnson Rep. ¶ 66, n.149.

*Id.* ¶ 67, n.155.

Ex. 2, Kreuz (II) Tr. 548:10-549:2; Ex. 30, Eisenhauer 10 at Argus_CS000095-96; Ex. 7, Green Tr. 123:5-16.

███████████████. Ex. 59, Argus_CS000111 at Argus_CS000112 █████████████

██████████████████████████); Ex. 7, Green Tr. 122:20-123:4.

The events in Europe and Asia affected caustic soda prices in the U.S. and globally. ████

█████████████████████████████████████████████████████

███████████████████████████, Ex. 72, Johnson Rep., App. K, Ex. K-1:



The close relationship between prices in these different regions underscores that global competition and supply factors affect caustic soda pricing across the world. ████████████

█████████████████████████████████████████████████

████████████████████. *See* Ex. 28, Macartney (I) Tr. 36:6-37:5.

C.   Distributors Are Diverse Participants in the Global Industry and Have Complicated Purchase and Sales Relationships.

████████████████████████████████████████████. Ex. 1, Johnson Rep.

¶¶ 40-42. █████████████████████████████████████

*Id.* ¶ 41.

Ex. 52, O'Malley Tr. 55:1-10; Ex. 7, Green Tr. 91:3-25, Ex. 22, Green 3, ¶ 8.

, Ex. 1, Johnson Rep. Ex. 1:



Ex. 1, Johnson Rep. ¶ 203.

1.   Distributor Purchases of Caustic Soda Vary in Price Based on Contracts, Negotiation, Competition, and Other Factors.

Ex. 1, Johnson Rep. ¶ 46.

███████████████████████████████████████████████████ *See*
Ex. 7, Green Tr. 193:24-194:3 (███████████████████████); Ex. 1, Johnson
Rep. ¶¶ 108-114 & Exs. 21-22 (d███████████████████████████████████
███████). ███████████████████████████████████████ *See* Ex. 1,
Johnson Rep., App. G. ███████████████████████████████████████████
███████████████████████████████████. *Id.* Index-based
pricing mechanisms may refer to one or more indexes published by IHS Markit Ltd. ("IHS"),
Argus Media, Inc. ("Argus"), Independent Commodity Intelligence Services ("ICIS"), and others.
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
███████████████████████. Ex. 24, Kreuz (I) Tr. 38:13-39:18; Ex. 13, D. Johnson 8.
████████████████████████████████████████████████████████████
████████████████████████████ Ex. 1, Johnson Rep. ¶ 48 & Ex. 4. ████████
█████████████████████████████████████████████████████████████
████████████ *See id.* ¶¶ 82-85 (████████████████████████████████
█████████████████████████████████████████████████████████████
██████████████████████████████; Ex. 10, OCC_00155252 (OxyChem-PVS).
███████████████████████████████████ *See* Ex. 1, Johnson Rep. ¶ 49; Ex. 40,
Gable 31 (██████████████████████████████████████████████████████
██████████████); Ex. 41, BRENN-CS-SUB-0047101 (███████████████████████).
████████████████████████████████████████████████. *See* Ex. 52, O'Malley Tr. 198:6-11.
█████████████████████████████████████████████████████████████
██████ Ex. 6, Sams Tr. 189:7-12 (██████████████████████████████████



");

Ex. 16, B. Rexer Tr. 163:15-23. ██████████████████████████████████

███████████████████████████████████████████ *See, e.g.,*

Ex. 53, Sams 17 at BRENN-CS-SUB-0047501; Ex. 6, Sams Tr. 179:8-180:16, 321:24-322:20.

2.   <u>Distributors Bought and Sold Caustic Soda from Non-Defendants.</u>

██████████████████████ *See* App. B[3]; Ex. 43, HAWK-CS-SUB-004473 (████████

████████████; Ex. 44, HAWK-CS-SUB-004548 (█████████████); Ex. 6,

Sams Tr. 93:10-19, 145:10-21, 146:5-12, 165:11-166:5 (████████████████

████████████████████████████); Ex. 19, Gable Tr.

74:14-77:18, 278:10-279:17 (███████████████████), 279:12-17, 122:22-123:7

(███████████████████████████████), 388:18-

23 (████████████████████). ██████████████████████████

████████████████████████ *See* App. B; Ex. 1, Johnson Rep. ¶¶ 194-196.

3.   <u>Co-Mingling, Reselling, Storage Time, and Product Dilution Complicate the Distribution Channel.</u>

For several reasons, "tracing" whether an indirect purchaser purchased caustic soda

manufactured by one of the Defendants is often not possible.

***Co-mingling***. 

████████ *See* Ex. 6, Sams Tr. 139:22-24; Ex. 19, Gable Tr. 51:14-24, 59:24-66:3, 389:18-24,

390:10-14 ("████████████████████████████████████████

---

[3] **Appendix B** identifies distributor transactional purchase and swap data files that distributors produced in this matter. Natives copies of the file are being submitted as exhibits and filed herewith under seal.

███████████████████████████████████████████; Ex. 38, Gable 6 ("█████████████

█████████████████████████████████████████████████), Ex. 39,

Gable 7 ("███████████████████████████████").  Indeed, █████████████████

██████████████████████████████████████████████████████████

█████████████  *See, e.g.*, Ex. 6, Sams Tr. 144:10-18 (West Coast), 145:10-21 (East Coast); Ex.

19, Gable Tr. 57:2-58:4; Ex. 37, Gable 4 ████████████████████████████

Ex. 1, Johnson Rep. ¶ 197.  █████████████████████████████████████

████████████████████████████  Ex. 6, Sams Tr. 147:14-148:5 ("████████

████████████████████████████████████████████████████████████

████████████████████████████).

> **Reselling**.  ████████████████████████████████████████████

██████████████████████████████  *See* App. B; *see* Ex. 19, Gable Tr. 283:11-

17; Ex. 6, Sams Tr. 163:15-164:14, 185:20-23.  ██████████████████████

████████████████████████████████████████  Ex. 1, Johnson Rep. ¶¶ 194-

196 (███████████████████████████████████████████████████████

███████).  Some distributors, such as Main Pool Chemical Co. ("Main Pool"), did not buy

product directly from a *manufacturer* Defendant but did buy from Defendant KA Steel, a

distributor.  █████████████████████████████████████████████████████

████████████████████████████████████.  *See id.* ¶¶ 43-44, n.77; App. B.

> **Storage times**.  Distributors store caustic soda for varying amounts of time.  Ex. 19, Gable

Tr. 45:6-10 (██████████████████████████); Ex. 7, Green Tr. 212:16-24 (█████████████

███████████████████████████); Ex. 18, P. Rexer Tr. 39:2-40:5 (███████████

███████████████████████████████████).



***Dilution***.  Some distributors dilute product before reselling it.  █████████████████

█████████████████████████████████.  Ex. 6, Sams Tr. 418:3-20 (████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████); Ex. 1,

Johnson Rep. ¶ 189 n.422. ████████████████████████████████████████ Ex. 18,

P. Rexer Tr. 34:1-35:13 (████████████████); Ex. 52, O'Malley Tr. 42:21-43:22 (████).

      4.    <u>There Is No Standard Markup to Purported Class Members.</u>

████████████████████████████████████████ *See* Ex. 1, Johnson

Rep. ¶ 51; Ex. 19, Gable Tr. 300:12-16 (██████████████████████████████

████████████████); Ex. 6, Sams Tr. 57:21-24 (█████████████████████

███████████████████████████████████████████████████████████

████████ Ex. 52, O'Malley Tr. 67:7-68:17 ("Q. Do you charge a standard markup? A. No."); Ex.

16, B. Rexer Tr. 147:19-25 (██████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████); Ex. 7, Green Tr. 211:19-23 (█████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████).  ████████████

█████████████.  Ex. 6, Sams Tr. 392:21-393:9 (████████████████████████████

██████████████████████████████████████████████████████); Ex. 31,

Tybor Tr. 209:19-24 (████████████████████████████████████████████████

██████████████); Ex. 26, Lovelace Tr. 214:11-215-4 (████████████████████████).

████████████████████████████████████████████. Ex. 19, Gable Tr. 220:11-15;

221:6-8 (████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████).

D.   <u>Indirect Purchasers Have Widely Varying Purchasing Preferences and Pricing.</u>

The three proposed classes consist of only those indirect purchasers who did not resell

caustic soda, i.e., end-users.  █████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████ *See, e.g.*, Ex. 5, West Tr. 292:3-11, 292:19-21; Ex. 6, Sams Tr. 103:1-

3, 103:14-17, 134:18-20 ("██████████████████████████████████████

██████"); Ex. 49, UNIV-CS-SUB-0046159 (███████████████████████████).

When selecting caustic soda suppliers, end-users make decisions for diverse reasons,

sometimes unrelated to price.  Named Plaintiffs are two good examples of this.  ████████

██████████████████████████████████████████████████████████████

███████████████████████. Ex. 12, S. Jagielo Tr. 50:22-52:1 ("████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████), 54:20-24.  ████████

██████████████████████████████████████████████████████████████

██████████. Ex. 31, Tybor Tr. 87:15-88:5.  ██████████████████████████

█████████████████████ *See* Ex. 31, Tybor Tr. 176:5-19 (████████████████████

██████████████████████████████████████████████), 180:1-20,

185:10-21, 224:24-258:21, 261:9-266:14 (███████████████████); *see also* Ex. 54, Finch

9; Ex. 55, Finch 23; Ex. 56, Finch 26; Ex. 57, Finch 27; Ex. 58, Finch 28.

████████████████████████████████████████████████ Ex. 26, Lovelace

Tr. 196:7-13 (████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████).

E.   <u>IPPs' Class Certification Motion Rests on Shifting, Inconsistent Allegations.</u>

The conspiracy IPPs assert has shifted since their Amended Complaint.  IPPs have dropped

their injunctive class and federal claim.  ███████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████, and ████████████████████████

████████████████████████████, Ex. 28, Macartney (I) Tr. 49:7-15.

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

*See* Mot. 3.  ██████████████████████████████████████████████

████████████████████████.  *See* Mot. 3 (citing Dkt. 475-2, pp. 3-19, filed under seal); *see, e.g.*,

Dkt. 475-2, p. 19 (citing Lamb Rep. ¶¶ 22, 171-196).  Even apart from the incorporation by

reference, that IPPs and DPPs disagree about which period was free of collusion is significant.

But here, by incorporating DPPs' facts, which cite DPPs' expert's report and proposed class

period, IPPs rely on facts that DPPs' rely on for the conspiracy ending in 2018.  In other words,

IPPs' legal and economic arguments lack support from the facts on which they rely.

████████████████████████████████████████████████████████

████████████████████" Mot. 1.  Specifically, they allege Defendants issued "coordinated price

increase announcements" to effectuate the alleged conspiracy.  *Id.* 17.  █████████████████

██████████████████████████████████████████████████████.  Ex. 28,

Macartney (I) Tr. 198:3-5 (████████████████████████████████████████

██████████████████████████████████████).

But IPPs' supply restraint conspiracy theory is foreclosed by uncontested facts. ██

████████████████████████████████████████████ Ex. 1, Johnson

Rep. ¶¶ 123-128. ████████████████████████████████████████

████████████████████████████████. *Id.* ¶ 139. ████████████

████████████████████████████████ *Id.* ¶ 3. ████████

██████████████████████████████████████

██████████████████████████. *Id.*, Ex. 25. ████████████████

██████████████████████████████████████

██████████████████████████ *See Id.*, Ex. 26. ████████

████████████████████████████████

IPPs' assertion that they will rely on common evidence that Defendants carried out a conspiracy through coordinated price increase announcements ignores the actual record evidence:

- ***Producers have been issuing price increase announcements since long before the proposed class period.*** ████████████████████████████████ ██████ Ex. 1, Johnson Rep. ¶¶ 103-104; Ex. 24, Kreuz (I) Tr. 83:23-84:18.

- ████████████████████████████████████████ ████████████████████████████ Ex. 1, Johnson Rep., Ex. 20. Defendants often announced dramatically different price increase amounts. ██████████████████████████████████ ████████████████████████████ *Id.* ¶ 107.

