UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| IN RE CAUSTIC SODA ANTITRUST LITIGATION | Lead Case No.: 1:19-cv-00385-EAW-MJR |
|---|---|
| **THIS DOCUMENT RELATES TO:**<br><br>ALL DIRECT PURCHASER ACTIONS | |

## ATTORNEY DECLARATION OF SOLOMON B. CERA

I, Solomon B. Cera, Esq., submit this declaration under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am the managing partner of the law firm Cera LLP, one of the interim co-lead class counsel for the Direct Purchaser Plaintiffs ("Plaintiffs" or "DPPs") in the above-captioned litigation. I am duly licensed to practice law in the State of California, and have been admitted to appear in numerous federal courts throughout the country, including the United States Supreme Court. I have been admitted *pro hac vice* in the United States District Court for the Western District of New York in this matter. I am familiar with and have knowledge of the facts and circumstances set forth in this declaration, which is submitted in support of Plaintiffs' Motion for Preliminary Approval of Settlement with Defendant Formosa Plastics Corporation, U.S.A. ("Motion"), which is being filed contemporaneously with this declaration.

2. Attached as **Exhibit 1** to this declaration is a true and correct copy of the Settlement Agreement executed between Plaintiffs and defendant Formosa Plastics Corporation, U.S.A.

1

("Formosa"). The separate letter agreement that is referred to in paragraphs 9 and 16 of the Settlement Agreement is highly confidential and will be submitted to the Court *in camera* upon request. This separate letter agreement is highly confidential because disclosure of its terms could be prejudicial to Formosa and Plaintiffs.

3. Attached as **Exhibit 2** to this declaration is the Summary Notice of the Settlement between Plaintiffs and Formosa.

4. Attached as **Exhibit 3** to this declaration is the Long Form Notice of the Settlement between Plaintiffs and Formosa.

5. Attached as **Exhibit 4** to this declaration is the Declaration of Carla A. Peak of Kurtzman Carson Consultants LLC ("KCC"), the proposed Claims Administrator.

6. Attached as **Exhibit 5** to this declaration is a brochure concerning the business of the proposed escrow agent for the Settlement, Huntington National Bank.

## **Investigation and Filing of the Complaints**

7. An investigation of an alleged price-fixing conspiracy among producers of caustic soda in the U.S. began more than a year before the lawsuits that initiated this action were filed in March 2019. As part of Plaintiffs' counsel's pre-filing investigation, numerous market participants were interviewed about the sales, pricing, marketing, distribution and production activities of caustic soda producers in the U.S. caustic soda market.

8. The initiating lawsuits and the operative consolidated complaint filed on May 22, 2019 (Dkt. 51, "Complaint), named as defendants Olin Corp. and its subsidiary K.A. Steel Chemicals, Inc. (collectively, "Olin"), Occidental Chemical Corp. ("OxyChem"), Westlake Chemical Corp. ("Westlake"), Formosa and Shintech Inc. ("Shintech"), as well as the parent companies of OxyChem (Occidental Petroleum Corporation, "Oxy"), Shintech (Shin-Etsu

Chemical Co. Ltd. ("Shin-Etsu"), a Japanese company) and Formosa (Formosa Plastics Corporation ("FPC"), a Taiwanese company). The Complaint alleged that, during the Class Period of October 1, 2015 through December 31, 2018, the defendants colluded—engaged in anti-competitive, concerted practices and conduct—in an effort to fix, raise, stabilize and increase caustic soda prices in the United States and overcharge plaintiffs for their purchases of caustic soda in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

## Motion to Dismiss Proceedings

9. The domestic defendants (Olin, K.A. Steel, Oxy, OxyChem, Westlake, Shintech, Formosa) filed motions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint in July 2019. Dkt Nos. 79-82, 84. Foreign defendants FPC and Shin-Etsu filed motions to dismiss for lack of personal jurisdiction. Dkt. 86 (Formosa), 103 (Shin-Etsu). The Court denied the motions to dismiss filed by domestic defendants Olin, OxyChem, Westlake, Shintech and Formosa, and granted the motion to dismiss filed by OxyChem's parent Oxy, and denied the motions to dismiss for lack of personal jurisdiction filed by FPC and Shin-Etsu without prejudice and with leave to renew them after completion of jurisdictional discovery. Dkt. 119 (Mar. 27, 2020). After limited jurisdictional discovery and renewed motion practice, the Court granted FPC's and Shin-Etsu's renewed motions to dismiss for lack of personal jurisdiction. Dkt. 308 (June 24, 2021). Defendants Olin, OxyChem, Westlake, Shintech and Formosa are referred to below collectively as "Defendants."

