**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CAUSTIC SODA ANTITRUST LITIGATION | Lead Case No.: 1:19-cv-00385-EAW-MJR |
| THIS DOCUMENT RELATES TO:<br><br>ALL DIRECT PURCHASER ACTIONS | |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**
**WITH DEFENDANT SHINTECH INCORPORATED**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

Table of Authorities ........................................................................................................ IV

I.      INTRODUCTION ............................................................................................ 1

II.     PROCEDURAL POSTURE OF THE SETTLEMENT ................................... 4

III.    THE PROPOSED SETTLEMENT WITH SHINTECH ................................. 4

        A.      Settlement Negotiations .................................................................... 4

        B.      Summary of the Settlement's Terms................................................. 5

                1.      Settlement Amount and Additional Consideration ................... 5

                2.      Joint-and-Several Liability of the Non-Settling Defendants ..... 6

                3.      The Release ............................................................................ 6

                4.      Attorneys' Fees and Reimbursement of Expenses................... 7

                5.      Termination............................................................................ 8

IV.     ARGUMENT ................................................................................................... 8

        A.      The Proposed Settlement Meets the Requirements of Rule 23(e) and
                Should be Preliminarily Approved ................................................... 8

                1.      The Settlement Is Procedurally Fair ....................................... 10

                2.      The Settlement Is Substantively Fair ...................................... 10

                        a.      This litigation is highly complex, expensive, and its
                                duration is uncertain................................................... 11

                        b.      The proposed settlement follows years of discovery
                                and litigation ............................................................. 11

                        c.      Risks of establishing liability and damages exist ......... 12

                        d.      There is a risk of maintaining the class through trial.... 12

                        e.      The separate side agreement is fair and reasonable...... 13

                        f.      The Settlement is reasonable given the risks of
                                continued litigation .................................................... 14

i

B.    Certification of the Proposed Settlement Class Is Appropriate ............................ 15

     1.    The Requirements of Rule 23(a) Are Satisfied ........................................ 17

          a.    Members of the proposed Settlement Class are numerous and ascertainable ........................................................ 17

          b.    Common questions of law and fact exist ..................................... 18

          c.    Settlement Class Representatives' claims are typical of those of Settlement Class members ........................................... 18

          d.    Settlement Class Representatives have no conflicts with Settlement Class Members and Settlement Class Counsel are experienced in antitrust litigation ............................. 19

               i.    There are no conflicts among proposed class members ..................................................................... 20

               ii.    Settlement Class Counsel are highly qualified and experienced in antitrust matters ................................. 20

     2.    The Requirements of Rule 23(b)(3) Are Satisfied ................................... 21

          a.    Common questions of law and fact predominate over individual questions ..................................................... 21

               i.    Common proof will be used to establish defendants' liability ............................................. 22

               ii.    Common evidence proves antitrust impact ...................... 23

               iii.    While aggregate damages are sufficient to certify a class, Plaintiffs' expert has presented a sufficient common methodology to calculate individual damages ........................................................... 24

          b.    Class action treatment is superior to other forms of adjudication .................................................................................. 25

C.    The Proposed Form and Manner of Notice Are Appropriate and KCC Should Be Appointed Claims Administrator ............................................... 26

D.    Huntington National Bank Should Be Appointed Escrow Agent ......................... 27

E.    The Proposed Schedule Is Fair And Should Be Approved ................................... 27

F.    The Plan of Allocation is Fair, Reasonable, and Adequate ................................. 29

V.    CONCLUSION............................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Dairy Farmers of Am., Inc.*,
  No. 5:09-cv-230, 2012 WL 5844871 (D. Vt. Nov. 19, 2012) .................................... 23

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................. *passim*

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013) .................................................................................................... 21

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) .................................................................................................... 23

*Charron v. Wiener*,
  731 F.3d 241 (2d Cir. 2013) ................................................................................ 10, 11

*Christine Asia Co., Ltd. v. Yun Ma*,
  No.: 1:15-md-02631 (CM)(SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................. 13

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ........................................................................................ 17

*Cordes v. A.G. Edwards*,
  502 F.3d 91 (2d Cir. 2007) ................................................................................... 22, 23

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ................................................................................... 9, 10

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .......................................................................... 10, 11, 14

*Dial Corp. v. News Corp.*,
  314 F.R.D. 108, 113 (S.D.N.Y. 2015),
  *amended*, No. 13cv6802, 2016 WL 690895 (S.D.N.Y. Feb. 9, 2016*)* ............................... 18, 25

*Emeterio v. A&P Rest. Corp.*,
  No. 20-CV-970 (KHP), 2022 WL 274007 (S.D.N.Y. Jan. 26, 2022) ..................................... 11

*F.T.C. v. Actavis, Inc.*,
  570 U.S. 136 (2013) .................................................................................................... 20

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
  392 U.S. 481 (1968) .................................................................................................... 20

*Hawaii v. Standard Oil Co.*,
    405 U.S. 251, 92 S. Ct. 885 (1972) ................................................................................. 16, 17

*Hydrolevel Corp. v. American Society of Mechanical Engineers, Inc.*,
    635 F.2d 118 (2d Cir. 1980) ............................................................................................... 2

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-MD-1775 (JG)(VVP), 2012 WL 3138596 (E.D.N.Y. Aug. 2, 2012) ........................ 29

*In re Air Cargo Shipping Serv. Antitrust Litig.*,
    No. 06–MD–1175 (JG)(VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ........................ 24

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012) ............................................................................................. 16

*In re AOL Time Warner*,
    No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............... 12

*In re ATM Fee Antitrust Litig.*,
    686 F. 3d 741 (9th Cir. 2012) ........................................................................................... 19

*In re Broiler Chicken Antitrust Litig.*,
    No. 16 C 8637, 2022 WL 1720468 (N.D. Ill. May 27, 2022) ................................................. 24

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) .................................................................................... 29

*In re Cathode Ray Tube (CRT) Litig.*,
    308 F.R.D. 606 (N.D. Cal. 2015) ...................................................................................... 17

*In Re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    No. M-02-1486-PJH, 2013 WL 12333442 (N.D. Cal. Jan. 8, 2013) ..................................... 2

*In re Dynamic Random Access Memory Antitrust Litig.*,
    No. M-02-1486-PJH, 2014 WL 12879520 (N.D. Cal. June 27, 2014) ................................. 2, 3

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009) ............................................................................................. 19, 20

*In re Frontier Comm'ns Corp.*,
    No. 3:17-cv-01617-VAB, 2022 WL 4080324 (D. Conn. May 20, 2022) ........................ *passim*

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................................... 11, 12

*In re Glumetza Antitrust Litig.*,
    336 F.R.D. 468 (N.D. Cal. 2020) ...................................................................................... 19

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686, 703 (S.D.N.Y. 2019) ........................................................ 13, 15

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008) ........................................................................... 22

*In re Initial Pub. Offering Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) .................................................................... 16

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................... 8, 9

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) ......................................................................... 22

*In re K-Dur Antitrust Litig.*,
   686 F.3d 197 (3d Cir. 2012) .......................................................................... 20

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-02420 YGR (DMR), 2020 WL 7264559 (N.D. Cal. Dec. 10, 2022) ................... 15

*In re Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 46 (S.D.N.Y. 1993) ...................................................................... 12

*In re Namenda Indirect Purchaser Antitrust Litig.*,
   338 F.R.D. 527 (S.D.N.Y. 2021) .................................................................... 23

*In re Namenda Direct Purchaser Antitrust Litig.*,
   331 F.Sup.3d 152 (S.D.N.Y. 2018) ................................................................. 24

*In re NASDAQ Mkt-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996) ............................................................. *passim*

*In re Nexium Antitrust Litig.*,
   777 F.3d 9 (1st Cir. 2015) ............................................................................ 23

*In re Packaged Seafood Prod. Antitrust Litig.*,
   No. 3:15-md-02670-DMS-MDD, 2022 WL 4283551 (S.D. Cal. Jan. 26, 2022) ................... 15

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ............................ 12

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................. *passim*

*In re Playmobil Antitrust Litig.*,
    35 F. Supp. 2d 231 (E.D.N.Y. 1998) ............................................................ 19

*In re Potash Antitrust Litig.*,
    159 F.R.D. 682 (D. Minn. 1995) ................................................................. 19

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008) ..................................................................... 24

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020)................... 10, 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    267 F.R.D. 291 (N.D. Cal. 2010)................................................................. 19

