UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MIAMI PRODUCTS & CHEMICAL CO.,
On Behalf of Itself and All Others Similarly
Situated, et al.,

        Plaintiff,

    v.

WESTLAKE CHEMICAL CORPORATION,
et al.,

        Defendants.
_____

**DECISION AND ORDER**

1:19-CV-00385 EAW

AMREX CHEMICAL CO., INC.,
On Behalf of Itself and All Others Similarly
Situated,

        Plaintiff,

    v.

OLIN CORPORATION, et al.,

        Defendants.
_____

1:19-CV-00386 EAW

MIDWEST RENEWABLE ENERGY, LLC,
On Behalf of Itself and All Others Similarly
Situated,

        Plaintiff,

    v.

OLIN CORPORATION, et al.,

        Defendants.
_____

1:19-CV-00392 EAW

_____

MAIN POOL AND CHEMICAL CO., INC.,
On Behalf of Itself and All Others Similarly
Situated,

        Plaintiff,

   v.

OLIN CORPORATION, et al.,

        Defendants.

1:19-CV-00393 EAW

_____

PERRY'S ICE CREAM COMPANY, INC.,
On Behalf of Itself and All Others Similarly
Situated,

        Plaintiff,

   v.

OLIN CORPORATION, et al.,

        Defendants.

1:19-CV-00403 EAW

_____

THE TRIPP PLATING WORKS, INC., On
Behalf of Itself and All Others Similarly
Situated, et al.,

        Plaintiffs,

   v.

OLIN CORPORATION, et al.,

        Defendants.

1:19-CV-00975 EAW

_____

## BACKGROUND

Plaintiffs Miami Products & Chemical Co. ("Miami Products"), Amrex Chemical Co., Inc. ("Amrex"), Main Pool and Chemical Co., Inc. ("Main Pool"), Midwest Renewable Energy, LLC ("Midwest Renewable"), Perry's Ice Cream Company, Inc. ("Perry's"), and VanDeMark Chemical, Inc. ("VanDeMark") (collectively "Direct Purchaser Plaintiffs" or "DPPs") allege that defendants Olin Corporation ("Olin"), K.A. Steel Chemicals, Inc. ("K.A. Steel"), Occidental Chemical Corporation ("OxyChem"), Westlake Chemical Corporation ("Westlake"), Shintech Incorporated ("Shintech"), and Formosa Plastics Corporation, U.S.A. ("Formosa USA") (collectively, "Defendants") have violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by entering into a combination or conspiracy to artificially reduce or eliminate competition for the pricing of caustic soda sold to purchasers in the United States. (Dkt. 51).[1] Currently pending before the Court are DPPs' motions for preliminary approval of their settlement agreements with Formosa USA (Dkt. 702), Westlake (Dkt. 710), and Shintech (Dkt. 720). The settlement agreements at issue in these motions contemplate the certification of a class for settlement purposes.

On December 28, 2023, while DPPs' motions for preliminary approval were already pending, the Court entered a Decision and Order denying DPPs' motion for class certification. (Dkt. 724 (the "Class Certification D&O"); *see* Dkt. 729 (unredacted version)).

---

[1] Miami Products has voluntarily dismissed its claims against Olin, K.A. Steel, and OxyChem only. (Dkt. 751). The other Direct Purchaser Plaintiffs continue to maintain their claims against these defendants, and Miami Products continues to maintain its claims against the defendants other than Olin, K.A. Steel, and OxyChem (although it seeks preliminary approval of the settlement agreements with those defendants, as addressed herein).

Familiarity with the Class Certification D&O and its procedural history is assumed for purposes of this Decision and Order.

The Court subsequently ordered (Dkt. 728; 739) and the parties filed (Dkt. 730; Dkt. 731; Dkt. 732; Dkt. 733; Dkt. 734; Dkt. 742; Dkt. 743; Dkt. 744; Dkt. 745) supplemental briefing regarding the impact of the Class Certification D&O on the pending motions for preliminary approval. The Court heard oral argument on April 26, 2024, and reserved decision. (Dkt. 747).

For the reasons discussed below, the Court concludes that it would not likely be able to certify the proposed settlement classes pursuant to Federal Rule of Civil Procedure 23. Accordingly, DPPs' motions for preliminary settlement approval are denied.

