UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| IN RE CAUSTIC SODA ANTITRUST LITIGATION | Lead Case No.: 1:19-cv-00385-EAW-MJR |
|---|---|
| THIS DOCUMENT RELATES TO:<br><br>INDIRECT PURCHASER ACTIONS | |

**MEMORANDUM OF LAW
ADDRESSING THE IMPACT OF THE COURT'S DIRECT PURCHASER
PLAINTIFFS' CLASS CERTIFICATION DECISION ON INDIRECT PURCHASER
<u>PLAINTIFFS' PENDING CERTIFICATION MOTION</u>**

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. THE COURT'S DECISION ON DPPS' CLASS CERTIFICATION MOTION DOES NOT PRECLUDE CERTIFICATION OF THE IPP CLASSES. ............................................................ 3

    A. Dr. Macartney's regression analysis is reliable common evidence of elevated prices. 3

      1. IPPs' econometric analysis does not suffer from the same transaction and contract-specific deficiencies identified by the Court in the DPPs' analysis... ............ 4

      2. IPPs' econometric analysis accurately addresses global demand for U.S.-produced caustic soda. ................................................................................................. 5

    B. There is no factual or legal support for the argument that the IPP named plaintiffs were atypical with respect to their caustic soda purchasing practices. ......................... 7

    C. The IPP classes are ascertainable................................................................................ 10

III. CONCLUSION .................................................................................................................. 12

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
 No. 06-MD-1175 (JG)(VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ........................6, 9

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
 568 U.S. 455 (2013) ..................................................................................................................6

*B & R Supermarket, Inc. v. Mastercard Int'l Inc.*,
 No. 17-CV-02738 (MKB) (JO), 2021 WL 234550 (E.D.N.Y. Jan. 19, 2021) ........................10

*Brecher v. Republic of Argentina*,
 806 F.3d 22 (2d Cir. 2015) .....................................................................................................11

*FTC v. Superior Court Trial Lawyers Ass'n*,
 493 U.S. 411 (1990) ..................................................................................................................9

*In re Namenda Indirect Purchaser Antitrust Litig.*,
 338 F.R.D. 527 (S.D.N.Y. 2021) ............................................................................................10

*Northern Pac. Ry. Co. v. U.S.*,
 356 U.S. 1 (1958) ......................................................................................................................9

*In re Petrobras Sec. Litig.*,
 862 F.3d 250 (2d Cir. 2017) ...............................................................................3, 10, 11, 12

*In re Playmobil Antitrust Litig.*,
 35 F. Supp. 2d 231 (E.D.N.Y. 1998) ..................................................................................9, 10

*In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.*,
 335 F.R.D. 1 (E.D.N.Y. 2020) ................................................................................................12

*Tyson Foods, Inc. v. Bouaphakeo*,
 577 U.S. 442 (2016) ..............................................................................................................3, 6

*U.S. v. Trenton Potteries Co.*,
 273 U.S. 392 (1927) ..................................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 23 ......................................................................................................................1, 12

Rule 23(a)(3) ..............................................................................................................................9, 10

Rule 23(b)(3) ...................................................................................................................................3

**I.  INTRODUCTION**

Indirect Purchaser Plaintiffs Tripp Plating Works, Inc. and Finch Paper LLC ("IPPs") allege that Defendants[1] conspired to fix the price of caustic soda in the United States, forcing them to pay supracompetitive prices. Collectively, putative class members spent over $1 billion on caustic soda during the class period, shelling out well over $150 million in overcharges.[2] To recover these damages, IPPs are prepared to fight as the "voice for all" indirect purchasers "exposed to fixed pricing." Hart Decl., Ex. 2, Cherie Jagielo Tr., 153:14-16. IPPs seek to certify two classes to pursue their claims: a State Antitrust Class and an Unjust Enrichment Class (the "Classes").

Following briefing and an evidentiary hearing on the Direct Purchaser Plaintiffs' ("DPPs") class certification motion, this Court ultimately denied the motion on a number of grounds. *See* ECF No. 729 ("Decision and Order"). As the Court directed, IPPs now submit this supplemental memorandum to address the impact, if any, of its decision denying the DPPs' class motion on the IPPs' pending motion. As explained below, the short answer is the Court's decision and order has no impact on the IPPs' class certification motion. Despite being subject to the same standards under Fed. R. Civ. P. 23, the IPP and DPP putative classes rely on different evidence, different

---

[1] "Defendants" refer to Olin Corporation, K.A. Steel Chemicals, Inc., Occidental Petroleum Corporation, Occidental Chemical Corporation (d/b/a OxyChem), Westlake Chemical Corporation, Shintech Incorporated, and Formosa Plastics Corporation, U.S.A.

