**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CAUSTIC SODA<br>ANTITRUST LITIGATION | Lead Case No.<br>1:19-cv-00385-EAW-MJR |
| THIS DOCUMENT RELATES TO:<br>ALL DIRECT PURCHASER ACTIONS | HON. ELIZABETH A. WOLFORD |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR SANCTIONS AGAINST COUNSEL FOR DPPS**

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................................2

    I.    Olin diligently sought to seal the Sealed Agreement and related references three times in 2023, and after reviewing Olin's evidence, this Court granted Olin's motions.................................................................................................................. 2

    II.    In 2024, the Court ordered the Sealed Agreement be sealed in response to a motion to seal relating to Defendants' briefs seeking summary judgment and *Daubert* exclusion.......................................................................................... 3

    III.    Despite being sealed as part of the summary judgment briefing, DPPs oppose Olin's motion to seal the Sealed Agreement primarily on the basis that summary judgment motions to seal are special. ...................................................... 4

    IV.    During negotiations, Olin offered to waive confidentiality as to materials other than the Sealed Agreement to avoid further costs at this late stage of the case. ..... 6

SUMMARY OF ARGUMENT ......................................................................................8

    I.    This Court has authority to sanction counsel for engaging in objectively unreasonable and/or vexatious motions practice. ................................................. 8

    II.    DPPs' challenge to Olin's motion to seal was unreasonable and made for an improper and vexatious purpose, needlessly increasing Olin's cost of litigation. 10

        A.    Counsel for DPPs' conduct with respect to its challenge to Olin's motion to seal cannot be explained by a proper purpose. .....................................10

        B.    DPPs counsels' conduct with respect to their challenge to Olin's motion to seal can be explained by several improper purposes inconsistent with their Rule 11 obligations. ................................................................14

CONCLUSION ......................................................................................17

## INTRODUCTION

DPPs frivolously and without legal or factual support opposed Olin's motion to maintain the seal on an agreement (and statements describing the agreement) that this Court already sealed as part of the summary judgment briefing in this case (the "Sealed Agreement"). Indeed, despite this Court's prior grant of Defendants' Motion to Seal October 18, 2024 Summary Judgment, Daubert and Related Filings and finding in that Order that "[t]he parties have appropriately demonstrated that the documents and information as to which sealing is sought . . . contain non-stale, confidential , commercially sensitive information that would damage the business interests of either the parties or third parties if publicly filed,"[1] Dkt. 788 (Dec. 19, 2024 Order granting motion to seal) and despite Plaintiffs admission that the Sealed Agreement is a commercial contract that is not stale and is competitively sensitive, Dkt. 837 at 3 (July 7, 2025 Sur-Reply in Further Partial Opposition to Defendants' Motion to Seal noting "DPPs have never claimed that the [Sealed] Agreement is 'stale,' or that it is not 'commercially sensitive' to Olin . . ., or that it is not a 'commercial contract'"), Olin has been forced to meet-and-confer multiple times, to draft an unnecessary reply, to respond to a request for a sur-reply, and to prepare for and participate in  a hearing before this Court. DPPs' opposition to the motion to seal as to the Sealed Agreement was completely unsupported by law or fact and violated Federal Rules of Civil Procedure 11(b)(1), (2) and (4). As such, the Court should grant sanctions pursuant to Rule 11 and award fees as a sanction under 28 U.S.C. § 1927.[2]

---

[1] The Court also granted the motion as to some previously sealed materials based on the fact that the Court had "already determine[d they] should be sealed." Dkt. 788. However, the language Defendants sought to be sealed in the body of Plaintiffs' Opposition to the Motion for Summary Judgment was clearly not the subject of any past determinations.

[2] This motion is brought solely in relation to DPPs' arguments regarding, and attempts to oppose, the continued sealing of the Sealed Agreement. Olin is not arguing that the arguments DPPs made regarding other materials violated Rule 11.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

I.    **Olin diligently sought to seal the Sealed Agreement and related references three times in 2023, and after reviewing Olin's evidence, this Court granted Olin's motions.**

In December 2022, this Court denied nine pending motions to seal covering the class certification briefing across two sets of plaintiffs' motions for class certification, finding the movants had failed to satisfy the applicable standard for sealing or to provide the requisite showing that would allow the Court to make "specific, on-the-record findings that sealing is necessary to preserve higher values." Dkt. 534 (Dec. 1, 2022 Dec. and Order) (quoting *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 124 (2d Cir. 2006)) (internal quotation marks omitted). The Court instructed the parties to provide "specific, narrowly tailored requests supported by a substantial showing so as to overcome the presumption of public access." *Id*.