- ***Price increase announcements did not actually lead to price increases across all distributors.*** ████████████████████████████ ████████████████ *See id.* ¶¶ 152-159 & Exs. 30-31, App. Z. ████████████████████████████ Ex. 3, D. Johnson Tr. 243:1-13.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ od.  Ex. 1, Johnson Rep. ¶¶ 49, 108-114.

<u>Legal Standard</u>

Federal Rule of Civil Procedure Rule 23(a) allows class certification "only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). To certify a damages class, "a plaintiff must establish (1) predominance—'that the questions of law or fact common to class members predominate over any questions affecting only individual members'; and (2) superiority—'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).[4]

Satisfying Rule 23 requires much more than mere allegations. The Supreme Court has confirmed that plaintiffs seeking certification must "*prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (emphasis in original).

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." *Johnson*, 780 F.3d at 137; *see Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).  "In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *In re Hydrogen Peroxide Antitrust Litigation* ("*Hydrogen*

---

[4] Internal quotation marks and citations are omitted throughout this Brief unless otherwise noted.

*Peroxide*"), 552 F.3d 305, 320 (3d Cir. 2009).  Where a plaintiff seeks to certify multiple classes, or subclasses, she must satisfy the requirements of Rule 23 for each class.  *See Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 392 (N.D.N.Y. 2011).

The Second Circuit in *In re Initial Public Offerings Securities Litigation* ("*IPO*"), 471 F.3d 24 (2d Cir. 2006) underscored the need for courts to engage in "rigorous analysis" of the class certification evidence, even when doing so involves merits issues.   *Id.* at 33; *see Dukes*, 564 U.S. at 351 (explaining that such "rigorous analysis" will often "entail some overlap with the merits of the plaintiff's underlying claim").  The Court may certify a class "only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established."  *IPO*, 471 F.3d at 41.  In doing so, the Court must "assess all of the relevant evidence admitted at the class certification stage," including expert testimony.  *Id.* at 42.

████████████████████████████████████████████████████

████████████████████████████████████████████ Mot. 1, 11.  That is absolutely not the law.  *See Comcast*, 569 U.S. at 37.  Without a reliable method of proving injury by common proof, courts routinely deny class certification.  *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 431 (S.D.N.Y. 2019); *see Hydrogen Peroxide*, 552 F.3d at 311; *Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005).

Courts also "routinely deny class certification" in cases involving multi-state classes.   *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR*"), 299 F. Supp. 3d 430, 576 (S.D.N.Y. 2018) (quoting *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 311 (S.D.N.Y. 2004)).  IPPs rest heavily on the mantra that the Second Circuit construes Rule 23 "liberally."  But

even applying the most liberal threshold imaginable, none of the three proposed classes here come close to meeting the bar for certification.  This Brief addresses each class in turn.

Argument

## I.      The State Antitrust Class Should Not Be Certified.

Certification of the State Antitrust Class must be denied because IPPs improperly expand their class definition, cannot meet Rule 23(a)'s adequacy and typicality requirements, do not satisfy Rule 23(b)'s predominance and superiority standard, and lack an ascertainable class.

### A.      IPPs May Not Expand Their Proposed Class Definition to Include Residential End-Users.

████████████████████████████████████████████████████████████

████████████████████████████████████.  *Compare* Dkt. 335, ¶ 9, *with* Mot. 2.  However, ***broadening*** a class definition at this late stage is not permitted.  In *Vincent v. Money Store*, the plaintiffs tried to expand their class on a certification motion after discovery was completed without moving to amend their complaint.  304 F.R.D. 446, 453 (S.D.N.Y. 2015).  And just as in *Vincent*, here broadening the class definition at this late stage would be inappropriate because it is "unfair to the defendants" and might necessitate additional discovery.  *Id.*  The Court should therefore reject IPPs' prejudicial expansion of the proposed class and limit the class definitions to those in IPPs' Amended Complaint: persons and entities who indirectly purchased caustic soda *for non-residential use*.

### B.      IPPs Cannot Satisfy the Requirements of Rule 23(a) for the State Antitrust Class.

A class may not be certified if the proposed class representatives cannot fairly and adequately represent the class or if their claims are not typical of the claims of the rest of the class.  Fed. R. Civ. P. 23(a)(3), (a)(4).  Here, the Named Plaintiffs meet neither test.

20

1.     Named Plaintiffs Have Not Established Their Class Membership.

The Supreme Court has "repeatedly held that 'a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.'" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)); *accord Cordes & Co Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99-101, 101 n.7 (2d Cir. 2007).

To be a member of the State Antitrust Class, an indirect purchaser must have bought caustic soda "manufactured" by a Defendant.  But IPPs did not submit evidence that Named Plaintiffs bought Defendant-manufactured caustic soda.  Finch Paper bought caustic soda from distributors Surpass and Univar during the class period, and Univar and Surpass bought from Defendants and non-Defendants.  App. B.



Ex. 31, Tybor Tr. 109:14-110:1-17.

*See* Ex. 60, P. Rexer 3.

Ex. 18, P. Rexer Tr. 40:6-14.

Ex. 12, S. Jagielo Tr. 71:9-15.  Even if Named Plaintiffs can establish their class membership, which is doubtful on this record, doing so would require an individualized inquiry.

2.     Named Plaintiffs Do Not Adequately Serve the Interests of the Proposed State Antitrust Class.

To satisfy Rule 23(a)(4)'s adequacy requirement, "the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members."  *In re Literary Works in Elec. Databases*

*Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Denney v. Deutsche Bank AG*, 443

F.3d 253, 268 (2d Cir. 2006)).  Tripp Plating and Finch Paper fail both tests.

          a.    <u>IPPs Failed to Provide Sufficient, or Any, Evidence to Establish</u>
<u>Their Adequacy</u>

IPPs' conclusory statements about Named Plaintiffs' adequacy do not satisfy their burden.

Courts deny certification where, as here, proposed class representatives fail to submit evidence in

support of their adequacy.  *See Diaz v. Residential Credit Sols., Inc.*, 297 F.R.D. 42, 52 (E.D.N.Y.

2014) ("Absent any evidence, such as an affidavit or declaration from the Plaintiff, the Court must

find that the Plaintiff has not met the requirement of Fed. R. Civ.  P. 23(a).").

          b.    <u>Neither Named Plaintiff Has Sufficient Interest In Vigorously</u>
<u>Pursuing the Claims of the Class</u>

Substantial evidence shows that both Tripp Plating and Finch Paper lack the requisite

interest in pursuing the class claims. ██████████████████████████████

████████████████████████████████████████████. Ex. 21, C. Jagielo Tr. 37:6-

9; Ex. 61, S. Jagielo 8. ███████████████████████████████████

███████████████████████████████████████ Ex. 21,

C. Jagielo Tr. 12:12-15:24. █████████████████████████████

██████████████████████████████ *Id.* 136:10-138:23. ████████████

█████████████████████████████████████ Ex. 21, C. Jagielo

Tr. 136:6-7, ███████████████████████████████████████

████ *id.* 154:13-16.

                   █████████████████████████████████████

Ex. 31, Tybor Tr. 15:6-19:1, ████████████████████████████, *id.* 313:22-24. ██████

██████████████████████████████████████████████████████

                           *See* Dkt. 504 (███████████████████████).



Mot. 17.

Ex. 31, Tybor Tr. 358:2-365:10 (

Ex. 64, Finch 51; Ex. 65, Finch 52 (

); Ex. 66, Finch 53 (

). This conduct is fundamentally at odds with the core tenet of IPPs' case.

Tripp Plating's and Finch Paper's conduct and "deposition testimony make[] clear" that they do "not have an 'interest in vigorously pursuing the claims of the class.'" *Russell v. Forster & Garbus, LLP*, No. 17-CV-4274(JS)(AYS), 2020 WL 1244804, at *4 (E.D.N.Y. Mar. 16, 2020) (quoting *Wexler v. AT&T Corp.*, No. 15-CV-686 (FB)(PK), 2019 WL 5694028, at *3 (E.D.N.Y. Aug. 5, 2019) (denying class certification for lack of adequacy where the class representative lacked knowledge about the case and had not shown a strong interest in pursuing the class claims).

   c.   <u>Named Plaintiffs Have Not Established That They Can Adequately Represent Residential End-Users.</u>

Even if IPPs are permitted to expand their class definitions, IPPs failed to address any characteristics of residential consumers or provide evidence to demonstrate Named Plaintiffs' adequacy to represent their interests. This is unsurprising, since there has been no opportunity for discovery about residential users due to IPPs' late disclosure of this expanded class. Defendants suspect the real reason IPPs reversed course on their class definition to reinsert residential end-

users is because ███████████████████████████████████████████

███████████████████. However, expedience is not an excuse to skirt the Federal Rules.

       3.    <u>Named Plaintiffs' Claims and Defenses Are Not Typical of the State Antitrust Class.</u>

Named Plaintiffs' conclusory statements do not actually prove their claims are typical of absent class members. ████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ *See* Dkt. 501, p. 12 (█████████████

████████████████████████); Dkt. 356, n.2 (████████████████████████

████████████████████████). IPPs' claims would require argument and proof about different conduct and distract from the Connecticut claim's presentation at trial.

Moreover, IPPs cannot establish typicality here because Named Plaintiffs are subject to unique defenses that threaten to divert the focus from the litigation. *See LIBOR*, 299 F. Supp. 3d at 460) ("Accordingly, typicality is not satisfied 'where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation,'" quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)). Defendants are entitled to rely on the defenses that Named Plaintiffs' own purchasing preferences, which prioritized considerations other than price, were a substantial factor causing any higher prices they may have paid, and Named Plaintiffs failed to mitigate damages. ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████. *See supra* pp. 15-16.

These factually specific causation and mitigation defenses would likely distract from the litigation, which warrants denial of certification with Finch Paper and Tripp Plating as class

representatives.  *Digital*, 321 F.R.D. at 88-89 (class certification denied because some class members were subject to unique defenses).

C.    IPPs Cannot Establish That Common Issues Predominate for the State Antitrust Class as Required by Rule 23(b)(3).

IPPs fail to meet Rule 23(b)(3)'s requirement that common issues predominate over individualized issues.  The predominance requirement is "far more demanding" than Rule 23(a)'s requirement that common questions of law or fact exist.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).  Contrary to IPPs' contention, predominance "is not satisfied simply by showing that the class claims are framed by the common harm suffered by potential plaintiffs."  *In re Petrobras Sec.* ("*Petrobras*"), 862 F.3d 250, 270-71 (2d Cir. 2017).  Predominance is only met if "common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:29, pp. 195-96 (5th ed. 2012) (describing individual issues and common issues)).

IPPs must show a common means of proving injury to all or nearly all class members.  In this respect, IPPs have a "double burden," in that they must establish, first, that distributors suffered a common impact due to the alleged conspiracy, and second, that the "impact was passed through to the indirect purchaser class" through each link of the distribution chain.  *In re Fla. Cement & Concrete Antitrust Litig.* ("*Cement*"), 278 F.R.D. 674, 682 (S.D. Fla. 2012); *see In re Pre-Filled Propane Tank Antitrust Litig.* ("*Propane*"), No. 14-02567, 2021 WL 5632089, at *6 (W.D. Mo. Nov. 9, 2021) (describing IPPs' "two-part burden in establishing predominance"); *Graphics*, 253 F.R.D. at 499 (denying class certification after IPPs showed impact on direct purchasers but failed to show pass-through, which required accounting "for the decision-making of a variety of resellers and manufacturers").

Courts must also consider variation in damages calculations as part of the predominance inquiry. *Comcast*, 569 U.S. at 37; *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.* ("*Royal*"), No. 14-CV-4394 (AJN), 2018 WL 1750595, at *15 (S.D.N.Y. Apr. 11, 2018).

IPPs fail to satisfy Rule 23(b)(3)'s predominance requirement for their proposed State Antitrust Class for five reasons:

- ***First***, IPPs have no way to establish which indirect purchasers are members of the proposed class on a class-wide, or individual, basis.

- ***Second***, IPPs lack a reliable method of proving injury because they cannot show distributors experienced a common impact in the form of an overcharge.

- ***Third***, IPPs lack a reliable method of proving injury because they cannot show that any common impact was passed through to all, or nearly all, class members.