## Discovery Proceedings

10. The protective order governing the confidentiality of materials produced by parties and non-parties in this case was entered by the Court on June 12, 2020. Dkt. 184. Shortly thereafter, the Court entered an Order Regarding Production of Electronically Stored Information and Paper

Documents. Dkt. 194 (July 2, 2020). Pursuant to Direct Purchaser Case Management Order No. 2 (Dkt. 193, July 2, 2020 ("CMO No. 2")), the parties began to produce transactional data and documents in September 2021, and those productions were largely completed on or about January 31, 2021. The transactional sales databases produced by Formosa and the other Defendants identify in detail those entities who directly purchased caustic soda from them during the 2012-2019 time period, including the volumes and prices of those purchases.

11. In connection with fact and expert discovery, significant challenges arising from the global COVID-19 pandemic made scheduling and taking depositions difficult. Although CMO No. 2 set fact discovery to conclude on September 10, 2021, the parties agreed, with the Court's endorsement, to extend the cut-off date for discovery to February 11, 2022, as reflected in Case Management Order No. 3. Dkt. 313 (July 7, 2021) ("CMO No. 3"). The fact discovery deadline was then further extended by Case Management Order No. 4 (March 9, 2022) to March 28, 2022, for taking depositions and responding to certain discovery requests. Dkt. 452.

12. During discovery, Defendants produced more than 1.5 million documents that DPPs organized and analyzed for use in the litigation. Plaintiffs also served several dozen interrogatories on the Defendants; subpoenas on numerous phone carriers to obtain data concerning phone calls among the Defendants; and document and deposition subpoenas on industry reporters and consultants. Plaintiffs also produced information and documents in response to dozens of document requests and interrogatories served on them by the Defendants, and sat for depositions.

13. Because Defendants had withheld tens of thousands of documents on grounds of privilege, Plaintiffs also spent hundreds of hours, before taking depositions of Defendants, attempting to determine from Defendants' privilege logs, and in meet and confers with defense

counsel, if any documents had been wrongly withheld in full or in part, in order to try to avoid having to re-open a previously conducted deposition due to belatedly produced documents created or received by the deponent that a defendant had previously withheld as privileged.

14. Defendants began to take depositions of the Plaintiffs in June 2021, and Plaintiffs began taking depositions of Defendants' employees in July 2021. In total, Plaintiffs took fifty-three (53) depositions of Defendants' current or former employees (including five depositions of current or former Formosa employees), five (5) Rule 30(b)(6) depositions, and seven (7) depositions of non-parties, for a total of sixty-five (65) fact depositions, which were all the depositions Plaintiffs were permitted to take pursuant to CMO No. 3 (Dkt. No. 313, ¶ 2.d.) without having to request permission from the Court.

15. By agreement of the parties, Defendants served responses and objections to sets of requests for admission in April 2022 that Plaintiffs had served on them near the end of fact discovery.

16. By agreement of the parties and for the convenience of the witnesses, two depositions were taken after the March 2022 close of fact discovery, in May 2022.

**Class Certification, Expert Discovery, and *Daubert* Proceedings**

17. Case Management Order No. 4 (Dkt. 452, "CMO No. 4") entered on March 9, 2022, set the schedule for class certification briefing. Pursuant to CMO No. 4, Plaintiffs filed their motion for class certification and appointment of class representatives and class counsel, along with supporting papers including the expert report of Dr. Russell L. Lamb, on April 25, 2022. Dkt. 474. Defendants filed their opposition brief and supporting papers, including the expert report of Dr. John H. Johnson, IV, on June 27, 2022. Dkt. 486. Plaintiffs filed their reply papers, including the expert reply report of Dr. Lamb, in support of their motion for class certification on August 25,