*In re Urethane Antitrust Litig.*,
    768 F. 3d 1245 (10th Cir. 2014) ................................................................... 2

*In re Vitamin C Antitrust Litig.*,
    279 F.R.D. 90 (E.D.N.Y. 2012) ...................................................... 17, 19, 22

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................ 11

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)....................................................................... 19

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009)............................................................. 9, 10, 11

*Mikhlin v. Oasmia Pharm. AB*,
    No. 19-CV-4349 (NGG)(RER), 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ................. 13, 14

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)....................................................................... 17

*Newman v. Stein*,
    464 F.2d 689 (2d Cir.1972)....................................................................... 14

*Reiter v. Sonotone Corp.*,
    442 U.S. 330 (1979)............................................................................ 16, 17

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)....................................................................... 25

*Seijas v. Republic of Arg.*,
    606 F.3d 53 (2d Cir. 2010)..................................................................... 24, 25

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) ................................................................ 22

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ............................................................................ 21

*Umbrino v. L.A.R.E Partners Network, Inc.*,
   585 F. Supp. 3d 335 (W.D.N.Y. 2022) ................................................ 17

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................ 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ........................................................ 9, 11, 14

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ................................................................... 9

*Weseley v. Spear, Leeds & Kellogg*,
   711 F. Supp. 713 (E.D.N.Y. 1989) ...................................................... 11

**Regulations**

28 U.S.C. § 1715 ...................................................................................... 28

28 U.S.C. § 1715(b) ................................................................................. 28

**Rules**

Fed. R. Civ. P. 23 ............................................................................. *passim*

**Other Authorities**

2 Newberg on Class Actions § 4:63 (5th ed. 2018) ................................ 16

7AA Wright & Miller, Federal Practice & Procedure § 1781 (3d ed. 2014) .............................. 22

Manual for Complex Litigation, Fourth § 21.632 at 320-21 (4th ed. 2004) .................................. 9

Manual for Complex Litigation, Third § 30.42 (1995) ............................. 9

## I.      INTRODUCTION

After years of litigation and more than one year of arm's-length settlement negotiations, Direct Purchaser Plaintiffs ("DPPs" or "Plaintiffs") move the Court for preliminary approval of a settlement with defendant Shintech Incorporated ("Shintech").[1] If finally approved, the proposed settlement ("Settlement" or "Agreement") will result in an additional recovery for the benefit of the proposed Settlement Class of $12,000,000 in cash—on top of the proposed settlements with defendant Formosa Plastics Corp., USA ("Formosa") and defendant Westlake Chemical Corporation, now known as Westlake Corporation ("Westlake")—as well as Shintech's agreement to provide a custodian of records affidavit, as needed, in the ongoing litigation against the non-settling defendants.[2] In consideration of these benefits for the proposed Settlement Class, Plaintiffs will, if the settlement is finally approved, after notice to the Settlement Class, dismiss their case against Shintech with prejudice, as set forth in the Settlement Agreement.[3]

The proposed Settlement with Shintech is a major win for Plaintiffs and the Settlement Class. It brings the total amount achieved for the benefit of Plaintiffs before the Court's ruling on certification of a litigation class to $38,500,000. Also, importantly, as part of the Settlement

---

[1]  The Direct Purchaser Plaintiffs and proposed Settlement Class Representatives are: Amrex Chemical Co., Inc., Main Pool and Chemical Co., Inc., Miami Products & Chemical Co., Midwest Renewable Energy, LLC, Perry's Ice Cream Company, Inc., and VanDeMark Chemical, Inc. (collectively, "DPPs" or "Plaintiffs"). Capitalized terms herein have the same meanings that they have in the Settlement Agreement, which is Exhibit 1 to the Declaration of Solomon B. Cera ("Cera Decl."), accompanying this Motion. References to "Ex. __" are to exhibits to the Cera Decl. unless otherwise indicated.

[2] The non-settling defendants are: Olin Corporation ("Olin") and its wholly owned subsidiary K.A. Steel Chemicals, Inc. ("K.A. Steel"), and Occidental Chemical Corporation ("OxyChem"). On August 14, 2023, Plaintiffs moved the Court for preliminary approval of a settlement agreement with Defendant Formosa for $7,500,000. That motion is pending. Dkt. 702. On November 1, 2023, Plaintiffs moved the Court for preliminary approval of a settlement agreement with Defendant Westlake for $19,000,000. That motion is also pending. Dkt. 710.

[3] Ex. 1.

Agreement, Shintech's sales (like those of Formosa and Westlake) will remain in the case for purposes of joint-and-several liability as to the non-settling defendants, so this Settlement will not diminish the single damages to which the Settlement Class will be entitled in the case going forward if they are proven against the non-settling defendants at trial.[4] In practical effect, this means that if a judgment is obtained at trial against the non-settling defendants, they will only be entitled to a credit for the amount of the Settlement, after any judgment in favor of Plaintiffs at trial is trebled.[5]

Because the proposed Settlement with Shintech meets all the requirements of Rules 23(a), 23(b)(3), and 23(e),[6] Interim Co-lead Class Counsel submit that the Settlement is fair, reasonable, adequate, and in the best interests of the proposed Settlement Class.[7] Plaintiffs and Shintech agreed

---

[4] Ex. 1, ¶ 13 ("The sales of caustic soda by Settling Defendant shall, to the extent permitted or authorized by law, remain in the Action against the other defendants as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future defendants in the Action or other persons or entities other than the Releasees.").

[5] *See Hydrolevel Corp. v. American Society of Mechanical Engineers, Inc.*, 635 F.2d 118, 130 (2d Cir. 1980) (holding settlement amounts should be deducted only after trebling a verdict under the Clayton Act in part because "[i]f settlement proceeds [were] deducted before trebling, the plaintiff's total award [would be] less than what the law allows"); *In re Urethane Antitrust Litig.*, 768 F. 3d 1245, 1252 (10th Cir. 2014) (affirming jury's damages award (among other things) and noting that the district court had deducted the amounts paid by the settling defendants from the damages amount after trebling before entering judgment).

[6] All references to "Rule __" are to the Federal Rules of Civil Procedure unless otherwise indicated. The firms of Cera LLP and Kaplan Fox & Kilsheimer LLP were appointed Interim Co-Lead Class Counsel, and Rupp Pfalzgraf LLC (formerly Rupp Baase Pfalzgraf Cunningham LLC) was appointed Liaison Counsel, on May 17, 2019. Dkt. 49.

[7] As discussed hereafter, there is a lesser standard for certification of a settlement class than for certification of a litigation class. *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 56 (E.D.N.Y. 2019) (Chief Judge Margo K. Brodie); *In Re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* 2013 WL 12333442, at *56 (N.D. Cal. Jan. 8, 2013) (Special Master recommended settlement classes be certified despite the Court's refusal to certify them as litigation classes because the Court's concerns "that at trial, individualized proof would overwhelm common proof on the disputed elements of impact and pass-on of damages" no longer existed: the proposed settlements "eliminate[d] a trial."), report and recommendation adopted sub nom. *In re Dynamic Random Access Memory Antitrust Litig.*, 2014 WL 12879520,

to settle this action after more than four years of hard-fought, complex litigation, including considerable motion practice and discovery.[8] The proposed Settlement with Shintech ensures that the proposed Settlement Class will receive substantial benefits while avoiding the risks and delays arising from continued litigation against Shintech. The Settlement also was achieved after more than a year of arm's-length negotiations by counsel for Plaintiffs and Shintech, who are experienced in antitrust matters and are well-informed about the evidentiary record in this action.[9]

In light of the foregoing and as more fully discussed below, the requirements for preliminary approval of the Settlement are satisfied. Plaintiffs and Shintech seek an order substantially in the form of the proposed Preliminary Approval Order that has been agreed to by the settling parties and is submitted with this memorandum, which provides for: (1) preliminarily approving the Settlement and certifying a Settlement Class under Rule 23, and appointing the Plaintiffs as Settlement Class Representatives and their counsel as Settlement Class Counsel; (2) approving the proposed form and manner of notice to the Settlement Class, and the pro rata Plan of Allocation; (3) approving the appointment of Kurtzman Carson Consultants LLC ("KCC") as claims administrator and Huntington National Bank as escrow agent; and (4) adopting the proposed schedule for final approval of the Settlement, including scheduling a final hearing on the fairness of the Settlement at a time convenient for the Court, following notice to the proposed Settlement Class.  KCC and Huntington are the same proposed claims administrator and escrow agent as previously proposed in connection with the Formosa and Westlake settlements.  Plaintiffs are submitting herewith a revised form of notice to the Settlement Classes that describes, in one notice, the Formosa, Westlake, and Shintech settlements. This is intended to supersede the

---

*2 (N.D. Cal. June 27, 2014) (Hamilton, J.).