## **LEGAL STANDARD**

Rule 23(e) "requires judicial approval for any class action settlement," which "typically occurs in two stages: (1) preliminary approval, where prior to notice to the class a court makes a preliminary evaluation of fairness, and (2) final approval, where notice of a hearing is given to the class members, and class members and settling parties are provided the opportunity to be heard on the question of final court approval." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 691-92 (S.D.N.Y. 2019) (quotations and alteration omitted). In determining whether to grant a request for preliminary approval, "a district court must consider whether the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id*. at 692 (quotation omitted); *see also In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir.

2012) (hereinafter "*AIG*") ("Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied.").

"A court may certify a class for settlement purposes where the proposed settlement class meets the requirements for Rule 23(a) class certification, as well as one of the three subsections of Rule 23(b)." *In re GSE Bonds*, 414 F. Supp. 3d at 700.  The Rule 23(a) criteria are:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Relevant to these motions for preliminary approval, Rule 23(b)(3) provides that class certification is appropriate if: (i) common questions of law or fact predominate over questions affecting only individual class members; and (ii) class treatment is superior to other methods for adjudicating the controversy.  The Second Circuit has also "recognized an implied requirement of ascertainability in Rule 23, which demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (quotations omitted).

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . ., for the proposal is that there be no trial.  But other specifications of the Rule—those designed

- 5 -

to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In other words, "[t]he safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, . . . are not impractical impediments—checks shorn of utility—in the settlement-class context." *Id*. at 621. Instead, they provide the criteria that a court must apply in determining whether to certify a class, even in the settlement context. *Id*. at 622.

## DISCUSSION

Each of the settlement agreements which the Court has been asked to preliminary approve defines the proposed settlement class as follows:

> All persons and/or entities who purchased in the United States directly from one or more of the Defendants (or from any of Defendants' predecessors, subsidiaries, or affiliates) liquid forms of membrane or diaphragm grade caustic soda at any time between October 1, 2015 and December 31, 2018 (the "Settlement Class").
>
> Excluded from the Settlement Class are Defendants, their predecessors, parents, subsidiaries, and affiliates, and all government entities, agencies, and instrumentalities. For purposes of this exclusion, "predecessors" includes the Dow Chemical Company, whose chlor-alkali business was acquired by Olin Corporation effective October 5, 2015 and Axiall Corporation, which was acquired by Westlake Chemical Corporation effective August 31, 2016. Also excluded are purchases under: (i) long-term fixed price contracts that predate October 1, 2015, (ii) cost-based contracts (such as cost-plus contracts) with no component of price based on a Caustic Soda index, and (iii) contracts that are based on an ECU (electrochemical unit) basis with no component of price based on a Caustic Soda index.

(*See* Dkt. 702-3 at 5; Dkt. 710-3 at 4; Dkt. 720-3 at 5). "This definition is identical to the definition of the proposed litigation class that [DPPs] . . . moved the Court to certify by their

Motion for Class Certification." (Dkt. 702-1 at 24 n.56).

In the Class Certification D&O, the Court concluded that this proposed class definition did not satisfy Rule 23(a)'s typicality requirement, Rule 23(b)(3)'s predominance requirement, or Rule 23's implied requirement of ascertainability. (*See* Dkt. 729 at 22). More specifically, the Court held that: (1) predominance was not established because DPPs lacked common proof of classwide antitrust injury; (2) DPPs had failed to demonstrate typicality, because representatives of the three largest members of the proposed class had testified that they did not fit DPPs' theory of the case and DPPs had not meaningfully addressed this discrepancy; and (3) the proposed class was not ascertainable because it used ambiguous terms and "provide[d] no objective criteria for determining what constitutes a long-term, fixed-price contract that predates October 1, 2015." (*See id*. at 24, 48-49).

In the Court's view, the same flaws that prevented certification of the proposed class for litigation purposes would also prevent certification of the proposed class for settlement purposes. *See, e.g., Brown v. Sega Amusements, U.S.A., Inc.*, No. 13-CIV-7558 RMBHBP, 2015 WL 9450812, at *3 (S.D.N.Y. Nov. 30, 2015) ("the Court's concerns regarding ascertainability are properly considered in the settlement context"); *George v. China Auto. Sys., Inc.*, No. 11 CIV. 7533 KBF, 2014 WL 173417, at *6 (S.D.N.Y. Jan. 15, 2014) ("At no point during this litigation, including most significantly after the Court's ruling on class certification for litigation purposes, did plaintiffs sufficiently support predominance by showing that the [salient legal issue] can be demonstrated on a representative (e.g. class) basis."); *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 83 (E.D.N.Y. 2007) (finding proposed

settlement class could not be certified in part due to the plaintiffs' failure to demonstrate typicality).