[2] In support of their Motion for Class Certification, IPPs filed the Declaration of Barbara Hart, dated September 26, 2022 ("Hart Decl.") (ECF No. 514-1), which included as Exhibit 1 the Declaration of Dr. Gareth Macartney, Ph.D., in Support of Indirect Purchaser Plaintiffs' Motion for Class Certification ("Macartney Decl."). Macartney Decl. ¶ 136. IPPs also filed the Declaration of Barbara Hart, dated January 26, 2023 (ECF No. 550-1) ("Hart Reply Decl."), which included as Exhibit 1 the Reply Declaration of Dr. Gareth Macartney, Ph.D., in Support of Indirect Purchaser Plaintiffs' Motion for Class Certification ("Macartney Reply Decl."). To minimize redundant exhibit submissions to the Court, IPPs incorporate by reference and cite in this brief to the Hart Declarations and class certification materials previously submitted.

economic analysis, and have different class definitions. The evidence and issues that led the Court to deny certification of the DPP Class do not preclude certification of the IPP class.

First, the two deficiencies the Court identified in the DPPs' economist's analysis—a failure to reliably identify transactions pursuant to certain contracts and a failure to reliably model global demand for U.S.-produced caustic soda—have no bearing on IPPs' independent econometric analyses. As to the first deficiency, the IPPs' expert, Dr. Macartney, has no need to identify transactions tied to specific contracts because, unlike DPPs, IPPs do not define their class by reference to specific types of transactions and contracts. As to the second deficiency, Dr. Macartney does not use global alumina production to measure global demand for U.S.-produced caustic soda, unlike DPPs' expert, Dr. Lamb.

Second, unlike testimony in the DPP case, there is no evidence in the IPP record suggesting that absent class members did not care about obtaining lower prices for caustic soda or had different negotiating strategies than the IPP named plaintiffs. The IPP testimony that Defendants attack for the proposition that the IPP named plaintiffs are not typical of the class reveals nothing more than the unsurprising fact that IPP named plaintiffs—like all businesses—consider factors *in addition to price* when selecting suppliers.

Last, unlike the transaction and contract-specific exclusions embedded in the DPPs' original proposed class definition, the IPP classes are not defined by reference to terms that can be interpreted subjectively. IPPs' proposed class definitions are based upon objective criteria and satisfy the Second Circuit's ascertainability standard.

For all the reasons set forth in the original class certification briefing, and because IPPs' motion does not rely on any of the predicates flagged by the Court in denying DPP class certification, IPPs respectfully request that the Court certify the IPP classes.

## II. THE COURT'S DECISION ON DPPS' CLASS CERTIFICATION MOTION DOES NOT PRECLUDE CERTIFICATION OF THE IPP CLASSES.

### A. Dr. Macartney's regression analysis is reliable common evidence of elevated prices.

Under Rule 23(b)(3), the predominance inquiry tests whether "common questions '*predominate* over any questions affecting only individual [class] members.'" *In re Petrobras Sec. Litig.,* 862 F.3d 250, 268 (2d Cir. 2017) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013)) (emphasis in original). In other words, Rule 23(b)(3) "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation and internal quotation marks omitted). In the DPP case, the Court stated "where an expert's model of classwide injury fails, absent alternative common proof of class impact, such deficiencies will preclude class certification under Rule 23(b)(3)." Decision and Order at 23 (quoting *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 46-47 (S.D.N.Y. 2020)).

In denying DPP class certification, the Court rejected the regression model constructed by DPP expert, Dr. Lamb. The Court saw two major failures: (1) Dr. Lamb's "failure to accurately classify transactions," and (2) Dr. Lamb's "failure to account for global demand for U.S. produced-caustic soda." *Id.* at 24-39. Neither of these failures applies to the injury and damages methodology presented by IPPs' expert, Dr. Macartney. Dr. Macartney did a wholly independent regression related to classwide injury that incorporated, where warranted, classification of specific contract types, and he did not use global alumina production as a proxy for global demand for U.S.-produced caustic soda. Fundamentally, the IPPs defined their class differently than the DPPs (and did not rely on exclusions related to specific transaction and contract types), and the IPPs'

3

economist took a different approach than DPPs when it came to analyzing global demand for U.S.-produced caustic soda.