Defendants followed the Court's instructions and filed a detailed renewed motion to seal in January 2023. That motion was accompanied by a declaration from Olin's counsel, Matthew Schmitten, along with highly detailed appendices. Included in the attachments to his declaration was a twenty-nine page declaration from Leslie Rene Whigham, the former Business Director for North America Alkali at Olin, providing highly detailed, pin-point redaction requests and detailing why those redactions were essential to Olin and the harm Olin would face if its sealing requests were denied. *See* April 22, 2023 Affidavit of Leslie Rene Whigham, attached as Exhibit B-1 to January 31, 2023 Declaration of J. Matthew Schmitten (Dkt. 553-3). Ms. Whigham's specific requests included references to the Sealed Agreement. She explained that the Sealed Agreement included "non-stale confidential business information," that "its existence [wa]s not public knowledge, and that "Olin would be highly prejudiced in both its dealings with customers and in competition with other companies (including the co-defendants) if either the existence or the terms of the [Sealed Agreement] were publicized." *Id.* at App. A, 4.

The Court granted the renewed motion in April 2023, finding Defendants (including Olin) had satisfied the requirement that they "narrowly tailor" the sealing requests and provide more detail as to why not sealing the materials would result in harm to the requesting parties. Dkt. 603 (Apr. 25, 2023 Dec. and Order).

Since the Court's original admonition—and cognizant of the Court's continued focus on the importance of only seeking to seal materials that meet this Circuit's stringent requirements— Olin's motions to seal have consistently met those requirements, and this Court has consistently granted those motions. To that end, the Court twice more in 2023 granted Olin motions to seal the Sealed Agreement and information related thereto. *See* Dkt. 619 (May 23, 2023 Dec. and Order sealing materials from various briefs in the DPP and IPP actions); Dkt. 672 (Aug. 1, 2023 Dec. and Order sealing materials from the hearing on DPP class certification). In support of those motions, Olin filed a second affidavit from Ms. Whigham, reiterating the secrecy of the information sought to be sealed. *See* May 8, 2023 Affidavit of Leslie Rene Whigham, attached as Exhibit B-2, at ¶ 4 to the May 9, 2023 Declaration of J. Matthew Schmitten (Dkt. 606-3) (specifically stating that the existence of the Sealed Agreement "is not public knowledge [and that] Olin would be highly prejudiced in both its dealings with customers and in competition with other companies (including the co-defendants) if either the existence or the terms of the [Sealed Agreement] were publicized").

## II.    In 2024, the Court ordered that the Sealed Agreement be sealed in the opening round of summary judgment and *Daubert* briefs.

In November 2024, Olin filed, on behalf of itself and other defendants, a motion to seal related to Defendants' motions for summary judgment. Dkt. 781 (Defendants' November 8, 2024 Motion to Seal). Olin and Shintech, as they had consistently done across previous motions to seal before this Court, sought to seal the Sealed Agreement. They provided ample information in

support, including appendices listing over a hundred specific redaction requests as well as an 85-page declaration from Shintech's Vice President, Secretary, and General Counsel, David Tidholm, explaining (inter alia) the importance of continuing to keep the Sealed Agreement sealed. *See* November 7, 2024 Declaration of W. David Tidholm, attached as Exhibit C-9 to the November 8, 2024 Declaration of J. Matthew Schmitten (Dkt. 781-4) (explaining that the agreement, if publicized, would "provide valuable insights into the company's current business strategies that could be used to disadvantage Shintech competitively as this information reflects Shintech's ongoing business operations").