- ***Fourth***, IPPs have no reliable method to prove damages on a class-wide basis.

- ***Fifth***, IPPs' distributor facilitation theory cannot be proven with common evidence.

These failures mean that common evidence is not capable of reliably showing membership, injury, or damages on a class-wide basis. *See Petrobras*, 862 F.3d 250, 273 (2d Cir. 2017) ("Plaintiffs bear the burden of showing that, more often than not, they can provide common answers.") (citing *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013)). As a result, IPPs cannot satisfy their burden on predominance, and the Court should deny class certification.

1.   IPPs Cannot Prove Membership in the State Antitrust Class Using Common, or Individualized, Proof.

IPPs do not have a reliable method for determining class membership because they have no way of proving—and do not intend to prove—that Defendants manufactured the caustic soda that any purported class members purchased, and they have no way of proving that purported class members did not resell the caustic soda they purchased. This is fatal to IPPs' ability to show membership in the State Antitrust Class and their bid for class certification.

Where "individualized questions as to membership in the proposed class predominate over common questions, class certification is precluded." *Calvo v. City of New York*, No. 14-CV-7246 (VEC), 2018 WL 1633565, at *7 (S.D.N.Y. Apr. 2, 2018); *see Mazzei v. Money Store*, 829 F.3d 260, 270-272 (2d Cir. 2016) (affirming decertification where class membership could not be shown on a class-wide basis). "Plaintiffs thus need to demonstrate that common questions predominate over any individualized issues involved in determining class membership." *Hunter v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO) 2019 WL 3812063, at *12 (S.D.N.Y. Aug. 14, 2019).

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Mot. 2-3.  IPPs cannot establish either requirement on a class-wide basis, or likely at all for most purchasers.

*First*, IPPs have not shown how they can prove which indirect purchasers bought caustic soda manufactured by a Defendant.  ██████████████████████████████████████

████████████████████████████████ *See* Dkt. No. 514-2, Hart Decl., App. D, App. E. IPPs' expert Dr. Macartney has not provided any method to trace the caustic soda that indirect purchasers bought back to any Defendant using common evidence.  *See infra* Section I.C.3.a.

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████ Ex. 46, Macartney Decl. ¶ 134. ██████

███████████████████████████████████████████████████████████████████

██████████████████████████████████ Ex. 28, Macartney (I) Tr. 287:25-288:5. █████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████ Ex. 32, Macartney (II) Tr. 370:15-371:12.



█████ Ex. 28, Macartney (I) Tr. 288:3-4 (███████████████████████████ ████. And as explained in detail in Section I.C.3.a.iii, d███████████████████ ███████████████████████████████████████████████████████.

***Second***, █████████████████████████████████████████████ █████████████████████████████████████████████████████████ ████ *See* Ex. 28, Macartney (I) Tr. 285:4-8 (████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████).

Therefore, IPPs have provided no method to reliably establish class membership for any purported class member on a class-wide, or even an individual, basis. This is patently unacceptable. *See Hunter*, 2019 WL 3812063, at *11 (predominance was not met where proposed methodology for identifying members of wrong number phone call class under the Telephone Consumer Protection Act could not be reliably applied to approximately 20% of phone numbers at issue). Where, as here, "potentially thousands of individualized and elaborate inquiries would be required to identify who is part of the class, . . . 'predominance' is not satisfied." *Vogel v. City of New York*, No. 14 CIV. 9171 (RMB), 2017 WL 4712791, at *7 (S.D.N.Y. Sept. 19, 2017).

       2.     <u>IPPs Cannot Establish That All or Nearly All Distributors Experienced an Overcharge By Common Proof.</u>

Individualized issues preclude class-wide proof of injury as well. IPPs attempt to satisfy the first part in their double burden to prove injury—showing the required common impact on distributors—████████████████████████████████████████████████████ █████████████████████████████████████████████ Mot. 17; Ex. 46, Macartney

28

Decl. ¶¶ 117-128.  ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████.

        a.     <u>Dr. Macartney's Overcharge Model Is Fatally Flawed.</u>

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████).  *See* Ex. 46,

Macartney Decl. ¶¶ 117-128.  "A flawed model," on the other hand, "may result in denial of class

certification for failure reliably to establish the preponderance of common issues."  *In re Aluminum*

*Warehousing Antitrust Litig.* ("*Aluminum Warehousing*"), 336 F.R.D. 5, 49 (S.D.N.Y. 2020).

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

       ▪  █████████████████████████████████████████

       ▪  █████████████████████████████████████████

       ▪  ██████████████████████████████████

       ▪  █████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████

Dr. Macartney's Overcharge Regression suffers from multiple fatal flaws—addressed individually below—and fails to provide IPPs with reliable common evidence capable of satisfying their burden on class certification.

(i)    The Overcharge Regression Mismeasures Chlorine Demand.

A reliable regression "isolates the non-collusive factors that affect price to determine whether, and to what extent, differences in prices between a benchmark period and the at-issue period may be attributed to alleged collusion." *Propane*, 2021 WL 5632089, at *11. If a regression fails to control for non-collusive factors, it will "capture the effects of *other* factors that influence price" and thereby misattribute them to "the effect of the alleged collusive conduct." *Id.*; *see* Federal Judicial Center, *Reference Manual on Scientific Evidence* 314 (3d ed. 2011) ("FJC Reference Manual") (explaining that if a regression model does not include proper explanatory variables to account for things like supply and demand, it "may cause an included variable to be credited with an effect that actually is caused by the excluded variable").

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████. Ex. 1, Johnson Rep. ¶¶ 173-174; *see Propane*, 2021 WL 5632089, at *11 (denying class certification when plaintiffs' experts' model was "notably bare with respect to variables that purport to control for all factors impacting price other than the alleged conduct"); *In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*, 140 F. Supp. 3d 339, 352-356 (D. Del. 2015) *aff'd in relevant part by* 679 F. App'x 135 (3d Cir. 2017) (criticizing a regression that "fails to account for additional factors" affecting price). ████████████████████

████████████████████████████████████████████████████████████████

████████████████████. *See supra* p. 6. ████████████████████████████ *Id.*

30

████████████████████████████████████████████████████

██████████████████████████████████████ Ex. 46, Macartney Decl. ¶¶ 41,

120. ████████████████████████████████████████████████

██████████████████████████████ Ex. 28, Macartney (I) Tr. 145:1-17.

But plastic and rubber production *do fail* to adequately account for chlorine demand.

Empirically, this can be seen in two ways. ████████████████████████████████

████████████████████████ Ex. 46, Macartney Decl., tbl. 38. ████████████

█████████████████████████████████████████████████████

██████████████████████████████ Ex. 1, Johnson Rep. ¶ 11. ████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.*[5]

█████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* ¶¶ 173-174

& Ex. 36. ██████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.*

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

---

[5] In his deposition, ████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████ *See id.* 160:4-6.

Ex. 11, Bowen Tr. 154:16-20. ██████████████████████████████████

██. Ex. 1, Johnson Rep. ¶ 118. ██████████████████████████████████

██████████████ Ex. 5, West Tr. 77:9-78:19; Ex. 15, Chen Tr. 215:20-216:21.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████x. 1, Johnson Rep. ¶¶ 173-174 & Ex. 36. ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ *Id.* ¶ 177.

(ii)   <u>The Overcharge Regression Mismeasures International<br>Demand and Suffers from Endogeneity Bias.</u>

████████████████████████████████████████████████████████████

████████████████████████████████████████████ *See* FJC Reference Manual

at 322; Ex. 1, Johnson Rep. ¶ 165 & nn.388-389.  I█████████████████████

████████████████████████████████████████████████████████████

█████████████████████. *Id.* ¶¶ 171-172 & n.399.  As Dr. Macartney explains in a paper he

co-authored, endogeneity "arises when explanatory variables are themselves affected by the

dependent variable, which can result in biased and inaccurate estimates of the effect of each

independent variable on the dependent variable."  Hausfeld, Rausser & Macartney, et al., *Antitrust*

*Class Proceedings – Then and Now*, *in The Law and Economics of Class Actions* 112 (2014)

("*Antitrust Class Proceedings*").  "Endogenous variables should not be included" in a regression

unless certain statistical measures are taken to "filter out the endogenous relationship."  *Id.* at 113.

As Dr. Macartney put it, since "the quantity of a product consumed is itself affected by

price," "if one includes the quantity of the product consumed as an attempt to control for demand,

32

this may lead to problems of endogeneity." *Id.* at 113 n.172.   Endogeneity in turn leads to "unreliability in the regression model in general." *Id; see* FJC Reference Manual at 322 (explaining that failure to account for the "complex relationship" between an endogenous variable and dependent variable can make a "regression coefficient on the variable of interest" unreliable).

Contrary to his obligation to "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," Dr. Macartney commits the very error he cautions against. *Coleman v. Dydula*, 139 F. Supp. 2d 388, 390 (W.D.N.Y. 2001) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). ████████████████████

████████████████████████████████████████████████

████████████████████████████████ Ex. 46, Macartney Decl. ¶ 121.

███████████████████████████████████ Ex. 1, Johnson

Rep. ¶¶ 171-172. ███████████████████████████████████

███████████████████████████████████████████ *Antitrust*

*Class Proceedings*, 128 n.172 ("quantity of a product consumed is itself affected by price" because "consumers buy more when the product is cheaper").

This fundamental error in Dr. Macartney's analysis makes his model incapable of reliably showing that distributors suffered any impact. ████████████████████████

████████████████ Ex. 1, Johnson Rep. ¶ 171. ███████████████████

████████████████████████████████████████████████[6]

*Id.* ¶¶ 166-170 & Exs. 34-35. ███████████████████

████████████████████████████████████████

---

[6] ████████████████████████████████████████████████

████████████████████████████████████████████████ Ex. 28, Macartney (I) Tr. 50:13-17.

33

███████████████████████████████████████████████

████████████████. *Id.* ¶ 168. ███████████████████

███████████████████████████████████████████████

████████████████████████████████ *Id.* ¶ 170. █████████████

███████████████████████████████████████████████

████████████████████████████████████ *Id.*[7]

      (iii)   The Overcharge Regression Mismeasures Domestic Demand and Domestic Supply of Caustic Soda.

In addition to failing to accurately measure chlorine demand and international demand,

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████ *see* Ex.

46, Macartney Decl. ¶ 40 & Fig. 6, ██████████████████████████

███████████████████████████████████████████████

█████████████████████████ Ex. 28, Macartney (I) Tr. 145:23-146:4.  Dr. Macartney did no

testing to assess whether these three measures accurately measure domestic caustic soda demand.

Dr. Macartney's assumption that the variables accurately measure domestic caustic soda

demand is unwarranted. ███████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████ Ex. 1, Johnson Rep.

¶¶ 91-95 & Exs. 17-19 (███████████████████████████████████

---

[7] ████████████████████████████████████████████████
██████████████████████████████████████████████ *See* Ex. 1,
Johnson Rep. ¶¶ 174-175 & Ex. 37.



████████████ Ex. 28, Macartney (I) Tr. 130:25-132:14, 134:18-135:9, 136:16-137:7; Ex. 47, Macartney 6; Ex. 63, Macartney 7; Ex. 48, Macartney 8. ████████████

████████████ Ex. 46, Macartney Decl. ¶ 17; *see* Ex. 1, Johnson Rep. ¶ 91.

Dr. Macartney's Overcharge Regression also fails to appropriately control for the domestic supply of caustic soda. ████████████

████████████ Ex. 46, Macartney Decl. ¶ 119. ████████████ *See id.* ¶119, n.233; Ex. 28, Macartney (I) Tr. 160:2-5. ████████████ Ex. 28, Macartney (I) Tr. 155:12-158:9. ████████████ *Id.* 157:2-11. Because these variables are inadequately measured, Dr. Macartney's Overcharge Regression is unreliable.

(iv)     The Overcharge Regression Generates False Positives.

A model can be unreliable and unable to satisfy a plaintiff's burden if it "generate[s] false positives." *Aluminum Warehousing*, 336 F.R.D. at 62. In the context of an overcharge regression model, a false positive occurs when the model "detects injury where none could exist." *In re Rail Freight Fuel Surcharge Antitrust Litig.* ("*Rail Freight I*"), 725 F.3d 244, 252 (D.C. Cir. 2013). In *Rail Freight I*, the defendants argued that the plaintiffs' expert's model was "defective" because it found that customers "bound by rates negotiated before any conspiratorial behavior was alleged to

have occurred" experienced an overcharge, which was logically impossible.  *Id.* (emphasis added).