2022. Dkt. 499. The experts were deposed about the contents of their respective reports.

18. Although CMO No. 4 had set a briefing schedule for *Daubert* motions, Defendants successfully sought amendment of the schedule to permit Dr. Johnson to file a sur-reply report in response to Dr. Lamb's expert reply report. Dkt. 535 (Dec. 6, 2022). Defendants also requested to depose Dr. Lamb about his sur-rebuttal report that would be filed in response to Dr. Johnson's sur-reply report, but their request was denied. Dkt. 544 (Jan. 10, 2023). In accord with the Court-ordered amended schedule (Dkt. 535), Dr. Johnson's sur-reply report was filed on December 27, 2022, he was deposed by agreement about his sur-reply report by Plaintiffs on January 23, 2023, and Dr. Lamb filed his sur-rebuttal report on February 10, 2023. *Id*. Defendants and Plaintiffs filed *Daubert* motions to exclude certain testimony of the experts on March 3, 2023, oppositions on March 31, 2023, and replies on April 21, 2023, in accord with the amended *Daubert* briefing schedule. *Id*.

19. A Court-ordered evidentiary hearing on class certification was conducted on June 5 and 6, 2023. Dkt. 603 (April 25, 2023). The Court requested supplemental briefing from the parties concerning the issues raised at the evidentiary hearing, and those briefs were filed by the parties as ordered by the Court on July 17, 2023. Dkt. 655 (June 16, 2023). The Court also ordered oral argument on Plaintiffs' Motion for Class Certification and the parties' *Daubert* motions, which took place on August 4, 2023. *Id*.

**Settlement Negotiations**

20. Plaintiffs and Formosa began arm's length settlement negotiations in December 2022. Although negotiations reached a temporary impasse in February 2023, they began anew in May 2023, and continued through July. During these negotiations, the parties exchanged many competing drafts of both the agreement and separate letter agreement. After months of vigorous

6

arm's length negotiations over their terms, Plaintiffs and Formosa executed the settlement agreement and the separate letter agreement on July 21, 2023.

**Facts Supporting the Adequacy and Appointment of the Named Plaintiffs as Settlement Class Representatives**

21. The named Plaintiffs and proposed Settlement Class Representatives in this litigation are Amrex Chemical Co., Inc. ("Amrex"), Main Pool & Chemical Company, Inc. ("Main Pool"), Miami Products & Chemical Company ("Miami Products"), Midwest Renewable Energy LLC ("Midwest Renewable"), Perry's Ice Cream Company, Inc. ("Perry's Ice Cream"), and VanDeMark Chemical, Inc. ("VanDeMark"). Each of the named Plaintiffs filed Sherman Act Section 1 claims on their own behalf and on behalf of a similarly situated class of direct purchasers. Each of the named Plaintiffs supports approval of the proposed settlement with Formosa.

22. Each of the named Plaintiffs, other than Perry's Ice Cream which received an assignment, directly purchased caustic soda from at least one of the Defendants. As direct purchasers of caustic soda from Defendants (or in one case an assignee of a direct purchaser) during the period from October 1, 2015 through December 31, 2018, it is submitted that the named Plaintiffs are adequate and appropriate settlement class representatives, possess claims typical of other members of the class with interests in accord with those of the other direct purchaser class members, and are incentivized to seek the maximum recovery from Defendants for the wrongdoing alleged.

23. It is further submitted that the corporate representatives of the named Plaintiffs have amply demonstrated their commitment to their duties as class representatives by their conduct in connection with the litigation. From the inception of the litigation each has devoted time and energy to the litigation. Several provided significant assistance to counsel in the pre-

7

filing investigation into the facts underlying this case. The named Plaintiffs also cooperated in providing extensive discovery herein, producing tens of thousands of documents to Defendants in response to document requests. Each also produced an appropriate corporate representative who testified at deposition, and most of them produced additional employees for deposition as well, in response to Defendants' requests.

## Facts Supporting Appointment of
## Cera LLP and Kaplan Fox as Settlement Class Counsel

24. The Court previously appointed Cera LLP and Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") DPPs' Interim Co-Lead Class Counsel, and Rupp Pfalzgraf LLC (formerly Rupp Baase Pfalzgraf Cunningham LLC) ("Rupp Pfalzgraf") Liaison Counsel, on May 17, 2019 (Dkt. 49). Proposed Settlement Class Counsel and Liaison Counsel have been committed to aggressively prosecuting this case for more than four (4) years, having vigorously litigated this action on behalf of the Plaintiffs since filing the initial complaints on March 22, 2019, including paying and/or incurring millions of dollars of expenses in prosecuting the litigation.