[8] Cera Decl., ¶¶ 8-20, 23-28.

[9] Cera Decl., ¶¶ 20, 24-28.

proposed notices to the Settlement Class previously submitted by Plaintiffs in connection with their pending motions for preliminary approval of the Formosa and Westlake settlements. Counsel for Formosa and Westlake have also approved these amended notices.

## II.   PROCEDURAL POSTURE OF THE SETTLEMENT

This case has been vigorously litigated by proposed Settlement Class Counsel and the proposed Settlement Class Representatives since the filing of the initial complaints in March 2019.[10] Details concerning proposed Settlement Class Counsel's investigation of the facts alleged in the consolidated Complaint (Dkt. 51), as well as developments in this action relating to motions to dismiss, discovery, and class certification proceedings, are set forth in the Cera Declaration submitted herewith.[11] The Settlement Agreement was achieved after completion of fact and expert discovery, after an evidentiary hearing and oral argument on the motion for class certification and the parties' *Daubert* motions to exclude certain expert testimony, and the filing of Court-ordered supplemental class certification briefing.[12]

## III.   THE PROPOSED SETTLEMENT WITH SHINTECH

### A.  Settlement Negotiations

After more than a year of arm's length settlement negotiations, Shintech and Plaintiffs executed the Settlement Agreement on December 5, 2023.[13] The settlement discussions were extensive and, at times, difficult, involving back-and-forth exchanges of the parties' positions, including the exchange of drafts of the agreement and separate letter agreement.[14]

---

[10] Cera Decl., ¶¶ 7-19.

[11] Cera Decl., ¶¶ 7-19.

[12] Cera Decl., ¶¶ 16-20.

[13] Cera Decl., ¶ 20.

[14] Ex. 1 at ¶¶ 9, 16, and Cera Decl., ¶¶ 2, 20. The separate letter agreement, which is identified per Rule 23(e)(3), will be submitted to the Court *in camera* upon request. *Id*. This agreement is highly

Given the advanced state of this litigation, Shintech and Plaintiffs are knowledgeable about the evidentiary record upon which Plaintiffs' price-fixing claims and Shintech's defenses are based.[15] That record includes over 1.5 million documents produced by the defendants, as well as the transactional sales databases of Shintech  and the other defendants that identify in detail those who directly purchased caustic soda from them.[16] The record also includes detailed economic reports and analyses by economists, fifty-three (53) depositions of percipient witnesses (including seven (7) depositions of Shintech current or former employees), and extensive law and motion practice.[17]

### B.  Summary of the Settlement's Terms

The Settlement Agreement, if finally approved by the Court following notice to the proposed Settlement Class, will resolve all claims of Plaintiffs and the proposed Settlement Class against Shintech.[18] A summary of the Settlement's terms is provided below.

### 1.    Settlement Amount and Additional Consideration

If the Settlement is preliminarily approved, Shintech will pay $12,000,000 shortly thereafter into an interest-bearing escrow account (the "Settlement Fund") to be held and administered by an escrow agent selected by Settlement Class Counsel with the consent of Shintech and with the approval of the Court.[19] As with regard to the proposed Formosa and Westlake settlements, Settlement Class Counsel recommend Huntington National Bank be appointed the Escrow Agent. The Settlement Fund will be utilized in accordance with applicable

---

confidential because disclosure of its terms will be prejudicial to the settling parties.

[15] Cera Decl., ¶¶ 8-19, 26-28.

[16] Cera Decl., ¶¶ 10, 12, 28.

[17] Cera Decl., ¶ 14, 17-19, 28.

[18] Ex. 1.

[19] Ex. 1, ¶ 7.

orders of the Court for potential payments to Settlement Class Members, as well as for payment of attorneys' fees, notice and claims administration costs, and unreimbursed litigation expenses, as discussed herein.[20]

As additional consideration, Shintech has agreed to provide Plaintiffs with a declaration or affidavit of a custodian of records or other authorized witness under the Federal Rules of Evidence for purposes of establishing the foundation, authenticity and/or admissibility of documents (to the extent not already stipulated to by a non-settling defendant).[21]

### 2.   Joint-and-Several Liability of the Non-Settling Defendants

The Settlement provides that the non-settling defendants remain jointly and severally liable for Shintech's sales to direct purchasers to the extent permitted or authorized by law.[22] Paragraph 13 of the Settlement reserves, for the purposes of joint-and-several liability against the non-settling defendants, Plaintiffs' ability to rely on Shintech's sales of caustic soda to members of the Settlement Class in order to seek the full amount of damages to which they may be entitled from any other defendant in this case.[23] This term is valuable for the Settlement Class, as it maintains Plaintiffs' right to seek damages associated with Shintech's sales from Shintech's alleged co-conspirators, and although the non-settling defendants will be entitled to a credit for the value of the Settlement paid by Shintech to be applied to any judgment entered against them at trial, such credit is to be applied only after trebling any jury verdict in favor of Plaintiffs.

### 3.   The Release

In exchange for Shintech's monetary payment and agreement to provide a custodian of

---

[20] *See infra* pp. 7, 28-29.

[21] Ex. 1, ¶ 10.

[22] Ex. 1, ¶ 13.

[23] Ex. 1, ¶ 13.

records affidavit as stated above, upon entry of the Final Approval Order and Final Judgment, Plaintiffs will release Shintech and the other releasees described in the Agreement from all claims related to any of the conduct giving rise to this litigation, including any causes of action relating to caustic soda that could have been brought against Shintech or its predecessors as defined in the Settlement Notice based on the alleged facts enumerated in the Complaint (Dkt. 51).[24]

### 4.   Attorneys' Fees and Reimbursement of Expenses

The Settlement Agreement recognizes that Settlement Class Counsel may seek attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of this litigation.[25] If the Formosa, Westlake and Shintech proposed settlements are preliminarily approved by the Court, prior to the final fairness hearing, Settlement Class Counsel intend to file an application seeking an award of attorneys' fees not to exceed 30% of the total recovery obtained from the Formosa, Westlake and Shintech settlements and an additional portion of the Settlement Funds to reimburse them for (1) unreimbursed out-of-pocket expenses expended or incurred to date (the bulk of which relates to out-of-pocket expert fees) not to exceed $3,850,000; and (2) expenses anticipated to be incurred in connection with claims administration. As indicated in the notice,[26] the total amount sought for attorneys' fees and unreimbursed expenses will be up to $15,400,000, which is 40% of the gross Settlement Funds from the three settlements.

Plaintiffs are also moving for approval of a *pro rata* plan of allocation of the gross Settlement Funds (the Formosa, Westlake and Shintech) net of any Court-authorized disbursements ("Net Settlement Funds"). Plaintiffs will also move the Court to distribute the Net

---

[24] Ex. 1, ¶ 11.

[25] Ex. 1, ¶ 15.

[26] *See* Ex. 2 (Summary Notice), Ex. 3 (Long Form Notice).

Settlement Funds to members of the Settlement Classes following the Court's Rule 23(e) consideration of the proposed settlements with Formosa, Westlake and Shintech.

### 5.  Termination

Shintech and Plaintiffs each has the option to terminate the Settlement if the Court declines to grant final approval of the Settlement Agreement without material alteration of its terms, or if such approval is set aside on appeal.[27] Shintech also may terminate the Settlement under the circumstances set forth in a separate side letter agreement between it and Plaintiffs, which shall be provided to the Court *in camera* if requested.[28] The terms of this separate letter agreement are highly confidential for reasons including that, as indicated in the "Exclusions" section of the Agreement, Shintech has the right but not the obligation to terminate the Settlement if the aggregate dollar amount of purchases by Settlement Class members which request exclusion from the Settlement Class (those who "opt-out" of the Settlement Class) constitutes an amount equal to or greater than the amount set forth in the separate letter agreement.[29]

## IV.  ARGUMENT

As shown herein, the requirements of Rules 23(e), 23(a), and 23(b)(3) are satisfied and the Settlement should be preliminarily approved, including certification of the Settlement Class and authorization to disseminate a notice to Settlement Class members regarding the proposal.