DPPs' arguments to the contrary are not persuasive. DPPs assert that "in the settlement context, typicality and ascertainability operate as manageability requirements to protect the rights of absent class members that this Court may easily manage in its role as their fiduciary in overseeing settlement proceedings." (Dkt. 734 at 2). More particularly, DPPs argue that "[t]his Court in this settlement context can easily protect absent class members in the Settlement Class, whose 761 members are known, sophisticated businesses that will be given notice and an opportunity to decide whether to participate and benefit from the settlements." (*Id*. at 2-3).

DPPs' argument is inconsistent with the Court's ascertainability ruling. The Court found—based on a voluminous record including a multi-day evidentiary hearing—that there was no objective manner in which to determine whether particular purchases fell within one of the exclusions contained in the proposed class definition. (*See* Dkt. 729 at 49-50). This is not a trial manageability concern; it represents a fundamental barrier to determining whether a given entity is or is not a member of the proposed class.

DPPs try to address this issue by contending that the relevant exclusion "concerns certain contract *purchases* excluded from recovery, not class *membership*, which is not only objectively determinable ('All persons and/or entities who purchased in the United States directly from one or more of the Defendants . . . caustic soda at any time between October 1, 2015 and December 31, 2018'), but has in fact already been determined because the

Defendants produced data identifying class members and all of their caustic soda purchases, whether such purchases were made under contract or on a 'spot' basis." (Dkt. 745 at 7 (emphases and alteration in original)). This is a new argument—DPPs did not make this argument in connection with their motion for class certification, but contended that "Defendants' records . . . identify the _entities_ whose purchases may be excluded from the _class definition_." (Dkt. 643 at 61 (emphasis added)). In other words, DPPs acknowledged then that the excluded purchases are not within the definition of the proposed class.

This new argument advanced by DPPs does not fit the text of the proposed class definition. The second paragraph of the class definition sets forth all the exclusions from "the Settlement Class" and a plain reading of the paragraph reveals that it is the class itself, and not specific purchases, that is impacted by the exclusions. The proposed class definition expressly excludes "_from the Settlement Class_ . . . purchases under: (i) long-term fixed price contracts that predate October 1, 2015, (ii) cost-based contracts (such as cost-plus contracts) with no component of price based on a Caustic Soda index, and (iii) contracts that are based on an ECU (electrochemical unit) basis with no component of price based on a Caustic Soda index." (_See_ Dkt. 702-3 at 5 (emphasis added)). In other words, the identified purchases do not count as "purchases" for purposes of determining whether an entity "purchased in the United States directly from one or more of the Defendants . . . caustic soda at any time between October 1, 2015 and December 31, 2018." It necessarily follows that if the only purchases of caustic soda an entity made fall within the exclusion, that entity would not be a member of the class. But—for the reasons discussed in the Class Certification D&O—

there is no objective way to ascertain whether that is the case for any given purchaser of caustic soda.

Because there is no objective way to determine whether a given entity's caustic soda purchases during the relevant time frame fall within the exclusion, there is also no objective way to determine class membership. This ascertainability problem would preclude certification of the proposed settlement classes just as it precluded certification of the proposed litigation class.

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023), on which DPPs rely (*see* Dkt. 745 at 7-8), is inapposite. There, the Second Circuit found that a class definition was ascertainable for settlement purposes despite using the word "accepted," which "lends itself to ambiguity." *Fikes*, 62 F.4th at 716. However, the district court in *Fikes* had concluded that "federal antitrust law clarified that the only entities that could fall within the class definition were those deemed to be direct payors of the challenged fees." *Id*. As a result, any ambiguity was resolved. *Id*. By contrast, there is no federal law here that resolves the ambiguity in the proposed class definition, so that class membership may be objectively ascertained.