### 1. IPPs' econometric analysis does not suffer from the same transaction and contract-specific deficiencies identified by the Court in the DPPs' analysis.

First, in the DPP case, the Court pointed out that Dr. Lamb's "failure to accurately classify transactions" was critical because DPPs' proposed class definition sought to exclude "'purchases under: (i) long-term fixed-price contracts that predate October 1, 2015, (ii) cost-based contracts (such as cost-plus contracts) with no component of price based on a Caustic Soda index, and (iii) contracts that are priced on an ECU (electrochemical unit) basis with no component of price based on a Caustic Soda index.'" Decision and Order at 24. As the Court stated, "[b]ecause the class definition is necessarily crafted in this highly specific fashion, a reliable methodology for determining whether a particular purchase should be excluded is a prerequisite to assessing whether there has been classwide injury." *Id*.

No such analysis or methodology is necessary for the IPPs because the IPPs do not include the contract-based exclusions that the DPPs built into their class definition. Further, IPPs do not *need* to include (or exclude) the contract-specific lines of purchases identified by the DPPs because IPPs use "actual prices paid" as the model inputs for injury and damages. Macartney Reply Decl. ¶ 106. Thus, for IPPs, it does not matter what contract governs a given purchase price because IPPs' model uses the actual prices paid and do not examine "but for" prices based upon contract type. *Id*.

Despite acknowledging that IPPs do not rely on the same transaction-specific and contract-specific class definition exclusions as DPPs, Defendants have nonetheless attempted in previous submissions to analogize Dr. Macartney to DPPs' expert, Dr. Lamb, by pointing out that Dr.

4

Macartney and Dr. Lamb rely on the same contract control variable in their respective regression analyses. ECF No. 730, pp. 2-3. Defendants ignore the salient point from the Court. The regression contract variable itself was not the source of this Court's deficiency finding regarding the DPPs' class certification evidence; the Court was clear that the DPPs' problem stemmed from their failure to provide "a reliable methodology for determining whether a particular purchase should be excluded" precisely "[b]ecause the [DPP] class definition is necessarily crafted in this highly specific fashion[.]" *See* Decision and Order at 24-25. IPPs simply do not "craft[] [the IPP class definition] in this highly specific fashion" and thus the Court's deficiency finding does not apply.

### 2. IPPs' econometric analysis accurately addresses global demand for U.S.-produced caustic soda.

Second, the Court found that Dr. Lamb's regression analysis failed to properly account for global demand for caustic soda produced in the U.S. because he used global alumina production as a proxy. *Id.* at 33-36. To the Court, it appeared undisputed (at least at the evidentiary hearing) that global alumina production did not accurately reflect trends in global demand for U.S. exports of caustic soda. *Id*. at 35-36. And since the parties agreed that "global demand for U.S.-produced caustic soda plays a significant role in determining the price that Defendants can charge their customers[,]" Dr. Lamb's use of an unreliable proxy rendered his methodology unsound. *Id*.

Dr. Macartney's econometric analysis did not use global alumina production to measure global demand for U.S.-produced caustic soda. Instead, he used the ratio of U.S. caustic soda export quantity minus import quantity over the total domestic production quantity of caustic soda. This variable controls for <u>all</u> events that would affect global demand for U.S. caustic soda. Macartney Reply Decl. ¶ 118. Indeed, Defendants' expert, Dr. Johnson, accepted that this variable will increase as there is increased global demand for U.S. exports. *Id.* at n. 291.

Similarly, the Court criticized Dr. Lamb for offering "no corroboration for the proposition that the cost to produce Caustic Soda is uniform globally." Decision and Order at 36-37. This criticism undermined Dr. Lamb's contention that U.S. domestic prices and export prices were determined by common factors. But Dr. Macartney addressed Dr. Johnson's contentions about domestic and export prices completely differently, establishing that Dr. Johnson's work ignored arbitrage between the markets and in doing so suffered from endogeneity in the form of reverse causation. Macartney Reply Decl. ¶¶ 51-53. Indeed Dr. Macartney's reply declaration disputes Dr. Johnson's variables due to endogeneity as erasing price elevation altogether because they are influenced by the price effect they seek to estimate.