The Court granted Defendants' motion, including all of Olin and Shintech's specific requests related to the Sealed Agreement. Dkt. 788 (Dec. 19, 2024 Dec. and Order). The Court found that the parties "appropriately demonstrated that the documents and information as to which sealing is sought" were either "documents and information which the Court has already determined should be sealed" or documents that "contain non-stale, confidential, commercially sensitive information that would damage the business interests of either the parties or third parties if publicly filed." *Id.*

The Court thereby ordered that the Sealed Agreement be sealed as part of the summary judgment briefing in this case.

### III. Despite being sealed as part of the summary judgment briefing, DPPs oppose Olin's motion to seal the Sealed Agreement primarily on the basis that summary judgment motions to seal are special.

The day after the Court granted the motion to seal materials related to the summary judgment motion, DPPs filed their opposition to the summary judgment motion. That December 20, 2024 motion included 542 documents and 85 deposition transcripts – all in unexcerpted form. Dkt. 794-1 at 2 (Memorandum in Support of Motion to Compel). In other words, despite Local

Rule 7(a)(4) stating that parties "shall only file the portion(s) of . . . supporting material that is pertinent," DPPs attempted to put into the record 26,610 pages of largely irrelevant materials forcing Defendants to review all of that materials to determine if sealing was necessary. *Id.* at 3. DPPs' attempt to avoid Local Rule 7(a)(4) represented an enormous burden on Defendants who— led by Olin—filed a motion to compel compliance with Local Rule 7(a)(4). Dkt. 794. The result of that motion was that DPPs had to review and submit "newly excerpted deposition transcripts (33 in total), excerpted responses and objections of Defendants to DPPs' Requests for Admissions, additional excerpted exhibits, and corrected indices to Plaintiffs' Appendix and the Compendium of Deposition Testimony." *See* Exh. 1 (Feb. 21, 2025 email from DPP counsel); *see also* Dkt. 808 (adopting Parties' proposal that "DPPs will serve at least 27 newly excerpted deposition transcripts, excerpted responses and objections of Defendants to DPPs' Requests for Admissions, and corrected indices to Plaintiffs' Appendix and the Compendium of testimony"). Despite DPPs paring their submission down, the newly submitted materials still totaled over 7,500 pages of submissions.

Because of the delay caused by DPPs' initial failure to comply with the Local Rules, Defendants' motion to seal portions of the opposition to summary judgment and the still voluminous materials appended thereto was not filed until April 2025. *See* Dkt. 812. Despite the volume of materials, Defendants diligently pinpointed the materials they sought to be sealed and the confidentiality reasons for those requests. *See id*. Given its current and competitively sensitive nature, Olin and Shintech once again sought to seal the Sealed Agreement and information related thereto.

DPPs objected to many of Defendants' sealing requests, including Olin and Shintech's request to maintain the seal on their Sealed Agreement. Dkt. 820 (DPPs' Opp.).

**IV.     During negotiations, Olin offered to waive confidentiality as to materials other than the Sealed Agreement to avoid further costs at this late stage of the case.**

Many of DPPs' objections appeared, ostensibly, to have been made in good faith, and counsel for Defendants engaged in good faith negotiations. However, with regard to the Sealed Agreement, DPPs took an unreasonable position with no legal basis or factual justification. Indeed, as discussed below, DPPs even admitted in their briefing that the Sealed Agreement meets the standard for sealing. Their position is so frivolous that it can only be explained by bad-faith intentions to create needless costs; on that front, they have been very successful requiring (1) extensive meet-and-confers that were unnecessary given that DPPs position was to oppose the motion to seal even as it conceded that it met the standard for sealing; (2) extensive briefing, including on a motion for a sur-reply; and (3) preparing for and participating in a hearing related to the motion to seal. Throughout the process, DPPs have ignored that the Court already ruled at the summary judgment phase of the case that the Sealed Agreement should remain sealed, that the Sealed Agreement is not stale, that the Sealed Agreement is competitively sensitive—all of which are uncontested facts at this point.