The court explained that "[i]f accurate, [Defendants'] critique would shred the plaintiffs' case for

certification," then vacated the district court's decision to certify because of plaintiffs' expert's

model's "propensity toward false positives."  *Id.* at 255.

███████████████████████████████████████████████████████

████████████████████████████████████████  *Id.*; Ex. 1, Johnson Rep.

¶ 12; *see Comcast*, 569 U.S. at 37 (explaining that "a methodology that identifies damages that are

not the result of the wrong" cannot support class certification).  ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████  *See* Ex. 1, Johnson Rep. ¶¶ 186-187 & Ex. 40;

Ex. 28, Macartney (I) Tr. 90:15-19.  It thus—*like Rail Freight I*—necessarily "detects injury where

none could exist" for these customers.  *Rail Freight I*, 725 F.3d at 252.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████  *See* Ex. 1, Johnson Rep. ¶¶ 82-86 & Exs. 14-16.  █████████

███████████████████████████████████████████████████████

██████████████████████████████████████  *id.* ¶ 187,  ███████████████████

████████████████████████████████████████████████  *Id.* ¶ 186.

███████████████████████████████████████████████████████

█████████████████████████████████████████████  *Id.*

        (v)      <u>The Overcharge Regression Masks That Many Distributors</u>
                <u>Paid No Overcharge Even In Dr Macartney's Model.</u>

A model can also be "defective" and unable to provide common proof of class-wide injury if it "relies on average impact and thereby masks the existence of uninjured class members." *Aluminum Warehousing*, 336 F.R.D. at 62; *see In re Rail Freight Fuel Surcharge Antitrust Litig.* ("*Rail Freight III*"), 934 F.3d 619, 626-627 (D.C. Cir. 2019) (affirming denial of class certification when expert's model indicated 12.7% of the class experienced "no injury from any conspiracy").

Dr. Macartney's Overcharge Regression suffers from this flaw.



Ex. 1, Johnson Rep. ¶ 181.

. *Id.* ¶ 185; *see* Ex. 46, Macartney Decl. ¶ 128 & tbl. 38.

Second, relying on a single pooled overcharge estimate for *all* distributors masks the existence of uninjured distributors who, because they were uninjured, could not have passed on any overcharge to indirect purchasers.

. Ex. 1, Johnson Rep. ¶¶ 182-185.

*Id.* ¶ 182.

. *Id.* ¶ 185.

***By assuming a single distributor overcharge, Dr. Macartney's model conceals that more than half of the largest distributors are uninjured, underscoring his model's unreliability.***

Although the Second Circuit has not yet specified a minimum percentage of uninjured plaintiffs that would automatically bar class certification, many other courts have, and the percentage here far exceeds the minimum percentage generally accepted. *See Rail Freight II,* 292 F. Supp. 3d at 137 (collected cases and noting that "5% to 6% constitutes the outer limits of a *de minimis* number of uninjured class members").

(vi)   <u>The Overcharge Regression Does Not Account For Non-Conspiratorial Differences Between the Benchmark Period and Proposed Class Period.</u>

*See* Ex. 46, Macartney Decl. ¶ 118.

. Ex. 1, Johnson Rep. ¶ 178. This assumption can and should be tested using a standard econometric tool called a Chow test, since failing to account for differences between the periods unrelated to the alleged conspiracy can make a regression model unreliable. *In re Steel Antitrust Litig.*, No. 08 C 5214, 2015 WL 5304629, at *11 (N.D. Ill. Sept. 9, 2015) (denying class certification as to injury and damages where plaintiffs' expert's model failed a Chow test and was unreliable).

Ex. 1, Johnson Rep. ¶ 180.

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████ *Id.* ████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ *Id.*

        (vii)    <u>Dr. Macartney's Overcharge Regression Does Not Account For Regional Differences in Pricing.</u>

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████ Ex. 11, Bowen Tr. 252:1-19; *see* Ex.

2, Kreuz (II) Tr. 330:4-17.

█████████████████████████████████████████████

███████████████████████████████████████████████████ *See supra*

pp. 6-7. ████████████████████████████████

█████████████████████████████████ Ex. 28, Macartney (I) Tr. 300:5-8; 301:5-

8. █████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████ *See* Ex. 28, Macartney (I) Tr. 277:25-280:19, 281:6-11.

█████████████████████████████████████ Ex. 28, Macartney

(I) Tr. 280:20-281:11, and ignored supply and demand factors, like the availability of imports, that

played a significant role in some regions. *See supra* pp. 6-7. ████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████

(viii)  The Overcharge Regression Cannot Isolate the Impact of Any One of IPPs' Individual Theories of Antitrust Harm.

Finally, Dr. Macartney's model cannot be used to determine injuries or damages stemming from IPPs' particular theories of harm. ████████████████████████



████████████. *See* Dkt. 335, ¶¶ 3-4. ████████████████████

████ Ex. 28, Macartney (I) Tr. 343:18-350:25.

Dr. Macartney's inability to distinguish IPPs' theories of harm runs afoul of *Comcast*. There, the U.S. Supreme Court held that the district court properly rejected plaintiffs' expert's model that could only calculate damages "resulting from 'the alleged anticompetitive conduct as a whole'" and could not "attribute damages to any one particular theory of anticompetitive impact." *Comcast*, 569 U.S. at 36-37.  Similarly, because of Dr. Macartney's model's "inability to bridge the differences between supra-competitive prices in general and supra-competitive prices attributable to" IPPs' particular theory of harm, certification is improper. *Id.* at 38.

b.  Dr. Macartney's Market Characteristics Opinion Is Fatally Flawed.



████████████████████████ Mot. 17. ████████

████████████████████████ Ex.46, Macartney Decl. ¶¶ 26-31.

*First*, Dr. Macartney's supposed market characteristics assessment is insufficient by itself to show predominance as a matter of law.  *See Graphics*, 253 F.R.D. at 502-503 (holding that IPPs failed to show impact because, even if their economists' "description of the industry is accurate," relying on market characteristics "does not suffice on its own as a method of demonstrating impact to the specific direct purchasers at issue here through common proof").  Courts in this Circuit have declined to rely on analyses that create "debatable" inferences about the effect of disputed market characteristics.  As even the *Air Cargo* magistrate opinion that IPPs cite explained, "Because it only permits a debatable inference, however, the court agrees with the defendants that [plaintiffs' expert's] market analysis does not establish the fact of each plaintiff's impact 'on its own.'"  *In re Air Cargo Antitrust Litigation* ("*Air Cargo*"), 2014 WL 7882100, *49 (E.D.N.Y. Oct. 15, 2014).

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████.  *See Mot.* 16-17.  Those cases do not hold a court should presume any impact on downstream purchasers.  *DRAM* and *Rubber Chemicals* are also outdated, out-of-circuit district court opinions decided before the Supreme Court clarified in *Dukes* and *Comcast* that courts must conduct a "rigorous analysis" of expert opinions to see if impact can be shown by common evidence.  *In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 320 (N.D. Cal. 2014) ("standard under which expert opinion . . . is to be evaluated at class certification has been evolving" since *DRAM* "in light of the 'rigorous analysis' required under *Dukes* and *Comcast*").  "Under more recent case law . . . it is clear that courts must now hold expert testimony to a higher standard at the class certification stage."  *Air Cargo*, 2014 WL 7882100, at *42-41.  And *Urethane* is an out-of-circuit opinion applying abuse of discretion review to a district court's decision based on the particular facts of that case.  None control here.

**Second**, on its own terms, Dr. Macartney's analysis is inaccurate and cannot be relied upon as it ignores key characteristics of the industry. ██████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████ *See supra* p. 39; Ex. 1, Johnson Rep. ¶ 43, 75-78; Ex. 6, Sams Tr. 140:8-17; Ex. 35, UNIV-CS-SUB-0187969. ████████████████████████ Ex. 1, Johnson Rep. ¶¶ 82-86. ██████████████████████████████████████████

██████████████████████. *Id.* ¶¶ 143-146 & Ex. 27, ¶¶ 160-162 & Exs. 32-33. ████████

██████████████████████████████████████████████████████

██████████████████████████████████████ *See supra* pp. 11, 15.

**Third**, ██████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████. Mot. 17. ████████████████████████████████

██████████████████████████████████ Ex. 1, Johnson Rep. ¶¶ 156-162 & Exs. 30-33; *see infra* Section I.C.2.d (████████████████████████████

██████). ██████████████████████████████████████████████

██████████████████████████████ *See, e.g.*, Ex. 6, Sams Tr. 297:11-298:10.  As courts have recognized, "antitrust claims predicated on negotiated transactions, as opposed to purchases based on list prices, often entail consideration of individualized proof of impact."  *In re Flash Memory Antitrust Litig.* ("*Flash Memory*"), No. C 07-0086 SBA, 2010 WL 2332081, at *8 (N.D. Cal. June 9, 2010); *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig.* ("*New Motor Vehicles*"), 522 F.3d 6, 29 (1st Cir. 2008) (vacating certification of IPP class because "[t]oo

many factors play into an individual negotiation to allow an assumption—at least without further theoretical development—that any price increase or decrease will always have the same magnitude of effect on the final price paid" by individual consumers).

**Fourth**, ███████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ Ex. 1, Johnson Rep. ¶¶ 69-74. ███████████

███████████████████████████ *Id.*; *see Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 139 (2d Cir. 2013) ("[E]vidence that the defendant had a motive to enter into a[n antitrust] conspiracy . . . may indicate simply that the defendants operate in an oligopolistic market, that is, may simply restate the (legally insufficient) fact that market behavior is interdependent and characterized by conscious parallelism." (alteration in original)). IPPs cannot rely on Dr. Macartney's market characteristics assessment to show common impact.

      c.     Dr. Macartney's Price Correlation Analysis Is Fatally Flawed.

████████████████████████████████████████████████████

███████████████████ Mot. 18, is misplaced because Dr. Macartney's analysis is fundamentally flawed. ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████ *See* Ex. 1, Johnson Rep. ¶ 148 & Ex. 28. ███████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████ *See id.* ¶¶ 150-151.

████████████████████████████████████████████████████

████████████████████████████████████████ *Id.* ¶ 150. ████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████ *Id.* ¶¶ 152-162 & Exs. 30-33.  Thus, Dr.

Macartney's pricing analysis does not offer a reliable means to show common impact.  *See LIBOR*,

299 F. Supp. 3d at 493-494 (finding correlation not probative and denying certification).

> d.   <u>Varying Contracts and Negotiations Prevent IPPs from Showing
> Distributors Experienced an Overcharge on a Class-wide Basis.</u>

Without Dr. Macartney's flawed Overcharge Regression and other unreliable opinions,

IPPs have no way to show any overcharge to distributors on a class-wide basis.  ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████   *See supra* pp. 10-14.  Determining whether a distributor was injured, the

first part of IPPs' burden, requires an individualized inquiry into their contracts and negotiations.

*First*, some contracts, including many pre-dating the proposed class period, were designed

to prevent unilateral price changes via price increase announcements.  ████████████████████

███████████████████████████████████████████████.  Ex. 1,

Johnson Rep., App. G.  ███████████████████████████████████████  *Id.*

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████  *Id.*; Ex. 14, ST0000220011

(Shintech-Hawkins).  ████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████ Ex. 7, Green Tr. 193:24-194:3; Ex. 73, Johnson Rep., App. G.  To see if a price increase announcement affected price would require linking a transaction to its governing contract and pricing mechanism, an individualized inquiry.

**Second**, even contracts that allow for negotiated pricing or spot purchases create variation in pricing outcomes.  The "individualized nature of proof of impact" is "inherent in cases such as the present where negotiated purchases are involved." *Flash Memory*, 2010 WL 2332081, at *8 (collecting cases and denying class certification).  ████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ Ex. 6, Sams Tr. 189:7-12, 63:5-8 (████████████████████████████████████

█████████████████████████, 43:22-44:5  (███████████████████

██████████████████████████████████████████████████

███████████████████████████ ███████████████████████████

███████████████████████████████ *See supra* pp. 18.