25. As discussed above, proposed Settlement Class Counsel devoted considerable resources to this matter in 2018, when they conducted an extensive pre-filing investigation. They and their colleagues also devoted substantial resources to conducting extensive discovery of the Defendants and the caustic soda industry over the course of approximately two years, including during a global pandemic that created personal and professional challenges for all parties.

26. During the course of their work, proposed Settlement Class Counsel reached many agreements and understandings with defendants and counsel for Indirect Purchaser Plaintiffs and non-parties, in a sustained and concerted effort to advance the litigation in an orderly and efficient manner. These agreements included not only several case management orders, but also a protective order (Dkt. 184), an order regarding the production of electronically

8

stored information ("ESI") and paper documents (Dkt. 194), a stipulated order governing the disclosure and non-disclosure of certain information regarding experts and consultants (Dkts. 205-206), a supplemental stipulated order regarding telephone records (Dkt. 223), a deposition protocol order (Dkt. 310), and a stipulation regarding certain requests for admission and authentication and admissibility of documents (Dkt. 453), all adopted by the Court, and most without the need for Court intervention.

27. Proposed Settlement Class Counsel pursued discovery aggressively and efficiently from approximately May 2020 through the conclusion of fact discovery in the Direct Purchaser action in May 2022. Analysis of the evidentiary record has continued unabated since then, in light of ongoing contentious class certification and expert discovery proceedings, and also in preparation for opposing Defendants' anticipated motions for summary judgment.

28. During the fact discovery period, the parties served Rule 26 Initial Disclosures on each other. DPPs also served document requests, interrogatories, and requests for admission on the Defendants to secure material essential for advancing their Sherman Act claims. Over the course of approximately two years of discovery, proposed Settlement Class Counsel among other things have:

(a) negotiated with Defendants concerning document custodians (current or former employees with caustic soda sales, pricing, marketing, distribution or production duties) for them to run extensive lists of search terms across Defendants' custodial ESI;

(b) resolved numerous discovery and related disputes through negotiation and compromise, and only where necessary pursued relief from the Court;

(c) subpoenaed telephone call data from carriers concerning dozens of telephone numbers of Defendants' employees who not only had caustic soda responsibilities, but also

9

contact with one or more other Defendants, and hired a consultant to organize that data and identify thousands of calls among the Defendants with each other and with alleged conduits;

(d) processed approximately 1.3 terabytes of Defendants' and non-parties' ESI;

(e) organized and analyzed over 1.53 million documents produced by Defendants, and an additional, approximately one hundred thousand records produced by Plaintiffs and non-parties, to identify key documents for use at depositions and to compile a comprehensive chronology of Defendants' contacts and meetings with each other, efforts that have helped illuminate the Defendants' agreements and transactions with one another, their discussions with alleged conduits of competitively sensitive information among them, and their alleged anticompetitive conduct that resulted in what Plaintiffs contend is the artificial inflation of the price of caustic soda above a competitive level during the Class Period;

(f) worked with the proposed class representatives to understand the caustic soda industry and to serve detailed answers to Defendants' sets of interrogatories and document requests; to locate and produce documents and electronic data regarding their purchases of caustic soda; and to prepare for and defend depositions of their employees;

(g) conducted fifty-seven (57) depositions of Defendants' key officers and employees and the current and former employees of certain non-parties, and defended thirteen (13) depositions of the class representative Plaintiffs, often using remote deposition technology that presented unique difficulties;

(h) secured the professional services of expert economists and statistics consultants to help determine the effects of the Defendants' conduct.

29. From the inception of this action through the present, proposed Settlement Counsel and Liaison Counsel have coordinated the work of, and have worked cooperatively

with, a large number of lawyers and legal professionals at other law firms, including counsel for the Indirect Purchaser Plaintiffs. Collegial relations among counsel have advanced the interests of all Plaintiffs in efficiently pursuing recovery of damages from the Defendants.

30. As far as I am aware, no class member has expressed an interest in controlling the prosecution or defense of a separate action against the defendants. Also, neither myself or my colleagues at Kaplan Fox are aware of any other direct purchaser litigation concerning this controversy already begun by, or against, class members.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 14, 2023  By:   /s/ *Solomon B. Cera*
    San Francisco, California                      Solomon B. Cera