### A.  The Proposed Settlement Meets the Requirements of Rule 23(e) and Should be Preliminarily Approved

Rule 23(e)(2) requires a court to review a proposed class action settlement to determine whether it is "fair, reasonable, and adequate." At the preliminary approval stage, courts "must

---

[27] Ex. 1, ¶ 16.

[28] Ex. 1, ¶ 16; Cera Decl., ¶ 2.

[29] Ex. 1, ¶ 9.

review the proposed terms of settlement and make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms."[30] To determine "whether a settlement is fair, reasonable, and adequate, the District Court examines the 'negotiating process leading up to the settlement[, i.e., procedural fairness,] as well as the settlement's substantive terms[, i.e., substantive fairness].'"[31] Although courts evaluate class action settlements with the "general policy favoring the settlement of litigation"[32] in mind, courts must nevertheless "carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness . . . and that it was not a product of collusion."[33] Furthermore, since this Settlement was negotiated prior to resolution of the pending motion for certification of a litigation class and, under Rule 23(e), it is "subject to a higher degree of scrutiny in assessing its fairness[,]"[34] nevertheless, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached through arm's-length negotiations between experienced, capable counsel after meaningful discovery."[35] Such is the case here with regard to the Settlement.

---

[30] *Interchange*, 330 F.R.D. at 27 (quoting *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007)).

[31] *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (bracketed alterations in *McReynolds*).

[32] *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

[33] *D'Amato*, 236 F.3d at 85.

[34] *D'Amato*, 236 F.3d at 85.

[35] *In re Frontier Comm'ns Corp.*, No. 3:17-cv-01617-VAB, 2022 WL 4080324, at *10 (D. Conn. May 20, 2022) (citing and quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting Manual for Complex Litigation, Third § 30.42 (1995)). Unlike final approval, preliminary approval of a settlement does not require a hearing. The "initial evaluation [of a class action settlement] can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties." Federal Judicial Center, Manual for Complex Litigation, Fourth § 21.632 at 320-21 (4th ed. 2004). Given the Court's knowledge of counsel and the evidentiary record on class certification, this Court may preliminarily approve the Settlement without a hearing.

### 1.      The Settlement Is Procedurally Fair

If Settlement Class Counsel and the proposed Settlement Class Representatives are adequate and the settlement "resulted from an arm's-length, good faith negotiation between experienced and skilled litigators" it is procedurally fair.[36] Settlement Class Counsel and the Settlement Class Representatives have taken extensive discovery and participated in other pre-trial proceedings in which they have been zealously litigating this case for the benefit of the proposed Settlement Class since the filing of the initial complaints in March 2019.[37] The terms of the Settlement with Shintech were negotiated at arms-length over more than a year in good faith between highly experienced and informed antitrust counsel after years of hard-fought litigation and fulsome discovery.[38] The Settlement is thus presumptively fair, reasonable and adequate.[39]

### 2.      The Settlement Is Substantively Fair

Under Rule 23(e)(2)(C)(i), courts must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Prior to the 2018 amendments to Rule 23(e), courts in the Second Circuit weighed nine factors, known as the *Grinnell* factors, to determine whether a settlement was substantively fair, reasonable, and adequate.[40] Rule 23(e)(2)(C) in essence incorporates these factors for courts to consider in

---

[36] *In re Signet Jewelers Ltd. Sec. Litig.*, Civil Action No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *2 (S.D.N.Y. July 21, 2020) ("Rule 23(e)(2)(A), which requires adequate representation, and Rule 23(e)(2)(B), which requires arm's-length negotiations, constitute the 'procedural' analysis of the fairness inquiry.") (citation and internal quotations omitted); *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (citing *McReynolds*, 588 F.3d at 803–04; *D'Amato*, 236 F.3d at 85).

[37] Cera Decl., ¶¶ 7-19, 23-28.

[38] Cera Decl., ¶¶ 10-20, 28.

[39] *Frontier*, 2022 WL 4080324 at *10.

[40] The *Grinnell* factors are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;

analyzing whether they support a finding that a proposed settlement is substantively fair, reasonable, and adequate.[41]

### a. This litigation is highly complex, expensive, and its duration is uncertain.

Antitrust cases "by their nature, are highly complex."[42] This action has been vigorously litigated for more than four years, including through motions to dismiss and extensive and contentious fact and expert discovery.[43] Although briefing is complete on Plaintiffs' Motion for Class Certification and oral argument on the Motion was heard, the motion has yet to be decided. A briefing schedule on summary judgment and a trial date also have yet to be set but it is unlikely in any event that summary judgment will be ruled upon until a date in late 2024 at the earliest. As this action may well continue for years and its outcome is uncertain, this factor strongly militates in favor of approval of the Settlement.

### b. The proposed settlement follows years of discovery and litigation.

The stage of the proceedings and the amount of discovery completed at the time a proposed

---

[footnote separator]

(6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Charron*, 731 F.3d at 247 (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); citing *McReynolds*, 588 F.3d at 804).

[41] *Signet*, 2020 WL 4196468 at *4; *Frontier Commc'ns Corp.*, 2022 WL 4080324 at *10-14; *Emeterio v. A&P Rest. Corp.*, 20-CV-970 (KHP), 2022 WL 274007, *6 (S.D.N.Y. Jan. 26, 2022) ("not every factor must weigh in favor of [the] settlement, rather the court should consider the totality of these factors in light of the particular circumstances") (quoting *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004)).

[42] *Wal–Mart Stores. Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005); *see also Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (antitrust class actions "are notoriously complex, protracted, and bitterly fought"); *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) (antitrust actions are "costly").

[43] Cera Decl., ¶¶ 7-19, 26-28.

settlement was achieved is "relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness."[44] The Settlement was achieved after the completion of fact and expert discovery, after a two-day class certification evidentiary hearing was conducted by the Court to hear from the parties' experts, and after more than four years of contentious litigation.[45] The evidentiary record is extensive and counsel for Shintech and the Plaintiffs are well-informed about the strengths and weaknesses of the Plaintiffs' claims and Shintech's defenses.

<b>c.   Risks of establishing liability and damages exist.</b>

"One of the Court's central inquiries when appraising a settlement is the likelihood that the class would prevail at trial in the face of the risks presented by further litigation."[46] In determining the risks of establishing liability and damages, courts need not "adjudicate the disputed issues or decide unsettled questions" but rather "need only assess the risks of litigation against the certainty of recovery under the proposed settlement."[47] As the Court is aware, defendants have vigorously contested this case since its inception. While Plaintiffs are confident that they will ultimately prevail, defendants' vigorous opposition highlights the risks on summary judgment and at trial.

<b>d.   There is a risk of maintaining the class through trial.</b>

The Settlement was achieved before a ruling on Plaintiffs' Motion for Class Certification. As discussed below, the Rule 23 requirements for certification of the proposed Settlement Class

---

[44] *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) (per curiam) (citing *In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 55–56 (S.D.N.Y. 1993)).

[45] Cera Decl., ¶¶ 7-20, 23-29.

[46] *Frontier*, 2022 WL 4080324 at *13 (citing and quoting *In re AOL Time Warner*, No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006)).

[47] *Glob. Crossing*, 225 F.R.D. at 459.

are believed to be satisfied, but the Court nevertheless has not certified the litigation class. Plaintiffs therefore continue to be subject to the risk that they will not obtain class certification. There is also a risk that even if the Court certifies the litigation class, it could be decertified before or during trial pursuant to Rule 23(c)(1)(C). This factor thus also weighs in favor of preliminary approval.