DPPs also argue that "because of Defendants' sales data, it is objectively known *who* the Settlement Class members are and *what* the dollar amount was of their caustic soda purchases, including the purchases of the twelve Settlement Class members who bought caustic soda under the terms of one of the three contract types enumerated in the Excluded Purchases Clause." (Dkt. 745 at 8 (emphases in original)). But this argument assumes the

completeness of spreadsheets and databases that the Court has already determined are incomplete (*see* Dkt. 729 at 24-33), and fails to address the concern of how to define "long-term fixed price contracts that predate October 1, 2015" given the complexities of the contracts in question. It thus does not solve the ascertainability concerns identified by the Court in the Class Certification D&O.

Turning to typicality, DPPs argue that "where, as here, the Settlement Class is comprised of sophisticated business entities that are well capable of making an informed decision whether or not to accept the Settlements' terms, the Court should allow the Settlement Class members to make their autonomous decisions." (Dkt. 745 at 6). DPPs point out that "two of the three largest settlement class members, Brenntag and Univar, support preliminary approval of the Settlements." (Dkt. 742 at 2).

DPPs' argument again does not address the Court's prior ruling. The Court concluded that DPPs had not shown that all the members of the proposed class fit within their theory of antitrust injury. (Dkt. 729 at 48). That those entities might nevertheless wish to participate in a settlement from which they would benefit financially has no relevance to the typicality inquiry. Further, allowing entities that were not injured in the manner claimed by DPPs to participate in the proposed settlement could decrease the recovery available to entities that did suffer injuries. This is not a trial manageability concern, but a fundamental issue with permitting classwide treatment.

DPPs also seem to suggest that "Rule 23's non-predominance requirements can be cured in the settlement context" by simply applying the Rule 23(e)(2) factors and

considering whether the proposed settlement is "fair, reasonable, and adequate for the proposed settlement class members." (Dkt. 734 at 6). This assertion is foreclosed by the Supreme Court's decision in *Amchem*, where it held that Rule 23(e) "was designed to function as an additional requirement, not a superseding direction," and that "[f]ederal courts . . . lack authority to substitute for Rule 23's certification criteria a standard never adopted— that if a settlement is 'fair,' then certification is proper." 521 U.S. at 621-22.

Finally, with respect to predominance, DPPs argue that "the Settlement Class's membership arises from the common claim of every Settlement Class member that Defendants fixed prices in violation of the Sherman Act and relies not on a regression but on *Defendants' transactional sales data and records* showing sales to Settlement Class members." (Dkt. 745 at 9 (emphases in original)). The Court is unpersuaded. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "The focus of this analysis is on questions that preexist any settlement, and not on whether all class members have a common interest in a fair compromise of their claims." *AIG*, 689 F.3d at 240 (quotations omitted). The Court found in the Class Certification D&O that there was insufficient common proof to demonstrate antitrust injury on a classwide basis. (Dkt. 729 at 24). This is not a trial manageability issue. It is instead the core concern of the Rule 23(b)(3) inquiry—whether "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to

individualized proof." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020) (citation omitted).

This case is thus unlike *AIG*, contrary to DPPs' assertions. In that securities fraud case, the district court had issued a decision denying class certification. It then "issued a one-sentence order denying Lead Plaintiffs' motion for preliminary approval of the settlement 'as moot' in light of its class certification ruling." *Id*. at 236. The Second Circuit reversed, noting that "the predominance inquiry will sometimes be easier to satisfy in the settlement context," and concluding that under the specific circumstances of that case, because "with a settlement class, the manageability concerns posed by numerous individual questions of reliance disappear," the predominance requitement was satisfied in the settlement context. *Id*. at 241. Again, the issue in this case—unlike in *AIG*—is not a manageability concern. It is the absence of generalized proof of antitrust injury.

For all these reasons, the Court concludes that it would not "likely be able to . . . certify the [proposed] class for purposes of judgment on the [settlement] proposal[s]." Fed. R. Civ. P. 23(e)(1)(B)(ii). Therefore, the Court must deny DPPs' motions for preliminary approval of their settlement agreements with Formosa USA (Dkt. 702), Westlake (Dkt. 710), and Shintech (Dkt. 720).

## **CONCLUSION**

For all these reasons, the Court denies DPPs' motions for preliminary approval of their settlement agreements with Formosa USA (Dkt. 702), Westlake (Dkt. 710), and

Shintech (Dkt. 720).  The Court will schedule by separate order a conference to discuss the next steps in this litigation.

    SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  June 24, 2024
       Rochester, New York