Put simply, none of the weaknesses in Dr. Lamb's model appear in Dr. Macartney's work, in fact or even by analogous theory. Unlike the issues identified in Dr. Lamb's analysis, the quarrels between the IPPs and Defendants over Dr. Macartney and Dr. Johnson are classic disputes over inputs and credibility that go to the core of the jury system. As this Court pointed out, it is the party seeking certification—here, IPPs—who bear the responsibility of showing the expert's methodology is admissible. *See* Decision and Order at 30. But it is not IPPs' burden at class certification—as Defendants would have it—to prove that IPP victory is the *only* possible outcome. That would invoke a burden of proof akin to an affirmative summary judgment burden on litigants seeking class certification. And it would also directly conflict with the Supreme Court's directive that "[o]nce a district court finds evidence to be admissible, its persuasiveness is, in general, a matter for the jury[,]" and resolving expert disputes, once admissible, "is the near-exclusive province of the jury." *Tyson Foods,* 577 U.S. at 459; *see also Amgen*, 568 U.S. at 459; *Air Cargo*, 2014 WL 7882100, at *41 ("[T]he question is 'whether the method by which plaintiffs propose to prove class-wide impact could prove such impact, not whether plaintiffs in fact can

prove class-wide impact.") (quoting *In re Magnetic Audiotape Antitrust Litig.*, No. 99-CV-1580, 2001 WL 619305, at *4 (S.D.N.Y. June 6, 2001)).

Here, IPPs have provided class-wide evidence sufficient to prove it is more likely than not that Defendants overcharged IPP class members for caustic soda and have thus satisfied their burden.[3]

### B. There is no factual or legal support for the argument that the IPP named plaintiffs were atypical with respect to their caustic soda purchasing practices.

As this Court held in in its Decision and Order, "'[t]ypicality …requires that the claims of the class representatives be typical of those of the class and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" Decision and Order at 47 (quoting *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks and citation omitted). Nothing in this Court's opinion undermines a finding of typicality here.

In its Decision and Order, the Court agreed with Defendants' argument that the DPPs failed to satisfy the typicality requirements because "the record demonstrates that the three largest members of the proposed class . . . did not have the same price negotiation strategy as DPPs and did not seek to pay the lowest price for caustic soda." *Id*. at 47-48.

This testimony was significant because the Court viewed it as directly in conflict with the DPPs' theory of the case; the highlighted testimony showed that certain DPP absent class members "did not seek to pay the lowest available price for caustic soda." *Id*.

---

[3] After identifying dispositive weaknesses in Dr. Lamb's model, the Court also explained why the DPPs could not proceed based solely on "other purported common proof of class impact." Decision and Order at 39-47. Because the model proposed by IPPs' expert, Dr. Macartney, is not subject to the same criticisms as Dr. Lamb's, there is no need for supplemental briefing on whether IPPs could proceed *without* Dr. Macartney based solely on "other common proof of class impact."

7

In contrast to the DPP case—where Defendants pointed to absent class member testimony suggesting *no* concern for price, there is no similar testimony from absent class members in the IPP record. Defendants do not argue otherwise. Instead, in an attempt to paint IPPs with the same brush as DPPs, Defendants previously argued that IPPs cannot demonstrate typicality because they consider *a number of factors*—such as customer service and supplier convenience—*in addition to* price in making their purchase decisions. *See* ECF No. 532, Defendants' Opposition to Plaintiffs' Motion for Class Certification at 24-25.

For example, Tripp Plating's Steve Jagielo testified that, in addition to being "competitive" on price, its supplier, Amrex, was convenient, provided quality customer service, and was reliable. Hart Reply Decl., Ex. 31, S. Jagielo Tr. 50:24; 51:5-6, 14-22; 52:7-8, 54:4-5. Similarly, Finch Paper's Joseph Hall simply testified that Finch would "sometimes" be willing to pay a higher price for caustic soda in order to achieve other business objectives. Hart Reply Decl., Ex. 43, J. Hall Tr. 186:19-25; 187:1-25; 188:1-18.