After an initial meet-and-confer with counsel for all of the Defendants, DPPs began meeting and conferring with each Defendant's counsel separately. From the second meet-and-confer between DPPs and Olin on the 2025 motion to seal, Olin expressed its willingness to accede to DPPs' demands as to all exhibits except the Sealed Agreement and references detailing it. Over the course of more than a month, in multiple meet-and-confers and lengthy email exchanges with DPPs' counsel, Olin reiterated this position, *see* Exh. O to the May 9, 2025 Vona Declaration (Dkt. 620) at pdf page 2 ("We reiterate that Olin will agree to waive any rights it has to the confidentiality of any [materials] . . . except for those that would publicly identify [the Sealed Agreement] between

Olin and Shintech . . . . This position is the same as I articulated today, as I articulated during all of our three meet-and-confers.").

DPPs took advantage of it—consistently leveraging Olin's sincere desire to avoid costs but to also maintain the extremely important confidentiality of the Sealed Agreement—to push Olin to agree to lift its sealing request on more and more material. To be clear, Olin had (and has) a legitimate right to seek to have the material that was in its original motion to seal be sealed; it only agreed to waive such confidential treatment for the sake of making sure that the Sealed Agreement remain sealed.

Throughout this process, DPPs' counsel held out the possibility that it might agree to Olin's requests regarding the Sealed Agreement but also continued to note its desire that Olin acquiesce even as to the Sealed Agreement. In response, counsel for Olin repeatedly pointed out that the Court had already ordered that the Sealed Agreement be sealed, that the Agreement was current, and that the Agreement was unquestionably confidential and competitively sensitive. Olin's counsel also demanded the legal and factual basis for DPPs' position. But DPPs had no legitimate legal or factual response; and eventually counsel for Olin pointed out that if DPPs opposed the motion to seal the Sealed Agreement without a legitimate legal or factual basis, they would be in violation of Rule 11 of the Federal Rules of Civil Procedure. *See* Exh. O to the May 9, 2025 Vona Declaration (Dkt. 620) at pdf page 10–11 (counsel for Olin stating: "You have no evidence to contest the agreement's confidentiality or the harm Olin would suffer if the agreement became public. You have no case law supporting the idea that such a confidential agreement (one that is tangential at best to the case) should be made public to the detriment of a Defendant. On these facts, [opposition to the motion to seal] would be frivolous and appears to have no rationale other than to force Olin to incur more legal fees. This violates FRCP 11(b)(1) because you would be

presenting a motion to the court for the improper purpose of needlessly increasing the cost of litigation, FRCP 11(b)(2) because you would be making a claim that is frivolous and not supported by the law of the case or existing law generally, and FRCP 11(b)(4) because you would be making an unwarranted denial of Olin's factual contentions of confidentiality and harm.").

## SUMMARY OF ARGUMENT

The Court should grant sanctions pursuant to Rule 11 and award fees as a sanction under 28 U.S.C. § 1927. DPPs' counsels' conduct has been objectively unreasonable. Given the facts and unique broader context of this litigation, DPPs' counsels' explanations for their actions have been disingenuous and not based in law or fact. DPPs' counsels' actions purposefully heaped unnecessary, avoidable, and unjust costs on Olin without any legitimate legal or factual support in an apparent attempt to preview and expand on their summary judgment arguments, to delay a ruling on the *Daubert* and summary judgment rulings, and to punish Olin for moving to compel DPPs' compliance with Local Rule 7(a)(4). As a result, DPPs' counsel should be required to pay Olin's costs.

## ARGUMENT

**I.      This Court has authority to sanction counsel for engaging in objectively unreasonable and/or vexatious motions practice.**

The Federal Rules of Civil Procedure, an Act of Congress, and this Court's inherent Article III powers provide substantial authority for this Court to sanction attorneys who behave unreasonably in a way that creates and imposes needless costs on other litigants and the system.

Rule 11 of the Federal Rules of Civil Procedure provides that when filing a court pleading, an attorney is certifying that to the best of her or his knowledge the filing: "(1) is not being presented for any improper purpose, such as to harass, *cause unnecessary delay, or needlessly increase the cost of litigation;* (2) the claims, defenses, and other legal contentions *are warranted*

*by existing law* . . .; and (4) the denials of factual contentions ***are warranted on the evidence*** . . . ." Fed. R. Civ. P. 11(b)(1) (emphases added). Rule 11 provides the court with "broad discretion" to award sanctions. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 407 (1990); *see also* Fed. R. Civ. P. 11(c). "[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness." *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000).