**Third**, price increase announcements cannot be used to raise prices on customers whose pricing is determined by an index since price increase announcements do not directly affect prices determined by index-based formulas in customer contracts.  ████████████████████

████████████████████████ *See* Ex. 2, Kreuz (II) Tr. 289:7-20.

     ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████  Dkt. 475-2, pp. 17-18.  But that argument assumes that all or nearly all prices reported and then incorporated into an index reflect inflation due to the alleged conspiracy.  T███████

███████████████████████████ *See*  Ex. 45, Kreuz (I)  Ex. 2554  at

WL_0000549997 (███████████████████████████████████████

███████████████████████████████████████).  Moreover,

Dr. Macartney's model does not establish that each distributor experienced an overcharge on each

transaction.  If a customer avoided a price increase, which the data shows happened, that reported

price would not cause inflation in an index.

█████████████████████████████████████████████████ Ex. 24,

Kreuz (I) Tr. 57:14-58:16 ; Ex. 9, Kreuz 2.  If a non-defendant overstated a price, any resulting

index inflation would not be from the alleged conspiracy.

To prove that price increase announcements actually resulted in the inflation of each of the

hundreds of published index prices during the proposed class period would require IPPs to (i)

review each customer's contract; (ii) isolate the pricing mechanism governing the transaction; (iii)

determine which published index is relevant to the customer's pricing formula; (iv) determine what

prices were reported to the applicable index publication at the time, and by whom; (v) evaluate

whether the reported prices were reported accurately; (vi) determine whether any of the reported

prices were inflated due to the conspiracy; (vii) confirm that the index publisher in fact relied on

reported inflated price(s) in its calculation of the published index price that applies to the

transaction; (viii) determine if that reliance caused inflation of a particular published index price

in a given month; and (ix) determine whether that inflation actually caused an increase in price for

the customer at issue, which again depends on the customer's contract.

This inquiry would require an even more complex process to assess *how much* an index

was inflated due to a conspiracy, i.e., damages.  IPPs and their expert have not done this and have

no common method to trace price increase announcements to injury of index-based customers.

3.      IPPs Cannot Show Pass-Through from Distributors to Purported Class Members by Common Proof.

IPPs also fail at the second step of their double-burden: establishing pass-through.  As discussed below, IPPs have no reliable means of showing on a class-wide basis that any alleged overcharge was passed on to all, or substantially all, of the members of the proposed class.

a.      Dr. Macartney's Pass-Through Model is Fatally Flawed.

To meet their burden at class certification, IPPs must establish that common evidence can reliably show that any impact of the alleged conspiracy was in fact passed through to purported class members.  *See, e.g.*, *Digital*, 321 F.R.D. at 94 (denying IPP class certification when "the evidence does not support [IPPs' expert's] uniform pass-through rate [and] his model fails to provide a common methodology for assessing either injury or damages such that Plaintiffs can show that class-wide issues predominate over individual issues"); *In re Processed Egg Prods. Antitrust Litig.*  ("*Eggs*"), 312 F.R.D. 124, 160-161 (E.D. Pa. 2015).

A properly constructed empirical pass-through analysis "requires estimation of the relationship between wholesale price changes and retail price changes across time and location," and "the only way to get to the bottom of whether or not there was pass-on . . . is to analyze . . . price increase by price increase, year by year, exactly what was happening at the retail level."  *In re Fresh Del Monte Pineapples Antitrust Litig.*, No. 1:04-MD-1628RMB, 2008 WL 5661873, at *9 (S.D.N.Y. Feb. 20, 2008).

Pass-through methodologies based on sales of only a *subset* of distributors that "use . . . averaging and sampling to assume a singular pass-through rate by all intermediaries, without underlying evidentiary support, can mask individualized questions that otherwise predominate" and have been "consistently rejected" by courts.  *Propane*, 2021 WL 5632089, at *12-13 (collecting cases and denying class certification on predominance grounds).



Ex. 46, Macartney Decl. ¶¶ 129-133.

*See* Ex. 46, Macartney Decl. ¶ 134 & tbl. 42; Ex. 1, Johnson Rep. ¶ 188; Ex. 28, Macartney (I) Tr. 294:20-297:3.

*Id.*

As described below, Dr. Macartney's model is fundamentally unreliable and must be rejected.

(i)    The Pass-Through Model Ignores 98% of Distributors That Bought Caustic Soda from Defendants and 62% of Defendants' Sales to Distributors.

*First*, 

*See* Ex. 46, Macartney Decl. ¶ 130; Ex. 28, Macartney (I) Tr. 174:21-177:4.

Ex. 1, Johnson Rep. ¶¶ 202-203.   Dr. Macartney's failure to account for other distributors undermines the reliability of his Pass-Through Model.

48

Other courts have declined to certify IPP classes where the pass-through model is based on data from relatively few distributors.  In *Propane*, the court denied class certification because the plaintiffs' expert's pass-through model was based on "sales to only three retailers."  2021 WL 5632089, at *12.  The expert assumed, without justification, that "thousands of retailers . . . passed on an overcharge . . . at the same rate" as the three retailers in his model, which was an unjustified "inferential leap."  *Id.*  In *Eggs*, the court declined to certify a class where "[t]he pass-through model improperly assumes, without adequate support, that because one retailer passed through the overcharge at a certain rate . . . all retailers *nationwide* shared that overcharge rate or, at least, passed along some positive overcharge."  312 F.R.D. at 160.  ███████████████████

████████████████████████████████████████████████████████  *In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*, 679 F. App'x 135, 140 (3d Cir. 2017) (affirming denial of certification when IPPs' expert's pass-through analysis was based on a fraction of sales).

> (ii)  Dr. Macartney's Pass-Through Model Uses Average Data, Which Masks Individualized Issues.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████.  As one court explained:

> [A]veraging often skews data: if Microsoft-founder Bill Gates and nine monks are together in a room, it is accurate to say that on average the people in the room are extremely well-to-do, but this kind of aggregate analysis obscures the fact that 90% of the people in the room have taken a vow of poverty.[8]

"Averages and aggregations" are only permissible if "the court is convinced that [they] are not masking individualized issues that are likely to predominate should the class action move forward."  *Eggs*, 312 F.R.D. at 159.  If, without justification, regressions rely on data that is

---

[8] *In re Intel Corp. Microprocessor Antitrust Litig.* ("*Intel*"), No. CA 05-485-JJF, 2010 WL 8591815, at *47 (D. Del. July 28, 2010) *recommendation rejected on other grounds*, *In re Intel Corp. Microprocessor Antitrust Litig.*, 2014 WL 6601941 & App'x C, at *18 (D. Del. Aug. 6, 2014).

"averaged at such a high level that they cannot accurately account for whether the individualized differences in geography, price strategy, retailer, and other variables affect the pass-through rate," class certification should be denied.  *Id.* at 160; *Propane*, 2021 WL 5632089, at *12 ("[c]ourts have consistently rejected . . . pass-through methodologies . . . [that use] averaging and sampling to assume a singular pass-through rate by all intermediaries" as doing so "can mask individualized questions that otherwise predominate"); *Flash Memory*, 2010 WL 2332081, at *12 (finding pass-through regressions' "reliability [to be] questionable due to their averaging of . . . prices").



Ex. 28, Macartney (I) Tr. 20:9-21:24; 23:11-25:2.

*See* Ex. 46, Macartney Decl., tbl 42;

Ex. 1, Johnson Rep. ¶ 218 (

. Ex. 28, Macartney (I) Tr. 286:1-10; Ex. 1, Johnson Rep. ¶ 188.

Ex. 1, Johnson Rep. ¶ 188.

This is not a mere hypothetical.

Ex. 1, Johnson Rep. ¶ 55 n.114. ██████████████████████████████████

█████████████████████████████████████████████████████████████████████

███████████████████████████████████ *Id.*

   ████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

*See id.* ████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

████████████ Ex. 1, Johnson Rep. ¶¶ 191-193.

     ████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ *Propane*, 2021 WL 5632089, at *12.

   *First*, ██████████████████████████████████████████████████████

████████████████████████████████ *See* Ex. 19, Gable Tr. 209:5-22 (████

██████████████████████████████████████████); Ex. 6, Sams Tr. 41:5-

18; 56:6-19 (████████████████████████████████████); Ex. 1, Johnson Rep. ¶¶ 207-

209 & Ex. 46. ████████████████████████████████████████████████████

████████████████████████████████████████ *Id.* ¶ 209. ████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

████████ *Id.*, Ex. 46.  In *Eggs*, the court denied class certification when "pass-through rates were

far more varied and localized than [IPPs' expert's] model demonstrate[d]."  312 F.R.D. at 158.

**Second**, █████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ *See supra* pp. 14-15 (████████████); Ex. 1,

Johnson Rep. ¶ 51 (distributor markup can vary with market conditions) & Exs. 32-33 (████

███████████████████████████████████████████); *see*

*also Cement*, 278 F.R.D. at 685 (denying class certification when "the record evidence actually

indicates that direct purchasers did *not* consistently pass on increases . . . to indirect purchasers").

**Third**, ████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ *See supra* pp. 14-16; Ex. 1, Johnson Rep., Ex. 32

& 33 (█████████████████████████████████████████

████████████████). In *New Motor Vehicles*, the First Circuit vacated certification of an IPP

class when "[t]oo many factors play into an individual negotiation to allow an assumption—at

least without further theoretical development—that any price increase or decrease will always have

the same magnitude of effect on the final price paid" by individual consumers. 522 F.3d at 29.

Furthermore, ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████ *See* Ex. 1, Johnson Rep. ¶¶ 205-206 &

Ex. 45. ██████████████████████████████████████

████████████████████████████████ *Id.* ¶ 206.  Similarly, in *In re Methionine*

*Antitrust Litigation*, the court declined to certify a class when "the evidence demonstrates that

resellers do not act uniformly and . . . there is not a single pass-through rate for all methionine resellers."  204 F.R.D. 161, 165 (N.D. Cal. 2001).

(iii)   <u>The Pass-Through Model Cannot Trace Indirect Purchasers'<br>Purchases Back to a Defendant.</u>

Finally, "[d]etermining the pass-through for an individual class member" requires "tracing the overcharge through the various intermediaries that lie between the particular Defendant and the member." *Flash Memory*, 2010 WL 2332081, at *11.  If "tracing the alleged overcharges" from manufacturers to distributors to indirect purchasers "presents individualized issues which would dominate," then these individualized issues "preclude certification." *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1994 WL 663590, at *7 (N.D. Ill. Nov. 18, 1994).  The tracing exercise is important because, if indirect purchasers cannot trace the caustic soda they purchased through the distribution chain back to a Defendant, no overcharge was passed through to them and they are not injured.  *Cf. In re Polyurethane Foam Antitrust Litig.* ("*Foam*"), No. 1:10 MD 2196, 2014 WL 6461355, at *66-67 (N.D. Ohio Nov. 17, 2014) (explaining that Defendants do not owe damages to IPPs who cannot trace their purchases back to Defendants); *Eggs*, 312 F.R.D. at 149 (holding that because "Plaintiffs have not proposed any method for distinguishing eggs sold by Defendants from eggs sold by non-conspirators, the Court would need to undertake an individualized inquiry into each purchase to determine whether the overcharge would be recoverable. Therefore, individualized issues would predominate over common ones").

█████████████████████████████████████████████

█████████████████████████████████████████████

█████     *See* Ex. 46, Macartney Decl. ¶ 134.   ████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

53

Importantly, matching indirect purchases to Defendant sales is not possible. ██████

████████████████████████████████████████████████████████████████. Ex. 1,

Johnson Rep. ¶¶ 193, 201. ██████████████████████████████████████████████

████████████████████████████████████ *See supra* pp. 12-14; Ex. 19, Gable

Tr. 51:1-6. ████████████████████████████████████████████████████████████.