### e.    The separate side agreement is fair and reasonable.

Rule 23(e)(3) requires the identification of any agreements entered into in connection with a proposed settlement. Here, as is common in the settlement of antitrust class actions, Shintech and Plaintiffs entered into a confidential separate side letter agreement that sets forth conditions under which Shintech may terminate the Settlement if a certain threshold amount of purchases is met or exceeded by proposed Settlement Class members who submit valid and timely requests for exclusion from (who "opt out" of) the proposed Settlement Class.[48] This type of agreement is "not incompatible with Settlement Class members' receipt of adequate relief" from the proposed Settlement, because "in the event that [Shintech's] termination right is activated [and Shintech] exercise[s] such right, Plaintiffs would be still be in a position to pursue relief through litigation."[49] Thus, the separate letter agreement "will either have no effect on Plaintiffs' recovery (if [Shintech] cannot or do[es] not choose to terminate) or it will merely restore Plaintiffs to the position they

---

[48]  The separate letter agreement is referred to in paragraphs nine (9) and sixteen (16) of the Settlement Agreement. Ex. 1, ¶¶ 9, 16. A copy of the separate letter agreement (executed on the same date as the Settlement Agreement) will be provided to the Court *in camera* upon request. *See Christine Asia Co., Ltd. v. Yun Ma*, No.: 1:15-md-02631 (CM)(SDA), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (remarking that this type of agreement is standard in securities class action settlements and has no negative impact on the fairness of a settlement); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 696 (S.D.N.Y. 2019) (remarking that an agreement identified to the court per Rule 23(e)(2) and submitted to it under seal had "no bearing on the preliminary approval analysis").
[49]  *Mikhlin v. Oasmia Pharm. AB*, 19-CV-4349 (NGG)(RER), 2021 WL 1259559, at *8 (E.D.N.Y. Jan. 6, 2021).

were in prior to the settlement agreement."[50]

### f. The Settlement is reasonable given the risks of continued litigation.

In examining whether the amount of a proposed settlement falls within a range of reasonableness, courts not only consider the best possible recovery but also all the risks requisite to continued litigation, and in so doing weigh "the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable."[51] Here, as set forth above, the Settlement is beneficial for Plaintiffs and the Settlement Class. First, Shintech has agreed to pay a significant sum ($12,000,000) to settle the claims of the Settlement Class against it. Second, since Shintech's sales of caustic soda will remain in the case for purposes of joint-and-several liability against the non-settling defendants, the Settlement does not diminish the single damages to which Plaintiffs will be entitled should they prove those damages at a trial against the non-settling defendants.[52] This Settlement is especially reasonable given the significant risks of years of continued litigation for both Shintech and Plaintiffs. This Settlement also represents a greater percentage of Shintech's share (based on its sales market share) of estimated classwide single damages caused by Defendants' alleged conspiracy than the Settlements achieved with Formosa and Westlake.

---

[50] *Mikhlin*, 2021 WL 1259559 at *8.

[51] *Grinnell*, 495 F.2d at 462; *see also Visa U.S.A.*, 396 F.3d at 119 ("[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion—and the judge will not be reversed if the appellate court concludes that the settlement lies within that range") (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.1972)).

[52] Ex. 1, ¶ 13.

**B.      Certification of the Proposed Settlement Class Is Appropriate**

Plaintiffs and Shintech have agreed, subject to the Court's review and approval, to a

Settlement Class for purposes of settlement defined as follows:

> All persons and/or entities who purchased in the United States directly from one or
> more of the Defendants (or from any of Defendants' predecessors, subsidiaries, or
> affiliates) liquid forms of membrane or diaphragm grade caustic soda at any time
> between October 1, 2015 and December 31, 2018 (the "Settlement Class").
>
> Excluded from the Settlement Class are Defendants, their predecessors, parents,
> subsidiaries, and affiliates, and all government entities, agencies, and
> instrumentalities. For purposes of this exclusion, "predecessors" includes the Dow
> Chemical Company, whose chlor-alkali business was acquired by Olin Corporation
> effective October 5, 2015 and Axiall Corporation, which was acquired by Westlake
> Chemical Corporation effective August 31, 2016. Also excluded are purchases
> under: (i) long-term fixed price contracts that predate October 1, 2015, (ii) cost-
> based contracts (such as cost-plus contracts) with no component of price based on
> a Caustic Soda index, and (iii) contracts that are based on an ECU (electrochemical
> unit) basis with no component of price based on a Caustic Soda index.[53]

Plaintiffs and Shintech have also agreed, subject to the Court's approval, that the Plaintiffs

be appointed Settlement Class Representatives by the Court for purposes of the Settlement.[54]

Courts have repeatedly certified settlement classes of direct purchasers alleging that they

were overcharged by defendants in violation of antitrust law.[55] Moreover, there is a lesser burden

---

[53] Ex. 1, ¶ 1. This definition is nearly identical to the definition of the proposed litigation class that
Plaintiffs have moved the Court to certify by their Motion for Class Certification and in connection
with the Formosa settlement. *Cf.* Ex. 1, ¶ 1 and Memorandum of Law in Support of Plaintiffs'
Motion for Class Certification and Appointment of Class Representatives and Class Counsel ("Pl.
Cert. Mtn.") (Dkt. 474-3) at pp. 1-2, n.4. The only difference is that, in this definition, the phrase
"For purposes of this exclusion […]" has been modified to "For purposes of defining class
membership and this exclusion […]."

[54] Ex. 1, ¶ 2.

[55] *See, e.g.*, Plaintiffs' Reply Memorandum of Law in Support of Motion for Class Certification
and Appointment of Class Representatives and Class Counsel ("Pl. Cert. Rep.") (Dkt. 499), pp. 1-
2, n.2; *GSE*, 414 F. Supp. at 703 (S.D.N.Y. 2019) (preliminarily approving and certifying class for
settlement); *In re Packaged Seafood Prod. Antitrust Litig.*, Case No. 3:15-md-02670-DMS-MDD,
2022 WL 4283551, at *11 (S.D. Cal. Jan. 26, 2022) (same); *In re Lithium Ion Batteries Antitrust
Litig.*, 2020 WL 7264559, *2 (N.D. Cal. Dec. 10, 2022) (finally approving settlements and
settlement classes).

to certify a settlement class than a litigation class with respect to the manageability and predominance requirements of Rule 23.[56]  As stated by Chief Judge Margot Brodie of the Eastern District of New York: "[T]he predominance inquiry will sometimes be easier to satisfy in the settlement context.. . . . Because predominance and manageability overlap, the existence of a settlement that eliminates manageability problems can alter the outcome of the predominance analysis."[57] Rule 23(b)(3)'s predominance requirement is more easily satisfied in the settlement context than during trial (when a class faces a risk of decertification), because a settlement allows common issues to predominate and eliminates manageability problems that could alter the determination of whether common questions will predominate over individualized issues at trial.[58]

Certification is particularly appropriate with respect to claims asserting nationwide, horizontal price-fixing, like those alleged here, as the Supreme Court explained in *Hawaii v. Standard Oil Co.*:

> Every violation of the antitrust laws is a blow to the free-enterprise system . . . [which] depends on strong competition for its health and vigor, and strong competition depends, in turn, on compliance with antitrust legislation. . . . Congress chose to permit all persons to sue to recover three times their actual damages every time they were injured in their business or property by an antitrust violation. By

---

[56]  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems [Rule 23(b)(3)(D)], for the proposal is that there be no trial.").

[57] *Interchange*, 330 F.R.D. at 56 (internal quotation marks and citations omitted). *See also In re Am. Int'l Grp., Inc. Sec. Litig.,* 689 F.3d 229, 242 (2d Cir. 2012) ("manageability concerns do not stand in the way of certifying a settlement class"); *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 195 n.51 (S.D.N.Y. 2005) (preliminarily approving settlement and settlement classes containing certain plaintiff groups that had been excluded from certified litigation classes due to predominance and ascertainability concerns).

[58]  *Interchange*, 330 F.R.D. at 56 (preliminarily approving settlement and citing and quoting 2 *Newberg on Class Actions* § 4:63 (5th ed. 2018): "[I]n settlement class actions, because manageability need not be a concern, predominance—the main focus of manageability—recedes in importance as well. ... Courts therefore regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns.").

offering potential litigants the prospect of recovery of three times the amount of their damages, Congress encouraged these persons to serve as 'private attorneys general.'. . . *Rule 23 of the Federal Rules of Civil Procedure provides for class actions that may enhance the efficacy of private actions by permitting citizens to combine their limited resources to achieve a more powerful litigation posture.*[59]

Here, the proposed Settlement Class satisfies Rule 23, and the Court should appoint Plaintiffs as Settlement Class Representatives and their counsel as Settlement Class Counsel.