Notably, Defendants do not and cannot cite a single case from any jurisdiction for the proposition that in order to satisfy typicality in a price fixing case, the named plaintiff must consider and prioritize price—*and only price*—in making its purchasing decisions. Indeed, the *per se* legal violation framework that applies to price fixing is based entirely on the well-established premise that horizontal price fixing is *assumed* to restrain competition and the market forces that tend to drive lower prices, regardless of market power, procompetitive justifications, or whatever other considerations buyers have in addition to price. *See, e.g., Northern Pac. Ry. Co. v. U.S.*, 356 U.S. 1, 5 (1958) ("[T]here are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have

8

caused or the business excuse for their use . . . Among the practices which the courts have heretofore deemed to be unlawful in and of themselves [is] price fixing[.]")"); *FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 433-34 (1990). This legal and economic premise has been recognized by the Supreme Court for almost a century. *See, e.g., U.S. v. Trenton Potteries Co.*, 273 U.S. 392, 397-98, 400 (1927) (recognizing that "[t]he aim and result of every price-fixing agreement, if effective, is the elimination of one form of competition[,]" and "any agreement for price-fixing, if found, would have been illegal as a matter of law.").

Thus, it is immaterial whether the named plaintiffs—or any other class member—considered factors in addition to price when purchasing caustic soda. Absent Defendants' conduct, which IPPs allege had the purpose and effect of maintaining caustic soda prices at artificially high levels, the named plaintiffs and IPP class members would have purchased their caustic soda at lower, competitive prices, regardless of what other factors may have played a role in their purchasing decisions. "[T]here is nothing in Rule 23(a)(3) which requires named plaintiffs to be clones of each other or clones of other class members." *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 242 (E.D.N.Y. 1998) (citation omitted) (explaining that "[p]ersonal traits or variables such as sophistication or choice of retail outlet are irrelevant to the typicality criterion."). And "factual differences in the amount of damages, date, size or manner of purchase, the type of purchaser. . . and other such concerns will not defeat class certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175 (JG)(VVP), 2014 WL 7882100, at *31 (E.D.N.Y. Oct. 15, 2014), report and recommendation adopted, No. 06-MD-1775 (JG)(VVP), 2015 WL 5093503 (E.D.N.Y. July 10, 2015) (citation omitted).

Putting aside Defendants' effort to mischaracterize the IPP record and analogize it to the DPP record, the claims of IPPs and IPP absent putative class members arise out of the same alleged facts and concern the same conspiracy. *Playmobil*, 35 F. Supp. 2d at 241 (explaining that "typicality in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violations by the defendants" (citation omitted)). Thus, the IPPs' claims are typical and Rule 23(a)(3) is satisfied.

### C. The IPP classes are ascertainable.

The IPP Classes satisfy the implied ascertainability requirement. "Ascertainability is a 'modest threshold' and 'will only preclude certification if a proposed class definition is indeterminate in some fundamental way.'" *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 543 (S.D.N.Y. 2021) (quoting *In re Petrobras*, 862 F.3d at 269). The ascertainability doctrine "requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras*, 862 F.3d at 264. There is no requirement in the Second Circuit that identifying class members must be "administratively feasible." *Id.* at 265; *B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, No. 17-CV-02738 (MKB) (JO), 2021 WL 234550, at *19 (E.D.N.Y. Jan. 19, 2021) (noting that the Second Circuit has "explicitly rejected" a feasibility requirement).

In denying class certification for the putative DPP class, the Court found that DPPs failed to satisfy the ascertainability requirement because the DPPs' original class definition exclusions included "vague and ambiguous" terms that were subject to interpretation, specifically the exclusion for "long-term fixed-price contracts." Decision and Order at 49-50. The significant point for the Court was the fact that there were no objective criteria presented to determine what is meant by "long-term." *Id*. Since what constitutes a "long-term contract" can be interpreted various ways based upon subjective opinions, the court concluded it is, by definition, not an objective criterion.

10

That is not the case with IPPs' proposed class definitions. Defendants recognize that IPPs do not include subjective criteria in their class definition but instead of conceding that the proposed IPPs satisfy ascertainability—as they implicitly did for commonality and numerosity—Defendants argue in passing that mini-trials would be necessary to determine whether IPP class members "(1) purchased caustic soda 'manufactured' by Defendants and (2) did not 'resell' that product." Defs' Op. at 63-64.