Rule 11 is not the Court's only source of authority. The Court may also issue sanctions under authority provided by Congress under 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case **unreasonably and vexatiously** may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added). The purpose of § 1927 is to "deter dilatory tactics, unnecessary delays in litigation, and bad faith conduct by attorneys." *Gissendaner v. Credit Corp Sols., Inc.,* 358 F. Supp. 3d 213, 223 (W.D.N.Y. 2019) (quoting *Palagonia v. Sachem Cent. Sch. Dist.,* No. 08-CV-0791, 2010 WL 811301, at *2 (E.D.N.Y. Mar. 1, 2010)). Section 1927 empowers the Court to hold an attorney "personally liable for excess costs, expenses, and attorneys' fees incurred as a result of his or her improper conduct." *Mone v. Comm'r of Internal Revenue*, 774 F.2d 570, 574 (2d Cir. 1985). An award under this provision is proper where "the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir. 1986). Some courts have found fees under § 1927 are also warranted when counsel's conduct is "disingenuous." *Jolly Grp., Ltd. v. Medline Indus., Inc.,* 435 F.3d 717, 719–20 (7th Cir. 2006) (affirming award of sanctions under § 1927 where party provided "disingenuous explanations" for filing); *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.,* 38 F.3d 1414, 1417 n.6, 1418 (5th

Cir. 1994) (finding "bad faith and improper motive" where pleadings contained "patently disingenuous" assertions).

Finally, a federal court may also issue sanctions pursuant to its inherent powers where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991) (citations and internal quotation marks omitted); *Walker v. Smith,* 277 F. Supp. 2d 297, 301 (S.D.N.Y. 2003) (quoting *Chambers,* 501 U.S. at 45–46).

Where, as here, the sanctions would be against attorneys authorized to practice before it, a claim for sanctions under these various sources of authority may be resolved "in a single inquiry." *In re Khan,* 488 B.R. 515, 531 (Bankr. E.D.N.Y. 2013); *Gissendaner,* 358 F. Supp. 3d at, 223–24.

## II.    DPPs' challenge to Olin's motion to seal was unreasonable and made for an improper and vexatious purpose, needlessly increasing Olin's cost of litigation.

### A.    Counsel for DPPs' conduct with respect to its challenge to Olin's motion to seal cannot be explained by a proper purpose.

A proper purpose for seeking to unseal a document could be to protect the plaintiff's best interest.  That is not the case with regard to the Sealed Agreement. In fact, during the meet-and-confer process, counsel for DPPs acknowledged that none of the named plaintiffs would benefit in any way by publicizing Olin's materials. Schmitten Decl. ¶ 3.

Counsel for DPPs claimed instead during meet-and-confers that he sought "to see that the law be vindicated" suggesting that because DPPs brought a suit against Olin—merits aside—Olin should be forced to waive confidentiality and suffer the commercial consequences. This, of course, is not the law nor have DPPs' counsel ever claimed it was. Indeed, DPPs' counsel  have consistently acknowledged that the Sealed Agreement meets the standard this Court has applied for whether materials should be sealed: It is current, confidential, and, if it were made public, it could commercially harm Olin. *See* DPPs' Sur-Reply Memorandum of Law in Further Partial

Opposition to Defendants' Motion to Seal (Dkt. 837) at 10 ("DPPs have never claimed that the Agreement is 'stale,' or that it is not 'commercially sensitive' to Olin . . . ."); Dkt. 825-1 at 3 ("even assuming the Agreement has always been "highly sensitive" to Olin . . .").

Moreover, DPPs' counsel's suggestion without legal or factual support that the Sealed Agreement should not be sealed is "flatly contradicted by the record," which has time and time again established that the Sealed Agreement is, in fact, deserving of sealing. *Gollomp v. Spitzer,* 568 F.3d 355, 370 (2d Cir. 2009). Counsel's unsupported briefing suggesting otherwise is the kind of bad faith and disingenuousness that § 1927 and Rule 11 were designed to deter.