*See id.* ██████████████████████████████████████████████████████████████

██████████████████ Ex. 28, Macartney (I) Tr. 297:12-298:7. ██████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████ *See supra* pp. 12-14.  And storage time varied.  *Id.*

Even setting aside these tracing issues, ██████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████ Ex. 1, Johnson Rep. ¶ 191.   Reality is more complex. ██████

██████████████████████████████████████████████████████████████████████████

████████████████████████████ *See id.* ¶ 194 & Ex. 41. ██████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████ *See id.* ████████████████████████████

██████████████████████████████████ *See supra* p. 13.

Due to its construction, ██████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████ *Id.* ¶ 195. ████████████████████████████████████████

██████████████████████████████████████████████████████████████████████ *See*

*id.* █████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████ *In re Flash Memory*, 2010 WL 2332081, at *11.

        b.    <u>IPPs Cannot Show Pass-Through on a Class-wide Basis Due to Varying Markups, Contracts, and Negotiation.</u>

Without Dr. Macartney's Pass-Through Model, IPPs have no way to establish that any alleged overcharge was "passed" through to purported class members, ███████████████ ███████████████████████████████████████████████. *See supra* pp. 14-15. ████████████████████████████████████████████████████████████

████████ *See id.*

Furthermore, ██████████████████████████████████████████████████ ██████████████████ Ex. 1, Johnson Rep. ¶ 51; *see, e.g.*, Ex. 62, Finch 17 (████████ ██████████); Ex. 55, Finch 23 (same); Ex. 31, Tybor Tr. 199:22-200:5; Ex. 42, BRENN-CS-SUB-0053241 (██████████████████████████████████); Ex. 51, BRENN-CS-SUB-0013842 (████████████████████████████████████); Ex. 29, IPP Brenntag 5 (██████████████████████████████). ██████████ ████████████████████████████████████████████████████████████ ██████████████████████ *See* Ex. 31, Tybor Tr. 236:4-7 (obtaining a price reduction from a supplier), 290:13-19 (same); Ex. 20, Hall Tr. 208:15-22 (same). ████████████ ████████████████████████████████████████████████████████████ ██████████████████ *See supra* pp. 12, 15-16. ██████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████

4.      Calculating Damages for Each Purported Member of the State Antitrust Class Would Require an Individualized Inquiry.

IPPs have also failed to show that they have a reliable method for calculating damages on a class-wide basis.  This failure, coupled with the numerous other individualized issues presented by IPPs' proposed class, makes certification improper.  *See Royal*, 2018 WL 1750595, at *15 (denying motion to certify class, in part, due to plaintiffs' "failure to establish that damages may be determined on a class-wide basis"); *Sicav v. Wang*, No. 12 Civ. 6682 (PAE), 2015 WL 268855, at *6 (S.D.N.Y. Jan. 21, 2015) (denying class certification where plaintiffs failed to adequately explain "how damages would be calculated as to any individual purchaser").



*Royal*, 2018 WL 1750595, at *18.

Ex. 28, Macartney (I) Tr. 183:2-4.

Ex. 28, Macartney (I) Tr. 174:4-20,

x. 1, Johnson Rep. App. E.  Indeed, "[c]ourts have consistently rejected such pass-through methodologies because

their use of averaging and sampling to assume a singular pass-through rate by all intermediaries, without underlying evidentiary support, can mask individualized questions that otherwise predominate." *Propane*, 2021 WL 5632089, at *12 (rejecting indirect purchaser plaintiffs' uniform aggregated pass-through rate "based on a study of sales to only three retailers"); *Digital*, 321 F.R.D. at 94 (denying class certification where "the evidence does not support uniform pass-through rate, his model fails to provide a common methodology for assessing either injury or damage such that Plaintiffs can show that class-wide issues predominate over individual issues").



*See* Ex. 1, Johnson Rep. ¶¶ 205, 208 & Ex. 46.

*Id.*; Ex. 46, Macartney Decl. ¶¶ 135-137.

*See* Ex. 46, Macartney Decl. ¶ 136.

. *Id.* ¶ 137.

Ex. 1, Johnson Rep., Ex. 47:



███████████, his

decision to "ignore[] a substantial portion of the complex distribution scheme" is "fatal to IPPs bid

for certification here."  *In re Domestic Drywall Antitrust Litig.* ("*Drywall*"), No. 13-MD-2437,

2017 WL 3700999, at *13 (E.D. Pa. Aug. 24, 2017).

███████████████

███████████████

███████████████

██████████  *See* Dkt. No. 514-2, App. E, 44-53; *Drywall*, 2017 WL 3700999, at *14

("Though . . . individual damages calculations are not required at the class certification stage, the

IPPs bear the burden to prove, by a preponderance of the evidence, that they will be able to come

up with a workable damages model at trial"). ██████████

█████████████  *See* Mot. 20; *Hickory Sec.*

*Ltd. v. Republic of Argentina*, 493 F. App'x 156, 160 (2d Cir. 2012) (accepting methodology but

rejecting aggregate class-wide damages calculation that did not include method for excluding

transactions that did not meet the class definition); *In re Air Cargo*, 2014 WL 7882100, at *61

("the plaintiffs plan to establish damages by multiplying the prices charged for each class

member's inbound and outbound shipments by the corresponding average overcharge"); *In re*

*Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 688 (N.D. Ga. 2016) (calculating

"individual damages as 'the sum of any bag fees paid to Defendants during the class period'").

IPPs have no plan for damages calculations because they cannot figure out which particular transaction(s) by any class members are at issue.  If "Indirect Purchasers cannot trace Defendant['s product] in this manner, then a claim cannot be made and Defendants do not owe any damages as to the failed claimant."  *Foam*, 2014 WL 6461355, at *67 (holding there is "an irreducible requirement that a claimant establish standing to recover for any overcharge"); *cf. Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 115-117 (2d Cir. 2021).

Here, as in *Foam*, ███████████████████████████████████████

██████████████████████████████████████████████████████████████

*See supra* p. 21, 53-55.  But unlike in *Foam*, I██████████████████████████████

██████████████████████████████████████████████████████████████

████████  Ex. 32, Macartney (II) Tr. 371:5-12 (████████████████████████████

██████████████████████████████████████████████.  Nor could they.  As explained in Section I.C.3.a.iii, ██████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████  Showing individual damages in such circumstances—if calculable at all—would require individual calculations that "militate[] against certification."  *Royal*, 2018 WL 1750595, at *15.

This is not a hypothetical problem affecting a *de minimis* number of indirect purchasers.

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████  *See supra* pp. 6-7; App. B.  ████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████ Ex. 46, Macartney Decl. ¶¶ 135-137.

     5.    <u>IPPs' Allegation that Distributors Facilitated Defendants' Alleged Conspiracy Is Not Subject to Class-Wide Proof.</u>

   In their class certification motion, ████████████████████████████

████████████████████████. Mot. 3-4. █████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████ *ee* Dkt. 335

¶ 34; Fed. R. Civ. P. 37(c).  Even if IPPs intend to accuse these third parties of facilitating a conspiracy without naming them as co-conspirators, IPPs do not explain how they will prove this allegation, or identify which distributor(s) facilitated the conspiracy, through class-wide evidence.

   Class certification is inappropriate when proof of a horizontal conspiracy, such as the one alleged here, will be "overwhelmed by the separate proof required to establish that each individual independent" distributor participated "in an individual vertical conspiracy" with Defendants, such as IPPs now assert.  *In re Fine Paper Antitrust Litig.* 685 F.2d 810, 822 (3d Cir. 1982) (affirming denial of class certification).  IPPs have not identified which distributor(s) participated, much less any common means of proving their conduct.  *See In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 691 F.2d 1335, 1343 (9th Cir. 1982) (affirming denial of class certification where plaintiffs lacked "common evidence of standard contracts that demonstrate control over the retail dealers' pricing decisions or some other readily demonstrable and equally convincing evidence"); *Kendler v. Federated Dep't Stores, Inc.*, 88 F.R.D. 688, 692-693 (S.D.N.Y. 1981) (finding no predominance and denying certification since plaintiffs had to prove thousands of vertical conspiracies between defendant and its suppliers).

Accusing distributors of facilitating the alleged conspiracy also undercuts the reliability of IPPs' expert's Overcharge Regression and Pass-Through Model. ████████████████████ ████████████████████████████████████████████████ Ex. 28, Macartney (I) Tr. 49:14-15. ████████████████████████████████████████████ ███████████████████ Macartney (I) Tr. 49:7-10, ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ *In re Pharmacy Benefit Managers Antitrust Litig.*, No. CV 03-4730, 2017 WL 275398, at *19, *31 (E.D. Pa. Jan. 18, 2017) (denying certification where plaintiffs asserted "two distinct antitrust conspiracies" and their experts "fail [ed] to propose a model capable of distinguishing the damages that are attributable to each of the two theories of liability"). Th████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████. Ex. 46, Macartney Decl. ¶¶ 127 & n.236, 133.

D.   IPPs Cannot Establish Superiority for the State Antitrust Class as Required by Rule 23(b)(3).

IPPs must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[T]he most critical issue in determining whether a class action is a superior means of adjudication is manageability." *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 147 (S.D.N.Y. 2015) (denying certification), *aff'd*, 656 F. App'x 555 (2d Cir. 2016). IPPs cannot satisfy this standard and their motion should be denied.

"Although 'the specter of having to apply different substantive laws does not necessarily warrant refusing to certify a class,' where, as here, the variations in state law present 'insuperable obstacles' to determining liability based on common proof, such variations defeat the

predominance of common issues and the superiority of trying the case as a class action." *Johnson*, 780 F.3d at 148; *see In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law," and certification "would not be . . . appropriate").

████████████████████████████████████████████

████████████████ Mot. 2.  That is unmanageable.  For example, "the requisite proof of injury" under Florida's, Michigan's, and Minnesota's statutes "require a somewhat stronger and more precise showing of individual impact" than do the laws of other states.  *Digital*, 321 F.R.D. at 99 (denying class certification for indirect purchasers with antitrust claims under nine state laws).

Defendants' affirmative defenses create the same problems.  In Florida, for example, "the defense of unclean hands turns in part on whether the 'unclean' conduct was generally connected to the matter in litigation and injured the adverse party," whereas "California, by contrast, applies a multi-factor test that looks at, among other things, the nature of the misconduct and the relationship of the misconduct to the claimed injuries." *Id.*  In South Dakota, "the defense turns on whether Plaintiffs 'acted fairly and in good faith as to the controversy in issue.'" *Id.*  Instructing the jury on these and other distinctions would be nearly impossible.  *See Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999) ("Those states that permit a defense of unclean hands vary significantly in the requirements necessary to establish the defense.") (citations omitted).

Courts have also declined to certify unmanageable classes because the state antitrust laws varied "as to the elements of the claim, who has standing, the procedural devices available to plaintiffs, the amount of damages recoverable, the requisite proof of damages, available defenses and whether the statutes apply only to conduct that is predominantly intrastate as opposed to interstate" because of manageability issues.  *Intel*, 2010 WL 8591815, at *57.

██████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████ Mot. 22.  That is not enough—Arizona courts, for example, do not "rigidly follow federal precedent on every issue of antitrust law," *Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99, 102, 106 (Ariz. 2003)—and, regardless, IPPs' conclusory assertion fails to account for differences *between* the laws.  *See Digital*, 321 F.R.D. at 99 (rejecting argument that "the state competition laws are to be construed in harmony with federal antitrust statutes" where "there are numerous differences between and among the states' laws").

        E.      The State Antitrust Class Is Not Ascertainable.

The ascertainability requirement demands "that the members of a proposed class be readily identifiable."  *Petrobras*, 862 F.3d 250.  While in *Petrobras*, the Second Circuit declined to adopt an "administrative feasibility requirement," decisions approved of by the opinion and district courts since have continued to reject class definitions that would require "a mini-hearing" to determine class membership for each individual.  *See id.* 267 (citing, with approval, *Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006), which declined to certify a class seeking recovery of artworks traceable to an estate where movants could not identify artworks or transferors)); *Wang v. Tesla, Inc.*, 338 F.R.D. 428, 440 (E.D.N.Y. 2021) (denying certification of class of persons in certain collisions where membership assessments varied on an accident-by-accident basis)

This is precisely the sort of case that requires a mini-hearing on class membership. As explained in Section I.C.1, ███████████████████████████████████ ████████████████████████████████████████████████ This case is therefore distinguishable from post-*Petrobras* cases that have found classes ascertainable where membership could be determined through a defendant's records or class member affidavit.