### 1. The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) requires: (1) the class "be sufficiently numerous;" (2) the claims "involve questions of law or fact common to the class;" (3) the representative plaintiffs have claims "typical of those of the class," and (4) the representative plaintiffs "adequately represent the interests of the class."[60] The class must also be sufficiently "ascertainable."[61]

#### a. Members of the proposed Settlement Class are numerous and ascertainable.

In the Second Circuit, "numerosity is presumed at a level of 40" class members.[62] There are at least 761 members of the proposed Settlement Class, and they have been ascertained as their identities and the details of their caustic soda purchases appear within Shintech's, Westlake's,

---

[59] 405 U.S. 251, 262, 266 (1972) (emphasis added) (citation omitted). *See also Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) ("Congress created the treble-damages remedy . . . precisely for the purpose of encouraging *private* challenges to antitrust violations" because "private suits provide a significant supplement to the limited resources available to the Department of Justice for enforcing the antitrust laws and deterring violations"); *In re Cathode Ray Tube (CRT) Litig.*, 308 F.R.D. 606, 612 (N.D. Cal. 2015) (observing that "[c]lass actions play an important role in the private enforcement of antitrust actions").

[60] *Myers v. Hertz Corp.,* 624 F.3d 537, 547 (2d Cir. 2010).

[61] *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 116 (E.D.N.Y. 2012); *see also Umbrino v. L.A.R.E Partners Network, Inc.*, 585 F. Supp. 3d 335, 360 (W.D.N.Y. 2022) (Wolford, C.J.) ("[W]hile it is not expressly required by Rule 23(a), courts have imposed an implied requirement of ascertainability in considering motions for class certification.").

[62] *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Formosa's, and the non-settling defendants' transactional sales databases.[63] In fact, if the Settlement is preliminarily approved, the addresses of the Settlement Class members within such data will be used by the proposed claims administrator to notify Settlement Class members of the proposed Settlement.[64]

### b.    Common questions of law and fact exist.

Common questions are those of "such a nature that [they are] capable of classwide resolution—which means that determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[65] A single significant issue of fact common to the class and capable of class-wide resolution suffices for commonality.[66] Here, common issues include, at least: (1) whether the defendants engaged in a conspiracy that violated the antitrust laws; (2) whether the conspiracy resulted in supra-competitive prices paid for caustic soda; and (3) the amount of damages. These common questions are sufficient to satisfy the commonality requirement.[67]

### c.    Settlement Class Representatives' claims are typical of those of Settlement Class members.

The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the

---

[63] Pl. Cert. Rep. at pp. 48-49; Cera Decl., ¶ 10.

[64] *See* Ex. 4, Declaration of Carla A. Peak Regarding Settlement Notice Plan ("Peak Decl."), ¶¶ 8-9, 12.

[65] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

[66] *Id.,* 564 U.S. at 359.

[67] *See, e.g., Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015), *amended,* No. 13cv6802, 2016 WL 690895 (S.D.N.Y. Feb. 9, 2016) (finding defendants' liability under the Sherman Act to be a question common to the class and capable of class-wide resolution through common proof).

defendant's liability."[68] In an antitrust case, typicality is established when a class representative has purchased the product at issue at a price that has allegedly been inflated due to an alleged conspiracy.[69] Differences among the proposed class representatives and the other direct purchasers with respect to their purchasing customs and practices, or their size, or the terms of their purchase contracts, or the prices they paid defendants to purchase the allegedly price-fixed product, do not defeat typicality because the focus in an antitrust price-fixing case (as it will be at trial) is on whether defendants conspired to artificially increase prices of the product purchased by the plaintiffs from the defendants.[70] Where, as here, only the defendants are alleged to have engaged in a conspiracy, this does not create antagonistic interests among class members or defeat typicality.[71]

> **d.    Settlement Class Representatives have no conflicts with Settlement Class Members and Settlement Class Counsel are experienced in antitrust litigation.**

The adequacy requirement involves determining whether plaintiffs' "interests are antagonistic to the interest of other members of the class" and plaintiffs' counsel "are qualified,

---

[68] *Dial*, 314 F.R.D. at 113 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).

[69] *Vitamin C*, 279 F.R.D. at 105; *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998) ("Typicality in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violations by the defendants.") (citation omitted).

[70] *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 305 (N.D. Cal. 2010) (finding typicality requirement satisfied "even if large-volume purchasers interacted with and purchased from defendants in different ways than the proposed class representatives, because . . . [the] prices paid for *all* TFT–LCD panels and products were artificially inflated and supracompetitive [due to the alleged conspiracy]"), abrogated on other grounds by *In re ATM Fee Antitrust Litig.*, 686 F. 3d 741, 755 (9th Cir. 2012).

[71] *See, e.g., In re Glumetza Antitrust Litig.*, 336 F.R.D. 468, 482 (N.D. Cal. 2020) (wholesalers' "fear of disrupting relations with their suppliers" does not defeat typicality) (citation omitted); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 692 (D. Minn. 1995) (that the stability of an illegally controlled market may have favored several large class members' long-term interests was insufficient to defeat certification of a class that included large and small buyers).

experienced and able to conduct the litigation."[72]

### i.   There are no conflicts among proposed class members.

Proposed class representatives are adequate under Rule 23(a)(4) unless they have concrete, non-speculative conflicts with absent class members that are "so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation."[73] Here, given the rule in *Hanover Shoe*[74] that only direct purchasers of a price-fixed product from the defendants may recover damages, no such conflicts exist because "all of the class members have the same financial incentive for purposes of the litigation—*i.e.* proving that they were overcharged and recovering damages based on that overcharge."[75] The proposed Settlement Class Representatives have been adequately representing members of the proposed Settlement Class for more than four years and will continue to do so in the ongoing litigation against the non-settling defendants.[76]

### ii.   Settlement Class Counsel are highly qualified and experienced in antitrust matters.

The proposed Settlement Class is represented by proposed Settlement Class Counsel who have been litigating this case since the filing of the complaints in March 2019 and who continue to do so in an efficient manner.[77] Settlement Class Counsel have vigorously litigated this case for more than four years, engaging in considerable motion practice and comprehensive fact and expert

---

[72] *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotes omitted).

[73] *In re NASDAQ Mkt-Makers Antitrust Litig.*, 169 F.R.D. 493, 514-15 (S.D.N.Y. 1996).

[74] *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 494 (1968).

[75] *In re K-Dur Antitrust Litig.*, 686 F.3d 197, 223 (3d Cir. 2012), *abrogated on other grounds by F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013); *see also, gen*., Pl. Cert. Rep. at pp. 33-43.

[76] Pl. Cert. Mtn. at pp. 22-24.

[77] Proposed Settlement Class Counsel developed this case and have extensive antitrust class action experience, and are highly qualified to continue managing this litigation. *See* Dkt. No. 23 at 7-17; Cera Decl. ¶¶ 7-19, 24-28.

discovery.[78] Their years of efforts and experience litigating on behalf of direct purchasers of caustic soda make them well-qualified to act as Settlement Class Counsel.

### 2.     The Requirements of Rule 23(b)(3) Are Satisfied

As set forth above, and discussed hereafter, the predominance requirement is more easily satisfied in the settlement context. Under Rule 23(b)(3), Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods" for adjudicating the controversy.

### a.     Common questions of law and fact predominate over individual questions.

Whether common questions predominate over individualized issues is "a test readily met in certain cases alleging . . . violations of the antitrust laws."[79] As the Supreme Court has held, "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."[80] In determining whether common issues predominate, courts should examine whether the proposed class is "sufficiently cohesive to warrant adjudication by representation" and if "one or more of the central issues in the action are common to the class and can be said to predominate, [then] the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately."[81]

Predominance is more readily satisfied in the settlement context, where there are no

---

[78] Cera Decl., ¶¶ 8-19, 23-28.

[79] *Amchem*, 521 U.S. at 625.

[80] *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013).

[81] *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotations and citations omitted).

concerns about how each element of the antitrust claim will play out at trial.[82] Thus, courts commonly certify classes for settlement purposes.

Here, there are common questions about (i) the existence, nature, and duration of the alleged conspiracy and the role of each defendant in it, and (ii) the impact of the alleged conspiracy, as well as expert testimony based on that common evidence concerning Defendants' alleged unlawful conduct, and the calculation of aggregate Class damages.

### i. Common proof will be used to establish defendants' liability.

Proving the existence, nature, and duration of the alleged conspiracy will predominate because "allegations of the existence of a price-fixing conspiracy are susceptible to common proof and, if proven true, would satisfy the first element of the plaintiffs' antitrust cause of action."[83] Such evidence consists almost exclusively of evidence common to the proposed Settlement Class as a whole and includes, *inter alia*, witness testimony (live or by deposition), documents, economic evidence of conspiracy, and other evidence relating to defendants' pricing and conduct.