Defendants' ascertainability attack on IPPs is fundamentally different and much more misplaced than their criticisms of the DPP class definition. Both criteria in the IPP class definition are objective; there is no subjective opinion as to whether an IPP class member purchased caustic soda manufactured by a Defendant or resold caustic soda. Nor does IPP's class definition contain the phrase "long-term" that the court found was subject to interpretation. Defendants do not argue otherwise, but instead, they implicitly argue that it is not enough to have objective criteria if determination of class membership requires individual analysis. *Id*. Notably, the case that Defendants rely upon—*Brecher v. Republic of Argentina*, 806 F.3d 22, 26 (2d Cir. 2015)—was clarified and limited by *In re Petrobras*, 862 F.3d at 264-65. The defendants in *Petrobras*—just like the Defendants here—tried to invoke *Brecher* for the proposition that the Second Circuit had a "heightened" ascertainability requirement "over and above the evident requirements that a class be 'definite' and 'defined by objective criteria[.]" *In re Petrobras*, 862 F.3d 264. The Second Circuit squarely rejected that reading of Second Circuit law. *Id*. This Court should similarly reject Defendants' effort to rewrite Second Circuit law and erroneously analogize IPPs' class definition to DPPs' original definition.

Here, the Classes are defined by reference to objective criteria: (1) purchases from a distributor of liquid membrane or diaphragm grade caustic soda manufactured by a Defendant; (2)

11

not for resale; (3) in certain states; (4) during a specified time period. These are all definite classes defined with objective criteria. Thus, the IPP classes are ascertainable. *In re Petrobras*, 862 F.3d at 264; *In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 40 (E.D.N.Y. 2020).

### III.   CONCLUSION

For the foregoing reasons, IPPs have satisfied Rule 23 requirements of typicality, predominance, and ascertainability and are not affected by the vulnerabilities outlined in the Court's decision on the DPPs' motion for class certification. IPPs respectfully request that the Court certify the IPP classes.

Dated: August 30, 2024                              Respectfully submitted,

                                                     By: */s/ Barbara J. Hart*
                                                         Barbara J. Hart
                                                         **GRANT & EISENHOFER P.A.**
                                                         485 Lexington Avenue, 29th Floor
                                                         New York, NY 10017
                                                         Tel: (646) 722-8526
                                                         bhart@gelaw.com

                                                         Chad Holtzman (*pro hac vice*)
                                                         Nathan Reeder (*pro hac vice)*
                                                         **GRANT & EISENHOFER P.A.**
                                                         123 Justison Street
                                                         7th Floor
                                                         Wilmington, DE 19801
                                                         Tel: (302) 622-7154
                                                         choltzman@gelaw.com
                                                         nreeder@gelaw.com

                                                         **WEXLER BOLEY & ELGERSMA LLP**
                                                         Kenneth A. Wexler
                                                         Justin N. Boley
                                                         Tyler J. Story
                                                         311 S. Wacker Drive, Suite 5450
                                                         Chicago, IL 60606
                                                         312-346-2222
                                                         kaw@wbe-llp.com
                                                         jnb@wbe-llp.com
                                                         tjs@wbe-llp.com

                                                         Ellen Meriwether (*pro hac vice*)
                                                         **CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
                                                         205 N. Monroe St.
                                                         Media, PA 19063
                                                         Tel: 215-864-2800
                                                         emeriwether@caffertyclobes.com

                                                         Jennifer W. Sprengel (*pro hac vice*)
                                                         Kaitlin Naughton (*pro hac vice*)
                                                         **CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
                                                         135 S. LaSalle St.
                                                         Suite 3210
                                                         Chicago, IL 60603

Tel: 312-782-4882
jsprengel@caffertyclobes.com
knaughton@caffertyclobes.com

Ryan L. Gellman
**COLUCCI & GALLAHER, P.C.**
2000 Liberty Building
424 Main Street
Buffalo, NY 14202
Tel.: 716-853-4080
rlg@cgbuffalo.com

*Attorneys for Indirect Purchaser Plaintiffs*

## **CERTIFICATE OF SERVICE**

I, Barbara J. Hart, do hereby certify that on August 30, 2024, I caused a true and correct copy of the foregoing to be served upon all counsel of record via the Court's ECF/Pacer system.

*/s/ Barbara J. Hart*
Barbara J. Hart