Given the undisputed current commercial sensitivity of the Sealed Agreement and the Court's repeated rulings on sealing the Sealed Agreement (none of which plaintiffs are seeking to reconsider[3]), DPPs' efforts to contest the Agreement's continued sealing are in bad faith. DPPs' position is and always has been meritless. Given the significant compromises Olin made to try to avoid this unnecessary and frivolous dispute, DPPs' opposition to the sealing appears to be nothing more than a pretextual excuse to use Olin's and the Court's time and resources to argue portions of the summary judgment motion before the Court has seen them, to punish Olin by driving up its costs, and to delay the determination of summary judgment.

The lack of a proper purpose for this motion is highlighted by the misrepresentations counsel makes throughout its Opposition to the Motion to Seal. These misrepresentations establish that counsel either failed to perform a "reasonable inquiry" into its claims or ignored the results of that inquiry in favor of other purposes for filing. *Gutierrez v. Fox,* 141 F.3d 425, 427 (2d Cir. 1998). To that end, despite the fact that the Sealed Agreement began before the alleged conspiracy

---

[3] To be clear, DPPs sought, and this Court gave, a schedule to seek reconsideration, which they did not do by the Court's deadline of May 30, 2025. Dkt 816.

period, *see* Affidavit of Ray Katekovich ¶ 6, attached as Exhibit B-1 to June 6, 2025 Declaration of J. Matthew Schmitten (hereinafter "Katekovich Decl.") (noting the sealed agreement's "original inception" was in 2010), DPPs' counsel suggested that the Agreement started during the conspiracy period and implied its existence during the alleged Conspiracy Period has some significance. Dkt. 820 (DPPs' Opp.) (alleging that "six to ten years ago"—not the correct "fifteen years ago"—Defendants "reached secret agreements or understandings and exchanged competitively sensitive information with each other . . . concerning caustic soda that helped them increase prices marketwide during the Conspiracy Period"). To be clear, the Conspiracy Period is alleged to have begun in 2015, five years after the origination of the Sealed Agreement. *Id.* at viii (defining the conspiracy period as August 1, 2015, through December 31, 2018).

Counsel also misleadingly argued that materials supporting their plus factors must be unsealed implying that the Sealed Agreement is material supporting their plus factors. But the Sealed Agreement is referenced only twice in 58 pages of DPPs' opposition to the summary judgment brief, is not in line with any of the plus factors cited in the brief, and existed before and after the alleged conspiracy—definitionally making it not a plus factor in support of the alleged conspiracy. DPPs' Opp. (Dkt. 820) at 42, 43.

In both its briefing and at oral argument before the Court, DPPs' counsel was loose in his explanation for why DPPs did not object to earlier motions to seal the Sealed Agreement or file a motion for reconsideration. DPPs' counsel explained that it did not do so because the Sealed Agreement was not central to the evidence before the Court. DPPs' Opp. (Dkt. 820) at 11. This excuse implies (1) that the Sealed Agreement is central to the summary judgment motion and (2) that DPPs' counsel objected to the Sealed Agreement being sealed during the entirety of the summary judgment phase of the case. Both are false. As already discussed, the Sealed Agreement

is not relevant to the summary judgment motion. Moreover, DPPs' counsel did not object to the motion to seal references to the Sealed Agreement following the filings of motions to seal portions the summary judgment and *Daubert* motions. *See* Order, Dkt. 788. DPPs' counsel does not address this fact in their Opposition or the Sur-Reply.

As detailed above, DPPs' counsel tried to bolster its reason for fighting the sealing of the Sealed Agreement by falsely casting doubt on Olin's efforts to keep the Sealed Agreement sealed. DPPs' counsel asserted that Defendants, including Olin, did not provide specific reasons for the requested redactions. *See e.g.* Dkt. 820 at 16–18, 22 ("The reasons Defendants give for requesting sealing of evidence of their conduct six to ten years ago during the Conspiracy Period are . . . never specific"). This accusation is belied by the detail provided in no fewer than five declarations, including declarations from both the current (Ray Katekovich) and former (Rene Whigham) head of Olin's chlor-alkali business. *See* Dkt. 533-3 (first Whigham declaration); Dkt. 606-3, Exhibit 3 (second Whigham declaration); Dkt 781-4, Exhibit C-10 (first Russo declaration); Dkt. 812-1, Exhibit C-5 (second Russo declaration); Dkt 824-6, Exhibit 1 (Katekovich declaration).