It is "practically impossible to trace purchases and sales" necessary to establish class membership at all, or at least without "the kind of individualized mini-hearings that run contrary to the principle of ascertainability." *Brecher v. Republic of Argentina*, 806 F.3d 22, 26 (2d Cir. 2015).

II.     The Colorado Consumer Protection Class Should Not Be Certified.

    A.     IPPs May Not Expand Their Proposed Class Definition to Include Residential End-Users.

For the same reasons as stated in Section I.A, IPPs may not expand the proposed class definition for the Colorado Consumer Protection Class to include residential end-users.

    B.     The Colorado Class Consumer Protection Class Cannot Be Certified as a Damages Class.

The operative version of the Colorado Consumer Protection Act ("CCPA") does not permit IPPs to maintain a damages action. *See* Colo. Rev. Stat. § 6-1-101 et seq. Prior to an amendment made effective on August 10, 2022, class action plaintiffs could not recover actual damages under the CCPA. *See id.* § 6-1-113(2); *Vandiver v. MG Billing Ltd.*, 2022 WL 4938472, at *3 (D. Colo. Oct. 4, 2022) (collecting cases).[9] Because there is no legislative intent for the August 2022 amendment to the CCPA to apply retroactively, the amendment does not govern IPPs' claims under the CPPA. *City of Colorado Springs v. Powell*, 156 P.3d 461, 464 (Colo. 2007) ("Absent legislative intent to the contrary, we presume a statute operates prospectively.").

The IPPs' Amended Complaint was filed on August 23, 2021, a year before the amendment. Thus, the Colorado Consumer Protection Class, which seeks damages, cannot be certified under the CCPA.

---

[9] Because the CCPA does not bar class actions but rather limits the scope of remedies available, "[n]umerous courts have concluded the CCPA precludes private class-wide claims," even after the Supreme Court's decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 396 (2010). *See Vandiver*, 2022 WL 4938472, at *3; *Simmons v. Author Sols. LLC*, No. 13CV2801 DLC, 2015 WL 4002243, at *6, n.10 (S.D.N.Y. July 1, 2015) (finding CCPA's damages bar to be enforceable).

C.     <u>IPPs Cannot Satisfy the Requirements of Rule 23(a) for the Colorado Consumer Protection Class.</u>

1.     <u>Named Plaintiffs Do Not Adequately Serve the Interests of the Proposed Colorado Consumer Protection Class.</u>

Named Plaintiffs are not members of the Colorado Consumer Protection Class and so cannot serve as class representatives for that class.  They are otherwise inadequate representatives and have atypical claims for the reasons stated in Section I.B.

a.     <u>Named Plaintiffs Are Not Members of the Colorado Consumer Protection Class and Lack Standing to Bring Those Claims.</u>

████████████████████████████████████████████████

████████████████████████████████  *See* App. B; Ex. 31, Tybor Tr. 156:5-10 (████████████████████████████████████████████ ████████); Ex. 12, S. Jagielo Tr. 50:5-21 (████████████████████████████ ██████████████████████).  As such, they cannot be class representatives for that class and lack standing to bring the applicable claims.  *See Falcon*, 457 U.S. at 156 (1982) ("a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members"); *Cordes*, 502 F.3d at 99-101 & n.7 ("The rule that 'a class representative must be part of the class' is one of prudential standing."); *King Cnty., Wash. v. IKB Deutsche Industriebank AG*, No. 09 CIV. 8387 (SAS), 2010 WL 2010943, at *1 & n.4 (S.D.N.Y. May 18, 2010) ("at least one *named* plaintiff must have standing to pursue each claim alleged") (emphasis in original) (collecting cases).

b.     <u>Named Plaintiffs Are Otherwise Inadequate Class Representatives.</u>

For the same reasons described in Section I.B.1 and Section 1.B.2, Named Plaintiffs are inadequate representatives of the Colorado Consumer Protection class.

2.      Named Plaintiffs' Claims Are Not Typical of the Colorado Consumer Protection Class.

As discussed above, Named Plaintiffs did not purchase caustic soda in Colorado, so they are not members of the class.  Their claim would be atypical of every member of the class and would involve numerous defenses, including their lack of standing to bring the claim, precluding typicality under Rule 23(a)(3).  *See DiDonato v. GC Servs. Ltd. P'ship*, No. 20 CIV. 2154 (LGS), 2021 WL 4219504, at *4-5 (S.D.N.Y. Sept. 16, 2021) (denying class certification on typicality grounds because a "named plaintiff must be a member of the class he represents" and there were "serious questions" whether the plaintiff was a class member); *see also supra* Section I.B.3.

D.      IPPs Cannot Establish Common Issues Predominate as Required by Rule 23(b)(3) For the Proposed Class.

IPPs cannot meet the predominance requirement for the Colorado Consumer Protection Class because class membership requires an individual inquiry and IPPs cannot demonstrate a CCPA violation with common proof.  Additionally, IPPs cannot show common impact or damages by common proof for the reasons explained in Sections I.C.2 to I.C.4.

1.      Determining Membership in the Colorado Consumer Protection Class Requires an Individualized Inquiry.

IPPs' proposed Colorado Consumer Protection Class suffers from the same lack of class-wide proof capable of establishing membership that dooms their proposed State Antitrust Class, as explained in Section I.C.1.

2.      IPPs Cannot Establish the Elements of the CCPA on a Class-Wide Basis.

IPPs fail to put forward any reliable means of establishing a violation of the CCPA, or their entitlement to recover for such a violation, on a class-wide basis.  To prove a private cause of action under the CCPA, a plaintiff must show:

(1) that the defendant engaged in an unfair or deceptive trade practice;

(2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;
(3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;
(4) that the plaintiff suffered injury in fact to a legally protected interest; and
(5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.* ("*Rhino*"), 62 P.3d 142, 146-47 (Colo. 2003).

███████████████████████████████████████████████████████████

███████████████████████████████  Mot. 15.  This contention fails.  The proof required to show a violation of the CPPA goes beyond the proof required for an antitrust violation.  A plaintiff must show, *inter alia*, that a defendant's unfair or deceptive practice "significantly impacts the public as actual or potential consumers of the defendant's goods." *Rhino*, 62 P.3d at 146-47 (emphasis added).   To determine if conduct "significantly impacts the public," courts must consider "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Id.* at 149.  IPPs' obligation to show public impact thus requires them to put forward evidence beyond what is required to establish an unlawful restraint of trade.  Furthermore, to the extent IPPs assert that distributors facilitated the alleged conspiracy, they cannot prove that theory by common evidence, as explained in Section I.C.5.

> 3.   IPPs Cannot Establish Injury and Causation on a Class-wide Basis for the Colorado Consumer Protection Class.

For the same reasons as stated in Section I.C.2 and I.C.3, IPPs cannot establish injury and causation on a class-wide basis for the Colorado Consumer Protection Class.  Courts have recognized that individual inquiries predominate on proving injury and causation for the CCPA because courts must "ascertain the extent of [each] class member's injury and whether it was

causally related to a CCPA violation." *Kreger v. Gen. Steel Corp.*, No. CIV. 07-575, 2010 WL 2902773, at *17-19 (E.D. La. July 19, 2010) (denying class certification, in part, due to individualized inquiry necessary to establish violation of the CCPA).

    4.    <u>Calculating Damages for Each Purported Member of the Colorado Consumer Protection Class Would Require an Individualized Inquiry.</u>

IPPs contend that damages for the Colorado Consumer Protection Class may be calculated in the same manner as for the State Antitrust Class. Therefore, IPPs cannot establish damages on a class-wide basis for the State Antitrust Class for the same reasons stated in Section I.C.4.

    E.    <u>IPPs Cannot Establish Superiority for the Colorado Consumer Protection Class as Required by Rule 23(b)(3).</u>

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

████████████████████████  *See* Mot. 15.  Where a plaintiff claims actionable misstatements, "class treatment is not superior" because such a claim will require individualized proof of causation regarding the statement, and therefore "resolution of the issues on which plaintiffs seek certification would do little to secure economies of time, effort, and expense." *Morris v. Davita Healthcare Partners, Inc.*, 308 F.R.D. 360, 378 (D. Colo. 2015).

    F.    <u>The Colorado Consumer Protection Class Is Not Ascertainable.</u>

The Colorado Consumer Protection Class cannot satisfy the ascertainability requirement of Rule 23 for the same reasons the State Antitrust Class is not ascertainable, stated in Section I.E.

III.    <u>The Unjust Enrichment Class Should Not Be Certified.</u>

IPPs have tried to side-step the dramatic differences of the unjust enrichment laws to obtain certification of a multi-state class.  However, "[c]ourts frequently refuse to certify multi-state

unjust enrichment classes," in large part due to plaintiffs' inability to account for the widely varying nature of unjust enrichment claims. *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194, 231 (D.D.C. 2019) (denying certification on unjust enrichment classes). What is surprising is just how little IPPs have done to even try to meet their burden to provide the court a common method to adjudicate these claims, which are 'fact-intensive" and "focus[] on the totality of the circumstances, not just defendant's conduct," *Id.* 232. So, too, IPPs have not shown how they will prove liability, injury, or damages with common evidence for the claim.

A.   IPPs May Not Expand Their Proposed Class Definition to Include Residential End-Users.

For the same reasons stated in Section I.A, IPPs may not expand the proposed class definition for the Unjust Enrichment Class to include residential end-users.

B.   IPPs Cannot Satisfy the Adequacy or Typicality Requirements of Rule 23(a) for the Unjust Enrichment Proposed Class.

For the reasons described in Section I.B.1 and Section I.B.2, Named Plaintiffs cannot adequately represent the Unjust Enrichment Class. For the same reasons discussed in Section I.B.3, Named Plaintiffs' claims are not typical of the Unjust Enrichment Class.

C.   IPPs Cannot Establish Common Issues Predominate as Required by Rule 23(b)(3) For the Unjust Enrichment Class.

As explained below, IPPs lack any common means of establishing class membership, liability, injury, and damages for the Unjust Enrichment Class by common proof.

1.   Determining Membership in the Unjust Enrichment Class Will Require an Individualized Inquiry.

For the reasons discussed in Section I.C.1, IPPs lack any class-wide methodology to demonstrate membership in the Unjust Enrichment Class.

2.      Individualized Issues Pertaining to Differing State Laws Will Overwhelm Any Common Issues for the Unjust Enrichment Class.

"Putative class actions involving the laws of multiple states are often not properly certified pursuant to Rule 23(b)(3) because variation in the legal issues to be addressed overwhelms the issues common to the class." *Langan*, 897 F.3d at 95.  IPPs make two flawed arguments for why the Court should allow them to certify a class of widely varying state unjust enrichment laws.  Both lack merit and do not support certification.

███████████████████████████████████████████████████████

████████████████████████████████████  Mot. 23 (citing Dkt. No. 514-2, Hart. Decl, App. C).  ██████

███████████████████████████████████████████████████████

██████████████████████████████████████████  *See* Dkt. No. 514-2, Hart Decl., App. C. To the contrary, courts have readily dismissed unjust enrichment claims in cases with viable antitrust claims.  *See, e.g., Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc,* No. 15 CIV. 6549 (CM), 2018 WL 7197233, at *69 (S.D.N.Y. Dec. 26, 2018) (dismissing for failure to state a claim various state law unjust enrichment claims in a state law antitrust action); *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 407 (D.R.I. 2019) (granting in part motion to certify class under various state antitrust laws but dismissing unjust enrichment claims under Maine, New York, and North Dakota laws for failure to plead conferral of direct benefit).  The inquiry depends on the particular facts of the case; there is no *per se* rule upon which IPPs can rely to satisfy their burden on predominance.

██████████████████████████████████████████  Mot. 1, is just as easily dispatched.  IPPs offer no substantive analysis of the state laws under which they sue, and instead submit a chart of what they believe to be the elements of unjust enrichment in 19 states.  But as IPPs' Appendix B shows, the elements of the 19 state unjust enrichment causes of action are

completely dissimilar.  Numerous courts have found the unjust enrichment laws of the states at issue are not sufficiently similar to establish predominance.  *See LIBOR*, 299 F. Supp. 3d at 602 (denying certification of unjust enrichment class where "variations in state law warrant a finding of no predominance"); *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 143 (S.D.N.Y. 2014) (denying class certification of unjust enrichment multi-state class on predominance grounds); *cf. Hanks v. Lincoln Life & Annuity Co. of New York*, 330 F.R.D. 374, 385-387 (S.D.N.Y. 2019) (denying motion to certify unjust enrichment class due to variation between elements, defenses, and standards of four proposed groups of state law claims).