---

[82] *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 269 (3d Cir. 2009) ("[H]ere we are not as concerned with 'formulat[ing] some prediction' as to how this element of a Sherman Act violation would 'play out' at trial, 'for the proposal is that there be no trial,' and instead our inquiry into the element of antitrust injury is solely for the purpose of ensuring that issues common to the class predominate over individual ones.") (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008), as amended (Jan. 16, 2009) and *Amchem*, 521 U.S. at 620); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 304 (3d Cir. 2011) ("[t]he proposed settlement here obviates the difficulties inherent in proving the elements of varied claims at trial or in instructing a jury on varied state laws" when evaluating predominance).

[83] *Cordes v. A.G. Edwards*, 502 F.3d 91, 105 (2d Cir. 2007); *see also Vitamin C*, 279 F.R.D. at 109 ("[C]ourts have frequently held that the predominance requirement is satisfied because the existence and effect of the conspiracy are the prime issues in the case and are common across the class."); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 518 (S.D.N.Y. 1996) (proof of defendants' liability "will not vary among class members"); *see also* 7AA *Wright & Miller*, Federal Practice & Procedure § 1781 (3d ed. 2014) ("whether a[n antitrust] conspiracy exists is a common question that is thought to predominate over the other issues in the case and has the effect of satisfying the first prerequisite in Rule 23(b)(3)").

ii.      **Common evidence proves antitrust impact.**

Proving the injury and causation element of an antitrust claim involves an examination of whether "any such injury is 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful,'" and "whether the plaintiff has indeed suffered harm, or 'injury-in-fact,'" often called impact.[84] "Because each class member allegedly suffered the same type of injury, the legal question of whether such an injury is 'of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful,' is a common one."[85] Classwide injury-in-fact or impact is established if the evidence shows that the challenged conduct caused injury broadly across the class, and, under this standard, "[o]ne overcharge is sufficient to demonstrate antitrust injury."[86]

Here, the following types of common evidence establish class-wide impact from defendants' alleged price-fixing conduct: (1) defendants' price increase announcements that were sent class-wide to all customers and their impact on industry price indices;[87] (2) evidence of industry characteristics that make the industry one that is conducive to price-fixing and also indicate that the artificially inflated or higher prices would have been widely paid by all or nearly

---

[84] *Cordes*, 502 F.3d at 106 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).

[85] *Id.*, 502 F.3d at 107 (quoting *Brunswick*, 429 U.S. at 489).

[86] *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 557 (S.D.N.Y. 2021) (quoting *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015)) ("Paying an overcharge caused by the alleged anticompetitive conduct on a single purchase suffices to show—as a legal and factual matter—impact or fact of damage."); *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2012 WL 5844871, at *11 (D. Vt. Nov. 19, 2012) ("antitrust impact" is fact, not amount, of injury).

[87] *See* Pl. Cert. Mtn. at pp. 10, 28-29; Pl. Rep. Mtn. at pp. 1, 3, 6-9, 16-18; Plaintiffs' Supplemental Memorandum of Law in Support of Motions for Class Certification and to Exclude Certain Testimony of Dr. John H. Johnson, IV, and in Opposition to Motions to Exclude Testimony of Dr. Russell L. Lamb (Dkt. No. 667) ("Pl. Supp. Cert. Mtn.") at pp. 1-4, 21-23.

all class members;[88] (3) evidence of pricing structure through economic analysis (similar supply and demand factors across defendants), statistical analysis (correlations), and graphical depictions mean that a cartel to raise prices through price announcements would affect all or nearly all purchasers;[89] and (4) expert multiple regression and residual analyses.[90] As Judge Durkin held in the *Broiler Chicken* antitrust class action case:

> Of course, the Broiler market is comprised of a large variety of transactions, at varying prices. But the existence of specific transactions does not necessarily undermine Plaintiffs' theory that those transactions took place in the context of a market price that affected the outcome of all the downstream transactions in a common manner. Plaintiffs' experts have shown that there is statistical evidence that the market price increased because of collusive conduct by Defendants, and that this statistical evidence is common to each of the classes.[91]

### iii.    While aggregate damages are sufficient to certify a class, Plaintiffs' expert has presented a sufficient common methodology to calculate individual damages.

Aggregate damages are sufficient for certification of a class.[92]   Moreover, Plaintiffs'

---

[88] "Similar market analyses have been accepted by courts as a source of common evidence of impact[.]" *In re Air Cargo Shipping Serv. Antitrust Litig.*, No. 06–MD–1175 (JG)(VVP), 2014 WL 7882100, at *48 (E.D.N.Y. Oct. 15, 2014) (citing cases). *See also gen*. Pl. Cert. Mtn. at pp. 26-29; Pl. Rep. Mtn. at pp. 9-19; Pl. Supp. Cert. Mtn. at pp. 4-6.

[89] *See* Pl. Cert. Mtn. at pp. 19, 31-32; Pl. Rep. Mtn. at pp. 10, 13-16; Pl. Supp. Cert. Mtn. at pp. 1, 6.

[90] *See* Pl. Cert. Mtn. at pp. 29-30, 32; Pl. Cert. Rep. at pp. 19-29; Pl. Supp. Cert. Mtn. at pp. 7-17. *See also e.g*., *Air Cargo*, 2014 WL 7882100, at *48 ("[I]f correct, [plaintiffs' expert's] analysis tends to establish that *if* the defendants attempted to fix prices, customers would not be likely to avoid this impact through negotiation. This is sufficient to permit an inference of classwide impact.") (citing cases); *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F.Supp.3d 152, 215-216 (S.D.N.Y. 2018) (holding that studies, defendant's analyses, and sales data were sufficient forms of common proof of antitrust injury).

[91] *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2022 WL 1720468, at *15 (N.D. Ill. May 27, 2022).

[92] *See gen*. Pl. Cert. Mtn. at pp. 32-33; Pl. Cert. Rep. at pp. 29-31; Pl. Supp. Cert. Mtn. at p. 18; *see also, e.g., In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 535 (6th Cir. 2008) (approving use of class-wide aggregate damage model); *Seijas v. Republic of Arg.*, 606 F.3d 53, 58-59 (2d Cir. 2010) (all that matters is that a damages estimate "roughly reflect[s] the aggregate amount owed to class members.") (citation omitted); *NASDAQ*, 169 F.R.D. at 521 (approving damage

expert, Dr. Lamb, has proposed a formula for calculating damages individually for each proposed class member that applies the classwide overcharge to each Class member's purchases in defendants' transactional data.[93] As Chief Judge Brodie held in the *Payment Charge Interchange Fee* case, differences in individual damages assessments are no impediment to certifying a settlement class:

> Although individual class members would be impacted to different degrees by the alleged behavior, these individual issues, such as differences in individual damages assessments, are largely minimized in the settlement context. The common questions in this action appear to predominate over individual questions regarding the individual effect of such a conspiracy because the general proof needed to answer those questions—for example, the existence of the alleged conspiracy—is far more essential than the individualized proof necessary to determine individual impact.[94]

### b.   Class action treatment is superior to other forms of adjudication.

Pursuant to Rule 23(b)(3)(A)-(D), in determining whether or not a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, "a court must consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."[95] Here, no class member has expressed an interest in controlling the prosecution or defense

---

model "to determine aggregate damages for the Class as a whole").

[93] *See Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) *quoting Seijas*, 606 F.3d at 58 (the Supreme Court's decision in *Comcast* did not change the "well-established" rule "in this Circuit that 'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification'").

[94] *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 330 F.R.D. 11, 57 (E.D.N.Y. 2019).

[95] *Dial,* 314 F.R.D. at 121. A court need not consider manageability in assessing whether to

of a separate action.[96] The interests of judicial efficiency are best served by having this matter proceed in this forum, as it has proceeded for more than four years.[97]

### C.    The Proposed Form and Manner of Notice Are Appropriate and KCC Should Be Appointed Claims Administrator

Plaintiffs submit herewith for the Court's review the form of notice they propose to send to members of the proposed Settlement Classes with regard to the Formosa, Westlake and Shintech settlements, including a summary notice of the proposed Settlements for publication and a long form notice to be mailed to Settlement Class members that describes in detail, in accord with Rule 23(c)(2)(B): "(i) the nature of the action; (ii) the definition of the  Settlement Class certified; (iii) the Settlement  Class' claims, issues, or defenses; (iv) that a Settlement  Class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the Settlement classes any member who requests exclusion; (vi) the time and manner for requesting exclusion; (vii) the parameters of the application to be filed for attorneys' fees and expenses; (viii) the proposed plan of allocation of the settlement proceeds among Settlement Class members; and (ix) the binding effect of a class judgment on members under Rule 23(c)(3)."[98] Rule 23(c)(2)(B) also requires the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Here, the notice outlines the court approval process and informs Settlement Class members of their rights under Rule 23, including the right to object to and be heard as to the reasonableness and fairness of the proposed

---

preliminarily approve a class action settlement. *Amchem*, 521 U.S. at 620.