Counsel also claimed that Defendants, including Olin, "never discuss or quote the material for which sealing is requested with specificity and never explain why it is *competitively* sensitive and may cause them harm if disclosed to a co-Defendant competitor who could exploit it for competitive advantage." Dkt. 820 at 22 (emphasis in original). This assertion is simply false as applied to Olin and its efforts to have the Sealed Agreement remain sealed. Olin has regularly and consistently explained why the Sealed Agreement is competitively sensitive. *See, e.g., infra* at 2-4 (detailing the statements of Ms. Whigham in support of sealing the Sealed Agreement).

Not only has this Court has already ruled—several times—that the Sealed Agreement "contain[s] non-stale, confidential, commercially sensitive information that would damage the

business interests of either the parties or third parties if publicly filed," *see, e.g.,* Dkt. 619 (May 23, 2023 Dec. and Order); Dkt. 672 (Aug. 1, 2023 Dec. and Order); Dkt. 788 (Dec. 19, 2024 Dec. and Order)—remarkably, DPPs' counsel concedes as much, *see* Dkt. 837 at 10 ("Importantly, despite Defendants' arguments and misdirection, DPPs have never claimed that the Agreement is stale, or that it is not commercially sensitive to Olin and Shintech, or that it is not a commercial contract.").

    **B.**    **DPPs counsels' conduct with respect to their challenge to Olin's motion to seal can be explained by several improper purposes inconsistent with their Rule 11 obligations.**

DPPs' counsel provides no legitimate justification for why it is pursued costly briefing to unseal a document this Court has already ruled "contain[s] non-stale, confidential, commercially sensitive information that would damage [Olin] if publicly filed." Dkt. 788 (Dec. 19, 2024 Dec. and Order). There is no benefit to counsels' clients or to counsels' legal position. And the evidence supporting Olin's position that the Sealed Agreement is a non-stale, confidential, commercially sensitive agreement that if made public would damage Olin's business is uncontroverted and undisputed. This alone violates Federal Rule of Civil Procedure Rule 11(b) (2) and (b)(4) because counsel's claims are NOT "warranted by existing law" and the implied denial that the Sealed Agreement is non-stale, confidential, commercially sensitive agreement is NOT "warranted on the evidence."

There does not appear to be a genuine dispute over the standard for sealing commercially sensitive information nor whether Olin met its burden under it. This Court has repeatedly held that the materials Olin has sought to seal "contain non-stale, confidential, commercially sensitive information that would damage the business interests of either the parties." *See* December 19, 2024 Order (Dkt. 788) (order on motion to seal related to summary judgment briefing); *see also* April

25, 2023 Order (Dkt. 603); May 23, 2023 Order (Dkt. 619); August 1, 2023 Order (Dkt. 672). Other courts throughout this Circuit are in accord and regularly apply the same standard. *See, e.g.*, *Awestruck Mktg. Grp., LLC v. Black Ops Prods., LLC*, No. 16-cv-3639, 2016 WL 8814349, at *2 (S.D.N.Y. June 20, 2016) (then-district court judge Sullivan sealing "sensitive and proprietary information that is not generally publicly available and that, if revealed, could cause significant competitive harm"); *Louis Vuitton Malletier S.A. v. Sunny D. Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (then-Chief Judge Preska sealing, at summary judgment, information that "if revealed, may provide valuable insights into a company's current business practices that a competitor would seek to exploit" (internal quotation marks and citation omitted)); *W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A.*, No. 1:21-cv-11003, 2022 WL 890184, at *2 (S.D.N.Y. Mar. 25, 2022) (Chief Judge Swain sealing "business information that would subject the parties to a competitive disadvantage if disclosed"); *Encyclopedia Brown Prods., Ltd. v. HBO, Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998) (sealing trial exhibits because of "harm to defendants' competitive position that would result from disclosure"); *In re Keurig*, No. 14-md-2542 (S.D.N.Y., Jan. 17, 2023) (sealing, at summary judgment, information that would subject the movant to "financial harm" or a "significant competitive disadvantage"); *BakeMark USA LLC*, No. 23-cv-2360, 2024 WL 182505 (S.D.N.Y. Jan. 16, 2024) (sealing on the basis of "harm to a litigant's competitive standing.").