By way of illustration, 

*See* Dkt. No. 514-2, Hart Decl., App. B.  *Cf. Spencer v. Hartford Fin. Servs. Grp., Inc.*, 256 F.R.D. 284, 305 (D. Conn. 2009) (denying motion to certify unjust enrichment class and noting that "some states use three elements, some have a five part or four part test, while others use one or two elements.").  This issue is not just a formality.

*see* Dkt. 309 at p. 34.  Courts have rejected class certification of a multi-state class involving New York's law. *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 353 (E.D.N.Y. 2016) (denying certification of unjust enrichment class where New York and other states where at issue)

Other varying state law requirements include (1) whether unjust enrichment is an independent cause of action; (2) whether a plaintiff must establish that a benefit was directly

conferred on the defendant; (3) the level of misconduct, if any, that a plaintiff must prove; and (4) the availability of certain defenses such as laches and unclean hands. *See In re Actiq Sales & Mktg. Pracs. Litig.*, 307 F.R.D. 150, 165-166 (E.D. Pa. 2015) (finding these sorts of differences to be material and denying class certification for lack of predominance); *see also Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-CV-1833, 2015 WL 3623005, at *27-29 (E.D. Pa. June 10, 2015) (finding a number of states require establishing the defendant appreciates a benefit conferred).

The proposed verdict form IPPs include in their Appendix D—which asks a single question: whether the jury finds "that Defendants have been enriched at the expense of Plaintiffs in the form of Plaintiffs paying some amount more for caustic soda than they otherwise would have absent Defendants' conspiracy"—does not address these widely varying state law elements.

Additionally, IPPs cannot overcome that many state law liability elements for unjust enrichment claims are not capable of class-wide proof.  Consider the element of "unjustness," which appears to factor into all, or nearly all, of the 19 states' laws.  Unjustness poses "a fact-intensive inquiry that focuses on the totality of the circumstances, not just defendant's conduct." *McCormick*, 422 F. Supp. 3d at 232 (analyzing varying state definitions and applications of unjustness). ████████████████████████████████████████████████████████████ ██████████████████████████, Dkt. 509, 510, 511, 512, 513, are also particular to a plaintiff.

Due to these material differences in state laws, IPPs cannot demonstrate that "common proof will predominate at trial with respect to the essential elements of liability of the underlying causes of action." *Kottler v. Deutsche Bank AG*, No. 08 CIV.7773(PAC), 2010 WL 1221809, at *3 (S.D.N.Y. Mar. 29, 2010).  Class certification should be denied for lack of predominance. *In re Rezulin Prods. Liability Litig.* ("*Rezulin*"), 210 F.R.D. 61, 71 (S.D.N.Y. 2002) (declining to certify multi-state classes with unjust enrichment claims).

Such material differences also trigger a choice of law analysis, in which the court must determine what law applies to a particular plaintiff. *See Johnson*, 780 F.3d at 140-141. "Courts must exercise care in conducting a choice-of-law analysis in a putative Rule 23(b)(3) class action . . . in order to determine whether any conflicts in governing law will overwhelm the ability of the trier of fact meaningfully to advance the litigation through classwide proof." *Johnson*, 780 F.3d at 140; *see Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (conflicts exist where "the applicable law from each jurisdiction provides different substantive rules"). Applying the choice of law rules of the forum state, New York, the Court should likely follow the Restatement's most significant relationship test. *Rezulin*, 392 F. Supp. 2d at 618 n.117, 619.

Applying that test will multiply the individual issues at issue. Different class members' claims may be governed by different laws depending on where those indirect purchasers are domiciled. Different transactions by the same class member may be subject to different laws depending on which Defendant manufactured the caustic soda they purchased, where the parties entered into that transaction, and where the alleged overcharge was paid to a Defendant. Even if "it is established that the substantive law of each class member's state will apply to his or her claims, the case for finding the predominance of common issues and the superiority of trying this case as a class action diminishes to the vanishing point." *Johnson*, 780 F.3d at 146.

Alleged third party conduct by distributors would further complicate the unjust enrichment calculus, and as explained in Section I.C.5, IPPs cannot show that conduct by common proof.

### 3.   IPPs Cannot Establish Causation and Injury by Class-wide Proof.

IPPs also cannot prove any of the purported class members' unjust enrichment claims without individualized fact determinations as to causation and injury. Unjust enrichment claims have "individualized issues of causation that overwhelm the common questions of fact and law."

*Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 738 (W.D.N.Y. 2020). IPPs have not demonstrated how they can prove causation on a class-wide basis for their unjust enrichment claims, and this defeats predominance alone. *Rezulin*, 210 F.R.D. at 66. Furthermore, IPPs cannot show injury on a class-wide basis for the reasons stated in Sections I.C.2 and I.C.3.

        4.    <u>Unjust Enrichment Damages Vary By State and Their Calculation Requires Individualized Proof.</u>

IPPs lack any viable methodology for establishing unjust enrichment damages on a class-wide basis.



*See* Ex. 46, Macartney Decl. ¶ 137.

*See* App. C.[10] To the contrary, the methods for calculating unjust enrichment damages vary widely between the states. *See id.*

IPPs' overly simplistic approach stands in stark contrast to the individualized inquiries courts undertake in assessing state law claims of unjust enrichment. *See, e.g., County of Champaign v. Hanks*, 353 N.E.2d 405 (Ill. App. Ct. 1976) (finding that "the proper determination of [unjust enrichment] damages is often difficult and depends on the peculiar facts of each case"); *South County Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 214 (R.I. 2015) (noting that "proving a claim for restitution sounding in either quantum meruit or unjust enrichment involves a fact-specific balancing process"). IPPs' inability to establish unjust enrichment damages through

---

[10] **Appendix C** contains a chart identifying the damages calculations for the states in the Unjust Enrichment Class.

common proof, in combination with the other individualized inquiries necessary to assess their unjust enrichment claims, further forecloses predominance and requires denying certification.

D.   IPPs Cannot Establish Superiority for the Unjust Enrichment Class as Required by Rule 23(b)(3).

For the same reasons as set forth in Section I.D, a class action is not superior to adjudicate IPPs' unjust enrichment claims.  If the Unjust Enrichment Class is certified, the Court would have to instruct the jury on the differences between the unjust enrichment laws of 19 states.  IPPs' charts, filed without analysis, fall far short of satisfying their burden of "'creditably demonstrat[ing], through an extensive analysis,' that state law variances do not present insuperable obstacles to managing this class."  *Digital*, 321 F.R.D. at 99-100; *see Hughes*, 317 F.R.D. at 353 ("Without explanation, Plaintiffs indiscriminately cite cases finding that the unjust enrichment laws in relevant States do not vary.  But this selective and incomplete citation of cases is insufficient to meet their burden. By contrast, Defendants identify multiple variations in State laws regarding unjust enrichment."); *Eggs*, 312 F.R.D. at 164 ("Plaintiffs have provided charts seeking to demonstrate what the requirements of each state are with respect to the claims at issues, but Plaintiffs have not proposed how those state claims would be grouped and managed at trial.")

E.   The Unjust Enrichment Class Is Not Ascertainable.

The Unjust Enrichment Class is not ascertainable for the reasons that the State Antitrust Class is not ascertainable, as stated in Section I.E.  Class certification should thus be denied.

## Conclusion

For the foregoing reasons, the Court should deny IPPs' motion for class certification and appointment of Finch Paper and Tripp Plating as class representatives.

DATED: November 22, 2022                    Respectfully submitted,


*/s/ William R.H. Merrill*                    */s/ Steven E. Bizar*
William R.H. Merrill *(pro hac vice)*         Steven E. Bizar
James T. Southwick *(pro hac vice)*           George G. Gordon
Elizabeth B. Hadaway *(pro hac vice)*         Julia Chapman
Justin C. Kenney *(pro hac vice)*             John McClam
SUSMAN GODFREY L.L.P.                         David Costigan
1000 Louisiana Street, Suite 5100            DECHERT LLP
Houston, Texas 77002-5096                    2929 Arch Street
Tel: (713) 651-9366                          Philadelphia, PA 19104
bmerrill@susmangodfrey.com                   Tel: (215) 994-4000
jsouthwick@susmangodfrey.com                 steven.bizar@dechert.com
ehadaway@susmangodfrey.com                   george.gordon@dechert.com
jkenney@susmangodfrey.com                    Julia.chapman@dechert.com
                                             john.mcclam@dechert.com
*/s/ Terrance P. Flynn*                        david.costigan@dechert.com
Terrance P. Flynn
HARRIS BEACH PLLC                            Timothy J. Graber
Larkin at Exchange                           Brian P. Crosby
726 Exchange Street, Suite 1000              Melissa M. Morton
Buffalo, New York 14210                      GIBSON, MCASKILL & CROSBY, LLP
Tel: (716) 200-5050                          69 Delaware Avenue, Suite 900
tflynn@harrisbeach.com                       Buffalo, NY 14202
                                             Tel: (716) 856-4200
*Counsel for Defendant Westlake Chemical*     tgraber@gmclaw.com
*Corp.*                                       bcrosby@gmclaw.com
                                             mmorton@gmclaw.com

                                             *Counsel for Defendant Occidental Chemical*
                                             *Corp.*


                                             */s/ John DeQ. Briggs*
                                             John DeQ. Briggs
                                             Richard B. Dagen
                                             Evan R. Johnson
                                             AXINN, VELTROP & HARKRIDER LLP
                                             1901 L Street NW
                                             Washington, DC 20036
                                             Tel: (202) 912-4700
                                             jbriggs@axinn.com
                                             rdagen@axinn.com
                                             ejohnson@axinn.com

/s/ Alan M. Unger
Alan M. Unger
Tom A. Paskowitz
Peter J. Mardian
Melissa R. Verne
SIDLEY AUSTIN LLP
787 Seventh Ave.
New York, NY 10019
Tel: (212) 839-5300
aunger@sidley.com
tpaskowitz@sidley.com
pmardian@sidley.com
mverne@sidley.com

*Counsel for Defendant Formosa Plastics
Corp., USA*

Angela M. Farren
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, New York 10036
Tel: (212) 728-2204
afarren@axinn.com

Randall D. White
CONNORS LLP
1000 Liberty Building
424 Main Street
Buffalo, NY 14202
Tel: (716) 852-5533
rdw@connorsllp.com

*Counsel for Defendant Shintech
Incorporated*

*/s/ Corey Roush*
Corey Roush
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4115
croush@akingump.com

AKIN GUMP STRAUSS HAUER & FELD
LLP

Paul C. Cuomo
Joseph A. Ostoyich
William C. Lavery
Jeffrey S. Oliver
Elisa Beneze
BAKER BOTTS
700 K Street, N.W.
Washington, DC 20001
Tel: (202) 639-7700
paul.cuomo@bakerbotts.com
joseph.ostoyich@bakerbotts.com
william.lavery@bakerbotts.com
jeffrey.oliver@bakerbotts.com
elisa.beneze@bakerbotts.com

BAKER BOTTS LLP

Stephen A. Sharkey
BOND, SCHOENECK & KING PLLC
200 Delaware Ave., Suite 900
Buffalo, NY 14202-2107
Tel: (716) 416-7051
Ssharkey.bsk.com

*Counsel for Defendants K.A. Steel Chemicals,
Inc. and Olin Corp.*

<u>**CERTIFICATE OF SERVICE**</u>

    I, Elizabeth B. Hadaway, do herby certify that on November 22, 2022, I caused a true and correct copy to be served upon counsel of record via electronic mail.


<u>*/s/ Elizabeth B. Hadaway*</u>
Elizabeth B. Hadaway *(pro hac vice)*
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Tel: (713) 651-9366
ehadaway@susmangodfrey.com

*Counsel for Defendant Westlake Chemical Corp.*