[96] *See gen*. Pl. Cert. Mtn. at pp. 33-34; Pl. Cert. Rep. at pp. 46-48.

[97] *See gen*. Pl. Cert. Mtn. at pp. 33-34.

[98] *See* Ex. 2 (Summary Notice), 3 (Long Form Notice). *See also* Ex. 4, Peak Decl., ¶¶ 8-17, discussing the notices and the notice program.

Settlement, or to request exclusion from the Settlement Classes.[99] Because the defendants' transactional data identifies at least 761 caustic soda direct purchasers who are members of the proposed Settlement Classes, if the Settlement is approved by the Court, each of them will be sent a long-form notice by U.S. mail to the addresses set forth in the transaction data.[100] In addition, the summary notice is proposed to be published via a press release and one time in *The Wall Street Journal*, and a copy of the long-form and summary notices will be published on the website concerning the Settlement, CausticSodaDPPlitigation.com.[101]

The proposed notice program thus satisfies the notice requirements of Rule 23(e) and the due process requirements that must be met to bind each member of the proposed Settlement Classes. Plaintiffs respectfully request that the Court approve KCC as the Claims Administrator in this case. KCC has significant experience in cases such as this and is an appropriate administrator.[102]

### D.      Huntington National Bank Should Be Appointed Escrow Agent

Plaintiffs request that the Court approve Huntington National Bank as escrow agent for the settlement funds. Huntington is a large financial institution, with over 20 years settlement experience.[103] It has handled more than 4500 settlements and Settlement Class Counsel have successfully used their services as escrow agent in multiple class action settlements. *Id*.

### E.      The Proposed Schedule Is Fair And Should Be Approved

Plaintiffs propose the following schedule for finalizing approval of the Settlement:

---

[99] *See gen*., Exs. 2 and 3.

[100] Peak Decl., ¶¶ 8-12.

[101] Peak Decl., ¶¶ 13-14.

[102] Peak Decl., ¶¶ 2-4.

[103] *See* Ex. 5, Huntington brochure.

| EVENT | DEADLINE |
|---|---|
| Shintech to send notices of the Settlement as required by the Class Action Fairness Act, 28 U.S.C. § 1715----. | Within 10 days of the filing of this Motion per 28 U.S.C. § 1715(b) |
| Date by which long form notices will begin to be disseminated by mail to each member of the proposed Settlement Class whose address can be identified from defendants' transaction data (the "Notice Date") | Within 21 days from entry of an Order preliminarily approving the Settlement |
| Publication of long-form and summary notices on the Settlement website | On or before the Notice Date |
| Issuance of a press release and publication of summary notice one time in *The Wall Street Journal* | As soon as practicable on or after the Notice Date |
| Filing of Motion for Final Approval of the Settlement | No later than 30 days before the date set by the Court for the Fairness Hearing |
| Submission of Settlement Class Counsel's application for an award attorneys' fees and reimbursement of expenses | No later than 30 days before the date set by the Court for the Fairness Hearing |
| Deadline for class members to opt out or object to the Settlement and/or application for attorneys' fees or reimbursement of expenses and/or the pro rata Plan of Allocation | No later than 20 days before the date set by the Court for the Fairness Hearing |
| Filing of supplemental memorandum in support of Final Approval of the Settlement that identifies and responds to any objection to the Settlement and/or application for attorneys' fees and/or reimbursement of expenses and/or Plan of Allocation, and that also submits a declaration from the claims administrator identifying any entities who opted out of the Settlement | No later than 10 days before the date set by the Court for the Fairness Hearing |
| Fairness Hearing | To be determined by the Court (no earlier than 100 days from entry of the Order preliminarily approving the Settlement). |

**F.      The Plan of Allocation is Fair, Reasonable, and Adequate**

The purpose of developing a plan of allocation is to devise a method that permits the equitable distribution of limited settlement proceeds to eligible class members.[104] "The adequacy of an allocation plan turns on whether the proposed apportionment is fair and reasonable under the particular circumstances of the case." *Id.*

Plaintiffs have included a Plan of Allocation in the proposed long form notice. The Plan of Allocation describes in detail how the settlement funds will be allocated. Under the plan, part of the Settlement Fund will be used to fund any attorneys' fees and reimbursement of costs and expenses if approved by the Court. Additionally, the parties have agreed that Plaintiffs may deduct up to $150,000 from the Settlement Fund for notice and administrative costs. The Settlement Fund net of Court-approved costs and expenses ("Net Settlement Fund") will be distributed on a *pro rata* basis among all members of the Settlement Class who submit valid and timely claims. In other words, each Settlement Class member shall be paid a percentage of the Net Settlement Fund that each class member's recognized claim bears to the total of all recognized claims submitted by all Settlement Class members who file claims. This basic approach is commonly used in antitrust settlements and repeatedly has been approved as fair and reasonable.[105] If the Settlement is finally approved by the Court, Plaintiffs anticipate moving the Court at some point thereafter to distribute

---

[104] *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG)(VVP), 2012 WL 3138596, at *4 (E.D.N.Y. Aug. 2, 2012).

[105] *See, e.g., In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG)(VVP), 2012 WL 3138596, at *3 (E.D.N.Y. Aug. 2, 2012) (approving an allocation plan that "distributed to class members that submit valid claim forms in proportion to their relevant purchases from defendants of 'Airfreight Shipping Services'"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531 (E.D. Mich. 2003) (approving an allocation plan based on "each Class members' pro rata share of the Net Settlement Fund").

the Net Settlement Fund (which will be earning interest in the interim) to Settlement Class members.

## V.    CONCLUSION

The Settlement with Shintech was negotiated at arm's length by Shintech and Plaintiffs after more than four years of litigation.  Plaintiffs submit that it is fair, reasonable and adequate to the proposed Settlement Class. Plaintiffs and Shintech therefore request that the Court enter the proposed Preliminary Approval Order approving the Settlement and certifying the Settlement Class, appointing Plaintiffs as Settlement Class Representatives and Interim Co-Lead Class Counsel as Settlement Class Counsel, and approving the proposed form and manner of notice, the appointment of KCC as claims administrator and Huntington National Bank as escrow agent, and the proposed settlement schedule, and also schedule a fairness hearing relating to final approval of the settlement.

Dated:   December 13, 2023

Respectfully submitted,

By:     /s/ *Marco Cercone*
**RUPP PFALZGRAF LLC**
Marco Cercone, Esq.
R. Anthony Rupp III, Esq.
Arthur N. Bailey, Esq.
1600 Liberty Building
424 Main Street
Buffalo, NY 14202
Telephone: (716) 854-3400
Facsimile: (716) 332-0336
Email: cercone@rupppfalzgraf.com
Email: rupp@rupppfalzgraf.com
Email: bailey@rupppfalzgraf.com

*Interim Liaison Counsel*

By:     /s/ *Solomon B. Cera*
**CERA LLP**
Solomon B. Cera, Esq. (admitted *pro hac vice*)
201 California St., Suite 1240
San Francisco, CA 94111

By:     /s/ *Robert N. Kaplan*
**KAPLAN FOX & KILSHEIMER LLP**
Robert N. Kaplan, Esq.
Gregory K. Arenson, Esq.
  (admitted *pro hac vice*)

Telephone: (415) 777-2230
Email: scera@cerallp.com

C. Andrew Dirksen, Esq. (admitted *pro hac vice*)
529 Main St., Suite P200
Boston, MA 02129
Telephone: (857) 453-6555
Email: cdirksen@cerallp.com

*Interim Co-Lead Class Counsel and Settlement*
*Counsel for the Proposed Settlement Class*

Elana Katcher, Esq.
800 Third Ave., 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Email: rkaplan@kaplanfox.com
Email: garenson@kaplanfox.com
Email: ekatcher@kaplanfox.com

*Interim Co-Lead Class Counsel and*
*Settlement Counsel for the Proposed*
*Settlement Class*