DPPs did not argue that some other standard applied to the motion to seal before the Court. Indeed, DPPs opening brief acknowledges, rather than disputes, that standard. *See* DPPs' Opposition, Dkt. 820 at 1 ("In order to overcome the presumption of public access, the information must be such that the party or non-party requesting sealing could be competitively or personally harmed by its disclosure."). DPPs' surreply (filed over Defendants' opposition) then effectively

admits that DPPs are not really challenging whether this standard is met. *See* Dkt. 837 at 10 ("Importantly, despite Defendants' arguments and misdirection, DPPs have never claimed that the Agreement is stale, or that it is not commercially sensitive to Olin and Shintech, or that it is not a commercial contract.").

Query, then: Why was Olin forced to spend time and resources defending its extremely modest and completely justified sealing request?

The demonstrable baselessness of DPPs' opposition would be enough for Rule 11 sanctions. But the tone and tenor of the meet-and-confers and the briefing suggest that the position that DPPs' counsel took also runs afoul of Rule 11(b)(1) because it was motivated by an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."

First, because of the Court's order on summary judgment briefing, the Court does not receive summary judgment briefing until after motions to seal are resolved. *See* Dkt. 765 (July 25, 2024 Text Order) (ordering that motions shall be sent to the court "within five days of the motions for summary judgment becoming fully briefed or of the Court's resolution of all motions to seal, whichever is later"). As a result, DPPs fight on the motion to seal is delaying a ruling on the motion for summary judgment while also giving DPPs pre-briefing on the summary judgment issues, including spending many pages arguing about plus factors and evidence that it deems crucial to its opposition to the summary judgment motion—evidence the Court will see regardless of whether it is sealed.

Second, because the Sealed Agreement is not relevant to DPPs' opposition to the summary judgment motion (again, the Sealed Agreement existed before, during, and after the Conspiracy Period so cannot serve as evidence of a conspiracy during the Conspiracy Period), the fight about the Sealed Agreement does not appear to be solely motivated by delay. Instead,  DPPs' counsel

appears to be seeking to create an additional pain point outside of substantive case briefing, including potentially punishing Olin for taking the lead on the recently filed motion to compel DPPs to comply with Local Rule 7(A)(4), which ultimately resulted in DPPs having to review and submit "newly excerpted deposition transcripts (33 in total), excerpted responses and objections of Defendants to DPPs' Requests for Admissions, additional excerpted exhibits, and corrected indices to Plaintiffs' Appendix and the Compendium of Deposition Testimony." *See* Exh. 1; *see also* Order, Dkt. 808 (adopting Parties proposal that "DPPs will serve at least 27 newly excerpted deposition transcripts, excerpted responses and objections of Defendants to DPPs' Requests for Admissions, and corrected indices to Plaintiffs' Appendix and the Compendium of testimony").

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the court grant the motion for sanctions.

DATED: 8 August 2025                    Respectfully submitted,

/s/ Corey W. Roush
Corey W. Roush
J. Matthew Schmitten
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Tel: (202) 736-8624
corey.roush@sidley.com
jmatthew.schmitten@sidley.com

Stephen A. Sharkey
BOND, SCHOENECK & KING PLLC
200 Delaware Ave., Suite 900
Buffalo, NY 14202-2107
Tel: (716) 416-7051
ssharkey@bsk.com

*Counsel for Defendants K.A. Steel*
*Chemicals, Inc. and Olin Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I, J. Matthew Schmitten, hereby certify that on August 8, 2025, I caused the foregoing

Memorandum of Law in Support of Motion for Sanctions to be served upon counsel or record

via ECF. I also certify that, in accord with Rule 11(c)(2), I provided advanced notice to counsel

for DPPs on July 11, 2025 of this motion.

<div style="margin-left:50%">

*/s/* J. Matthew Schmitten
J. Matthew Schmitten
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Tel: (202) 736-8624
jmatthew.schmitten@sidley.com

</div>

19